UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Master Docket No. **09-md-02063-JLK-KMT** (MDL Docket No. 2063)

IN RE: OPPENHEIMER ROCHESTER FUNDS GROUP SECURITIES LITIGATION

## ORDER APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL BY FUND AND APPOINTING LEAD COUNSEL LIAISON

Kane, J.

On July 15, 2009, counsel appeared for a Status Conference in the 32 Oppenheimer securities fraud class actions either filed originally here or transferred to me by the Judicial Panel on Multidistrict Litigation. Matters for discussion included, among other things, the consolidation and organization of those actions into nine subsets of consolidated actions by fund, and the process for selecting and approving Lead Fund Plaintiffs and Lead Counsel within the confines of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Manual for Complex Litigation. *See* Follow Up Case Management Order (Doc. 96)(ordering initial consolidation by fund and establishing process for refiling lead plaintiff/lead counsel motions and selection of Lead and Liaison Counsel). The cases are before me on the various Motions for Appointment of Lead Plaintiff and Selection of Lead Counsel filed in accordance with this process.[1]

---

[1]  On September 25, 2009, I further consolidated the non-MDL related Oppenheimer Champion and Core Bond ("Fixed Income") Fund Class Actions and granted the Motion of Plaintiffs Goodman and O'Steen for appointment as Lead Plaintiff in those actions. *See* Order, Civil Action No. 09-cv-386-JLK-KMT (Doc. 76).

Before addressing these Motions, I discuss the standards for appointment of lead plaintiffs and lead plaintiff counsel in class action securities litigation under the PSLRA generally, and the complexities that arise in the context of coordinated multidistrict litigation.    The Motions will then be addressed, *seriatim*, by Fund.

## I.  LEGAL STANDARD FOR APPOINTING LEAD PLAINTIFFS

The standards for appointment of a lead plaintiff in securities fraud class action litigation are set forth by section 21 D(a)(3) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  *See* 15 U.S.C. §§ 78a-78oo.  Reform was deemed necessary to redeem the "lawyer-driven" aspects of modern securities fraud class action litigation, where counsel for a putative class seek to realize substantial recoveries for themselves at the expense of their clients, who are sought out and selected by counsel simply as placeholders to pursue actions on a contingency fee basis.    By codifying requirements aimed at selecting lead plaintiff on the basis of financial interest rather than "first come, first serve," Congress sought to neutralize the advantage of being the first to file in favor of insuring that large or institutional investors, who were most likely to have expertise in the securities market and real financial interests in the integrity of the market, would control the litigation, not the lawyers racing to the courthouse.  *See In re Razorfish, Inc. Securities Litigation*, 143 F. Supp.2d 304, 308-09 (S.D.N.Y. 2001)(Rakoff, J.)(citing H.R. Conf. Rep. No. 104-369, at 31-35 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 730, 730, 730-34).

Accordingly, Congress codified a process requiring the first-to-file to provide notice to

all prospective lead plaintiffs and then created a presumption that the "most adequate plaintiff"

would be the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Once selected, the most adequate plaintiff would,

"subject to the approval of the court, select and retain counsel to represent the class."  §

78u-4(a)(3)(B)(v).

The theory of these provisions was that if an investor with a large financial stake in

the litigation was made lead plaintiff, such a plaintiff would be motivated to act like a

"real" client, carefully choosing counsel and monitoring counsel's performance to make

sure that "adequate representation was delivered at a reasonable price."  *In re Razorfish*,

143 F. Supp.2d at 307 (citing Elliott J. Weiss & John S. Beckerman, *Let the Money Do

the Monitoring:  How Institutional Investors Can Reduce Agency Costs in Securities

Class Actions*, 104 Yale L. J. 2053, 2089 (1995)).  Unsurprisingly, theory yields to reality

where discovering grounds for suit, initiating action and seeking lead plaintiff status are

complex endeavors requiring expertise and sophisticated legal help.  Moreover, lawyers

are and will remain pre-existing and constituent elements of large-scale or institutional

investing, and any PSLRA selection process that demands rigid adherence to the client-

driven lead plaintiff selection construct will force parties – who have come to the table

3

only through the assistance of counsel – into a stylized kabuki dance of proof, where counsel direct lead plaintiff movants how best to demonstrate it was they who sought out counsel instead of the other way around. *See id.* (recognizing securities class litigation continues to be lawyer-driven in material respects and that the reforms contemplated by Congress are achievable, "if at all," only with help from the courts).

