## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge John L. Kane

Master Docket No. 09-md-02063-JLK-KMT (MDL Docket No. 2063)

IN RE: OPPENHEIMER ROCHESTER FUNDS GROUP SECURITIES LITIGATION

This document relates to all the MDL actions.

---

## DEFENDANT MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

---

Defendant Massachusetts Mutual Life Insurance Company ("MassMutual"), by its attorneys, Davis & Ceriani, P. C., respectfully submits the following Reply in Support of its Motion to Dismiss.

### I. INTRODUCTION

Plaintiffs do not dispute that their claims against MassMutual were untimely; instead, Plaintiffs argue that their claims "relate back" to the initial Complaints filed by Plaintiffs beginning in February 2009. However, Plaintiffs did not mistakenly name the "wrong party;" Plaintiff did not name any party. If they did not name any party, Plaintiffs cannot, by definition, meet the requirements for relation back. As such, Plaintiffs' claims against MassMutual are barred by the statute of limitations and should be dismissed.

Secondly, Plaintiffs have failed to allege a prima facie case of control person liability against MassMutual. Plaintiffs' control person claims are predicated upon the bare assertion that MassMutual is a control person of Defendant OppenheimerFunds, Inc. ("OppenheimerFunds"). However, as set forth in Defendants consolidated briefs, Plaintiffs have failed to plead cognizable

1

claims—a "primary violation"—against the OppenheimerFunds.[1]  Accordingly, Plaintiffs' have

failed to establish a prima facie case of control person liability.  Should this Court conclude that

Plaintiffs have asserted a cognizable primary violation against OppenheimerFunds, the control

person claims against MassMutual should nonetheless be dismissed because Plaintiffs have failed to

allege that MassMutual—an indirect, multi-layer parent—had the power to direct or was involved in

any way with the management, policies or day-to-day operations of OppenheimerFunds.

## II.  ARGUMENT

### A.    The Claims against MassMutual are Barred by the Statute of Limitations.

The claims against MassMutual are barred by the statute of limitations, and should therefore

be dismissed.  Despite being fully aware of the relationship between MassMutual and Defendant

OppenheimerFunds, Plaintiffs' initial Complaints (filed beginning in February 2009) assert no

claims against MassMutual **or against any other corporate-parent entity**.  Plaintiffs first stated 15

U.S.C. §77m claims against MassMutual on January 15, 2010, when they asserted in their

Consolidated  Complaints  that  MassMutual  was  a  controlling  person  of  Defendant

OppenheimerFunds.  Since Plaintiffs concede in the Consolidated Complaints that the "the truth"

regarding the alleged undisclosed investment risks was "revealed" on October 21, 2008,[2] Plaintiffs

---

[1] The arguments and citation of authority from Defendants' Joint Brief in Support of Defendants'
Motion to Dismiss the Consolidated Complaints (the "Consolidated Brief"), Defendants' Joint Brief
in Support of Defendants' Motion to Dismiss the California and Pennsylvania Complaints (the "Cal-
Pa Brief"), Defendants' Reply Brief in Further Support of their Joint Motion To Dismiss the
Consolidated Complaints in the Rochester Funds Group Securities Litigation (the "Consolidated
Reply Brief"), and Defendants' Reply Brief in Further Support of their Joint Motion to Dismiss the
Consolidated Complaints for the California and Pennsylvania Municipal Funds (the "Cal-Pa Reply
Brief") are adopted, re-asserted and incorporated herein by MassMutual.

