**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane**

Master Docket No. **09-md-02063-JLK-KMT** (MDL Docket No. 2063)

**IN RE: OPPENHEIMER ROCHESTER FUNDS GROUP SECURITIES LITIGATION**

This document relates to:      *In re California Municipal Fund*

                                         09-cv-01484-JLK-KMT (Lowe)
                                         09-cv-01485-JLK-KMT (Rivera)
                                         09-cv-01486-JLK-KMT (Tackmann)
                                         09-cv-01487-JLK-KMT (Milhem)

                                         *In re Oppenheimer Pennsylvania Municipal Fund*

                                         09-cv-01483-JLK-KMT (Woods)
                                         09-cv-01368-JLK-KMT (Egts)
                                         09-cv-01765-JLK-KMT (Wunderly)

---

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR
JOINT MOTION TO DISMISS THE CONSOLIDATED COMPLAINTS
FOR THE CALIFORNIA AND PENNSYLVANIA MUNICIPAL FUNDS**

---

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I.    PLAINTIFFS ALLEGE NO UNTRUE STATEMENT OF FACT .................................. 1

    A.    The California and Pennsylvania Plaintiffs' Junk Bond Allegations
        Fail To State a Claim ........................................................................... 1

        1.    Plaintiffs Fail To Allege That Defendants Did Not Believe
             Their Internal Credit Ratings at the Time They Were Made .................... 2

        2.    Unrated Bonds Are Different from Junk Bonds ....................................... 3

    B.    The California Plaintiff's Dirt Bond Allegations Fail To State a Claim ............... 6

    C.    The California Plaintiff's Tobacco Bond Allegations Fail
        for the Same Reasons as Plaintiffs' Illiquidity Claims ........................................ 9

II.   PLAINTIFFS' CLAIMS ARE TIME-BARRED .................................................... 9

    A.    The Pennsylvania Plaintiff Was on Notice of His Claims
        about Unrated Bonds ........................................................................... 10

    B.    The California Plaintiff Was on Notice of His Claims
        about Dirt and Tobacco Bonds ........................................................... 10

III.  THE CALIFORNIA STATE LAW CLAIMS SHOULD BE DISMISSED .................. 12

    A.    The State Law Claims Are Preempted by SLUSA .............................. 12

    B.    The California Plaintiff Fails To State a Claim under the UCL ......................... 14

        1.    The UCL Does Not Apply to Securities Transactions ............................ 14

        2.    The California Plaintiff Lacks Standing under the UCL ........................ 15

    C.    The Breach of Fiduciary Duty Claim Should Be Dismissed .............................. 16

    D.    The State Law Claims Asserted Against the Independent Trustees
        Are Barred by the Declaration of Trust ............................................... 17

CONCLUSION ....................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    521 F.3d 1278 (10th Cir. 2008) ............................................................... 12, 13

*Blasius Industries, Inc. v. Atlas Corp.*,
    564 A.2d 651 (Del. Ch. 1988)........................................................................ 16

*Bridges v. Lane*,
    351 Fed. Appx. 284 (10th Cir. 2009) ............................................................. 6

*Cisneros v. Colorado*,
    No. 03-2122, 2005 WL 1719755 (D. Colo. July 22, 2005) ........................... 10

*Clark v. B.H. Holland Co.*,
    852 F. Supp. 1268 (E.D.N.C. 1994)............................................................... 16

*Compuware Corp. v. Moody's Investors Servs. Inc.*,
    499 F.3d 520 (6th Cir. 2007) .......................................................................... 5

*Hayes v. Whitman*,
    264 F.3d 1017 (10th Cir. 2001) ..................................................................... 10

*Helmsman Mgmt. Services, Inc. v. A&S Consultants, Inc.*,
    525 A.2d 160 (Del. Ch. 1987)........................................................................ 16

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009)................................................... 12, 13, 14, 17

*In re Charles Schwab Corp. Sec. Litig.*,
    No. 08-1510, 2010 WL 1463490 (N.D. Cal. Apr. 8, 2010)............................. 7

*In re Charles Schwab Sec. Litig.*,
    264 F.R.D. 531 (N.D. Cal. 2009)................................................................... 15

*In re Indymac Mortgage-Backed Sec. Litig.*,
    No. 09-4583, 2010 WL 2473243 (S.D.N.Y. June 21, 2010) ......................... 3, 4

*In re J.P. Morgan Chase & Co. S'holder Litig. v. Harrison*,
    906 A.2d 766 (Del. 2006) .............................................................................. 14

*In re Williams Sec. Litig.*,
    339 F. Supp. 2d 1242 (N.D. Okla. 2003)........................................................ 3

*Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund*,
   933 F. Supp. 1124 (D. Mass. 1996) ................................................................. 16

*Madrid v. Perot Sys. Corp.*,
   130 Cal. App. 4th 440 (2005) ......................................................................... 15

*Marsman v. Nasca*,
   573 N.E.2d 1025 (Mass. App. Ct. 1991) ......................................................... 18

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
   No. 08-8781, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) ............................... 3

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 668 (Cal. Ct. App. 2007) ............................................ 14, 15

*Phillips v. Morgan Stanley Dean Witter High Income Advantage Trust III*,
   No. 01-8139, 2002 WL 31119441 (S.D.N.Y. Sept. 25, 2002) ........................... 6

*Segal v. Fifth Third Bank, N.A.*,
   581 F.3d 305 (6th Cir. 2009) ................................................................... 12, 13

*Spiegel v. Beacon Participations, Inc.*,
   8 N.E.2d 895 (Mass. 1937) ............................................................................ 16

*State Farm Mut. Auto Ins. Co. v. Superior Court*,
   114 Cal. App. 4th 434 (Ct. App. 2 Dist. 2003) ............................................... 18

*Strigliabotti v. Franklin Res. Inc.*,
   No. 04-0883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ............................... 14

*Tsereteli v. Residential Asset Securitization Trust*,
   692 F. Supp. 2d 387 (S.D.N.Y. 2010)............................................................... 5

*Vaughn v. LJ Int'l, Inc.*,
   174 Cal. App. 4th 213 (Cal. Ct. App. 2 Dist. 2009) ...................................... 18

*Zobrist v. Coal-X, Inc.*,
   708 F.2d 1511 (10th Cir. 1983) ...................................................................... 19

## STATUTES

15 U.S.C. § 78c(a)(60)......................................................................................... 5

15 U.S.C. § 80a-8(b)(1)(E) .................................................................................. 6

Cal. Corp. Code § 2116........................................................................................ 17

## OTHER AUTHORITIES

*Registration Form Used by Open-End Mgmt. Inv. Cos.; Guidelines*,
   Inv. Co. Act Rel. No. 13436, 48 Fed. Reg. 37928 (Aug. 22, 1983) ...................................7

