**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Master Docket No. **09-md-02063-JLK-KMT** (MDL Docket No. 2063)

**IN RE:  OPPENHEIMER ROCHESTER FUNDS GROUP SECURITIES LITIGATION**

**This document relates to all MDL actions.**

---

**STIPULATED SCHEDULING AND DISCOVERY ORDER**

---

### 1.  DATE OF CONFERENCE

January 20, 2012.

### 2.  STATEMENT OF CLAIMS AND DEFENSES

**a.      Lead Plaintiffs' statement:**

Given the Court's familiarity with these seven consolidated actions (the "Actions"), Lead Plaintiffs jointly submit the following brief statement of claims:  The Actions are brought by shareholders in seven separate Oppenheimer municipal bond mutual funds (the "Funds") on behalf of themselves and the class of persons who purchased shares of each Fund pursuant to certain of the Funds' Prospectuses.  The Consolidated Class Action Complaints ("the Complaints") allege that these Prospectuses misrepresented the Funds' investment objectives and investment strategies and failed to adequately disclose the nature and magnitude of the risks taken by the Funds.  Although six of the seven Funds purported to have "preservation of capital" as their primary investment objective,[1] these Funds were in fact volatile, risky, and highly leveraged portfolios consisting in large part of risky leveraged derivatives called inverse floaters and excessive amounts of illiquid securities.  The Complaints also allege that the Prospectuses misrepresented the nature of the Funds' investments in inverse floaters, the illiquidity of the Funds' assets, and the value of the Funds' investments.  The California and Pennsylvania Fund Complaints allege that the relevant Prospectuses misrepresented the investment ratings of the Funds' bonds, and in the case of the California Fund, misrepresented the Fund's investments in dirt bonds as well.

---

[1] The National Fund's purported objective was to seek "a high level of current income … by investing in a diversified portfolio of high-yield municipal securities."  The National Fund Complaint alleges that the National Fund Prospectus failed to adequately disclose the quantity and nature of the inherent risks associated with the Fund's "speculative" investment strategy.

The California Fund Complaint also alleges that Defendants violated California's Unfair Competition Law and breached their fiduciary duties to investors by causing that Fund to deviate from its fundamental investment policies without a required shareholder vote. Those deviations consisted of investing excessive amounts in the California real estate development industry and in junk bonds.

Taken together, the Complaints allege that the Prospectuses failed to disclose the true risks of investments in the Funds in violation of Section 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"). When those risks materialized in 2008, the net asset values ("NAV") of the Funds fell significantly. That these declines were the result of the Funds' misrepresentations and hidden risks and not the 2008 financial crisis is shown by, among other things, the relative performance of the Funds' peers: the Funds' NAVs declined between 30% and 50% during 2008 while their peers' declined only 10-15%.

This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v, 28 U.S.C. §§1331, 1332(d), 1367, and the principles of pendent and supplemental jurisdiction. The Judicial Panel on Multidistrict Litigation transferred these actions to this Court for coordinated pretrial proceedings pursuant to 28 U.S.C. §1407.

**b.    Defendants' statements:**

(1)    Oppenheimer Defendants'[2] statement**:**

Lead Plaintiffs' complaints lack merit for the following reasons among others:
A central premise of the complaints is that the Funds were described and sold to the public in a way that misled investors into thinking the Funds would provide "low positive returns, very low risk and extremely low price fluctuations". *See, e.g.*, Cal. Compl. ¶ 64. This premise is false. The Funds' Registration Statements all clearly describe their longstanding investment approach, their specific holdings, and their associated risks. In the case of the National Fund, investors were told that 100% of the Fund's assets could be invested in "junk bonds" and that the Fund's investments therefore should be considered "speculative". For all of the Funds, the "Rochester style" of management, self-described as "contrarian" and "yield-driven," has long focused on "under-appreciated" municipal securities – including inverse floaters, tobacco bonds, dirt bonds, unrated bonds, and junk bonds. The Funds' approach has resulted in market-leading returns and high levels of tax exempt income in good times and market-trailing total returns in bad (although continuing to pay high current income). In light of this publicly disclosed and well-known history, there is no support for Plaintiffs' theory that investors were surprised to learn the Funds' investment strategy when their aggressive Rochester style resulted in dramatic declines in the extraordinary 2008 global credit crisis – followed in 2009 by equally dramatic recoveries of 40% or more. Indeed, the implausibility of Lead

---

[2] The "Oppenheimer Defendants" in all cases are OppenheimerFunds Inc. ("OFI"), OppenheimerFunds Distributor Inc. ("OFDI"), John V. Murphy, Brian W. Wixted, Ronald H. Fielding, Daniel G. Loughran, Scott Cottier, and Troy E. Willis.

Plaintiffs' claims is belied by their studied refusal to acknowledge the history of the Funds before or after their artfully crafted putative class periods.

A second fundamental defect in Lead Plaintiffs' cases is that they are predicated on false factual allegations about how the Funds were managed.  By way of example only: Contrary to the allegations in all of the Complaints, the Funds were *not* invested in large amounts of undisclosed illiquid assets; the Funds' holdings were *not* valued inappropriately, but instead were valued using security prices provided by third party pricing services pursuant to perfectly legal and disclosed procedures; and the NAVs of the Funds' were *not* driven down in 2008 by "fire sales" of Fund assets to remedy massive third party collapses of inverse floater trusts.