When the dance is compounded across multiple, overlapping class actions which have been consolidated in a multidistrict litigation, the PSLRA's purpose in ensuring client-driven decisionmaking is further strained by the countervailing demands in complex litigation that counsel act both as advocates and as officers of the court in collaborating and coordinating with the overseeing judge. *See* Manual for Complex Litigation 4th § 10.21 (complex litigation places greater demands on counsel in their dual roles as advocates and officers of the court). In accordance with the Manual's directives, I ordered counsel who had filed the multiple original complaints in the now-consolidated multidistrict litigation to confer before filing or re-filing lead plaintiff motions to discuss further consolidating the various Fund-related cases and reaching private agreement as to who would be put forth as lead plaintiff in each group. With regard to lead plaintiff motions that had already been filed, I denied those motions without prejudice to their being refiled on a common date, with the admonition that any movants who were groups that had aggregated their losses solely for purpose of the PSLRA's "most adequate plaintiff" presumption would *not* be appointed lead plaintiff in the absence of facts demonstrating a pre-litigation relationship among them. Disparaging characterizations of

4

attempts to comply with these instructions (i.e., describing counsel conferences as

"craven" and "conspiratorial" or efforts to refile previously group movant motions on

behalf of an individual member of the group as "abandonment" of other members of the

group and evidence of attorney misconduct) are less than persuasive given this procedural

history and will be viewed in that light.

That said, given the number of independent class actions and funds in this

multidistrict litigation I am concerned that the investors in each municipal fund be

adequately represented by a lead plaintiff able to advocate for those investors without

conflicting pull from, or obligations to, another investor group.  I therefore reject the

"Three Group Plan" put forward by Cohen Milstein, Milberg, The Sparer Law Firm, and

others (*see* Doc. 65-2), and will select different lead plaintiffs for each fund, even though,

in at least one case, this means appointing a lead plaintiff who has the second-highest,

rather than highest, financial interest in the relief sought by his fellow class members.

Given the over-arching purpose of the PSLRA's most adequate plaintiff analysis is to

select a plaintiff strong enough and interested enough to drive the litigation and monitor

the attorneys, a determination that the No. 2 loss-plaintiff is able to do this as well as the

No. 1 militates against reading § 78u-4(a)(3)(B)(iii)(I) too narrowly, particularly in

multidistrict litigation where individual plaintiff classes hail from different regions around

the country.  Each Lead Plaintiff's selection of Lead Counsel will be approved and Kip

Shuman will coordinate among these Lead Counsel as Liaison Counsel.  There is no need,

under this structure, for the further appointment of a single or "super"-Lead Counsel nor

any need for the appointed Lead Counsel to form or act as a committee.

As I have already determined, Magistrate Judge Tafoya will establish and oversee the structure for setting and monitoring attorney rates and fees. This is in keeping with the PSLRA's purpose in selecting "real" clients as lead plaintiffs who will monitor the quality and cost of their representation, and Judge Rakoff's recognition that, because securities class litigation remains lawyer-driven despite Congress's intent, effecting this purpose often requires "help from the courts." *See In re Razorfish*, 143 F. Supp.2d at 307.

## II. DISCUSSION.

The initial inquiry in appointing a lead plaintiff (i.e., the determination of whether the movant with the largest interest in the case "otherwise satisfies" Rule 23) is confined to determining whether the movant has made a prima facie showing of typicality and adequacy. *In re Cendant Corp. Litigation,* 264 F.3d 201, 263 -268 (3d Cir. 2001); *In re Ribozyme*, 192 F.R.D. 656, 658 (D. Colo. 2000). Typicality exists where the "injury and the conduct are sufficiently similar" and the "claims of the class representative and class members are based upon the same legal or remedial theory." *Id.* Adequacy is established on facts tending to demonstrate "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able . . . vigorously [to] conduct the proposed litigation." *Id.* at 659.