[2] AMT-Free Compl. ¶6; AMT-Free NY Compl. ¶6; Nat'l Compl. ¶6; NJ Compl. ¶6; Pa. Compl. ¶
10; Rochester Compl. ¶6; *see also* Cal. Compl. ¶76.

have thus conceded that they were on actual notice of the claims against MassMutual more than one year before the claims were asserted.  Control person claims pursuant to 15 U.S.C. §77m are barred if not brought within one year of actual notice. [3]

In their Opposition to MassMutual's Motion to Dismiss ("Opposition Brief"), Plaintiffs do not dispute that (1) the applicable limitation period is one year; (2) Plaintiffs had actual notice of the claims against MassMutual on October 21, 2008; or (3) the claims against MassMutual were not filed within the one-year period since they were not filed until January 15, 2010.  Plaintiffs argue, however, that the claims were timely asserted because the January 15, 2010 filing "relates back" to the initial Complaints filed in February 2009.[4]

It is undisputed that Fed.R.Civ.P. 15(c)(1)(C) (the "Rule") controls when an amendment to a pleading relates back to an earlier filing.  It is also undisputed that the Rule sets forth three requirements that must be satisfied before an amendment will relate back.  The first, not in dispute here, is that the claim against the new defendant must have arisen out of the conduct, transaction, or occurrence set forth in the original complaint.  The second, which is in dispute but which the Court need not reach, is that the new defendant must have received timely notice of the action such that it would not be prejudiced in defending the action on the merits.[5]  The third, which is also in dispute and which is dispositive of the pending Motion to Dismiss, is that the plaintiff must show that the

---

[3] MassMutual agrees with and adopts the arguments and citation of authority contained in the Consolidated Brief, the Cal-Pa Brief, the Consolidated Reply Brief, and the Cal-Pa Reply Brief, which explain that Plaintiffs' primary violation claims against the other Defendants are time barred (which means, of course, that the control person claims against MassMutual are also time barred).

[4] Pl. Opp., p. 4 (Doc #291).

[5] Nowhere in their Complaints do Plaintiffs allege that MassMutual had actual, timely notice of the claims against it.  Instead, Plaintiffs merely allege that MassMutual had imputed notice of the claims.

new defendant knew or should have known that the action would have been brought against it **but for a mistake concerning the proper party's identity**. Fed.R.Civ.P. 15(c)(1)(C)(ii) (emphasis added); s*ee also, Garrett v. Fleming*, 362 F.3d 692 (10th Cir. 2004). Thus, there are two prongs to this third requirement. First, the Plaintiffs must have made a "mistake concerning the proper party's identity." Second, there must be a showing that the new defendant knew or should have known that the action would have been brought against it but for the mistake in naming the wrong party.

Here, Plaintiffs have not, and cannot, satisfy either prong of the third requirement. Accordingly, there is no relation back and the claims against MassMutual are time barred.

Plaintiffs rely on the recent Supreme Court decision in *Krupski v. Costa Crociere S. P. A.*, 560 U.S. ___ (2010), 2010 WL 2243705, which is cited in Plaintiffs' Notice of Supplemental Authority in Further Support of Opposition to Defendant Massachusetts Mutual Life Insurance Company's Motion to Dismiss ("Plaintiff's Notice of Supplemental Authority"). Ironically, the very facts and holding of *Krupski* confirm that the amendment now at issue does not satisfy the requirements of the Rule, and therefore does not relate back.

In *Krupski*, the plaintiff suffered an injury while on a cruise ship and filed her initial complaint against Costa Cruise whom she believed to be the corporate carrier. *Krupski* at *3. During litigation—but after the limitations period had expired—Costa Cruise advised the plaintiff that the real carrier, and thus the proper Defendant, was Costa Crociere. *Id.* at *3-4. The plaintiff promptly moved to amend the complaint to change the Defendant from Costa Cruise to Costa Crociere. *Id.* at *4. Costa Crociere—represented by the same counsel who had represented Costa Cruise—then moved to dismiss, contending that the amended complaint did not relate back under Rule 15(c) and was therefore untimely. *Id.* at *5. The District Court agreed there was no relation

4

back and the Eleventh Circuit affirmed. *Id.* at *5-6. The Supreme Court reversed, holding that the relation back doctrine did apply because the plaintiff had shown that the new defendant knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. *Id.* at *18.

Obviously, in *Krupski*, the plaintiff made a simple (and given the similarity of the two names, completely understandable) mistake in naming Costa Cruise instead of Costa Crociere. The Court also determined the plaintiff there had satisfied its burden under the Rule to show that the "new defendant knew or should have known that it would have been named as a defendant, **but for plaintiff's error in naming the wrong party**. *Id.* at *8 (emphasis added). Thus, both prongs of the Rules' third requirement were met and the Court correctly concluded the amendment did relate back.