*Certain Matters Concerning Inv. Cos. Investing in Tax-Exempt Securities*,
   Inv. Co. Act Rel. No. 9785, 42 Fed. Reg. 29130 (June 7, 1977)........................................7

## INTRODUCTION

As predicted in Defendants' opening brief regarding the California and Pennsylvania Complaints, the allegations these two Plaintiffs alone have chosen to pursue have added pages to the parties' motion papers, but they have not added any meritorious claims.  Their junk bond claims fail as a matter of law because Plaintiffs explicitly concede, as they must, that rating bonds is a matter of judgment, and they do not and cannot allege that the Funds' bond rating judgments were not believed when made.  The California Plaintiff's dirt bond allegations also fail to state a claim and are time-barred because the Fund disclosures told investors for years that the Fund invested heavily in these bonds and that it did not include them in a single industry – and certainly not in Plaintiff's suggested "California real estate development industry."  Similarly, Plaintiff's tobacco bond claims fail and are time-barred because these investments also were consistently disclosed for years.  Here too, Plaintiff fails to challenge the Fund's good faith judgments about the liquidity of these bonds.  Plaintiff's remaining claims – brought under state law – are all plainly preempted by SLUSA and, in any event, fail to state a legally viable claim.  For the reasons discussed in Defendants' Joint Motion to Dismiss the Consolidated Complaints ("Consolidated Brief"), the opening CA and PA Brief, and below, the California and Pennsylvania Complaints should be dismissed in their entirety with prejudice.

## ARGUMENT

### I.  PLAINTIFFS ALLEGE NO UNTRUE STATEMENT OF FACT.

#### A.  The California and Pennsylvania Plaintiffs' Junk Bond Allegations Fail To State a Claim.

The California and Pennsylvania Plaintiffs claim that the Funds exceeded their 25% limit on investments in junk bonds.  *See* CA-PA Opp. at 9.  But because the Funds' disclosed holdings

in junk bonds never reached this limit, Plaintiffs' Complaints and Opposition Brief attempt to expand their purported junk bond category by adding the Funds' holdings in "bonds rated only one step above junk" and unrated bonds.  *See, e.g.*, Cal. Compl. ¶¶99-100; Pa. Compl. ¶¶103-04; CA-PA Opp. at 9, 12, 16-17, 20.  But as explained in the opening CA and PA Brief, BBB bonds are not junk, no matter how many times Plaintiffs try to pretend otherwise.  *See* CA-PA Br. at 2. When Plaintiffs begrudgingly accept this inescapable fact, they are left with no basis for their claim, other than conclusory allegations that when the Funds invested in unrated bonds they assigned them inflated ratings.[1]  *See, e.g.*, Cal. Compl. ¶102; Pa. Compl. ¶102; CA-PA Opp. at 10, 12, 17-18.  Plaintiffs' junk bond allegations thus depend entirely on this accusation, which fails to state a claim as a matter of law for two separate reasons:  (1) Plaintiffs nowhere allege that the Funds did not believe their ratings of unrated bonds at the time they were made; and (2) Plaintiffs do not support their conclusions with plausible factual allegations.

      1.    <u>Plaintiffs Fail To Allege That Defendants Did Not Believe Their Internal Credit Ratings at the Time They Were Made.</u>

As explained at length in the Funds' disclosures, the determination of whether an unrated bond should be rated as junk requires discretion and judgment.  *See* CA-PA Br. at 5.  This is not in dispute as Plaintiffs explicitly concede the point, acknowledging that "the rating for any specific bond may be a matter of opinion."  CA-PA Opp. at 15.  Thus, as explained in the Consolidated Brief, Plaintiffs must allege not only objective falsity, but subjective disbelief in the determinations at the time they were made.  *See* Consol. Br. at 59-60; Consol. Reply at

---

[1]    The Funds disclosed that they affirmatively sought out unrated bonds, as potential opportunities for earning yields for investors.  *See* Cal. Prospectus (10/31/07) at 4, 15; Pa. Prospectus (11/28/07) at 4, 14.  Moreover, the Funds also disclosed that these investments were a significant percentage of Fund assets.  *See, e.g.*, Cal. MCAR (7/31/08) at 14 (Larrabee Decl., Ex. C-5) (unrated securities comprised 48% of the Fund's market value).

23-25.  Indeed, courts routinely dismiss claims based on allegedly inflated ratings of securities in the absence of such allegations.  For example, in *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08-8781, 2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010), the court stated that "credit ratings and the adequacy of credit enhancements are clearly opinion statements because they predict future value and reliability, and are not actionable unless it is alleged that the opinions were not truly held."  *Id*. at *6;[2] *see also In re Indymac Mortgage-Backed Sec. Litig.*, No. 09-4583, 2010 WL 2473243, at *11 (S.D.N.Y. June 21, 2010) ("Ratings are opinions and therefore actionable under the Securities Act only if not truly held by the ratings agencies when issued.").  Plaintiffs respond to this law by stating that "Defendants' subjective beliefs are irrelevant" because scienter is not an element of any claim under section 11 or 12.  CA-PA Opp. at 14-15.  That of course misses the point entirely because, absent allegations that a Fund ratings judgment is not believed when made, there is no untrue statement of material fact, which is the *sine qua non* of these claims.[3]  This point of law is fatal to Plaintiffs' junk bond claims.

2.     Unrated Bonds Are Different from Junk Bonds.

Plaintiffs' junk bond allegations fail for a second, wholly independent reason:  Plaintiffs do not plead any facts to support their claim.  Specifically, Plaintiffs allege that Defendants failed to use criteria similar to those used by ratings agencies and failed to assign ratings in a manner comparable to rated securities.  *See* CA-PA Opp. at 10, 12.  But Plaintiffs do not plead

---

[2]     *See also id.* (finding that the "Offering Document bespoke caution about the credit ratings and credit enhancements, as it disclosed the risks of relying on ratings and also specifically mentioned the potential inadequacy of credit enhancement").

[3]     Plaintiffs' invocation of *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1242 (N.D. Okla. 2003), is therefore inapposite.

any facts to support their naked conclusion that the Funds' bonds were not rated accurately.[4]  As

such, the claim should be dismissed.  *See In re Indymac Mortgage-Backed Sec. Litig.*, 2010 WL

2473243, at *11 ("the allegations do not state a plausible claim for relief" because the complaint

lacked "any factual allegations that call the accuracy" of the statements about ratings into

question).