Lead Plaintiffs' claims are also legally deficient.  Among the more significant legal problems with Plaintiffs' claims is that they are premised on a fundamental misunderstanding of the Defendants' duty of disclosure.  For example, Lead Plaintiffs repeatedly assert that the Funds' failure to disclose one factual detail or another (including Plaintiffs' invented financial metric –  an inverse floater "leverage ratio") gives rise to a claim, for the reason that the omitted fact would allegedly have been material to a reasonable investor.  But even if the putative omitted fact or risk theory were material, Plaintiffs' argument is contrary to law.  Materiality, alone, does not create a disclosure duty – the duty to disclose arises in the first instance from statutory or regulatory duties, all of which were complied with by the Funds.  In short, Plaintiffs' claims are premised on an unworkable disclosure regime created in hindsight, not any actual duty of disclosure that existed at the time the Fund disclosures were issued.

The Court is also well aware of the parties' disagreement on another key defense – causation.  While we will not repeat here Defendants' causation arguments that are currently before the Court, we do note, as the Court has observed, that causation will continue to be a central issue in the case under any standard.  In particular, Lead Plaintiffs' "materialization of the risk" approach to causation is little more than a label at this point.  Defendants respectfully submit that Lead Plaintiffs will fail to define and apply that label in a way that meets the statutory requirements.[3]

For the foregoing reasons, the Oppenheimer Defendants' assert, among others, the following principal defenses: First, Plaintiffs will be unable to satisfy their burden of proving that the relevant registration statements contained a material misrepresentation or untrue statement, or omitted a material fact that was required to be stated.  In fact, the registration statements contained detailed and carefully crafted risk disclosures that complied fully with regulatory requirements and listed every single investment made by the Funds.  Second, even if Plaintiffs could prove a material misstatement of fact, any such misstatement was not the cause for the Plaintiffs' alleged losses.  As a legal matter Plaintiffs' causation theory fails for the

---

[3] As but one example, in considering Lead Plaintiffs' claim that the Registration Statements should have included a leverage ratio for inverse floaters, Lead Plaintiffs have yet to articulate a theory of causation that will meet the statutory requirements and connect Fund losses to the absence of that ratio.  This is understandable, given that the presence of that ratio in the Fund disclosures would have had no effect on the Funds' performance and therefore no effect on investor losses.

reasons set forth in the *State Street* decision, and, as a factual matter, it will be shown that the depreciation in the value of the Fund resulted not from any alleged misstatements or omissions, but from, among other things, the extraordinary and unprecedented market dislocation of 2008. Third, Plaintiffs' claims are barred in whole or part by the statute of limitations.  Fourth, Plaintiffs cannot certify a class pursuant to Federal Rule of Civil Procedure 23 because they cannot establish that the named Plaintiffs' claims are typical of all class members or that common issues will predominate over individual issues.  Finally, the individual Oppenheimer Defendants (Messrs. Murphy, Wixted, Fielding, Loughran, Cottier, and Willis) are not liable as "controlling persons" under Section 15, because those Defendants had no knowledge or reason to know of any inaccuracies or omissions in the registration statements, and did not induce any improper acts and otherwise acted in good faith.

      (2)     The Fund Defendants'[4] statement:

The Fund Defendants adopt the Oppenheimer Defendants' Statement of Claims and Defenses.

      (3)     Oppenheimer Multi-State Municipal Trust's statement:

The Oppenheimer Multi-State Municipal Trust adopts the Oppenheimer Defendants' Statement of Claims and Defenses.

      (4)     Independent Trustee Defendants'[5] statement:

The Independent Trustee Defendants adopt the Oppenheimer Defendants' Statement of Claims and Defenses and assert the following additional defenses:  First, as to the non-expertized portions of the relevant registration statements, the Independent Trustee Defendants are not liable under Section 11 because they had, after reasonable investigation, reasonable ground to believe and did believe, at the time such parts of the registration statements became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.  Second, as regards any part of the registration statements made on the authority of an expert, the Independent Trustee Defendants are not liable under Section 11 because they had no reasonable ground to believe and did not believe, at the time such parts of the registration statements became effective, that the statements therein were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not

---

[4] The Fund Defendants are Oppenheimer AMT-Free Municipals, Oppenheimer AMT-Free New York Municipal Fund, Oppenheimer California Municipal Fund, Oppenheimer New Jersey Municipal Fund, Oppenheimer Pennsylvania Municipal Fund, Oppenheimer Rochester National Municipal Fund, and Oppenheimer Rochester Fund Municipals.

[5] The "Independent Trustee Defendants" are John Cannon, Paul Y. Clinton, Thomas W. Courtney, David K. Downes, Matthew P. Fink, Robert G. Galli, Phillip A. Griffiths, Lacy Bunnell Hermann, Mary F. Miller, Joel W. Motley, Kenneth A. Randall, Russell S. Reynolds, Jr., Joseph M. Wikler, Peter I. Wold, Brian F. Wruble, and Clayton K. Yeutter.

misleading, or that such part of the registration statements did not fairly represent the statement of the expert or was not a fair copy of or extract from the report or valuation of the expert. Third, the Independent Trustee Defendants are not liable under Section 12 because they did not know, and in the exercise of reasonable care could not have known, of any alleged untrue statements of material fact or omissions to state material facts in the relevant prospectuses. Fourth, the Independent Trustee Defendants are not liable as "controlling persons" under Section 15, as they had no knowledge or reason to know of any inaccuracies or omissions in the registration statements, did not induce any improper acts, and otherwise acted in good faith. Finally, the Independent Trustee Defendants acted in good faith and in the reasonable exercise of their business judgment at all relevant times, and thus any and all claims for breach of fiduciary duty, such as the claims asserted in the California Municipal Fund complaint, are without merit.