If these prerequisites are met, the presumption created by the statute may be rebutted by proof that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

*Id.* § 78u-4(a)(3)(B)(iii)(II).  As the Third Circuit observed in *In re Cendent,* the initial clause of the statute, which governs triggering the presumption, refers to determinations made by "the court," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), but the second, which deals with rebutting it, speaks of "proof by a member of the purported plaintiff class." *Id.* § 78u-4(a)(3)(B)(iii)(II).  "This phrasing suggests that the threshold determination of whether the movant with the largest financial losses satisfies the typicality and adequacy requirements should be a product of the court's independent judgment, and that arguments by members of the purported plaintiff class as to why it does not should be considered only in the context of assessing whether the presumption has been rebutted."  264 F.3d at 265-66.

Applying these standards, I turn to the individual lead plaintiff motions by Fund.

A. *Rochester Fund Municipals* class actions.
09-cv-703-JLK (*Begley*)
09-cv-1479-JLK (*Bernstein*)
09-cv-01481-JLK (*Mershon*)
09-cv-1622-JLK (*Stern*)
09-cv-1478-JLK (*Vladimir*)
09-cv-1480-JLK (*Wiener*)

In the *Rochester Fund Municipals* class actions, the Motion of **Stuart and Carole Krosser** for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (Doc. 129) is unopposed.  Because the Krossers' submissions support a presumption of "most adequate plaintiff" status that is unrebutted, their Motion for Appointment as Lead Plaintiff is GRANTED.  The Krossers' selection of Cohen Milstein, a law firm with

7

substantial experience prosecuting complex securities class actions under the PSLRA, as

Lead Counsel for the Rochester Fund Municipals class is also APPROVED.

B. *New Jersey Municipal Fund* class actions.
   09-cv-1406-JLK (*Unanue*)
   09-cv-1617-JLK (*Baladi*)
   09-cv-1618-JLK (*Seybold*)
   09-cv-1620-JLK (*Trooskin*)

**Victor Sasson's** Motion for Appointment as Lead Plaintiff and Approval of

Selection of Lead Counsel (Doc. 142) in the New Jersey Municipal Fund class actions is

also unopposed, and his submissions are sufficient to give rise to the "most adequate

plaintiff" presumption.  As the presumption is unrebutted, Sasson's Motion is GRANTED

and his selection of Milberg, LLP, a law firm with extensive experience in securities class

actions, as Lead Counsel for the New Jersey Municipal Fund class is APPROVED.

C. *California Municipal Fund* class actions.
   09-cv-1484-JLK (*Lowe*)
   09-cv-1485-JLK (*Rivera*)
   09-cv-1486-JLK (*Tackmann*)
   09-cv-1487-JLK (*Milhelm*)

Joseph Stockwell purports to have suffered $1,060,610 in losses and his Motion

for Appointment as Lead Plaintiff (Doc. 143) is unopposed in the California Municipal

Fund class actions.  Because Stockwell's submissions support a presumption of "most

adequate plaintiff" that has not been rebutted, I GRANT his Motion and appoint him

Lead Plaintiff in the consolidated California Municipal Fund class actions.  The Sparer

Law Group is qualified and experienced in PSLRA litigation and Stockwell's selection of

Sparer as Lead Counsel is also APPROVED.

8

D.  *AMT-Free New York Municipal Fund* class actions
09-cv-1621-JLK (*Isaac*)
09-cv-1781-JLK (*Kurz*)

There are two competing motions for lead plaintiff/lead counsel in the AMT-Free

New York Municipal Fund class actions:  (1) Plaintiff **Michael Isaac's** Motion for

Appointment as Lead Plaintiff and to Confirm Selection of Lead Counsel (claiming

$13,000 in losses)(Doc. 116) and (2) the Motion of **John Vazquez** for Appointment as

Lead Plaintiff and Approval of Selection of Lead Counsel ($230,000) (Doc. 144).  Isaac

does not dispute that Vazquez has the larger financial interest in the AMT-Free New York

litigation, and I find, based on Vazquez's submissions in support of his Motion, that he

has established a prima facie case of typicality and adequacy and is therefore entitled to

the presumption of "most adequate plaintiff" under the PSLRA.