The facts of *Krupski* are fundamentally different than those presented here. In *Krupski*, the plaintiff clearly made a mistake in naming Costa Cruise instead of Costa Crociere—thus satisfying the first prong which requires that the plaintiff make a mistake in naming the proper party as a defendant. Here, Plaintiffs failed to assert **any** control person claims against **any** corporate parent of OppenheimerFunds and cannot, therefore, establish that they made a "mistake in naming the wrong party." Plaintiffs here did not mistakenly name the "wrong party;" Plaintiffs did not name **any** party and if they did not name any party, Plaintiffs cannot, by definition, establish they mistakenly named the **wrong** party. The point is expressly recognized in *Krupski* where the Court distinguishes *Nelson v. Adams*, 529 U.S. 460 (2000). In *Nelson*, the plaintiff sought to amend its complaint to add Nelson as a party after the limitations period had expired. *Id.* The court found that the plaintiff "knew of Nelson's role and existence" and, until the time it moved to amend its complaint, chose to assert its claim only against Nelson's company. *Id.* at 467. The *Krupski* Court noted, "[i]n that case, there

was nothing in the initial pleading suggesting that Nelson was an intended party" and that "this evidence countered any implication that Adams had originally failed to name Nelson because of any 'mistake concerning the proper party's identity.'" *Id.* at *13 (citing *Nelson* at 467, n. 1).

Here, too, Plaintiffs have been aware of both MassMutual's identity and its relationship to Defendant OppenheimerFunds since before filing their original Complaints.[6] Despite such knowledge, Plaintiffs obviously chose, for whatever tactical reason, not to assert *any* vicarious control person claims in their original Complaints against **any** corporate parent or holding company. As explained by the Supreme Court in *Krupski*, "[w]e agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." *Id.* at *10.[7]

---

[6] *See* Exhibits A-3, A-5, A-7, A-9, A-11, A-13, and A-15 to the Consolidated Brief and Exhibits C-2 and C-4 to the Cal-Pa Brief (the "Registration Statements"). The Registrations Statements from each of the Funds, specifically the statements of additional information under the heading "The Manager," disclose that OppenheimerFunds is wholly-owned by Oppenheimer Acquisition Corporation, and that MassMutual wholly-owns Oppenheimer Acquisition Corporation. In *Krupski*, the Court notes "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* at *9. Here, it is relevant that Plaintiffs were aware of the existence of MassMutual and its status as the parent company of Oppenheimer Acquisition Corporation via the Registration Statements, yet did not assert any claims against MassMutual in its original Complaints. Likewise, this bears on MassMutual's understanding that Plaintiffs *chose* not to sue MassMutual, and that Plaintiffs did not make a mistake regarding a proper party's identity.

[7] In *Miller v. Calvin*, 647 F.Supp. 199, 202 (D. Colo. 1985) the Court noted "[p]laintiff's counsel may have made a mistake of strategy or judgment, but there is no mistake concerning the identity of the proper parties." *See also Litster v. Alza Corp.* 05-CV-1077, 2006 WL 3327906 at *3 (D. Utah) (plaintiffs cannot "assert that because they have learned some additional information in discovery, they would like to add another party to their claims, and, at the same time, avoid the implications of the statutes of limitations as it relates to that party"); *Pro Bono Investments, Inc. v. Gerry*, No. 03 Civ. 4347 (JGK), 2005 WL 2429787 at *9 (internal citation omitted) (S.D.N.Y.) ("if the reason for not naming the party is anything other than a mistake of identity, then the relation back doctrine is unavailable"); *Miller* at 202 ("a plaintiff, having purposely elected to sue fewer than all potentially (footnote continued)