Rather than pleading relevant facts, Plaintiffs make a number of general assertions that do

not speak to the Funds' actual ratings of their bonds.  For instance, they assert that "ratings

agencies themselves generally equate unrated bonds as comparable to junk bonds."  CA-PA Opp.

at 18-19.  In support of this claim, Plaintiffs cite Morningstar's analysis of the Funds' holdings,

which appears to lump all unrated bonds with junk bonds, as Plaintiffs have done.  *See* CA-PA

Opp. at 16-17.  But Morningstar is not a recognized rating organization, and the Funds never

represented that they would follow its methodology.  The Funds' disclosed approach plainly

involved making independent judgments about unrated bonds and equally plainly, given their

disclosed volume, did not rate them all as junk.[5]  The rating agency materials quoted by Plaintiffs

---

[4]      Although the California Plaintiff repeats his allegations about value-to-lien ratios, *see* CA-PA
        Opp. at 11, he makes no attempt to respond to Defendants' arguments explaining why this
        reliance on value-to-lien ratios is misguided, *see* CA-PA Br. at 11-12.

[5]      As the disclosures suggest, the Funds do not automatically lump all unrated securities in below-
        investment grade categories because the Manager does not believe that all unrated bonds
        necessarily are "junk."  *See* Cal. Prospectus (10/31/07) at 15; Pa. Prospectus (11/28/07) at 14.
        When the Manager provides its own rating for an unrated security, it represents the Manager's
        opinion of the creditworthiness of that issuer and it is counted in the Funds' reports as part of the
        bonds in that category.  *See* Cal. SAI (10/31/07) at 10; Pa. SAI (11/28/07) at 10.  Therefore, it is
        to be expected that the statements in the Funds' reports of the percentages of investment grade
        bonds will differ from the statements by Morningstar about such percentages because, the Funds'
        calculations include unrated bonds to which the Manager has assigned ratings based on its
        opinion.

is not inconsistent with the fact that the Funds make such judgments about unrated bonds.[6]  The

fact is that a junk bond is defined by a specific, formal rating classification that does *not* include

all unrated bonds.  Plaintiffs' conflation of unrated and junk bonds therefore cannot make

Plaintiffs' claim plausible.

Finally, Plaintiffs try to prop up their claim of purportedly inflated credit ratings by

pointing to price volatility.  *See* CA-PA Opp. at 17.  But Plaintiffs' reliance on volatility is

misplaced.  Default rate, not price volatility, is the primary measure of credit quality.  *See* 15

U.S.C. § 78c(a)(60) ("The term 'credit rating' means an assessment of the creditworthiness of an

obligor as an entity or with respect to specific securities or money market instruments."); *see*

*also Compuware Corp. v. Moody's Investors Servs. Inc.*, 499 F.3d 520, 522 (6th Cir.

2007) ("rating is a predictive opinion of a company's future creditworthiness").[7]  Importantly,

the Funds' holdings here had exceptionally low default rates, *see* CA-PA Br. at 6 n.13, a fact that

Plaintiffs do not and cannot dispute.  These low default rates further undermine the plausibility

of Plaintiffs' conclusory and unsupported allegations.  *See Tsereteli v. Residential Asset*

*Securitization Trust*, 692 F. Supp. 2d 387, 393 (S.D.N.Y. 2010) (finding a statement that

IndyMac Bank's "appraisals were not in compliance with the Uniform Standards of Professional

---

[6]     Plaintiffs note that S&P includes unrated bonds along with junk bonds in the same "high yield index" and offer testimony from a Moody's Managing Director and a Fitch Ratings Special Report for the proposition that – "in general" – unrated bonds may have higher credit risk than rated issuers.  *See* CA-PA Opp. at 19.  But these sources say nothing about what ratings the Funds should have adopted for their bonds.  Plaintiffs also cite an inapplicable MSRB Rule that merely requires brokers to tell their customers if a particular security is unrated.  But this too lends no support to Plaintiffs' baseless assumption that all unrated bonds are junk.

[7]     Even the authorities Plaintiffs cite focus on default rates, not volatility.  For example, the Moody's testimony cites the number of defaults as a metric for credit risk; Fitch Ratings stated that junk and unrated bonds are "more likely to *default* than investment-grade-rated municipal bonds"; and S&P's research pointed to a comparatively small number of municipal bond *defaults* by rated bonds.  *See* CA-PA Opp. at 19 (emphases added).

Appraisal Practice" was "a legal conclusion not entitled to the assumption of truth"); *Bridges v. Lane*, 351 Fed. Appx. 284, 287 (10th Cir. 2009).

**B.      The California Plaintiff's Dirt Bond Allegations Fail To State a Claim.**

For years, the California Fund has disclosed that it invests heavily in a type of security known as "dirt bonds," which consistently exceed 25% of its assets.  *See* CA-PA Br. at 7-8.[8] Plaintiff concedes this fact, but insists that all dirt bonds should have been grouped into his self-styled "California real estate development industry."  This claim fails for several reasons.

First, the Fund has never used a "California real estate development industry" as an industry category for any purpose and the Fund's disclosures have never suggested otherwise.  Nor does any applicable SEC or accounting rule require such an industry category.  Plaintiff's entire argument thus rests on the baseless presumption that all bonds subject to a similar economic risk – "a downturn in California's real estate market" – must be part of a single industry that he has created from whole cloth, regardless of any other characteristics of the bonds.  CA-PA Opp. at 4-5.  But Plaintiff concedes that the Fund is allowed to define its own industries and does not allege that the Fund ever placed all dirt bonds in any single industry.[9] *See* CA-PA Br. at 9-10.

---

[8]      Plaintiff admits, as he must, that "certain Annual Reports had stated that more than 25% of the California Fund's holdings were 'dirt bonds.'"  CA-PA Opp. at 5.  This concession undermines his claims of non-disclosure until 2008.  *See* Cal. Compl. ¶¶71-72, 83, 89-91, 93; CA-PA Br. at 8-9.

[9]      *Phillips v. Morgan Stanley Dean Witter High Income Advantage Trust III*, No. 01-8139, 2002 WL 31119441 (S.D.N.Y. Sept. 25, 2002), rejected the very argument Plaintiff makes here, saying it "makes no sense."  *Id*. at * 4.  Plaintiff's attempt to distinguish *Phillips* based on the difference between a "single industry" and a "group of industries" is contradicted by the ICA, which makes no such distinction between "a particular industry or group of industries."  15 U.S.C. § 80a-8(b)(1)(E) (2010).

Second, the very SEC guidance on which Plaintiff relies makes clear that an industry concentration policy "is not applicable to investments in tax-exempt securities issued by governments or political subdivisions of governments since such issuers are not members of any industry."[10]  Consistent with this SEC guidance, the Fund disclosed in its SAI that its policy not to concentrate in specific industries does not "apply to municipal securities in general or to California Municipal Securities."  Cal. SAI (10/31/07) at 32.  This statement is both factually true and consistent with SEC guidance and, because dirt bonds undeniably are municipal securities, this is dispositive of Plaintiff's claims that these bonds not only had to be in an industry, but they had to be in the one he created.