(5)     Mass Mutual Life Insurance Co.'s statement:

Lead Plaintiffs named MassMutual as a corporate control person defendant well after the expiration of the applicable statute of limitations and Plaintiffs' claim of relation-back has no basis. Specifically, Plaintiffs' original complaints contained no corporate-parent control person claims. It was not until after the expiration of the applicable statute of limitations that Plaintiffs amended their complaints to assert, among other things, corporate-parent control person claims against MassMutual. Given that Plaintiffs' amendments did not *change* a party but rather *added* a party, the amendment does not relate back under Fed. R. Civ. P. 15(c)(1). Accordingly, Plaintiffs' claims against MassMutual are untimely and should be dismissed.

In addition, Plaintiffs' complaints lack merit and Plaintiffs will be unable to satisfy their burden with respect to their claims. If Plaintiffs could satisfy their burden of proof (which again they cannot), Plaintiffs' claims would otherwise fail as they have suffered no loss as a result of the alleged unlawful conduct. Further, Plaintiffs cannot establish that the named Plaintiffs' claims are typical of all class members or that common issues will predominate over individual issues and, as such, Plaintiffs cannot certify a class pursuant to F.R.C.P. Rule 23. Lastly, MassMutual is not liable as a "control person" as it did not have knowledge or reason to know of any alleged inaccuracies or omissions in the registration statements, did not induce any improper acts, and otherwise acted in good faith.

### 3.  UNDISPUTED FACTS

There are seven mutual funds managed by OFI at issue in the seven consolidated class actions coordinated for pre-trial purposes in this multi-district litigation:

- Oppenheimer AMT-Free Municipals ("AMT-Free Fund");
- Oppenheimer AMT-Free New York Municipals ("AMT-Free New York Fund");
- Oppenheimer California Municipal Fund ("California Fund");
- Oppenheimer Rochester National Municipals ("National Fund");
- Oppenheimer New Jersey Municipal Fund ("New Jersey Fund");

- Oppenheimer Pennsylvania Municipal Fund ("Pennsylvania Fund"); and
- Rochester Fund Municipals ("Rochester Fund") (collectively, the "Funds")).

Three of the Funds (the New Jersey, Pennsylvania, and National Funds) are series of the Oppenheimer Multi-State Municipal Trust.

The following facts are undisputed and common, except as otherwise noted, to all seven of the Funds.

a. Each Fund's shares are issued pursuant to Prospectuses and Statements of Additional Information (SAIs) (together "Registration Statements"). The SAIs for each Fund are incorporated into the relevant Prospectuses and include a "Statement of Investments" that lists each of the Fund's investments as of its most recently completed fiscal year-end.

b. The Funds' shares are predominantly bought through third-party financial intermediaries.

c. The Funds invest primarily in municipal securities, including municipal bonds, municipal notes, interests in municipal leases, and tax exempt commercial paper.

d. During the putative class periods alleged in the Complaints, the following individual Defendants acted as the Funds' officers:

　　1. Defendant John V. Murphy acted as Chairman, CEO, Director and President of OFI and as President and Trustee for each of the Funds. Mr. Murphy signed each of the Registration Statements at issue.

　　2. Defendant Brian W. Wixted was Treasurer and Financial Accounting Officer of each of the Funds. Mr. Wixted signed each of the Registration Statements at issue.

　　3. Defendant Ronald H. Fielding was a Vice President and a portfolio manager of each of the Funds and an officer of OFI. Mr. Fielding did not sign the Registration Statements at issue.

　　4. Defendant Daniel G. Loughran was a vice president and a portfolio manager of each of the Funds and an officer of OFI. Mr. Loughran did not sign the Registration Statements at issue.

　　5. Defendant Scott S. Cottier was a vice president and a portfolio manager of each of the Funds and an officer of OFI. Mr. Cottier did not sign the Registration Statements at issue.

      6.   Defendant Troy E. Willis was an assistant vice president and portfolio manager of each of the Funds and an officer of OFI.  Mr. Willis did not sign the Registration Statements at issue.

   e.  During the putative class periods alleged in the Complaints, the following individual Defendants served as Independent Trustees of the Funds and signed at least one registration statement during the putative class periods:  Brian F. Wruble (served as chairman of the Board of Trustees during part of the putative class periods), John Cannon, Paul Y. Clinton, Thomas W. Courtney, David K. Downes, Matthew P. Fink, Robert G. Galli, Phillip A. Griffiths, Lacy B. Hermann, Mary F. Miller, Joel W. Motley, Kenneth A. Randall, Russell S. Reynolds, Jr., Joseph M. Wikler, Peter I. Wold, and Clayton K. Yeutter.

The following facts are undisputed as to each of the Funds identified below:

   a.  The AMT-Free Fund:

      1.   During the putative class period, the AMT-Free Fund offered three classes of shares—A, B, and C—under the NASDAQ ticker symbols OPTAX, OTFBX, and OMFCX.

      2.   The Fund's shares were issued pursuant to Registration Statements filed with the SEC and made effective, supplemented, or revised on the following dates: September 27, 2006, January 19, 2007, January 23, 2007, March 8, 2007, July 6, 2007, September 13, 2007, October 22, 2007, October 26, 2007, December 19, 2007, December 28, 2007, January 22, 2008, April 28, 2008, May 12, 2008, July 1, 2008, and October 21, 2008.

   b.  The AMT-Free New York Fund:

      1.   During the putative class period, the AMT-Free New York Fund offered three classes of shares—A, B and C—under the NASDAQ ticker symbols OPNYX, ONYBX, and ONYCX.