Isaac seeks to rebut the presumption that Vazquez is an adequate representative

with proof he was solicited by and is a party to various machinations of the law firms of

Milberg LLP and Cohen Milstein to manipulate and secure dominant roles in this

litigation.  Isaac moved pursuant to 15 U.S.C. § 78u-4(a)(3)(b)(iv) for leave to conduct

discovery into his various allegations of misconduct, which motion I denied (Doc. 199).

The PSLRA limits discovery relating to whether a member of a purported class is

the most adequate plaintiff to situations in which the movant "first demonstrates a

reasonable basis" for its assertions of inadequacy.  *See id.*  Courts are to "take care to

prevent the use of discovery to harass presumptive lead plaintiffs," something the Reform

Act was "meant to guard against."  *Cendent*, 264 F.3d at 270, n.49.  Under the

circumstances and procedural history of this multidistrict litigation to date, Isaac's

allegations fall short of this standard.  With the judicial safeguards already in place to

monitor attorney conduct and fees, all legitimate concerns are addressed.  Isaac's more

scurrilous "concerns" –  including linking Milberg in this case to unrelated counsel from

Milberg's West Coast office who in 2004 were chided in an unrelated case for misleading

in a lead plaintiff motion, and suggesting Vazquez may have a criminal record because

the name "John Vazquez" appears on a list of persons with criminal records – are

unsupported by any sworn affidavit or other competent evidence and have no place in

lead plaintiff briefing under § 78u-4(a):

> Allegations of impropriety are not proof of wrongdoing.  If they were, then
> any class member (or lawyer seeking to be appointed lead counsel) could
> disable any presumptive lead plaintiff with unsupported allegations.

*Cendent* at 270.

Based on the foregoing, John Vazquez is appointed Lead Plaintiff for the AMT

Free New York class of securities fraud investors and his selection of counsel, Milberg

LLP, is APPROVED.

E. *Rochester Nat'l Municipals Fund* class actions
09-cv-550 (*Bock*)
09-cv-706 (*Stokar*)
09-cv-927 (*Tackmann*)
09-cv-1042 (*Krim*)
09-cv-1060 (*Truman*)
09-cv-1482-JLK (*Laufer*)
09-cv-1908 (*Lariviere*)

There are three competing Lead Plaintiff movants in the Rochester National

Municipals Fund class actions:  (1) Motion of the **Rochester National Investor Group** – comprised of Leonard Klorfine, Jim and Grace Woo, and Gloria Fishbein – for Appointment as Lead Plaintiff and Appointment of Lead Counsel (Doc. 133); (2) **John Stevko, Richard & Rosemarie Letourneau, and Robert Ide's** Resubmitted Motion for Appointment as Lead Plaintiffs and Approval of Selection of Counsel (Doc. 137); and (3) the Motion of **Peter Unanue** for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (Doc. 141).  Mr. Unanue originally moved for appointment as Lead Plaintiff as part of a group of investors known as the "RN Investor Group," which abandoned its pursuit of appointment after the July 15, 2009 Status Conference.[2]

In its two legal memoranda filed in support of its Motion (Docs. 160 and 183), the Rochester National Investor Group "recognizes" I have instructed lead plaintiff movants generally not to seek appointment as a group unless they enjoyed some form of pre-litigation affinity or relationship, concedes it had no such relationship, and, assuming I adhere to that instruction, throws its support behind Unanue's individual Motion.  (Doc.

---

[2]    At the July 15 conference I cautioned movants that groups of individual investors would not be appointed lead plaintiff in this case in the absence of evidence demonstrating the group had a "purpose, organization or some kind of connection or affinity *before*" they came together to aggregate their financial interest and pursue appointment as lead plaintiff.  7/15/09 Hg. Tr. at p. 107 (emphasis added).  Because the parties continue to wrangle about what I meant by that statement, I will reiterate it:  Groups of individuals who came together solely for the purpose of pursuing a motion for appointment as lead plaintiff will not be appointed lead plaintiff in these cases.  Only groups of individuals having some pre-existing relationship (i.e. husbands and wives or investor groups or clubs who moved together to buy and sell shares before legal action was taken or threatened) will be considered appropriate groups under the PSLRA's lead plaintiff provisions.  Individuals who came together only after the legal action commenced and solely for purposes of aggregating their financial interest for purposes of the most adequate plaintiff presumption need not apply.