Plaintiffs have also failed to establish the second prong of the Rule's third requirement—i.e., that the new defendant (MassMutual) knew or should have known that it would have been named as a defendant, but for plaintiff's error in naming the wrong party. First, of course, since no mistake was made, there is obviously no way that MassMutual could possibly have know that it would have been named "but for" some non-existent mistake. However, even assuming Plaintiffs could somehow jump that insurmountable hurdle, the fact is, Plaintiffs have made no showing that MassMutual knew or should have known it would have been named as a Defendant, but for Plaintiffs' error in naming the wrong party. Plaintiffs only argument is that "as the parent corporation of OppenheimerFunds…MassMutual knew or should have known of its potential control person liability."[8] Even assuming that were true (and it is not), the test is not whether MassMutual knew or should have known of some "potential control person liability." Rather, the test is whether MassMutual knew or should have known that it would have been named as a defendant, "**but for plaintiff's error in naming the wrong party**," and Plaintiffs have not even attempted to make that showing.

In *Krupski*, the initial complaint "made clear that Krupski meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which she was injured," so the naming of Costa Cruise instead of Costa Crociere was "clearly a 'mistake concerning the proper party's identity.'" *Id.* at *15 (citations omitted). Here, the initial Complaints do not even suggest that the Plaintiffs had the intention to sue anyone other than the properly named Defendants. As a

---

liable parties for strategic reasons, knowing full well the identity of each of these parties, cannot later change his mind without concern for the statutes of limitations applicable to his or her claims").

[8] Pl. Notice of Supp. Authority, p. 3.

result, the only reasonable inference is that Plaintiffs made the decision not to sue MassMutual and,

in the words of the *Krupski* Court:

> "When the original complaint and the plaintiff's conduct compel the
> conclusion that the failure to name the prospective defendant in the
> original complaint was the result of a fully informed decision as
> opposed to a mistake concerning the proper party's identity, the
> requirements of Rule 15(c)(1)(C)(ii) are not met."

*Krupski* at *13.

Since Plaintiffs cannot satisfy the relation back requirements of the Rule, Plaintiffs retreat to

an argument that OppenheimerFunds violated the disclosure obligations of Rule 5.3(a) of the

Judicial Panel on Multidistrict Litigation and Rule 7 of the Federal Rules of Civil Procedure  by

"actively concealing" its relationship with MassMutual, and that the Court should fashion some Rule

11 penalty for such alleged failing and impose that penalty upon MassMutual, a distinct and separate

legal entity.[9] Not surprisingly, Plaintiffs cite no authority for the proposition that a supposed

disclosure violation by Defendant A should result in sanctions being imposed upon Defendant B.

Beyond that, and even assuming that OppenheimerFunds did not fulfill its disclosure obligations,[10]

the simple fact is that Plaintiffs have been aware of the identity of MassMutual and its relationship to

the OppenheimerFunds since before the filing of Plaintiffs' original Complaints since they are: (1)

fully disclosed in the same prospectuses that form the basis of Plaintiffs' claims; and (2) set forth in

---

[9] Pl. Opp., p. 8 (Doc #291).

[10] The record is to the contrary. *See* Corporate Disclosure Statement of OppenheimerFunds Inc., OppenheimerFunds Distributor, Inc., Rochester Fund Municipals, Oppenheimer California Municipal Fund, and Oppenheimer Rochester National Municipals, MDL No. 2063; Disclosure Statement filed June 8, 2009, and the Registration Statements. Moreover, as stated above, Plaintiffs' primary claims stem from statements made in the Registration Statements, where the relationship between OppenheimerFunds and MassMutual is fully disclosed.

the same OppenheimerFunds' publicly-available Form ADV (Uniform Application for Investment Advisor Registration) that Plaintiffs allege establishes the "control person" relationship.

*Krupski* recognizes that "[a] prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose." *See Krupski* at *10. The Tenth Circuit has long recognized that "Rule 15(c) was obviously not enacted to serve as a general bypass for statutes of limitation. Rather, it is intended to mitigate a statute of limitation's harshness in certain carefully defined circumstances where it is necessary to promote the policy underlying the law." *See Miller v. Calvin*, 647 F.Supp. 199, 202 (D. Colo. 1985).