Plaintiff nonetheless argues that "[e]xcluding municipal securities from any industry would allow funds to exempt themselves from their own governing concentration policies."  CA-PA Opp. at 9.  In support of this argument, Plaintiff cites *In re Charles Schwab Corp. Sec. Litig.*, No. 08-1510, 2010 WL 1463490 (N.D. Cal. Apr. 8, 2010), in which the court asked rhetorically "Can it be that the SEC has ever blessed such a not-in-any industry definition?"  *Id.* at *5.  As the SEC releases show, the answer is "yes" – the SEC has advised municipal bond funds to use a definition that makes clear that municipal securities are "not-in-any industry."  Thus, the *Schwab* court's assertion that "all of commerce must fit in some industry sector somewhere," *id.*, may be true as a theoretical matter, but it does not apply in the context of municipal securities, which were not at issue in that case and which, in any event, would more properly fit into the "government" sector than "commerce."

---

[10]    *Registration Form Used by Open-End Mgmt. Inv. Cos.; Guidelines*, Inv. Co. Act Rel. No. 13436, 48 Fed. Reg. 37928 (Aug. 22, 1983).  Older SEC guidance that has not been revoked also makes this point clear.  *Certain Matters Concerning Inv. Cos. Investing in Tax-Exempt Securities*, Inv. Co. Act Rel. No. 9785, 42 Fed. Reg. 29130 (June 7, 1977).

The *Schwab* cases are inapplicable for several additional reasons, which defeat Plaintiff's claims.  First, unlike the Schwab fund, which changed an explicit industry definition without shareholder approval, the California Fund never classified the "California real estate development industry" as an industry.  Second, there was no controlling SEC guidance stating that mortgage-backed securities – the securities at issue in *Schwab* – are not part of any industry, whereas there is SEC guidance saying that municipal securities are not subject to industry concentration policies.  Lastly, the *Schwab* court's concern about investor expectations is not implicated here because there was no purported "unauthorized change" – the Fund always disclosed the volume of its dirt bond holdings, disclosed that its industry concentration policy does not apply to municipal securities, and never stated that dirt bonds were in a single industry.

Finally, Plaintiff's allegations based on the November 2008 Prospectus fail to state a claim.  Specifically, Plaintiff claims that this prospectus revealed for the first time "that dirt bonds were similar projects subject to similar risks."[11]  CA-PA Opp. at 5.  But this allegation makes no sense in light of the Fund disclosures, which describe the risk characteristics of dirt bonds consistently as applicable to the entire category of investment.  *See, e.g.*, Cal. MCAR (7/31/08) at 18-19; Cal. SAI (10/31/07) at 3.  It is obvious from the Fund's disclosures that dirt bonds face similar risks.  Moreover, the Fund's dirt bond disclosures specifically warned of the same type of risk about which Plaintiff complains, including the fact that timely payment of the principal and interest on the bonds depended on, among other things, a potential decline in the real estate market, general economic decline, the inability of the developer of the project or other

---

[11]    The particular risks they focus on are real estate development-related risks, including the risk of default if development of the project being financed by a dirt bond failed to progress or if large taxpayers failed to pay assessments; and the risk that economic, business and political developments that affect one dirt bond may affect another dirt bond.  *See* CA-PA Opp. at 5-6.

property owners to pay their real estate taxes, and the credit risk of the developer.  *See* CA-PA Br. at 8.  In addition, the Funds disclosed that its securities like dirt bonds could be affected by "state or local legislation or policy changes," and could experience "greater credit risk exposure . . . due to economic, regulatory, or political problems in California."  Cal. Prospectus (10/31/07) at 4.[12]  In light of all these disclosures, Plaintiff's dirt bond omission claims should be dismissed.

### C.      The California Plaintiff's Tobacco Bond Allegations Fail for the Same Reasons as Plaintiffs' Illiquidity Claims.

The California Plaintiff half-heartedly argues that "tobacco bonds were illiquid or at significant risk of illiquidity for the same reasons as all other bonds identified in the California Complaint."  CA-PA Opp. at 22.  Thus, Plaintiff's tobacco bond allegations parrot his general illiquidity arguments and fail for the same reasons – Plaintiff improperly equates low trading activity with illiquidity and fails to allege that the illiquidity determinations were not believed when made.  *See* Consol. Br. at 56-60; Consol. Reply at 23-24.  Accordingly, the tobacco bond claim should be dismissed.

## II.      PLAINTIFFS' CLAIMS ARE TIME-BARRED.

Plaintiffs' claims about unrated, junk, dirt, and tobacco bonds also are time-barred.  Plaintiffs do not dispute that if the Funds' disclosures contained the facts underlying their claims, then the one-year limitations period began to run as soon as they purchased their shares.  *See* CA-PA Br. at 14.  Application of that straightforward rule bars Plaintiffs' additional claims here because the California and Pennsylvania Funds disclosed all the facts Plaintiffs needed to file their claims more than one year before these cases began.

---

[12]      The Registration Statement contained numerous pages of warnings about the California economy and warned about a potential downturn in the real estate market.  *See, e.g.*, Cal. SAI (10/31/07) at 11 ("downturn in the housing sector will likely last longer than anticipated").

**A.** **The Pennsylvania Plaintiff Was on Notice of His Claims about Unrated Bonds.**

As noted above, the Pennsylvania Plaintiff alleges that the Pennsylvania Fund violated its policy of investing at least 75% of its assets in investment-grade securities because it considered certain unrated bonds to be investment grade when all such bonds "should have been considered below investment grade." Pa. Compl. ¶102. Plaintiff purports to demonstrate a violation of the 75% investment-grade policy by aggregating all of the Fund's holdings that were either unrated or rated junk. *See id.* ¶104. Thus, the only fact Plaintiff needed to bring this claim was the percentage of the Fund's portfolio that was invested in bonds that were either rated junk or not rated by any ratings agency.

The Fund disclosed this precise fact more than one year before the first complaint involving the Pennsylvania Fund was filed, and Plaintiff does not contend otherwise. *See* CA-PA Br. at 15; CA-PA Opp. at 18-19, 24. Instead, Plaintiff attempts to disavow his own prior allegations by asserting that his claim is not "based on simply equating all unrated bonds to junk." CA-PA Opp. at 23. But a plaintiff cannot avoid a statute of limitations defense simply by disavowing the allegations of his own complaint. *See, e.g.*, *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001); *Cisneros v. Colorado*, No. 03-2122, 2005 WL 1719755, at *7 (D. Colo. July 22, 2005). Thus, the Pennsylvania Plaintiff's unrated bond claim is time-barred.