      2.   The AMT-Free New York Fund's shares were issued pursuant to Registration Statements filed with the SEC and made effective, supplemented, or revised on the following dates:  January 26, 2007, July 6, 2007, September 13, 2007, October 22, 2007, December 28, 2007, April 28, 2008, May 12, 2008, July 1, 2008, and October 21, 2008.

   c.  California Fund:

      1.   During the putative class period, the California Fund offered three classes of shares—A, B and C—under the NASDAQ ticker symbols OPCAX, OCABX and OCACX.

2. The Fund's shares were issued pursuant to Registration Statements filed with the SEC and made effective, supplemented, or revised on the following dates: September 26, 2006, January 19, 2007, January 23, 2007, March 8, 2007, July 6, 2007, September 13, 2007, October 22, 2007, October 31, 2007 and December 28, 2007, April 28, 2008, May 12, 2008, July 1, 2008, and October 21, 2008.

d. The New Jersey Fund:

1. During the putative class period, the New Jersey Fund offered three classes of shares—A, B and C—under the NASDAQ ticker symbols ONJAX, ONJBX and ONJCX.

2. The Fund's shares were issued pursuant to Registration Statements, Prospectuses, and SAIs filed with the SEC and made effective, supplemented, or revised on the following dates:  September 27, 2006, January 19, 2007, January 23, 2007, March 2, 2007, July 6, 2007, September 13, 2007, October 22, 2007, November 28, 2007, February 5, 2008, April 28, 2008, May 12, 2008, July 1, 2008 and October 21, 2008.

e. The Pennsylvania Fund:

1. During the putative class period, the Pennsylvania Fund offered three classes of shares—A, B and C—under the NASDAQ ticker symbols OPATX, OPABX and OPACX.

2. The Fund's shares were issued pursuant to Registration Statements filed with the SEC and made effective, supplemented, or revised on the following dates: September 27, 2006, January 19, 2007, January 23, 2007, March 5, 2007, July 6, 2007, September 13, 2007, October 22, 2007, November 28, 2007, February 5, 2008, April 28, 2008, May 12, 2008, July 1, 2008 and October 21, 2008.

f. The National Fund:

1. During the putative class period, the National Fund offered three classes of shares—A, B and C—under the NASDAQ ticker symbols ORNAX, ORNBX and ORNCX.

2. The Fund's shares were issued pursuant to Registration Statements filed with the SEC and made effective, supplemented, or revised on the following dates: September 27, 2006, January 19, 2007, January 23, 2007, March 9, 2007, July 6, 2007, September 13, 2007, October 22, 2007, November 28, 2007, February 5, 2008, April 28, 2008, May 12, 2008, July 1, 2008, August 29, 2008, and October 21, 2008.

g.   The Rochester Fund:

    1.   During the putative class period, the Rochester Fund offered four classes of shares—A, B, C and Y—under the NASDAQ ticker symbols RMUNX, RMUBX, RMUCX, and RMUYX.

    2.   The Fund's shares were issued pursuant to Registration Statements filed with the SEC and made effective, supplemented, or revised on the following dates: April 30, 2006, May 5, 2006, July 26, 2006, January 21, 2007, January 19, 2007, January 23, 2007, February 21, 2007, July 6, 2007, August 31, 2007, September 13, 2007, October 22, 2007, December 19, 2007, December 28, 2007, January 22, 2008, April 29, 2008, May 12, 2008, and October 21, 2008.

## 4.   COMPUTATION OF DAMAGES

**a.**   **Lead Plaintiffs' statement**:

Lead Plaintiffs seek compensatory and/or rescissionary damages for all losses sustained as a result of Defendants' wrongdoing, including interest thereon, costs and expenses, attorneys' fees, expert fees, and equitable/injunctive relief as deemed appropriate by the Court.  Lead Plaintiffs also seek statutory damages pursuant to Sections 11(e), 12(a)(2) and 15 of the Securities Act.

Lead Plaintiffs have not yet determined the full extent of damages, including interest, sustained as a result of Defendants' conduct.  Lead Plaintiffs anticipate that the calculation of damages in this case will be the subject of expert analysis and discovery.  The disclosure of the identity, report and opinion of any such expert(s) will be made in accordance with the scheduling order entered by the Court.  Lead Plaintiffs reserve the right to seek any damages and equitable relief applicable to this action, as follows.

Damages pursuant to Section 11(e) of the Securities Act are generally calculated as the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public), and the price of the security at the time the lawsuit was filed or the security was disposed of in the market.

Similarly, Section 12(a)(2) authorizes a plaintiff to recover from the statutory sellers consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

Section 15 provides for liability to be imposed on individuals who control persons liable under Section 11 or 12, and they are liable jointly and severally with and to the same extent as such controlled persons, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts creating liability.

The Lead Plaintiffs in the California Fund action also seek restitution under California's Unfair Competition Law for money wrongfully taken by means of an unfair business practice as well as restitution of all benefits that may have been obtained by Defendants as a result of their illegal business acts or practices.

      **b.**      **Defendants' statement:**

None of the challenged disclosures contained any material misstatement or omission and, therefore, Plaintiffs cannot recover.  Even if Plaintiffs could prove a material misstatement, such misstatements were not the cause of Plaintiffs' alleged losses.  Rather, the decrease in the value of the Funds resulted from the decrease in the market value of the Funds' underlying holdings. Those holdings fell dramatically in value during one of the most devastating market dislocations and credit crises our country has ever experienced before rebounding equally dramatically when the dislocation and crisis began to subside in 2009.