160, p.2)  In the event I modify that instruction or otherwise find Unanue inadequate as class representative, the Group urges me to appoint it over the Stevko movant group.

The Stevko movants agree that Rochester National is an inappropriate lead plaintiff group but argue my rule regarding plaintiff groups was not a per se exclusion of groups formed after litigation commences, but an exclusion of groups "cobbled together" solely for the purpose of aggregating financial interest.  Because they were a "small, cohesive group" that organized early, with a single law firm, on which members placed a "structure" and "procedures" that will effectively control both the litigation and their shared counsel, the Stevko movants urge me to distinguish them from the Rochester National group and appoint them lead plaintiff over Mr. Unanue, whose financial interest in the case is less than their aggregated interest.  *See* Stevko Reply (Doc. 192) at 3-4.

The Stevko movants also place considerable emphasis on the fact that they were first to file for appointment as lead plaintiff, arguing the reconfiguring and shifting of the Rochester National and Unanue/RN Investor Groups while they remained cohesive reveals the lawyer-driven nature of the other movants' requests and renders them better and more adequate representatives of the class.  Unlike the competing movants, they argue, the Stevko group members have "demonstrated through a timely submission of evidence (and by their actions to date) that they are fully committed to making decisions that are in the best interest of the litigants."  Stevko Reply at 4.

While there is no reason to doubt the Stevko group's representations or the viability, as a legal matter, of a distinction between appropriate groups formed after a case

12

is commenced and those inappropriately "cobbled together" by lawyers, I was clear in my July 15 statements that a pre-litigation relationship was required and the parties have all relied on that bright-line rule in their actions and briefing on the lead plaintiff issue. Moreover, any assertion that the Stevko movants should receive "points" in the lead plaintiff contest because they were first-to-file has been rejected by Congress, which explicitly approved a process for "[a]ppointing lead plaintiff on the basis of financial interest, rather than 'first come, first serve.'"  *In re Razorfish*, 143 F. Supp.2d at 308-09 (citing H.R. Conf. Rep. No. 104-369, at 31-35).   Accordingly, Unanue is the only non-group movant and is the presumptively most adequate plaintiff in the Rochester National Municipals cases.

The Stevko movants contend Rochester National Investor Group and Unanue are inadequate class representatives because their shifting alliances "open them up to attack" by other Lead Plaintiff movants who, like the Stevko group members, allege Milberg, Cohen Milstein and others have engaged in "calculated manipulations" to trade clients and reconfigure lead plaintiff motions to push their "Three Group Plan" and gain control over the lion's share of the MDL actions.  Reply (Doc. 192) at 7-8.[3]  While it is true I

_____

[3]        Mr. Unanue, for example, originally sought appointment as lead plaintiff with Milberg as his counsel in the New Jersey Municipal Action, but allowed Milberg to withdraw his motion and seek appointment as lead counsel through the unopposed Motion of Mr. Sasson, a larger investor who had previously sought to have Abraham Fruchter appointed lead counsel.  *See* Stevko Reply at 8, n. 7.  If Unanue is now appointed Lead Plaintiff for the Rochester National Municipal Fund, the Stevko movants argue, Milberg will have succeeded, with Cohen Milstein's help in throwing the remaining Rochester National Investor Group's support behind Unanue, in thwarting the

have rejected the "Three Group Plan" given the inherent conflicts and rancor the Plan has caused, given the procedural intricacies of this case and my orders requiring counsel to confer regarding consolidation and streamlining of lead plaintiff motions in the MDL, I decline to impute improper motives to counsel or to declare their clients inadequate on the basis of their having proposed it.

The Stevko movants rely on Defendants' Joint Response to Motions for Approval of Lead Counsel (Doc. 168) to portend that Unanue, like other individuals who were "traded" as part of the efforts of Cohen Milstein, Milberg, Abraham Fruchter, and others to push their "Three Group Plan," will be subject to unique defenses by Oppenheimer and the Trustee Defendants based on allegations that Cohen Milstein used confidential investor information to solicit investors for these lawsuits.  As previously set forth, Cohen Milstein strongly denies any wrongdoing and I cannot and will not engage in the evidentiary or fact-finding mission necessary to determine the truth or import of such wrongdoing based simply on the allegations themselves.