Here, Plaintiffs have failed to establish that they made a mistake in naming some party other than MassMutual or that MassMutual knew or should have known that but for such mistake, MassMutual would have been named as a Defendant. Accordingly, there is no relation back to the original Complaints; the claims against MassMutual are time barred and should therefore be dismissed.

**B.    Plaintiffs Fail to Adequately Plead that MassMutual was a Control Person:**

To state a *prima facie* case of control person liability, a plaintiff must establish (i) a primary violation of securities law; and (ii) that the defendant had "control" over the primary violator. *Adams v. Kinder-Morgan Inc.*, 340 F.3d 1083, 1107 (10th Cir. 2003) (citations omitted). For all of the reasons set forth in the Consolidated Brief, the Cal-Pa Brief, the Consolidated Reply Brief, and the Cal-Pa Reply Brief (which arguments and citations of authority are adopted, re-asserted and incorporated herein by MassMutual), Plaintiffs have failed to allege a cognizable primary violation and, therefore, have failed to establish the first requirement of a *prima facie* case for control person liability against MassMutual.

9

Should the Court find that Plaintiffs have alleged a primary violation, Plaintiffs still have not sufficiently pled that MassMutual was a control person of any other Defendant.  To meet this second requirement, "plaintiffs must point to facts which indicate that the defendants had 'possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'"  *Id.* at 1108 (citing *Maher v. Durango Metals Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998)).  Plaintiffs do not allege that MassMutual had the power to direct or was involved in any way with the management, policies or day-to-day operations of OppenheimerFunds or any other Defendant, or that MassMutual was even aware of—let alone controlled—what Plaintiffs now contend was wrongful conduct.  Moreover, Plaintiffs offer no additional basis for the allegation of control other than the mutli-layered, indirect parent-subsidiary relationship between OppenheimerFunds and MassMutual.

Two distinct legal entities lie between MassMutual and OppenheimerFunds.  MassMutual is sole member of MassMutual Holding, LLC, which is the parent of Oppenheimer Acquisition Corporation, which, in turn is the parent of Defendant OppenheimerFunds.[11]  This multi-layer, indirect parent-subsidiary relationship is tenuous and insufficient, by itself, to show control.  *See In re: Worldcom, Inc. Sec. Litig.*, 2004 WL 1097786 (S.D.N.Y.) (dismissing Section 15 claims against holding company defendants).  Furthermore, as addressed in *Adams*, one cannot establish control person status without asserting the controlling person individually exerted control or influence over the day-to-day operations of the company.  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003).

---

[11] OppenheimerFunds' Form ADV identifies MassMutual and MassMutual Holding, LLC as underline owners.

In *Adams*, the Tenth Circuit found sufficient control person claims against the Chief Executive Officer and the Chief Financial Officer of a company. *Id.* at 1108-1109. With regard to the CEO, the court explained that, given his position, the CEO "would have possessed ultimate management authority of the corporation on a daily basis." *Id.* With regard to the CFO, the court held that it was reasonable to infer that he would have "at least indirect control" over the company's financial reporting, which was at the crux of the plaintiffs' primary claims. *Id.* In contrast, the court dismissed the control person claim against a member of a company's board of directors (which, by definition, oversees the activities of the corporation) because plaintiffs failed to allege that the director exerted control or influence over the day-to-day operations of the company. *Id.*

As an indirect parent of OppenheimerFunds, with two distinct legal entities between itself and its subsidiary, MassMutual is even more removed from the day-to-day operations of OppenheimerFunds than the director in *Adams* was from the company he directly oversaw. Given its attenuated relationship with the alleged primary violator, it would be unreasonable to infer that MassMutual had even indirect control over any operations of OppenheimerFunds, let alone over specific statements made in the prospectuses that form the basis of Plaintiffs' primary claims.