**B.** **The California Plaintiff Was on Notice of His Claims about Dirt and Tobacco Bonds.**

The California Plaintiff's claims about that Fund's purportedly excessive investments in dirt and tobacco bonds also are time-barred. First, Plaintiff alleges that the Fund violated its concentration policy by investing more than 25% of its assets in dirt bonds. Even though

10

Plaintiff admits that the Fund disclosed that it had invested more than 25% of its assets in dirt bonds more than one year before he filed his Complaint, *see* CA-PA Opp. at 26, he contends that this disclosure did not put him on notice of his claims because it did not disclose that all dirt bonds are "subject to a downturn in California's real estate industry," *id.* at 27.  But this is untrue.  Under the boldface heading **"Mello-Roos Bonds (or 'Dirt' Bonds)**," the SAI explained that dirt bonds "are subject to risks of nonpayment as a result of a general economic decline or *decline in the real estate market*."  Cal. SAI (10/31/07) at 3 (emphasis added).  Thus, even under his own theory, Plaintiff was on notice of the facts needed to bring his claim more than one year before the first California complaint was filed.

Second, Plaintiff alleges that tobacco bonds are illiquid, so the Fund violated its policy on illiquid securities by investing more than 15% of its assets in tobacco bonds.  *See* Cal. Compl. ¶131.  The only fact necessary to bring this claim is the percentage of the Fund's assets invested in tobacco bonds, and Plaintiff concedes that the Fund disclosed that it had invested over 15% of its assets in tobacco bonds more than one year before the first complaint against the California Fund was filed.  *See* CA-PA Opp. at 27; CA-PA Br. at 16.  Nevertheless, Plaintiff argues that his claim is not time-barred because he also alleges that some of the Fund's other investments were illiquid and pushed the Fund even further over its 15% cap on illiquid securities.  *See* CA-PA Opp. at 27-28.  But this misses the point.  Whatever Plaintiff alleges about other securities, he clearly was on notice of the facts underlying his claim about the Fund's tobacco bond holdings as soon as the Fund invested more than 15% of its assets in tobacco bonds.  As such, the claim is time-barred.

III.    **THE CALIFORNIA STATE LAW CLAIMS SHOULD BE DISMISSED.**

Both of the California Plaintiff's state law claims should be dismissed because they are preempted by SLUSA.  Plaintiff's claim based on California's Unfair Competition Law ("UCL") fails for the additional reasons that the UCL does not apply to securities transactions and because Plaintiff lacks standing.  In addition, Plaintiff has not sufficiently pled a breach of fiduciary duty. Finally, under the Fund's Declaration of Trust, the Independent Trustees may not be sued under state law.

A.      **The State Law Claims Are Preempted by SLUSA.**

Plaintiff argues that SLUSA is inapplicable to his state law claims because a misrepresentation or omission is not a factual "predicate" of his claims.  The proper inquiry under SLUSA, however, is not "whether the complaint makes 'material' or 'dependent' allegations of misrepresentation in connection with buying or selling securities.  It asks whether the complaint includes these types of allegations, pure and simple." *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009) (rehearing denied) (criticizing *LaSala* and rejecting plaintiffs' allegation that state law claims were not preempted because they "do not depend upon allegations of misrepresentation or manipulation"); *cf. Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1285 (10th Cir. 2008) (rejecting a narrow interpretation as being "contrary to the structure, intent, and plain language of SLUSA").  Thus, Plaintiff's "factual predicate" standard is erroneous and cannot avoid preemption.

Plaintiff also argues that the reasoning of *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009), saves his claims.  Once again, Plaintiff is wrong.  In *Schwab*, the plaintiffs did *not* allege that the fund's change in its industry concentration policy was a

12

misrepresentation, but instead "readily agree[d] that Schwab properly disclosed the change in its concentration policy." *Id.* at 551.  In contrast, Plaintiff here never alleges an actual change in policy, but instead claims that the Fund deviated from its investment objective and concentration policies because the policies themselves were allegedly misleading. *See, e.g.*, Cal. Compl. ¶¶5-10, 62-80, 81-94.  Indeed, the centerpiece of Plaintiffs' consolidated opposition papers is the assertion that the Funds misrepresented the fundamental investment objective of "capital preservation" by making the very investments attacked in Plaintiff's securities claims.[13]  Thus, Plaintiff's claims clearly fall within SLUSA's preemptive scope.

Finally, Plaintiff argues that SLUSA preemption does not apply because he has disclaimed misrepresentation allegations in his state law causes of action. *See* CA-PA Opp. at 30.  This argument fails for two reasons.  First, Plaintiff's argument misunderstands SLUSA preemption, which turns on the substance of the claims, not on how artfully a plaintiff tries to plead them. *See Segal*, 581 F.3d at 310-11 ("a claimant can no more elude SLUSA's prohibitions by editing out covered words from the complaint than by disclaiming their presence"); *Anderson*, 521 F.3d at 1286 ("as long as claims meet all of the elements of SLUSA, courts have generally held that SLUSA precludes those claims – regardless of how artfully or cleverly plaintiffs attempt to plead them").  Second, the state law causes of action are, in fact, premised on alleged misrepresentations.  Specifically, the state law claims are entirely and explicitly premised on the alleged violations of section 13(a) of the ICA. *See* Cal. Compl. ¶¶227,

---

[13]   Thus, even if misrepresentation allegations had to be a "factual predicate" of a state law claim in order to trigger SLUSA, Plaintiff's state law claims here would meet that preemption test, because they do in fact depend on allegations of misrepresentations and omissions.  The core of Plaintiff's policy deviation claims is that the Fund said it was doing one thing (*e.g.*, capital preservation or industry non-concentration), but in fact was doing something else.

238.  That claim, in turn, explicitly "repeats and realleges each and every allegation contained above," including alleged misrepresentations and omissions.  Cal. Compl. ¶214.[14]

**B.      The California Plaintiff Fails To State a Claim under the UCL.**

1.      The UCL Does Not Apply to Securities Transactions.

Plaintiff does not dispute that the UCL does not apply to securities transactions, but makes the remarkable argument that he has not alleged any such transactions.  *See* CA-PA Opp. at 33.  This argument strains credulity, as his claims clearly arise from a securities transaction – the purchase of Fund shares – and are based on alleged misrepresentations and omissions about the Fund's investment objective and fundamental investment policies.  *See, e.g.*, Cal. Compl. ¶¶5-10, 62-80, 81-94.  Indeed, Plaintiff claims that he has standing under the UCL because he "seeks restoration of money acquired by means of Defendants' unlawful conduct," which he alleges took place when "California Lead Plaintiff and other investors paid money to Defendants when they purchased their shares of the California Fund."  CA-PA Opp. at 35.  Thus, as a matter of common sense and Plaintiff's own admission, Plaintiff's UCL claim is based on a securities transaction and fails to state a claim.[15]

---

[14]    Plaintiff's state law claims also fail because the claims are derivative, not direct.  Even if Plaintiff had alleged an injury to his "right to vote," he would not be entitled to direct recovery of the compensatory damages he seeks.  *See In re J.P. Morgan Chase & Co. S'holder Litig. v. Harrison*, 906 A.2d 766, 773 (Del. 2006) (denying recovery of compensatory damages because plaintiffs' recovery "has no logical or reasonable relationship to the harm caused to the shareholders individually for being deprived of their right to cast an informed vote").