## 5.  REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER Fed. R. Civ. P. 26(f)

      **a.**      **Date of Rule 26(f) meeting:** December 14, 2011, supplemented by continuing discussions thereafter.

      **b.**      **Names of each participant and each party represented:**

William K. Dodds, Matthew L. Larrabee, Joshua D. N. Hess, Dechert LLP, Counsel for Defendants: OppenheimerFunds, Inc., OppenheimerFunds Distributor, Inc., Scott Cottier, Ronald H. Fielding, Daniel G. Loughran, John V. Murphy, Troy Willis, and Brian W. Wixted

Arthur H. Aufses III, Steven S. Sparling, Kramer Levin Naftalis & Frankel LLP, Counsel for Defendants: Oppenheimer AMT-Free Municipals, Oppenheimer AMT-Free New York Municipals, Oppenheimer California Municipal Fund, Rochester Fund Municipals, Oppenheimer Multi-State Municipal Trust, John Cannon, Paul Y. Clinton, Thomas W. Courtney, David K. Downes, Matthew P. Fink, Robert G. Galli, Phillip A. Griffiths, Lacy B. Herrmann, Mary F. Miller, Joel W. Motley, Kenneth A. Randall, Russell S. Reynolds, Jr., Joseph M. Wikler, Peter I. Wold, Brian F. Wruble, and Clayton K. Yeutter

Patrick J. Kanouff, Counsel for Defendant: Massachusetts Mutual Life Insurance Co.

Kip. B. Shuman, The Shuman Law Firm, Plaintiffs' Liaison Counsel

Steven J. Toll, Lisa M. Mezzetti, S. Douglas Bunch, Cohen Milstein Sellers & Toll PLLC, Lead Counsel in Rochester Fund Municipals and AMT-Free Municipal Fund Litigation

Sanford P. Dumain, Peter E. Seidman, Roland W. Riggs, Christopher J. Orrico, Milberg LLP, Lead Counsel in New Jersey Municipal Fund, AMT-Free New York Municipal Fund and Rochester National Municipal Fund

Alan W. Sparer, Marc C. Haber, Sparer Law Group; Lead Counsel in California Municipal Fund Litigation and Dena C. Sharp, Girard Gibbs LLP, Plaintiffs' Counsel

Sherrie R. Savett, Glen L. Abramson, Berger & Montague, P.C., Lead Counsel in Pennsylvania Municipal Fund Litigation

**c.**   **Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1):**  The parties have agreed to exchange their respective Rule 26(a)(1) disclosures on or before January 13, 2012.

**d.**   **Statement as to when Rule 26(a)(1) disclosures were made or will be made:** See above.

**e.**   **Statement concerning any agreements to conduct informal discovery:**  The parties agree to conduct informal discovery as follows:

1.     Plaintiffs will provide documents and data identified on the list attached hereto as Exhibit B by February 3, 2012.

2.     Defendants will provide documents and data identified on the list attached hereto as Exhibit C by March 2, 2012.  These documents and data are in addition to the central documents on which these cases are based (the Registration Statements for the seven relevant Funds).  The Registration Statements are publicly available and many of these documents were already provided to Plaintiffs by Defendants in 2010, in highlighted and organized form, in connection with Defendants' motions to dismiss.

3.     The parties have agreed to hold periodic conferences to discuss mutually agreeable means to sharpen the issues in dispute, to narrow the issues where possible, and to invoke the assistance of the Court in resolving key issues that may substantially advance the resolution of the case and limit discovery.

**f.**     **Statement concerning any agreements or proposals regarding electronic discovery:**  The parties agree that electronic discovery will be necessary in this case and have agreed in principle to the use of computer-assisted review in order to identify responsive electronic source information ("ESI") rapidly and efficiently.  The parties have also discussed and shared positions regarding the preservation, collection, review, and production of ESI, and have designated attorneys from each side to reach a forthcoming comprehensive agreement regarding the same.  Counsel for Plaintiffs and Defendants have agreed respectively to have two repositories for documents produced (one repository for all Plaintiffs' counsel and one repository for all defense counsel) – the documents will be shared among counsel on each side of the litigation.  This will require counsel on each side to produce responsive records only once, further limiting discovery associated expense.

**g.**     **Statement regarding use of the unified exhibit numbering system:**  The parties agree to use the unified exhibit numbering system.  Each exhibit will be given only one Arabic number throughout the litigation and that number will be used for that exhibit for all purposes.

**h.**     **Statement concerning any other agreements or proposals to reduce discovery and other litigation costs:**   The parties agree to share, coordinate, and phase discovery wherever practicable to reduce costs.  The parties also agree to avoid duplicative discovery.  Additional cost-reduction measures should include, wherever practicable:   (1) relevant witnesses should be deposed only once for all cases; (2) discovery requests will be joint, including combined sets of requests for production, interrogatories and requests for admission; and (3) the parties will cooperate regarding non-party discovery, including Plaintiffs' brokers and financial intermediaries.  The parties agree to discuss opportunities where depositions may be conducted by video or telephonic conference when practicable and agreed upon by the parties.   The parties also agree to certain phasing of discovery, as reflected in Proposed Case Schedule.  *See* Exhibit A.

**i.**     **Each party shall set forth its anticipated costs of conducting this litigation, itemizing costs including travel and attorney fees for taking depositions, paralegal expenses, costs of preparations, costs of drafting written discovery, anticipated motions and costs of complying with discovery request.**

**Lead Plaintiffs' statement:**  Lead Plaintiffs believe that it is simply too early in this litigation to accurately anticipate costs or fees.  Lead Counsel have and will continue to share efforts and costs whenever possible, however, to ensure cost efficiency and non-duplication.