The fact Mr. Unanue originally moved for Lead Plaintiff status as a member of a group and refiled on his own behalf without other group members comports with my instructions at the July 15 status conference and is not, by itself, a sufficient indicium of conflict of interest or other inability to represent or protect the interests of his fellow class

---

bona fide efforts of other, not quite so large investors and their counsel, to represent the class and prosecute the action.

members to rebut the presumption of most adequate plaintiff to which he is entitled under

15 U.S.C. § 78u-4(a)(3)(B)(iii).  Because the presumption of most adequate plaintiff to

which Mr. Unanue is entitled is not subject to rebuttal on this record, his Motion for

Appointment as Lead Plaintiff of the *Rochester National Municipal Fund* class action is

GRANTED and his selection of Milberg LLP to serve as Lead Counsel for the class is

APPROVED.

### F.  *AMT-Free* and *Pennsylvania Municipal Fund* class actions

| *AMT-Free Municipal Fund* | *Pennsylvania Municipal Fund* |
|---|---|
| 09-cv-1243-JLK (*Prince*) | 09-cv-1483-JLK (*Woods*) |
| 09-cv-1447-JLK (*Connel*) | 09-cv-1368-JLK (*Egts*) |
| 09-cv-1510-JLK (*Amato*) | 09-cv-1765-JLK (*Wunderly*) |
| 09-cv-1619-JLK (*Furman*) | |

I consider the lead plaintiff motions in the *AMT-Free* and *Pennsylvania* Municipal

Fund class actions together because the same individual – Leonard Klorfine – purports to

be the presumptive lead plaintiff in both.  Given the size and complexity of this

multidistrict litigation and the regional nature of the various putative classes within it, the

appointment of one individual to serve as lead plaintiff in two separate consolidated class

action families risks conflicts of interest, and certainly accusations of conflicts of interest,

that may be distracting both to client and counsel.[4]  Klorfine implies that he has

---

[4]     At the inception of this litigation, and for most of the negotiations leading up to
the refiling of Lead Plaintiff motions, Mr. Klorfine was represented by Cohen Milstein.  As part
of those negotiations, the Pennsylvania and California Municipal Fund class actions were
represented at the August Status Conference to be sufficiently similar to warrant further
consolidation into a single class action of claims against both funds.  Under the "Three Group
Plan" put forward by Cohen Milstein, Milberg and the Sparer law firm on behalf of Klorfine and
others, Klorfine was to be represented by Cohen Milstein in the *AMT-Free* actions but by Sparer

addressed any hypothetical conflict by selecting the Sparer Law Group to represent him in the Pennsylvania cases. In the remaining cases in which Klorfine has moved for lead plaintiff – including the AMT-Free and Rochester National Municipal Fund cases – he remains represented by Cohen Milstein. I am unpersuaded the selection of different counsel militates against the potential conflicts of interest that might arise if a single individual serves as Lead Plaintiff for two large and otherwise unrelated plaintiff classes, and will not appoint Mr. Klorfine Lead Plaintiff in both the *AMT-Free* and *Pennsylvania Municipal Fund* series of class actions.

There are four competing lead plaintiff/lead counsel motions in the *AMT-Free Municipal Fund* litigation: (1) **Dana Posset's** Re-Filed Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel (Doc. 122)(claiming a $365,000 financial interest); (2) Motion of **Leonard Klorfine** for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (Doc. 131)(asserting a $585,000 financial interest); (3) **Lucas & Barbara Amato** and **Parviz Tayebati's** Resubmitted Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Doc. 135)(asserting an aggregated $669,056 financial interest); and (4) the **BFP Investor Group's** Notice of Amended Motion for Appointment as Lead Plaintiff and Selection of

---

in the *Pennsylvania* actions so that the *California* and *Pennsylvania* class members could be represented by the same counsel. While I decline to view these negotiations with the inculpatory eye various competing lead plaintiff movants might, I am mindful of the strong objections and deep distrust engendered by these negotiations. I express no view on counsel's motivations one way or the other, but expressly reject characterizations of Mr. Klorfine and others as having been "pawns" of counsel or as having acted in their own self-interest in "abandoning" class members with whom they originally moved for appointment as group.