The cases cited by Plaintiffs in their Opposition Brief are distinguishable and do not support Plaintiffs' argument. Plaintiffs cite *Adams* for the proposition that when a primary violator is an indirect, wholly-owned subsidiary of an alleged control person, this fact alone is sufficient to establish control person status.[12] Nowhere does the Tenth Circuit make such a statement in *Adams*. Instead, as addressed above, *Adams* stands for the proposition that the assertion of control person status "without any allegation that the person individually exerted control or influence over the day-

---

[12] Pl. Opp., p. 2 (Doc. #291).

to-day operations of the company, does not suffice to support an allegation that the person is a control person." *Id.* at 1108.

Plaintiffs also point to *In re: Taxable Mun. Bonds Litig.*, 1992 WL 165679 (E.D.La), for the proposition that the bare allegation of a relationship between a parent corporation and a controlled person is sufficient to state a control person claim. This case is inapplicable here given that MassMutual is an indirect owner—not a direct parent—of OppenheimerFunds. Furthermore, the court in *In re: Taxable Mun. Bonds Litig.* stated that plaintiffs sufficiently alleged control person status by "[setting] forth the relationship of each section 20 defendant to the controlled person (**and generally how that relationship enabled the section 20 defendant to control the entity**)." *Id.* at *1 (emphasis added). Here, Plaintiffs have failed to plead any facts whatsoever concerning how the tenuous relationship between MassMutual and OppenheimerFunds enabled MassMutual to control OppenheimerFunds.

Plaintiffs also cite *Borden v. Spoor Behrins Campbell & Young, Inc.*, 735 F.Supp. 587 (S.D.N.Y. 1990) for the premise that in order to establish control person status, a plaintiff need only allege that a defendant is the sole shareholder of a primary violator. This case is inapplicable here because MassMutual is not the sole shareholder of OppenheimerFunds. In fact, it does not directly own a single share. Plaintiffs fail to allege any facts other than the tenuous, multi-layered, indirect parent-subsidiary relationship between MassMutual and OppenheimerFunds to support its control person claims. That simply is not enough.

Lastly, Plaintiffs argue that because MassMutual is named on OppenheimerFunds' Form ADV as a "control person," control person status is established.[13]  The sole fact of MassMutual's indirect relationship to OppenheimerFunds is insufficient to allege control person liability; in other words, "[t]here must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed." *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984) (citations omitted).  *See also, In re: Worldcom* at *3 (dismissing Section 15 claims because of plaintiffs' failure to "allege any ownership of voting securities or other basis for asserting that the Holding Company Defendants had the power to direct or caused the direction of the management or policies of the defendant subsidiaries"); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001), (finding the allegation that certain corporate affiliates controlled other corporate defendants was insufficient as a matter of law to state a control person liability claim); *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 509-510 (5th Cir. 1990) (finding no control person liability absent evidence the alleged control person was able to at least influence the firm's direction); *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 195 (5th Cir. 1979) (without day-to-day control and without knowledge [the defendant] was not liable as a control person); *cf. In re: Paramalat Securities Litig.*, 376 F.Supp.2d 472, 517, n. 220 (S.D.N.Y. 2005) (denying defendant's motion to dismiss because plaintiffs had alleged "more than the bare fact of a parent/subsidiary relationship").  Plaintiffs do not allege any facts other than the multi-layered, indirect parent-subsidiary relationship between MassMutual and OppenheimerFunds and therefore, their allegations are insufficient to state control person claims.

---

[13] Pl. Opp., p. 2 (Doc. #291).

## III.  CONCLUSION

For the reasons discussed above and in Defendants Consolidated Briefs, MassMutual re-

spectfully request that the Court dismiss all seven of Plaintiffs' Complaints with prejudice.

DATED this 2nd day of July, 2010.

                                        Respectfully submitted,
                                        DAVIS & CERIANI, P.C.

                                        s/ Patrick J. Kanouff
                                        Patrick J. Kanouff
                                        Gary J. Ceriani
                                        1350 17th Street, Suite 400
                                        Denver, Colorado 80202
                                        (303) 534-9000
                                        pkanouff@davisandceriani.com
                                        gceriani@davisandceriani.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing was filed with this Court on July 2, 2010 through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

s/ Patrick J. Kanouff _____