[15]    The cases Plaintiff cites are distinguishable because they do not involve misrepresentations in connection with the purchase or sale of securities.  In *Strigliabotti v. Franklin Res. Inc.*, No. 04-0883, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005), plaintiffs complained of excessive fees charged after the initial sale of securities.  *See id.* at *3.  In *Schwab*, plaintiffs' UCL claims were based on specific allegations of a reclassification of mortgage-backed securities as an industry after plaintiffs had purchased a security from defendant.  *See* 257 F.R.D. at 553.  And in *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 668 (Cal. Ct. App. 2007), the

2.      The California Plaintiff Lacks Standing under the UCL.

For the reasons discussed in the CA and PA Brief, Plaintiff has not alleged a viable

restitution claim and therefore also lacks standing under the UCL.  In response, Plaintiff claims

that he is entitled to restitution because he and other investors "paid money to Defendants when

they purchased shares of the California Fund."  CA-PA Opp. at 35.  As an initial matter, the only

way that this purchase of shares could arise from wrongful conduct is if it was the result of a

misrepresentation or omission made at the time of purchase, meaning both that the claim is

preempted by SLUSA and that the claims at issue are securities transactions beyond the reach of

the UCL.  Moreover, as to his section 13(a) claim in particular, Plaintiff does not allege how this

payment for Fund shares was "acquired by means of" the Fund's purported deviation from its

fundamental policies without a shareholder vote.  *See Madrid v. Perot Sys. Corp.*, 130 Cal. App.

4th 440, 458 (2005).  Nor could he.  If, as Plaintiff claims, the Fund deviated from its

fundamental policy from the very beginning of the class period, then the Plaintiff was not

deprived of his right to vote on that deviation and cannot recover under the UCL.  Indeed, even

the authority Plaintiff cites makes plain that investors cannot recover under the UCL where they

purchased after the purported violation of section 13(a).  *See In re Charles Schwab Sec. Litig.*,

264 F.R.D. 531, 538 (N.D. Cal. 2009) (declining to certify "post-breach" UCL class and limiting

class to "those investors who allegedly were deprived of the opportunity to vote on the

investment-policy amendment and were damaged thereby.").  That authority also confirms that

Plaintiff does not state a claim against the individual defendants, because those individuals did

not even conceivably receive any money from Plaintiff.  *See id.* at 540.

---

corporate plaintiff's UCL claim arose from allegedly defamatory reports published by defendant, and there was no purchase or a sale of a security at all.  *See id*. at 715.

### C.       The Breach of Fiduciary Duty Claim Should Be Dismissed.

Plaintiff contends that a "shareholder's right to vote is so fundamental to the notion of

corporate governance that actions impeding the right constitute a breach of fiduciary duty."  CA-

PA Opp. at 36.  But this is not a disenfranchisement case and, even if it were, Plaintiff overstates

the law as it applies to such cases.  As discussed above and in Defendants' opening CA and PA

Brief, Plaintiff's breach of fiduciary duty claim arises out of the Fund's alleged deviations from

its investment policies.  *See* CA-PA Br. at 17-23.  As such, it is nothing more than a garden-

variety misrepresentation claim.[16]

But even assuming that the Trustees' alleged actions "impeded" Plaintiff's right to vote,

such actions, like any other board action, are actionable under Massachusetts law only if they

involve self-dealing, intentional misconduct, or gross negligence.  *See Spiegel v. Beacon

Participations, Inc.*, 8 N.E.2d 895, 904, 907 (Mass. 1937) (holding that directors "cannot be held

responsible for mere errors of judgment or want of prudence").  Nowhere in his opposition

papers does Plaintiff contend that the Trustees acted intentionally, with gross negligence, or for

their own personal advantage.  Accordingly, the breach of fiduciary duty claim should be

dismissed.[17]

---

[16]    For this reason, the cases Plaintiff cites are not on point.  *Blasius Industries, Inc. v. Atlas Corp.*, 564 A.2d 651 (Del. Ch. 1988), is a director entrenchment case and involves allegations that the defendants breached their duty of loyalty.  *Helmsman Mgmt. Services, Inc. v. A&S Consultants, Inc.*, 525 A.2d 160 (Del. Ch. 1987), is a demand for inspection case.  The language Plaintiff quotes from that case is dictum and is mentioned only in connection with the court's analysis of a demand for inspection of corporate records concerning transactions as to which plaintiff was denied the opportunity to vote.  *Clark v. B.H. Holland Co.*, 852 F. Supp. 1268 (E.D.N.C. 1994), involves allegations of bad faith and states specifically that defendants conducted the business "for the purpose of benefiting themselves to the detriment of Plaintiff."

[17]    Plaintiff cites *Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund*, 933 F. Supp. 1124 (D. Mass. 1996), for the broad proposition that "[v]iolating the terms of a trust agreement constitutes a breach of fiduciary duty."  CA-PA Opp. at 36.  But the holding in that case is not so

**D.     The State Law Claims Asserted Against the Independent Trustees Are Barred by the Declaration of Trust.**

The Fund is organized as a business trust under Massachusetts law.  The principal rules regarding governance of the Fund are set forth in its Declaration of Trust, which states that its application and interpretation are to be governed by Massachusetts law.  The Declaration also contains an exculpatory clause, which bars Plaintiff from asserting against the Trustees the negligence-based claims set forth in his Complaint.  To avoid the preclusive effect of the exculpatory clause, the Plaintiff argues that this Court should select the applicable substantive law by using the choice of law rules of the state of California; that California courts use a "governmental interest" test to make that decision; that under this test, the substantive law of California will be found to apply; and that under California law, exculpatory clauses are void *per se*.  *See* CA-PA Opp. at 37-40.  This reasoning fails because Plaintiff's core premise is in error.