**Defendants' statement:**  Given the complexity and size of the cases that

comprise this litigation, Defendants cannot predict their ultimate costs of defense with precision.  That said, Defendants believe that the cost of their defense in accordance with their proposals in this order will be in the millions of dollars and that this cost would escalate dramatically in the absence of the proposed limits and agreements on efficiency.

## 6.   CASE PLAN AND SCHEDULE

The plan and schedule must include the following items:

**a.**      **Deadline for Joinder of Parties:**  The parties agree that the deadline for the joinder of additional parties has passed.

**b.**      **Deadline to Amend Pleadings:**  *See* Proposed Case Schedule, attached as Exhibit A.

**c.**      **Discovery Cut-off:**  *See* Proposed Case Schedule, attached as Exhibit A.

**d.**      **Dispositive Motion Deadline:**  *See* Proposed Case Schedule, attached as Exhibit A.

**e.**      **Expert Witness Disclosure**

      **(1)**      **Statement regarding anticipated fields of expert testimony, if any:**

**Lead Plaintiffs' statement:**  Lead Plaintiffs anticipate eliciting expert testimony on the following topics, among others:  accuracy of Funds' representations regarding their respective investment objectives, inverse floaters, liquidity of securities, bond pricing and ratings, and the Funds' NAV, losses attributable to misrepresentations and/or omissions, calculation of damages and restitutionary remedies.  In addition, the Lead Plaintiff in the California Fund action also anticipates expert testimony on the "dirt bonds" that were held in the California Fund.  Lead Plaintiffs may also present expert testimony on class certification issues.

**Defendants' statement:**  Defendants are not in a position to identify all of the topics upon which they may offer expert testimony.  Defendants anticipate offering expert testimony at both the class certification and merits stages of this litigation and expect that their expert testimony will encompass liability, causation and damages issues and testimony that is responsive to Lead Plaintiffs' expert testimony.

      (2)      **Statement regarding any limitations proposed on the use or number of expert witnesses:** None.

(3)     The parties shall designate all experts and, unless otherwise agreed and approved by the Court, shall provide all counsel with all information specified in Fed. R. Civ. P. 26(a)(2) as set forth in the Proposed Case Schedule attached as Exhibit A .

(4)     The parties shall designate all rebuttal experts and, unless otherwise agreed and approved by the Court, shall provide all counsel with all information specified in Fed. R. Civ. P. 26(a)(2) as set forth in the Proposed Case Schedule attached as Exhibit A.

(5)     The parties agree that all designations of experts shall include a statement describing the methodology to be used by the particular expert.  The parties understand and agree that *Daubert/Kumho Tire* motions challenging any proposed methodology may be considered by the Court before any expert is deposed, without prejudice to the opportunity to file subsequent motions.  The parties understand and agree with the goal of avoiding extensive discovery based on faulty expert methodologies and therefore these motions may result in amended designation with a new expert, a revised methodology or both.

(6)     Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the court.

**f.     Deposition Schedule**

In accordance with the Proposed Case Schedule found in Exhibit A, the parties agree to work together to coordinate the scheduling of all depositions for use in all of the cases once appropriate witnesses have been identified through other discovery and the number of depositions has been agreed to by the parties or approved by the Court.

**Lead Plaintiffs statement:**  Lead Plaintiffs anticipate that deponents in the action will include the following:

1. Ronald H. Fielding (Portfolio Manager)
2. Daniel G. Loughran (Portfolio Manager)
3. Scott S. Cottier (Portfolio Manager)
4. Troy E. Willis (Portfolio Manager)
5. Mark R. DeMitry (Portfolio Manager)
6. Marcus V. Franz (Portfolio Manager)
7. Brian F. Wruble (Chairman of the Board of Trustees)
8. John V. Murphy (President and Principal Executive Officer and a Fund Trustee)

14

9.  Brain W. Wixted (Treasurer and Principal Financial and Accounting Officer)
10. David K. Downes (Trustee)
11. Matthew P. Fink (Trustee)
12. Robert G. Galli (Trustee)
13. Phillip A. Griffiths (Trustee)
14. Mary F. Miller (Trustee)
15. Joel W. Motley (Trustee)
16. Russell S. Reynolds, Jr. (Trustee)
17. Peter I. Wold (Trustee)
18. Clayton K. Yeutter (Trustee)
19. Joseph M. Wikler (Trustee)
20. Kenneth A. Randall (Trustee)
21. Thomas W. Courtney (Trustee)
22. John Cannon (Trustee)
23. Lacy B. Herrmann (Trustee)
24. Paul Y. Clinton (Trustee)
25. OppenheimerFunds, Inc. (30(b)(6))
26. OppenheimerFunds Distributor, Inc. (30(b)(6))
27. Massachusetts Mutual Life Insurance Company (30(b)(6))
28. Oppenheimer Multi-State Municipal Trust (30(b)(6))
29. Oppenheimer California Municipal Bond Fund (30(b)(6))
30. Oppenheimer Rochester Fund Municipals (30(b)(6))
31. Oppenheimer AMT-Free Municipals (30(b)(6))
32. Oppenheimer AMT-Free New York Municipals (30(b)(6))
33. Oppenheimer Pennsylvania Municipal Bond Fund (30(b)(6))

g.    **Interrogatory Schedule**

**Lead Plaintiffs' statement**:  Interrogatories may be served any time after the parties' Rule 26(f) conference on December 14, 2011.  Responses shall be served in accordance with Fed. R. Civ. P. 33(b)(2) unless otherwise agreed by the parties. Interrogatories shall be served no later than 30 days before the close of fact discovery.