Lead Counsel (Doc. 138)(a $693,490 aggregated interest).  **Klorfine** (Doc. 146)($552,000 in losses), **Dharamvir Bhanot** (Doc. 148)($80,130) and **Arthur W. Zattiero** (Doc. 121)($37,024 in losses) seek appointment as Lead Plaintiff in the *Pennsylvania Municipal Fund* class actions.

Neither the Amato nor BFP Investor groups are proper movants under the criteria for appointment because the members of both came together only after the class actions were filed and solely for the purpose of aggregating their financial losses to seek Lead Plaintiff status.  Because neither group can demonstrate it  existed in some form or affinity before the *casus belli* neither will be considered.  That leaves only Klorfine and Posset vying meaningfully for appointment in the *AMT-Free* class actions, and Klorfine, Bhanot and Zattiero in the *Pennsylvania Fund* cases.

It is undisputed that Klorfine has the greatest financial interest in both cases.  In the *AMT-Free* actions, Klorfine puts forward the counsel who has represented him throughout the original proceedings in the MDL, Cohen Milstein, as his choice for Lead Counsel.  In the *Pennsylvania Fund* cases, however, Klorfine moved from Cohen Milstein to the Sparer law firm and urges Sparer be selected as Lead Counsel in those cases on grounds that the *Pennsylvania* and *California* actions are substantially similar and that economies will be gained by having the Sparer law firm represent both classes. While I understand Klorfine's move to have been the result of Cohen Milstein's efforts to "streamline" the Lead Plaintiff/Lead Counsel process in accordance with my directives, I have already rejected its proposed "Three Group Plan" as unworkable. The potential for

17

conflict and confusion in having an individual Lead Plaintiff represented by different Lead Counsel in two different cases is great, and militates against Klorfine's ability adequately to represent his fellow class members across the two actions. The members of the *Pennsylvania* class, moreover, are entitled to assurances that their action will receive independent attention.

Accordingly, and while Klorfine has the greatest financial interest in both the *AMT-Free* and *Pennsylvania Municipal Fund* class actions, there are conflicts inherent in his simultaneous representation of both Fund classes and questions regarding his ability to represent his fellow *Pennsylvania* class members independently that preclude a determination that he "otherwise satisfies" the requirements of Rule 23 with respect to that action. I therefore decline to adopt the most adequate plaintiff presumption afforded the "person or group of persons" with the largest financial interest under the PSLRA on behalf of Mr. Klorfine in the *Pennsylvania* Municipal Fund class actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

In the *AMT-Free* actions, competing lead plaintiff movant Dana Posset repeats the allegations regarding Cohen Milstein's actions in soliciting clients and manipulating lead plaintiff proceedings to argue Klorfine should not enjoy the benefit of the most adequate plaintiff presumption because he is subject to unique defenses and is otherwise not able adequately to represent the *AMT-Free* class. I reject Posset's assertion for the same reasons I rejected the others: Cohen Milstein's activities were not necessarily inappropriate given my directives regarding streamlining the MDL cases, and assertions

18

Klorfine would face "unique defenses" based on his alleged solicitation by Cohen

Milstein are insufficient to rebut the presumption of most adequate plaintiff to which

Klorfine is otherwise entitled or even to trigger a right to discovery under § 78u-

4(a)(3)(B)(iv).

As for the remaining lead plaintiff movants in the *Pennsylvania* Municipal Fund

class actions, Bhanot has a greater financial interest in the relief sought by the plaintiff

class than Zattiero, and I find that he otherwise satisfies the requirements of Fed. R. Civ.

P. Rule 23.  He has selected as his choice of Lead Counsel the law firm of Berger &

Montague, P.C., a qualified and experienced law firm with whose work I am familiar.

Zattiero's challenge to Bhanot's adequacy is premised solely on Bhanot having

"abandoned" other members of the OPMF group with whom he originally filed for

appointment as lead plaintiff.  None of the former members of the OPMF group has

complained about the refiling by Bhanot individually, which was clearly achieved to

comply with my statements and directives against group filing at the July 15 Status

Conference.  The presumption of most adequate plaintiff to which Bhanot is entitled is

unrebuttable on this record.