Specifically, in this case, shareholders contend that the Fund's Trustees, who play the same role as corporate directors, are liable for violating their official duties.  California law holds that such disputes are to be resolved under the law of the state in which the entity was organized: "The directors of a foreign corporation transacting intrastate business are liable to the corporation [and] its shareholders . . . for . . . violation of official duty according to any applicable laws of the state or place of incorporation or organization, whether committed or done in this state or elsewhere."  Cal. Corp. Code § 2116.  Thus, it is the internal affairs doctrine, and not the "governmental interest" test, that drives the choice of law here.  *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. at 554 (applying internal affairs doctrine to Massachusetts

---

broad.  At issue was whether defendants breached their fiduciary duties under ERISA by failing to allocate plan assets impartially following termination of the plan.  The declaration of trust did not create an independent duty; it merely repeated the trustees' statutory duties under ERISA.

business trust).  There are good reasons for this.  When entities operate in many states and are subject to suit wherever they do business or wherever shareholders reside, the internal affairs doctrine provides both claimants and defendants with a vital measure of certainty and clarity. *See State Farm Mut. Auto Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434, 443-44 (Ct. App. 2 Dist. 2003).[18]

Plaintiff's other arguments can be disposed of quickly.  Under Massachusetts law, an exculpatory clause will be enforced as long as two conditions are met.  First, the clause must not be the product of "overreaching or abuse by the trustee of any fiduciary or confidential relationship." *Marsman v. Nasca*, 573 N.E.2d 1025, 1032 (Mass. App. Ct. 1991).  Plaintiff here alleges no such abuse.  Second, the clause must not purport to exculpate trustees for conduct that amounts to bad faith or reckless indifference to the interests of the beneficiary.  Here, the exculpatory clause is completely consistent with that requirement.  It states that a Trustee may be held liable for "willful misfeasance, bad faith, gross negligence or reckless disregard of [his or her]. . . duties."  Declaration of Trust, Article Seventh, 12(b) (Larrabee Decl., Ex. C-8).

Furthermore, Plaintiff is bound by the exculpatory clause.  The Declaration of Trust is a publicly filed document and has always included an exculpatory clause, which is described in the

---

[18]       *Vaughn v. LJ Int'l, Inc.*, 174 Cal. App. 4th 213 (Cal. Ct. App. 2 Dist. 2009), is instructive.  There, a shareholder of a British Virgin Island company brought a derivative action against the company's directors for breach of fiduciary duty.  Defendants moved to dismiss under the British Virgin Islands Corporation Act, which the trial court granted.  On appeal, plaintiff argued that the trial court should have applied the governmental interest test, which called for California law to apply.  *Id*. at 227.  The appellate court rejected that argument and invoked the internal affairs doctrine to affirm the dismissal.  The court held that the governmental interest test is "inapposite" in shareholder actions because, in such cases, "the jurisdiction of incorporation has little if any other contact with the company, [and thus] this test will invariably result in the application of California law."  *Id*. at 177-78.  For the same reasons, the internal affairs doctrine applies here and requires application of Massachusetts law.

Fund's disclosures.  *See* Cal. SAI (10/31/07) at 38-39.  Plaintiff is charged with knowledge of the

Fund's public filings and thus may not disclaim awareness of their contents.  *See, e.g.*, *Zobrist v.*

*Coal-X, Inc.*, 708 F.2d 1511, 1517 (10th Cir. 1983).

## CONCLUSION

Defendants respectfully request oral argument on their Motions to Dismiss.  For the

reasons discussed in the Consolidated Briefs, the opening CA and PA Brief, and above, the

California and Pennsylvania Complaints should be dismissed in their entirety with prejudice.

Dated this 5th day of July, 2010.            Respectfully submitted,

*s/ Stephanie E. Dunn*
Stephanie E. Dunn
Perkins Coie LLP
1899 Wynkoop Street, Suite 700
Denver, CO 80202-1043
Tel:  (303) 291-2300
Fax:  (303) 291-2400
E-mail:  sdunn@perkinscoie.com

-And-

*s/ William K. Dodds*
William K. Dodds
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
Tel:  (212) 698-3500
Fax:  (212) 698-3599
E-mail:  william.dodds@dechert.com

Matthew L. Larrabee
Dechert LLP
One Maritime Plaza, Suite 2300
San Francisco, CA 94111
Tel:  (415) 262-4500
Fax:  (415) 262-4555
E-mail:  matthew.larrabee@dechert.com

Michael S. Doluisio
Dechert LLP
Cira Center
2929 Arch Street
Philadelphia, PA 19104
Tel:  (215) 994-2325
Fax:  (215) 994-2222
E-mail:  michael.doluisio@dechert.com

Attorneys for Defendants
OppenheimerFunds, Inc.,
OppenheimerFunds Distributor, Inc.,
Scott Cottier, Ronald H. Fielding,
Daniel G. Loughran, John V. Murphy,
Troy Willis, and Brian W. Wixted

-And-

*s/ Edward T. Lyons, Jr.*
Edward T. Lyons, Jr.
Jones & Keller
1999 Broadway, Suite 3150
Denver, CO 80202
Tel:  (303) 573-1600
Fax:  (303) 573-8133
E-mail:  elyons@joneskeller.com

-And-

*s/ Arthur H. Aufses III*
Arthur H. Aufses III
Yehudis Lewis
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Tel:  (212) 715-9100
Fax:  (212) 715-8000
E-mail:  aaufses@kramerlevin.com

Attorneys for Defendants
Oppenheimer AMT-Free Municipals, Oppenheimer
AMT-Free New York Municipals, Oppenheimer
California Municipal Fund, Rochester Fund
Municipals, Oppenheimer Multi-State Municipal
Trust, John Cannon, Paul Y. Clinton, Thomas W.
Courtney, David K. Downes, Matthew P. Fink,
Robert G. Galli, Phillip A. Griffiths, Lacy B.
Herrmann, Mary F. Miller, Joel W. Motley,
Kenneth A. Randall, Russell S. Reynolds, Jr.,
Joseph M. Wikler, Peter I. Wold, Brian F. Wruble,
Clayton K. Yeutter

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2010, I filed a true and correct copy of the foregoing **DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR JOINT MOTION TO DISMISS THE CONSOLIDATED COMPLAINTS FOR THE CALIFORNIA AND PENNSYLVANIA MUNICIPAL FUNDS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com
- **Glen L. Abramson**
  gabramson@bm.net,gelliott@bm.net
- **Arthur H. Aufses , III**
  aaufses@kramerlevin.com
- **Jeffrey Allen Berens**
  jeff@dyerberens.com,jeffreyberens@comcast.net,darby@dyerberens.com
- **Francis A. Bottini , Jr**
  frankb@johnsonbottini.com,paralegal@johnsonbottini.com
- **Stephen D. Bunch**
  dbunch@cohenmilstein.com,efilings@cohenmilstein.com
- **Gary E. Cantor**
  gcantor@bm.net
- **Jeffrey A. Chase**
  jchase@jacobschase.com,vlsanders@jacobschase.com
- **Karen Jean Cody-Hopkins**
  kjch@lilleylaw.com,rbyers@lilleylaw.com
- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com
- **William K. Dodds**
  william.dodds@dechert.com,luis.lopez@dechert.com
- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com,sdunn-efile@perkinscoie.com
- **Robert J. Dyer , III**
  bob@dyerberens.com
- **Alan I. Ellman**
  aellman@labaton.com,electroniccasefiling@labaton.com
- **John Givens Emerson**
  jemerson@emersonpoynter.com,tanya@emersonpoynter.com
- **Jack G. Fruchter**
  jfruchter@aftlaw.com
- **William H. Garvin , III**
  wgarvin@garvinlawfirm.com