**Defendants' statement**:  Defendants believe that it is premature to schedule interrogatory responses at this time.  Defendants agree to work with Plaintiffs to coordinate interrogatories for use in all of the cases and determine the appropriate length of time for responses once the limit on the number of interrogatories has been approved by the Court and interrogatories are served.

**h.**     **Schedule for Request for Production of Documents**

*See* Proposed Case Schedule, attached as Exhibit A.

**i.**     **Discovery Limitations**

**(1)**     **Any limits any party proposes on the length of any deposition:**  The parties agree that the presumptive 7-hour limit in Fed. R. Civ. P. 30(d)(1) applies except as otherwise provided by the rule, agreed by the parties or ordered by the Court.  Depositions shall be taken in accordance with Local Civil Rule 30.1

**(2)**     **Any modifications any party proposes on the presumptive numbers of depositions or interrogatories contained in the federal rules:**

**Lead Plaintiffs' statement:**  Based on evidence and facts presently available, Lead Plaintiffs believe that the 10 deposition-limit per action contemplated by Fed. R. Civ. P. 30(a)(2)(A)(i) (totaling up to 70 depositions in the coordinated actions) will suffice.  Lead Plaintiffs also submit that interrogatories in each action should be governed by the limits set forth in Fed. R. Civ. P. 33, unless such limits are modified by agreement of the parties or by further order of the Court.  Lead Plaintiffs reserve their rights to seek an increase or decrease in the number of deposition days or interrogatories based on future developments in the action.  Lead Plaintiffs' counsel will work cooperatively among themselves and with counsel for Defendants to ensure efficiency and to avoid duplication.

**Defendants' statement**:  Defendants believe that Lead Plaintiffs' proposed limit, which would anticipate 140 depositions in these proceedings, is unnecessary and impossible under any of the time deadlines proposed by the parties at Exhibit A.  Indeed, given the substantial overlap of issues and individuals likely to have relevant knowledge of those issues in all of the cases, the number of depositions should be limited to 35 for all Plaintiffs in all cases and 35 for all Defendants in all cases.  Defendants believe that if the Court limits the depositions to 35 for each party, then the earlier fact discovery cut-off date proposed at Exhibit A is reasonable.

Similarly, Defendants propose that Plaintiffs in all actions shall not propound more than 75 interrogatories against all Defendants in all actions combined and Defendants shall not propound more than 75 interrogatories against all Plaintiffs in all actions combined.

**(3)** **Any limitations any party proposes on the number of requests for production of documents and/or requests for admissions:**  The parties

agree that there is no need for any such limitations at this time, but reserve the right to ask the Court to set such limits if the need arises.

**j.      Other Planning or Discovery Orders**

Pursuant to Rule 502 of the Federal Rules of Evidence, the parties agree to enter into a Stipulated Order Regarding Inadvertently Produced Privileged Materials or Information, attached hereto as Exhibit D.  Such agreement ensures that the inadvertent production of documents or information subject to any applicable privilege shall not constitute a waiver of the privilege.

Additionally, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the parties agree to enter into a Stipulation and Protective Order concerning the treatment of Confidential Information, attached hereto as Exhibit E.  Such agreement ensures that any document containing information that may injure the Parties' business or privacy interests will not be disclosed to the public.

## 7.   SETTLEMENT

The parties certify that they have discussed the possibilities for settlement or resolution of the case by alternative dispute resolution.  The parties agree that they have been and remain able to confer candidly about these cases.  The parties do not believe that it would be beneficial at this time to appoint a magistrate judge for settlement purposes.  In the event that any party believes that assistance from the Court or a magistrate judge would advance settlement prospects, the Court will be promptly informed.

## 8.   OTHER SCHEDULING ISSUES

**a.      Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement:** The parties are continuing to discuss their differences but to date have been unable to agree on (i) an appropriate limit on the number of depositions and interrogatories; and (ii) a single date for the conclusion of fact discovery and for the subsequent commencement of expert discovery.

**b.      Statement of anticipated motions-to be filed, by whom, estimated time of filing, and any proposed briefing schedule:**

**Lead Plaintiffs' statement:**  Lead Plaintiffs anticipate filing motions for class certification and dispositive motions in accordance with the proposed Case Schedule set forth in Exhibit A.  Lead Plaintiffs will coordinate the class certification and dispositive motion briefing among themselves to the extent possible.  Lead Plaintiffs therefore request modest extensions of the ordinary briefing schedules contemplated by Local Rule 7.1, as set forth in the proposed Case Schedule attached as Exhibit A.

**Defendants' statement:**  Given the breadth and complexity of these cases, it is premature to identify the timing and content of specific motions Defendants anticipate.  However, Defendants do expect that class certification will involve substantial briefing. Defendants also anticipate filing summary judgment or other motions directed to narrowing the case as discovery progresses, prior to the deadline for summary judgment motions (*e.g.*, *Daubert*/*Kumho Tire* motions), motions directed at causation issues and/or motions directed at specific claims (*e.g.*, valuation or liquidity).  Defendants will cooperate with plaintiffs to limit the number of issues in dispute and minimize the burdens on the parties and the Court.

c.      **Statement whether trial is to the court or jury.  If a mixed trial, e.g. declaratory judgment and damages, specify which claims are to tried to a jury and which to the court.**

**Lead Plaintiffs' statemen**t:  Lead Plaintiffs request a jury trial as to all aspects of the case.

**Defendants' statement**:  The cases in this multidistrict litigation proceeding have been consolidated and transferred to this Court for pre-trial purposes only.  Thus, absent agreement of the parties, these cases will be transferred back to the courts from which they originated for trial once motions for summary judgment are adjudicated.  As noted above, Plaintiffs have demanded trials by jury in those forums and Defendants also demand a jury trial.