Based on my rulings above, Leonard Klorfine is appointed Lead Plaintiff in the

*AMT-Free Municipal Fund* class actions and his selection of counsel, Cohen Milstein, is

approved.  Dharamvir Bhanot is appointed Lead Plaintiff in the *Pennsylvania Municipal*

*Fund* class actions, and his selection of counsel, Berger & Montague, P.C., as Lead

Counsel for the class is approved.

### III.  RULINGS.

Summarized for purposes of clarity, my rulings on the pending Lead Plaintiff Motions in the 09-md-2063 Multidistrict Litigation are as follows:

1.    In the *Rochester Fund Municipals* class actions:  The Motion of Stuart and Carole Krosser for Appointment as Lead Plaintiff (Doc. 129) is GRANTED and the Krossers' selection of Cohen Milstein as Lead Counsel for the plaintiff class is APPROVED.

2.    In the *New Jersey Municipal Fund* class actions:  Victor Sasson's Motion for Appointment as Lead Plaintiff (Doc. 142) is GRANTED, and his selection of Milberg, LLP, for Lead Counsel for the plaintiff class is APPROVED.

3.    In the *California Municipal Fund* class actions:  Joseph Stockwell's Motion for Appointment as Lead Plaintiff (Doc. 143) is GRANTED and his selection of The Sparer Law Group to serve as Lead Counsel for the class is APPROVED.

4.    In the *AMT-Free New York Municipal Fund* class actions:  The Motion of John Vazquez for Appointment as Lead Plaintiff (Doc. 144) is GRANTED and his selection of Milberg, LLP, to serve as Lead Counsel for the class is APPROVED. Plaintiff Michael Isaac's Motion for Appointment as Lead Plaintiff (Doc. 116) is DENIED.

5.    In the *Rochester National Municipals Fund* class actions:  The Motion of Peter Unanue for Appointment as Lead Plaintiff (Doc. 141) is GRANTED, and Unanue's selection of Milberg, LLP to serve as Lead Counsel is APPROVED.

20

The competing Motions of the Rochester National Investor Group (Doc. 133) and the Stevko/Letourneau/Ide movants (Doc. 137) are DENIED.

6. In the *AMT-Free Municipal Fund* class actions: The Motion of Leonard Klorfine for Appointment as Lead Plaintiff (Doc. 131) is GRANTED and his selection of Cohen Milstein as Lead Counsel is APPROVED. The competing Motions of Dana Posset (Doc. 122); Lucas and Barbara Amato and Parviz Tayebati (Doc. 135); and the BFP Investor Group (Doc. 138) are DENIED.

7. In the *Pennsylvania Municipal Fund* class actions: The Motion of Dharamvir Bhanot for Appointment as Lead Plaintiff (Doc. 148) is GRANTED, and his selection of Berger & Montague, P.C. to serve as Lead Counsel for the class is APPROVED. The competing Motions of Leonard Klorfine (Doc. 146) and Arthur W. Zattiero (Doc. 121) are DENIED.

8. All related Motions for Appointment as Lead Plaintiff filed before August 7, 2009, and identified in the Court's docket as still pending (Docs. 7, 12, 14, 19, 69,71, 72, 77, and 93) have either been WITHDRAWN or are DENIED as MOOT.

In addition, I appoint **Kip Shuman** of the Shuman Law Firm to serve as

**LIAISON COUNSEL** charged with coordinating between the various Lead Counsel and the Court in the prosecution of the MDL and the class actions of which it is comprised. Requests for approval of various "Co-Lead" or Liaison Counsel inherent in certain of the Lead Plaintiff Motions on which I have ruled are DENIED. While individual Lead Counsel may cooperate with and delegate work to whatever attorneys or law firms it

21

wishes, guidelines for such cooperation and delegation, especially on questions of how attorney fees will be allocated and accrued, and at what rates, will be established in cooperation with Magistrate Judge Tafoya who will manage and oversee that process.

On or before **December 1, 2009**, Liaison Counsel shall confer with Lead Counsel as well as counsel for the Defendants and cause to be filed a **Joint Statement** providing dates certain for the filing of Consolidated Amended Complaints, Motions to Dismiss and briefing related thereto.

Dated:  November 18, 2009.

**s/John L. Kane**_____
SENIOR U. S. DISTRICT JUDGE

22