- **Paul J. Geller**
  pgeller@rgrdlaw.com,e_file_fl@rgrdlaw.com
- **Daniel Charles Girard**
  dcg@girardgibbs.com,akl@girardgibbs.com
- **Lionel Z. Glancy**
  lglancy@glancylaw.com,info@glancylaw.com
- **Gary S. Graifman**
  ggraifman@kgglaw.com,ccornfield@kgglaw.com
- **Barbara Ann Grandjean**
  bgrandjean@jacobschase.com,mmayer@jacobschase.com
- **John K. Grant**
  johnkg@csgrr.com,jdecena@csgrr.com
- **Marc C. Haber**
  mhaber@sparerlaw.com
- **Patrick John Kanouff**
  pkanouff@davisandceriani.com,gceriani@davisandceriani.com,jboom@davisandceriani.com
- **Christopher J. Keller**
  ckeller@labaton.com,electroniccasefiling@labaton.com
- **Phillip C. Kim**
  pkim@rosenlegal.com
- **Lawrence L. Klayman**
  lklayman@nasd-law.com
- **Peter George Koclanes**
  pkoclanes@shermanhoward.com,cgreen@shermanhoward.com,efiling@sah.com
- **Catherine J. Kowalewski**
  katek@csgrr.com,hdemag@csgrr.com
- **Jeffrey Robert Krinsk**
  jrk@classactionlaw.com,anv@classactionlaw.com
- **Matthew L. Larrabee**
  matthew.larrabee@dechert.com,will.rehling@dechert.com,michael.doluisio@dechert.com,reginald.zeigler@dechert.com,alice.jensen@dechert.com,muriel.korol@dechert.com,david.burkhart@dechert.com
- **Nicole C. Lavallee**
  nlavallee@bermandevalerio.com,stuiasosopo@bermandevalerio.com,ysoboleva@bermandevalerio.com
- **Eric Lechtzin**
  elechtzin@bm.net
- **Jonathan Krasne Levine**
  jkl@girardgibbs.com,amv@girardgibbs.com
- **Lawrence D. Levit**
  llevit@aftlaw.com
- **Kevin Harvey Lewis**
  klewis@sparerlaw.com

- **Yehudis S. Lewis**
  ylewis@kramerlevin.com
- **Charles Walter Lilley**
  clilley@lilleylaw.com
- **Howard T. Longman**
  Tsvi@aol.com,jasondag@ssbny.com
- **Edward Thomas Lyons , Jr**
  elyons@joneskeller.com
- **Kristin A. Martinez**
  kristin@dyerberens.com
- **Catherine H. McElveen**
  kmcelveen@rpwb.com
- **Lisa M. Mezzetti**
  lmezzetti@cohenmilstein.com,efilings@cohenmilstein.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Daniel Oakes Myers**
  dmyers@rpwb.com
- **James S. Nabwangu**
  jnabwangu@sparerlaw.com
- **Darren A. Natvig**
  dnatvig@irwin-boesen.com
- **Gordon W. Netzorg**
  gnetzorg@shermanhoward.com,shood@shermanhoward.com,cdias@shermanhoward.com,efiling@shermanhoward.com
- **Matthew D. Pearson**
  mpearson@bermandevalerio.com,ysoboleva@bermandevalerio.com
- **Charles J. Piven**
  piven@browerpiven.com
- **Charles Michael Plavi , II**
  cmp@classactionlaw.com,anv@classactionlaw.com
- **Scott E. Poynter**
  scott@emersonpoynter.com,swilson@emersonpoynter.com
- **Andrei V. Rado**
  arado@milberg.com,MAOffice@milberg.com
- **Roland W. Riggs , IV**
  rriggs@milberg.com
- **Darren J. Robbins**
  pilarc@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Samuel H. Rudman**
  srudman@csgrr.com,dgonzales@csgrr.com
- **Sherrie R. Savett**
  ssavett@bm.net,mgatter@bm.net

- **Peter E. Seidman**
  pseidman@milberg.com
- **Christina H.C. Sharp**
  chc@girardgibbs.com,as@girardgibbs.com,sfs@girardgibbs.com,amv@girardgibbs.com,
  ale@girardgibbs.com
- **Aaron Michael Sheanin**
  amv@girardgibbs.com,ams@girardgibbs.com
- **Kip Brian Shuman**
  kip@shumanlawfirm.com,rusty@shumanlawfirm.com
- **Mark David Smilow**
  msmilow@weisslurie.com
- **Alan W. Sparer**
  asparer@sparerlaw.com,nblake@sparerlaw.com,dcorkran@sparerlaw.com,playzer@spar
  erlaw.com
- **Olimpio Lee Squitieri**
  Lee@sfclasslaw.com,cathy@sfclasslaw.com
- **Joseph J. Tabacco , Jr**
  jtabacco@bermandevalerio.com,stuiasosopo@bermandevalerio.com,ysoboleva@berman
  devalerio.com
- **Steven J. Toll**
  stoll@cohenmilstein.com,efilings@cohenmilstein.com
- **Kirk Douglas Tresemer**
  ktresemer@coloradolawyers.com
- **Anne Marie Vu**
  avu@milberg.com,MAOffice@milberg.com
- **David C. Walton**
  davew@csgrr.com,hdemag@csgrr.com
- **Joseph H. Weiss**
  jweiss@weisslurie.com,infony@weisslurie.com
- **Douglas S. Wilens**
  dwilens@rgrdlaw.com,e_file_fl@rgrdlaw.com
- **Shawn A. Williams**
  shawnw@csgrr.com,jdecena@csgrr.com

s/ Stephanie Dunn
Stephanie E. Dunn
Perkins Coie LLP
1899 Wynkoop Street, Suite 700
Denver, CO  80202-1043
Tel:  303.291.2300
Fax:  303.291.2400
Email:  sdunn@perkinscoie.com

Attorneys for Defendants
OppenheimerFunds, Inc.,
OppenheimerFunds Distributor, Inc.,
Scott Cottier, Ronald H. Fielding,
Daniel G. Loughran, John V. Murphy,
Troy Willis, and Brian W. Wixted