### 9.   AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

*This Stipulated Scheduling and Discovery Order may be altered or amended only upon motion showing good cause and order entered thereon.  As stated elsewhere herein, I will almost always grant stipulated motions for extensions of time and changes in deadlines up to and including the signing of a pretrial order.  If the parties cannot agree on such extensions, my inclination is the absence of abuse, to be permissive.  On the contrary, I am not permissive or lenient in changing trial dates.*

DATED this 20th day of January, 2012.

BY THE COURT:

_s/John L. Kane_____
JOHN L. KANE, Senior Judge
United States District Court

**STIPULATED SCHEDULING AND
DISCOVERY ORDER APPROVED:**

  *s/ Stephanie Dunn*
Stephanie Dunn
**PERKINS COIE LLP**
1900 16th Street, Suite 1400
Denver, CO 80202-5255
Telephone: (303) 291-2300
Facsimile: (303) 291-2400
Email: sdunn@perkinscoie.com


  *s/ William Dodds*
William K. Dodds
Matthew L. Larrabee
**DECHERT, LLP-NEW YORK**
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (215) 698-3599
Email: william.dodds@dechert.com

*Attorneys for Defendants OppenheimerFunds,
Inc.,
OppenheimerFunds Distributor, Inc., Scott S.
Cottier, Ronald H. Fielding, Daniel G.
Loughran, John V. Murphy, Brian Petersen,
Richard Stein, Brian Szilagyi, Mark S.
Vandehey, Troy E. Willis, Brian W. Wixted*


  *s/ Arthur Aufses*
Arthur H. Aufses, III
**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000 (fax)
Email: aaufses@kramerlevin.com


  *s/ Edward T. Lyons, Jr.*

  *s/  Kip B. Shuman*
Kip B. Shuman
Rusty Glenn
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, Colorado  80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886
Email: kip@shumanlawfirm.com
Email: rusty@shumanlawfirm.com

*Liaison Counsel for Lead Plaintiffs*


  *s/  Steven J. Toll*
Steven J. Toll
Lisa M. Mezzetti
S. Douglas Bunch
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
1100 New York Avenue, N.W.
West Tower #500
Washington, DC 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
Email: lmezzetti@cohenmilstein.com
Email: dbunch@cohenmilstein.com

*Lead Counsel in Rochester Fund Municipals
and AMT-Free Municipal Fund Litigation*


  *s/  Peter E. Seidman*
Sanford P. Dumain
Peter E. Seidman
Roland W. Riggs
Christopher J. Orrico
**MILBERG LLP**
One Pennsylvania Plaza
48th Floor

Edward T. Lyons, Jr.
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133 (fax)
Email: elyons@joneskeller.com

*Attorneys for Defendants
Oppenheimer AMT-Free Municipals,
Oppenheimer AMT-Free New York
Municipals, Oppenheimer California
Municipal Fund, Oppenheimer Multi-State
Municipal Trust, Oppenheimer Rochester
National Municipals, Oppenheimer New Jersey
Municipal Fund, Oppenheimer Pennsylvania
Municipal Fund, Rochester Fund Municipals,
Brian F. Wruble, Clayton K. Yeutter, David K.
Downes, Edward V. Regan, Joel W. Motley,
John Cannon, Joseph M. Wikler, Kenneth A.
Randall, Lacy B. Herrmann, Mary F. Miller,
Mary Ann Tynan, Matthew P. Fink, Paul Y.
Clinton, Peter I. Wold, Phillip A. Griffiths,
Robert G. Galli, Russell S. Reynolds, Jr.,
Thomas W. Courtney*


  *s/  Patrick J. Kanouff*
Patrick J. Kanouff
Joshua D. Franklin
**DAVIS & CERIANI PC**
1350 17th Street, Suite 400
Denver, Colorado 80202
Telephone: (303) 534-9000
Facsimile:  (303) 534-4618
Email: pkanouff@davisandceriani.com
Email: jfranklin@davisandceriani.com

*Attorneys for Defendant
Massachusetts Mutual Life Insurance
Company*

New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
E-mail: sdumain@milberg.com
E-mail: pseidman@milberg.com
E-mail: rriggs@milberg.com
E-mail: corrico@milberg.com

*Lead Counsel in New Jersey Municipal Fund,
AMT-Free New York Municipal Fund and
Rochester National Municipal Fund Litigation*


  *s/  Alan W. Sparer*
Alan W. Sparer
Marc C. Haber
**SPARER LAW GROUP**
100 Pine Street
33rd Floor
San Francisco, CA 94111
Telephone: (415) 217-7300
Facsimile: (415) 217-7307
Email: asparer@sparerlaw.com
Email: mhaber@sparerlaw.com

*Lead Counsel in California Municipal Fund
Litigation*


  *s/  Sherrie R. Savett*
Sherrie R. Savett
Glen L. Abramson
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia , PA 19103
Telephone: (215) 875-3038
Facsimile: (312) 875-4604
Email: ssavett@bm.net
Email: gabramson@bm.net

*Lead Counsel in Pennsylvania Municipal Fund
Litigation*

___s/ Daniel C. Girard_____

Daniel C. Girard
Amanda M. Steiner
Christina C. Sharp
**GIRARD GIBBS LLP**

601 California Street, 14th Floor
San Francisco, CA 94108
(415) 981-4800 (telephone)
(415) 981-4846 (facsimile)
Email: dcg@girardgibbs.com
Email: ams@girardgibbs.com
Email: chc@girardgibbs.com

*Additional Counsel for Lead Plaintiff Joseph*
*Stockwell in the California Fund cases*