# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Master Docket No. 09-md-02063-JLK-KMT (MDL Docket No. 2063)

**IN RE: OPPENHEIMER ROCHESTER FUNDS GROUP SECURITIES LITIGATION**

This document relates to all the MDL actions.

---

## LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

---

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................... 1

II.    COMMON FACTUAL BACKGROUND ........................................................... 2

    A.    The Common Allegations in the Seven Consolidated Actions .................... 2

    B.    The Proposed Classes .................................................................................. 8

    C.    Additional Allegations Concerning the California and Pennsylvania Funds ........................................................................................................... 9

    D.    Additional Allegations Concerning the AMT-Free Fund, AMT-Free New York Fund, New Jersey Fund and Rochester Fund ........................... 10

    E.    Additional Allegations Concerning the National Fund ............................. 11

III.   COMMON LEGAL ARGUMENT .................................................................. 12

    A.    Each Proposed Class Satisfies the Requirements of Rule 23(a) ............... 14

        1.    Defendants Have Stipulated That Each Proposed Class Is Sufficiently Numerous ................................................................... 14

        2.    Questions of Law and Fact Are Common to Each Proposed Class .................................................................................................. 14

        3.    The Proposed Class Representatives' Claims Are Typical ............. 16

        4.    The Proposed Class Representatives Will Fairly and Adequately Protect The Interests of The Classes ........................... 18

    B.    Each Proposed Class Satisfies the Requirements of Rule 23(b)(3) .......... 19

        1.    Common Issues Predominate ......................................................... 19

        2.    Class Treatment Is Superior .......................................................... 25

i

C.     Proposed Class Counsel Should Be Appointed Under Rule 23(g) ........... 27

IV.    THE AMT-FREE FUND CLASS SHOULD BE CERTIFIED ........................... 29

    A.     The AMT-Free Fund Class Satisfies the Requirements of Rule 23(a) ...... 29

        1.     The AMT-Free Fund Class Is Sufficiently Numerous ................... 29

        2.     Questions of Law and Fact Are Common to the AMT-Free Fund Class ..................................................................................... 29

        3.     The Proposed Class Representative's Claims Are Typical of the AMT-Free Fund Class ................................................................ 31

        4.     The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the AMT-Free Fund Class ...... 31

    B.     The AMT-Free Fund Class Satisfies the Requirements of Rule 23(b)(3) .................................................................................... 32

        1.     Common Issues Predominate ......................................................... 32

        2.     Class Treatment Is Superior ........................................................... 34

    C.     Cohen Milstein Sellers & Toll PLLC Should Be Appointed As Class Counsel Under Rule 23(g) .......................................................... 34

V.    THE AMT-FREE NEW YORK FUND CLASS SHOULD BE CERTIFIED ..... 35

    A.     The AMT-Free New York Fund Class Satisfies the Requirements of Rule 23(a) ................................................................................... 35

        1.     The AMT-Free New York Fund Class Is Sufficiently Numerous ....................................................................................... 35

        2.     Questions of Law and Fact Are Common to the AMT-Free New York Fund Class ................................................................... 35

        3.     The Proposed Class Representative's Claims Are Typical of the AMT-Free New York Fund Class .............................................. 36

4.      The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the AMT-Free New York Fund Class ...................................................................................... 37

B.      The AMT-Free New York Fund Class Satisfies the Requirements of Rule 23(b)(3) ......................................................................... 38

1.      Common Issues Predominate ......................................................... 38

2.      Class Treatment Is Superior ........................................................... 39

C.      Milberg Should Be Appointed As Class Counsel Under Rule 23(g) ......... 39

VI.     THE CALIFORNIA FUND CLASSES SHOULD BE CERTIFIED ................... 40

A.      The California Fund Classes Satisfy the Requirements of Rule 23(a) ....... 42

1.      The California Fund Classes Are Sufficiently Numerous .............. 42

2.      Questions of Law and Fact Are Common to the California Fund Classes ................................................................................... 42

3.      The Proposed Class Representative's Claims Are Typical of the California Fund Classes ........................................................... 44

4.      The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the California Fund Classes ........................................................................................... 44

B.      The California Fund Classes Satisfy the Requirements of Rule 23(b)(3) ...................................................................................... 45

1.      Common Issues Predominate ......................................................... 45

2.      Class Treatment Is Superior ........................................................... 48

C.      Sparer Law Group Should Be Appointed As Class Counsel Under Rule 23(g) ....................................................................................... 48

VII.    THE NATIONAL FUND CLASS SHOULD BE CERTIFIED ........................... 49

A. The National Fund Class Satisfies the Requirements of Rule 23(a) .......... 49

    1. The National Fund Class Is Sufficiently Numerous ...................... 49

    2. Questions of Law and Fact Are Common to the National Fund Class ...................................................................................... 49

    3. The Proposed Class Representative's Claims Are Typical of the National Fund Class .................................................................. 51

    4. The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the National Fund Class .......... 51

B. The National Fund Class Satisfies the Requirements of Rule 23(b)(3) ..... 52

    1. Common Issues Predominate ........................................................ 52

    2. Class Treatment Is Superior .......................................................... 54

C. Milberg Should Be Appointed As Class Counsel Under Rule 23(g) .......... 54

VIII. THE NEW JERSEY FUND CLASS SHOULD BE CERTIFIED ........................ 54

A. The New Jersey Fund Class Satisfies the Requirements of Rule 23(a) ..... 55

    1. The New Jersey Fund Class Is Sufficiently Numerous ................... 55

    2. Questions of Law and Fact Are Common to the New Jersey Fund Class ...................................................................................... 55

    3. The Proposed Class Representative's Claims Are Typical of the New Jersey Fund Class ............................................................. 56

    4. The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the New Jersey Fund Class ...................................................................................... 56

B. The New Jersey Fund Class Satisfies the Requirements of Rule 23(b)(3) ........................................................................................... 57

iv

       1.     Common Issues Predominate ........................................................ 58

       2.     Class Treatment Is Superior ....................................................... 59

  C.     Milberg Should Be Appointed As Class Counsel Under Rule 23(g) ......... 59

X.     THE PENNSYLVANIA FUND CLASS SHOULD BE CERTIFIED ................. 59

  A.     The Pennsylvania Fund Class Satisfies the Requirements of Rule 23(a) ..................................................................................... 60

       1.     The Pennsylvania Fund Class Is Sufficiently Numerous ............... 60

       2.     Questions of Law and Fact Are Common to the Pennsylvania Fund Class ........................................................................... 60

       3.     The Proposed Class Representatives' Claims Are Typical of the Pennsylvania Fund Class ............................................... 61

       4.     The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Pennsylvania Fund Class ..................................................................................... 62

  B.     The Pennsylvania Fund Class Satisfies the Requirements of Rule 23(b)(3) ................................................................................... 63

       1.     Common Issues Predominate ........................................................ 63

       2.     Class Treatment Is Superior ....................................................... 65

  C.     Berger  & Montague Should Be Appointed As Class Counsel Under Rule 23(g) ................................................................................... 65

X.     THE ROCHESTER FUND CLASS SHOULD BE CERTIFIED ........................ 65

  A.     The Rochester Fund Class Satisfies the Requirements of Rule 23(a) ........ 66

       1.     The Rochester Fund Class Is Sufficiently Numerous ..................... 66

2.     Questions of Law and Fact Are Common to the Proposed Rochester Fund Class ................................................................... 66

3.     The Proposed Class Representatives' Claims Are Typical of the Rochester Fund Class ............................................................. 67

4.     The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Rochester Fund Class ....... 67

B.     The Rochester Fund Class Satisfies the Requirements of Rule 23(b)(3) ........................................................................................... 69

1.     Common Issues Predominate ......................................................... 69

2.     Class Treatment Is Superior ........................................................... 70

C.     Cohen Milstein Sellers & Toll PLLC Should Be Appointed As Class Counsel under Rule 23(g) ........................................................... 70

XI.     CONCLUSION ..................................................................................... 70

# TABLE OF AUTHORITIES

**Page(s)**

*Adamson v. Bowen*
855 F.2d 668 (10th Cir. 1988)…………………………………………...……………17

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) …………………………………………...……………..……..19

*Anderson v. Merit Energy Co.*
Nos. 07-CV-00916-LTB, 07-CV-01025-LTB-BNB,
2008 WL 2484187 (D. Colo. June 19, 2008) ……………………………….……20

*Basic Inc. v. Levinson*
485 U.S. 224 (1988) …………………………………………………………..……..23

*Blue Cross of California, Inc. v. Superior Court*
180 Cal. App. 4th 1237
102 Cal. Rptr. 3d 615(Cal. Ct. App. 2009)… ……………………………………47

*Clark v. State Farm Mutual Auto Ins. Co.*
245 F.R.D. 478 (D. Colo. 2007) …………………………………..19, 24, 25, 48

*Clay v. Pelle*
No. 10-CV-01840-WYD-BNB, 2011 WL 843920 (D. Colo. Mar. 8, 2011)…14, 16

*Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*
No. 09-CV-02757-WYD-KMT, 2012 WL 1378531(D. Colo. Apr. 20, 2012)…..18

*Cook v. Rockwell Int'l Corp.*
151 F.R.D. 378 (D. Colo. 1993)…………………………………………...20, 25

*DG ex rel. Stricklin v. Devaughn*
594 F.3d 1188 (10th Cir. 2010)……………………………………………14, 17

*Dubin v. Miller*
132 F.R.D. 269 (D. Colo. 1990) ……………………………………..…...16

*Espinoza v. 953 Assocs. LLC*
      No. 10 Civ. 5517(SAS), 2011 WL 5574895 (S.D.N.Y. Nov. 16, 2011)……...……24

*Esplin v. Hirschi*
      402 F.2d 94 (10th Cir. 1968)………………………………………………12, 20

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
      114 F.R.D. 48 (S.D.N.Y. 1987)………………………………………………..19

*Herman & McLean v. Huddleston*
      459 U.S. 375 (1983)………………………………………………………..20, 21

*In re Enron Corp. Sec. Deriv. & ERISA Litig.*
      529 F. Supp. 2d 644 (S.D. Tex. 2006)………………………………………28

*In re Evergreen Ultra Short Opportunities Fund Securities Litig.*
      275 F.R.D. 382 (D. Mass. 2011)……………………………………………15

*In re Intelcom Grp., Inc. v. Securities Litig.*
      169 F.R.D. 142 (D. Colo. 1996)………………………………… 16, 22, 26

*In re Metropolitan Securities Litig.*
      No. CV-04-25-FVS, 2008 WL 5102303(E.D. Wa. Nov. 25, 2008)……………...25

*In re Morgan Stanley Info. Fund Sec. Litig.*
      592 F.3d 347 (2d Cir. 2010)……………………………………………..21, 22

*In re NYSE Specialists Securities Litig.*
      260 F.R.D. 55 (S.D.N.Y. 2009)……………………………………………..13

*In re Oppenheimer Rochester Funds Grp. Securities Litig.*
      No. 09-md-02063-JLK-KMT, 2012 WL 171035
      (D. Colo. Jan. 20, 2012)…………………………………………..21, 23, 24

*In re Rhythms Securities Litig.*
      300 F. Supp. 2d 1081 (D. Colo. 2004)………………………………………23

*In re Ribozyme Pharms., Inc. Securities Litig.*
      205 F.R.D. 572 (D. Colo. 2001)……………………………………………..26

*In re Veeco Instruments, Inc. Securities Litig.*
    235 F.R.D. 220 (S.D.N.Y. 2006)……………………………………………13

*In re WorldCom, Inc. Securities Litig.*
    219 F.R.D. 267 (S.D.N.Y. 2003)………………………………………15, 16, 25

*J.B. ex rel. Hart v. Valdez*
    186 F.3d 1280 (10th Cir. 1999)……………………………………………..14

*Joseph v. Gen. Motors Corp.*
    109 F.R.D. 635 (D. Colo. 1986)……………………………………… 20, 26, 48

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (Cal. 2003)………………....……… 47

*Lerner v. Haimsohn*
    126 F.R.D. 64 (D. Colo. 1989)…………………………...…………12, 22, 23

*Lucas v. Kmart Corp.*
    No. 99-CV01923-JLK, 2005 WL 1648182 (D. Colo. July 13, 2005)……………12

*Maez v. Springs Auto. Grp., LLC*
    268 F.R.D. 391 (D. Colo. 2010)………………………………...12, 15, 17, 19

*Matrixx Initiatives, Inc. v. Siracusano*
    131 S. Ct. 1309 (2011) …………………………………………………...23

*Menkes v. Stolt-Nielsen, S.A.*
    270 F.R.D. 80 (D. Conn. 2010)………………………………………..24

*Milonas v. Williams*
    691 F.2d 931 (10th Cir. 1982)
    *cert. denied,* 460 U.S. 1069  (1983)………………………………..12, 17

*Monreal v. Potter*
    367 F.3d 1224 (10th Cir. 2004)………………………………………..13

*Oasis West Realty, LLC v. Goldman,*
    51 Cal. 4th 811, 124 Cal. Rptr. 3d 256 (Cal. 2011)……………………….... 46

*Pope v. Harvard Bancshares, Inc.*
  240 F.R.D. 383 (N.D. Ill. 2006)…………………………………………………46, 47

*Public Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co.*
  277 F.R.D. 97 (S.D.N.Y. 2011) ……………………………………………..22

*Rutter & Wilbanks Corp. v. Shell Oil Co.*
  314 F.3d 1180 (10th Cir. 2002)…………………………………………………..18

*Schaffer v. Evolving Sys., Inc.*
  29 F. Supp. 2d 1213 (D. Colo. 1998)…………………………………………..21

*Schwartz v. Celestial Seasonings, Inc.*
  178 F.R.D. 545 (D. Colo. 1998) ……………………………………………*passim*

*Seijas v. Republic of Argentina*
  606 F.3d 53 (2d Cir. 2010)…………………………………………………24

*Sterling v. Velsicol Chem. Corp.*
  855 F.2d 1188 (6th Cir. 1988)……………………………………………………25

*T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.*
  717 F.2d 1330 (10th Cir. 1983)…………………………………………………..13

*Trevizo v. Adams*
  455 F.3d 1155 (10th Cir. 2006)…………………………………………13, 14

*TSC Indus., Inc. v. Northway, Inc.*
  426 U.S. 438 (1976)……………………………………………………23

*Villario v. Vandehey*
  554 F.3d 1259 (10th Cir. 2009)…………………………………………………..13

*Wal-Mart Stores, Inc. v. Dukes*
  131 S. Ct. 2541 (2011)……………………………………………………...14, 16

*Webb v. Smart Document Solutions, LLC*
  499 F.3d 1078 (9th Cir. 2007)……………………………………………………47

# STATUTES

**Page(s)**

15 U.S.C. § 77……………………………………………………………………*passim*

15 U.S.C. § 80…………………………………………………………...……48

Cal. Bus. & Prof. Code § 17200...…………………………………….....….…47

Cal. Bus. & Prof. Code § 17203...…………………………………….....….…47

Securities Act of 1933 § 11...…………………………...…………………*passim*

Securities Act of 1933 § 12...…………………………...…………………*passim*

Securities Act of 1933 § 15...…………………………...…………………*passim*

Investment Company Act of 1940 § 13(a)...…………………………………………48

Investment Company Act of 1940 § 48(a)...…………………………………………48

## RULES

D.C. Colo. LCivR 7.1…………………………………………………………xii

Fed. R. Civ. P. 23…………………………………………………………... *passim*

**CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1A**

Counsel for Lead Plaintiffs have conferred with counsel for Defendants about this Motion.  Defendants concede that each of the proposed Classes satisfies Federal Rule of Civil Procedure 23(a)(1), as each class is so numerous that joinder of all Class members is impracticable.  Defendants also do not contest that proposed class counsel will fairly and adequately protect the interests of the proposed Classes in accordance with Rule 23(a)(4).  Defendants otherwise oppose this motion.

## I.      PRELIMINARY STATEMENT

This joint motion seeks class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) of classes of investors in each of the seven Oppenheimer municipal funds at issue in the actions consolidated and pending before this Court (the "Actions").[1]

Defendants have stipulated that (a) each of the proposed Classes is so numerous that joinder is impracticable and (b) proposed Class Counsel will fairly and adequately protect the interests of the proposed classes.  Each proposed Class, consisting of individuals or entities that purchased, acquired, or held shares in a particular Fund during the applicable Class Period, otherwise meets the additional Rule 23(a) requirements because:  (1) there are questions of law and fact common to each Class; (2) the claims of the proposed Class Representatives are typical of those of other class members; and (3) the proposed Class Representatives will adequately represent the proposed Classes. Certification is also appropriate under Rule 23(b)(3) because the questions of law or fact common to members of each class predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of the controversies.  The Court therefore should certify the Classes proposed below for each of the seven Actions.

---

[1] The seven Oppenheimer municipal bond funds (the "Funds") are:  AMT-Free Municipals Fund, AMT-Free New York Municipal Fund, California Municipal Fund, Rochester National Municipal Fund, New Jersey Municipal Fund, Pennsylvania Municipal Fund, and Rochester Fund Municipals.

Although the certification of each Class, appointment of Class Representatives and appointment of Class Counsel under Rule 23(g) must be considered separately and on their own merits for each Action, Lead Counsel in the seven Actions submit this consolidated motion to avoid unnecessary repetition of overlapping issues of law and fact.  Plaintiffs have attempted to balance the interests of brevity and non-duplication with making the required showing for each Fund by making common presentations wherever feasible.  Accordingly, this brief begins with presentation of the Common Factual Background (Section II), followed by the Common Legal Argument (Section III) as to class certification under Rules 23(a) and (b)(3).  The remainder of the brief consists of separate sections that address the specific grounds for class certification for each of the seven Funds.  *See* Sections IV – X.

## II.    COMMON FACTUAL BACKGROUND

### A.    The Common Allegations in the Seven Consolidated Actions

The consolidated complaints filed in the Actions (the "Complaints") detail multiple similar misstatements and omissions in the Prospectuses for each of the seven Funds over a multi-year period.  Each Complaint asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, l, & o, against Defendants OppenheimerFunds, Inc. ("OppenheimerFunds"); OppenheimerFunds Distributor, Inc. ("Oppenheimer Distributor"); the Oppenheimer Multi-State Municipal Trust; Oppenheimer officers (the "Officer Defendants") and

trustees (the "Trustee Defendants"); and Massachusetts Mutual Life Insurance Company ("MassMutual") (collectively, "Defendants"). Each Complaint alleges that the Funds' Prospectuses were materially misleading because their stated investment objectives and/or disclosures belied the true nature and scope of the high-risk investment strategy employed by Defendants.[2]

Six of the seven Complaints allege material misrepresentations or omissions in Fund offering documents relating to the applicable Funds' "capital preservation" investment objectives. All seven Actions identify three categories of materially misleading representations or omissions regarding: (1) the level of the Funds' exposure to inverse floating rate securities ("inverse floaters"), and the risks and volatility associated with those investments; (2) the liquidity of the Funds' investments; and (3) the improper valuation of Fund assets and liabilities and resulting net asset values ("NAVs").

*Misrepresentations and Omissions Relating to Capital Preservation*: Six of the seven Funds explicitly described their overall investment objectives as seeking as much interest income exempt from income taxes as is consistent with the preservation of

---

[2] The California and Pennsylvania Fund Actions allege additional violations of Sections 11 and 12 of the Securities Act (*see* Section II.C), and the California Fund Action also alleges state and common law claims. *See* Sections VI & IX. The Court has not yet issued a ruling on Defendants' motion to dismiss the additional claims in the Pennsylvania and California Complaints. In addition, the AMT-Free New York, AMT-Free, Rochester, and New Jersey Fund Actions allege violations of Sections 11 and 12 relating to the Funds' investment in below investment grade bonds, and the National Fund Action alleges a violation of Sections 11 and 12 relating to that Fund's excessive investment in securities that were not municipal securities. *See* Sections II.D. & II.E.

capital.[3]  Instead, as Defendants now concede, these Funds employed a high-risk "no

guts, no glory" strategy.  Dkt. No. 285 (Defendants' Joint Motion to Dismiss) at 9-10.

The Complaints allege that the investment strategy Defendants actually pursued

concentrated the Funds' assets in excessively risky securities that individually and

collectively made each Fund's portfolio fundamentally incompatible with the stated

objective to preserve capital.[4]  Defendants failed to disclose in the offering documents

that investor capital was extremely vulnerable to changes in market conditions and that

the extent of the Funds' reliance on lower quality bonds, unrated (junk) bonds, illiquid

bonds, and/or inverse floaters was fundamentally incompatible with a capital preservation

objective.[5]  The Complaints allege as to each Fund that the failure to disclose the genuine

risks of investing resulted in substantial losses directly attributable to the

misrepresentations and omissions.[6]

   *Misrepresentations and Omissions Concerning Inverse Floaters*:  All seven

Complaints allege that the Funds' Prospectuses failed to disclose and/or misrepresented

how the Funds' investments in highly leveraged inverse floaters increased the volatility

---

[3] AMT-Free Compl. ¶ 39; AMT-Free NY Compl. ¶ 35; Cal. Compl. ¶ 65; NJ Compl. ¶ 70; Pa. Compl. ¶ 70; Rochester Compl. ¶ 71.  The lone exception is the National Fund Prospectus, which otherwise resembles the other Prospectuses with respect to the common issues of inverse floaters, liquidity, and valuation.

[4] AMT-Free Compl. ¶¶ 48-50; AMT-Free NY Compl. ¶¶ 42-44; Cal. Compl. ¶ 69; NJ Compl. ¶¶ 43-45; Pa. Compl. ¶¶ 57-62; Rochester Compl. ¶¶ 43-45.

[5] AMT-Free Compl. ¶¶ 48-50; AMT-Free NY Compl. ¶¶ 42-44; Cal. Compl. ¶ 69; NJ Compl. ¶¶43-45; Pa. Compl. ¶¶ 57-62; Rochester Compl. ¶¶ 43-45.

[6] AMT-Free Compl. ¶¶ 85-87, 95-100; AMT-Free NY Compl. ¶¶ 87-92; Cal. Compl. ¶¶ 139-50; NJ Compl. ¶¶ 88-94; Pa. Compl. ¶¶ 114-34; Rochester Compl. ¶¶ 91-97.

of the inverse floaters' underlying long-term municipal bonds, and how the inverse floater holdings could trigger substantial declines in NAV.[7]  The Funds' exposure to these highly-leveraged securities substantially increased price volatility and left the Funds susceptible to shifts in the capital markets' risk tolerance.  In addition, the Complaints allege that the Funds failed to adequately disclose that the inverse floaters created the risk of forced liquidation of large bond positions on short notice and at substantial losses to the Funds.  This undisclosed factor also contributed to risk and volatility in the Funds' NAV.[8]  The Complaints also allege that Defendants issued a Prospectus Supplement for each Fund in the fall of 2008 that suddenly and for the first time disclosed the true risks that inverse floaters posed to Fund holders and to investor capital.  These previously withheld risk disclosures were material and by themselves support claims under the Securities Act.

*Misrepresentations and Omissions Concerning the Funds' Liquidity*:  Each of the seven Complaints also alleges that each Fund's Prospectuses failed to identify all of the illiquid assets in the Fund, and failed to disclose that the Fund exceeded its stated 15%

---

[7] AMT-Free Compl. ¶¶ 63-73; AMT-Free NY Compl. ¶¶ 63, 78; Cal. Compl. ¶¶ 147-55; Nat'l Compl. ¶¶ 65, 76; NJ Compl. ¶¶ 64, 79; Pa. Compl. ¶¶ 129-30 & 132; Rochester Compl. ¶¶ 65, 81.

[8] AMT-Free Compl. ¶¶ 70, 86; AMT-Free NY Compl. ¶¶ 63, 78; Cal. Compl. ¶¶ 147, 154-56; Nat'l Compl. ¶¶ 65, 76; NJ Compl. ¶¶ 64, 79; Pa. Compl. ¶¶ 129-30 & 132; Rochester Compl. ¶¶ 65, 81.

cap on illiquid assets.[9]  This universal failure to disclose the illiquidity of specific

holdings concealed the material risk that the Funds would be unable to raise capital

quickly through the sale of readily marketable securities, and consequently would be

forced to sell illiquid securities at a steep discount.  In addition, the failure to designate

illiquid securities as such meant that the Funds were not applying an illiquidity discount

to their asset valuation, which necessarily resulted in the improper inflation of the Funds'

NAVs and thus the amount paid by the Class members to purchase Fund shares.[10]

*Misrepresentations and Omissions Concerning the Funds' NAVs*:  Each of the

seven Complaints alleges that Defendants did not reference current trading data (*e.g.*,

actual prices, "bid" and "ask" prices) in valuing a substantial part of the Fund assets as of

the date the NAV disclosures were made.[11]  In the absence of such a market check, each

Fund's assets were overvalued because the purported values failed to account for

illiquidity, among other things.[12]  When the Funds ultimately sold their assets, they were

---

[9] AMT-Free Compl. ¶¶ 91-94 (at least 30.05%); AMT-Free NY Compl. ¶¶ 83-86 (at least 28.59%); Cal. Compl. ¶¶ 106-14; Nat'l Compl. ¶¶ 81-84 (at least 29%); NJ Compl. ¶¶ 84-87 (at least 25.21%); Pa. Compl. ¶¶ 77-95 (at least 27.5%); Rochester Compl. ¶¶ 86-90 (at least 30.13%).

[10] *See, e.g.*, AMT-Free Compl. ¶ 107; AMT-Free NY Compl. ¶ 99; Cal. Compl. ¶ 172; Nat'l Compl. ¶ 97; NJ Compl. ¶ 100; Pa. Compl. ¶ 107; Rochester Compl. ¶ 103.

[11] AMT-Free Compl. ¶ 83; AMT-Free NY Compl. ¶ 76; Cal. Compl. ¶¶ 170-72; Nat'l Compl. ¶ 74; NJ Compl. ¶ 77; Pa. Compl. ¶¶ 107-12; Rochester Compl. ¶¶ 78-79.

[12] AMT-Free Compl. ¶¶ 103-08; AMT-Free NY Compl. ¶¶ 95-100; Cal. Compl. ¶¶ 166-72; Nat'l Compl. ¶¶ 93-98; NJ Compl. ¶¶ 96-101; Pa. Compl. ¶¶ 107-12; Rochester Compl. ¶¶ 99-104.

forced to accept the market's "fair value" price, which was far less than the "fair value" Defendants had claimed or disclosed to investors.[13]

*Causation*:  After these concealed or omitted risks were realized, each Fund grossly underperformed the other municipal bond funds in its respective peer group, demonstrating that the losses resulted from Defendants' acts and not the credit crisis of 2008 or any other market influences or events.  The NAVs of the seven Funds fell 30-50% during 2008, while similar municipal bond funds that did not employ Defendants' excessively risky strategy weathered the credit crisis with substantially smaller losses of during the same period.[14]

*Defendants' Common Defenses*:  Defendants have asserted the same defenses as to the alleged misstatements and omissions in each of the Actions, claiming (among other things) that:  (1) the offering documents did not contain any untrue statement of material fact and did not fail to state a material fact required to be stated; (2) any misrepresentations or omissions were not material to a reasonable investor's investment decisions; (3) the misrepresentations and omissions did not cause the losses; (4) the individual Defendants are protected by the defense that they acted with due diligence; (5) the individual Oppenheimer Defendants are not  "controlling persons" under Section 15; and (6) the relevant statutes of limitations bar all or part of the claims.  *See, e.g.*, Dkt. No.

---

[13] AMT-Free Compl. ¶ 100c; AMT-Free NY Compl. ¶ 92c; Cal. Compl. ¶ 159; Nat'l Compl. ¶ 90c; NJ Compl. ¶ 93c; Pa. Compl. ¶ 111; Rochester Compl. ¶ 81.

[14] AMT-Free Compl. ¶ 87; AMT-Free NY Compl. ¶ 79; Cal. Compl. ¶ 175; Nat'l Compl. ¶ 77; NJ Compl. ¶ 80; Pa. Compl. ¶¶ 11, 146-48; Rochester Compl. ¶ 82.

345 (Oppenheimer Defendants' Answer to the Amended Class Action Complaint) at 22-27; Dkt. No. 333 (Massachusetts Mutual Life Insurance Company's Answer to Consolidated Class Action Complaint) at 23-27.  These principal defenses are generally applicable to the proposed Classes and Class members of all seven Funds.

**B.     The Proposed Classes**

Each of the proposed Classes is comprised of investors in a separate Fund.  The proposed Class Representatives each purchased shares in their respective Funds pursuant to registration statements containing material misrepresentations during the proposed Class Period for each Action.  *See* Dkt. Nos. 130, 132, 141, 142, 144, 145, 150 (Lead Plaintiffs' certifications).  In appointing Lead Plaintiffs, the Court found that each had made a "prima facie showing of typicality and adequacy."  Dkt. No. 223 (Order Appointing Lead Plaintiffs and Lead Counsel) at 6 (citations omitted).

The following chart identifies the Fund, the proposed Class Representatives and the Class Period for each proposed class:

| Fund | Class Representative(s) | Class Period(s) |
|---|---|---|
| AMT-Free Municipals Fund | Leonard Klorfine | May 13, 2006 through October 21, 2008, inclusive |
| AMT-Free New York Municipal Fund | John Vazquez | May 21, 2006 through October 21, 2008, inclusive |

| Fund | Class Representative(s) | Class Period(s) |
|---|---|---|
| California Municipal Fund | Joseph Stockwell | Securities Class:  September 27, 2006 through November, 28, 2008, inclusive<br><br>Holder Class: February 6, 2006 through February 6, 2009, inclusive<br><br>California Class:  February 6, 2005 through February 6, 2009, inclusive |
| Rochester National Municipal Fund | Peter Unanue | March 13, 2006 through October 21, 2008, inclusive |
| New Jersey Municipal Fund | Victor Sasson | April 24, 2006 through October 21, 2008, inclusive |
| Pennsylvania Municipal Fund | Dharamvir Bhanot (Lead Plaintiff), William E. Miles, Jr., and John P. Galganovicz | September 27, 2006 through November 26, 2008, inclusive |
| Rochester Fund Municipals | Stuart Krosser and Carole Krosser | February 26, 2006 through October 21, 2008, inclusive |

### C.   Additional Allegations Concerning the California and Pennsylvania Funds

Beyond the common allegations described above, the California and Pennsylvania Complaints allege additional misrepresentations and omissions under Sections 11 and 12 relating to the fact that:  (1) these Funds were over-concentrated in below investment-grade securities ("junk bonds"), exceeding the 25% limit on these types of assets set forth in the applicable Prospectuses; (2) many of these Funds' bonds were not rated by an independent ratings agency, and that, contrary to the representations in the Prospectuses, Defendants' methods for "self-rating" bonds did not conform to the methods used by

independent ratings agencies; and (3) the "self-rated" bonds were not comparable to bonds given the same ratings by independent ratings agencies.[15]

The California Complaint further alleges misrepresentations and omissions regarding the fact that the California Fund was over-concentrated in the California real estate development industry, including in speculative "dirt bonds" that are secured only by bare, undeveloped land.  The California Fund Prospectuses used unreasonably narrow industry classifications that violated the SEC guidelines and concealed that more than 25% of the Fund's holdings were in bonds subject to the same economic risk—a downturn in California's real estate market.[16]  These allegations are discussed in the California and Pennsylvania Funds' respective sections below.  *See* Sections VI & IX, *infra*.

**D.**     **Additional Allegations Concerning the AMT-Free Fund, AMT-Free New York Fund, New Jersey Fund and Rochester Fund**

In addition to the common allegations described above, the AMT-Free Fund, AMT-Free New York Fund, New Jersey Fund, and Rochester Fund Complaints also allege that the Funds' Prospectuses represented that 75% of the securities the Funds buy must be investment-grade.[17]  The Prospectuses define "investment grade" as rated within the four highest rating categories of Moody's, Standard & Poor's, Fitch Inc. or another nationally recognized statistical rating organization.  According to the Prospectuses,

---

[15] Cal. Compl. ¶¶ 95-98; Pa. Compl. ¶¶ 96-101.

[16] Cal. Compl. ¶¶ 84-89.

[17] AMT-Free Compl. ¶ 44; AMT-Free NY Compl. ¶ 37; NJ Compl. ¶ 38; Rochester Compl. ¶ 39.

however, the "Investment Grade" securities also include *unrated* securities that

nevertheless were "judged by the Manager to be comparable to securities rated as

investment grade."  Neither the Prospectuses nor any other publication disclosed the

Manager's method for making this crucial judgment.[18]  And no record of the method's

success in accurately evaluating the credit risks of the unrated bonds was ever produced,

or even offered.

### E.    Additional Allegations Concerning the National Fund

The National Fund Complaint, in addition to the common allegations described

above, alleges that Defendants falsely stated that the Fund invested at least 80% of its net

assets in municipal securities.  Nat'l Compl. ¶ 3; Section VII, *infra*.  But Defendants, by

their own admission, invested up to 35% of the National Fund's assets in risky inverse

floaters—derivative instruments that were never characterized in any of the Prospectuses

as municipal securities and lack the characteristics that define municipal securities.  *See*

Dkt. No. 292 (Lead Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss) at 44-

46.

Additionally, while the National Fund was not a "preservation of capital" fund,

Defendants' disclosures that the Fund was "speculative" were also misleading because

they failed to disclose the full extent of the risks arising from the Fund's investment

strategy.  The National Fund disclosed only a fraction of the risks associated with the

---

[18] AMT-Free Compl. ¶ 44; AMT-Free NY Compl. ¶ 37; NJ Compl. ¶ 38; Rochester Compl. ¶ 39.

Fund and concealed the other material risks arising from the Fund's investment in illiquid securities, highly leveraged inverse floaters, and inaccurate calculations of the Fund's NAV, all of which put the Fund's assets at risk.  *See* Section VII, *infra*.

## III.   COMMON LEGAL ARGUMENT

Class certification should be granted when the proposed class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy) and the requirements of Rule 23(b)(3) (predominance and superiority).

A district court has broad discretion in determining whether a suit should proceed as a class action.  *See Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied,* 460 U.S. 1069 (1983).  "Once certified a class may be altered, expanded, subdivided, or abandoned as the case develops."  *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 393 (D. Colo. 2010).  "Given this flexibility, doubts about the propriety of entertaining a class action should be resolved in favor of proceeding on granting certification."  *Id.*; *see also Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require."); *Lucas v. Kmart Corp.*, No. 99-CV-01923-JLK, 2005 WL 1648182, at *2 (D. Colo. July 13, 2005) ("Because of the flexible nature of class certification, courts are to favor the procedure.").

For purposes of determining whether to certify a class, courts must "accept the substantive, non-conclusory allegations of the complaint as true." *Villario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009). And while courts must conduct a "rigorous analysis" of the Rule 23 requirements, "class certification does not depend on the merits of a suit." *Id*. at 1267. "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive. Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations.'" *Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006) (quoting *Monreal v. Potter*, 367 F.3d 1224, 1238 (10th Cir. 2004)).

Securities Act claims are particularly well-suited for class certification. "In general, class actions are favored in securities fraud actions involving numerous plaintiffs." *Schwartz v. Celestial Seasonings, Inc*., 178 F.R.D. 545, 550 (D. Colo. 1998). "Courts have long recognized that [c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws." *In re NYSE Specialists Securities Litig*., 260 F.R.D. 55, 80 (S.D.N.Y. 2009) (quoting *In re Veeco Instruments, Inc. Securities Litig*., 235 F.R.D. 220, 240 (S.D.N.Y. 2006)). For these reasons, "the United States Court of Appeals for the Tenth Circuit has endorsed class actions as an appropriate means to resolve claims under the federal securities laws." *Lerner v. Haimsohn*, 126 F.R.D. 64, 65 (D. Colo. 1989) (citing *T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth*., 717 F.2d 1330 (10th Cir. 1983)).

### A.   Each Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.   Defendants Have Stipulated That Each Proposed Class Is Sufficiently Numerous

The numerosity element is satisfied when the class is so numerous that joinder is impracticable. *See Trevizo*, 455 F.3d at 1162.  As Defendants have stipulated to the numerosity of each of the proposed Classes, this requirement is satisfied for each of the proposed Classes.

#### 2.   Questions of Law and Fact Are Common to Each Proposed Class

Rule 23(a)(2) requires "questions of law or fact that are common to the class." This requirement may be satisfied by "a single issue common to the class." *Clay v. Pelle*, No. 10-CV-01840-WYD-BNB, 2011 WL 843920, at *2-3 (D. Colo. Mar. 8, 2011) (citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)).  A plaintiff meets this requirement by showing a "common contention" that is "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice." *Schwartz*, 178 F.R.D. at 551; *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) ("Factual differences between class members' claims do not defeat certification where common questions of law exist.").

At the core of Plaintiffs' Section 11 and 12(a)(2) claims is the question of whether

the offering documents of each Fund contained false or misleading statements of material

fact.  Plaintiffs contend that they do.  Defendants contend that they do not.

Determination of this issue on a classwide basis for each Fund will therefore resolve the

central issue that is common to the claims of the members of each Class.  This alone

satisfies the commonality requirements for certification.  But there are additional issues

of law and fact that are common to all members of each Class, including whether the

misstatements and omissions were material and whether the members of the class have

sustained damages.  *See, e.g.*, *Schwartz*, 178 F.R.D. at 551 (identifying as common

questions whether the documents publicly disseminated by the defendants were

materially false and misleading and/or omitted material facts, and whether the defendants

acted negligently in preparing and disseminating the materially false and misleading

documents); *see also In re Evergreen Ultra Short Opportunities Fund Securities Litig.*,

275 F.R.D. 382, 388-89 (D. Mass. 2011) (holding that common issues of whether

offering materials contained untrue statements of material fact or material omissions and

the extent of damages sustained by class members "have repeatedly been held to satisfy

the commonality requirement"); *Maez*, 268 F.R.D. at 396 ("Claims arising out of

standard documents present a classic case for treatment as a class action.") (citation

omitted).

   Many of the defenses put forward by Defendants, including those pertaining to

loss causation or due diligence, also are subject to common proof.  *See In re WorldCom*,

*Inc. Securities Litig*., 219 F.R.D. 267, 288-89, 291, 293 n.30 (S.D.N.Y. 2003) (for

Section 11 and 12(a)(2) claims, the defendants' "most readily available defenses to

liability also present issues of law and fact that are common to the class").  Because

resolution of the common questions will "generate common *answers* apt to drive the

resolution of the litigation," the commonality requirement is satisfied for the Securities

Act claims as to each of the Funds.  *Dukes*, 131 S. Ct. at 2551 (internal citations omitted)

(emphasis in original).

### 3.    The Proposed Class Representatives' Claims Are Typical

The typicality requirement is satisfied if "there is a nexus between the class

representatives' claims or defenses and the common questions of fact or law which unite

the class."  *Schwartz*, 178 F.R.D. at 551.  "Typicality insures that the class

representative's claims resemble the class's claims to an extent that adequate

representation can be expected."  *Clay*, 2011 WL 843920, at *3 (quoting *In re Intelcom

Grp., Inc. v. Securities Litig*., 169 F.R.D. 142, 149 (D. Colo. 1996)).  "The rationale

behind the requirement that the class representative's claims be typical of the class claims

is recognition that a plaintiff with claims typical of the class will, in pursuing and

defending his own self interest in the litigation, be concomitantly advancing or defending

the interests of the class."  *Id*. (quoting *Dubin v. Miller*, 132 F.R.D. 269, 274 (D. Colo.

1990)).

"'[E]very member of the class need not be in a situation identical to that of the named plaintiff' to meet Rule 23(a)'s commonality or typicality requirements." *DG ex rel. Stricklin*, 594 F.3d at 1195 (quoting *Milonas*, 691 F.2d at 938). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988); *see also Schwartz*, 178 F.R.D. at 551 ("Thus, the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class.") (citation omitted). A plaintiff is atypical only if he is subject to unique defenses and he "might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Maez*, 268 F.R.D. at 396 (citation omitted).

As set forth in detail below, each proposed Class Representative's experiences are typical of the members of the class they seek to represent. Each Class Representative purchased shares of his or her Fund during the relevant Class Period pursuant to offering documents containing the alleged material misrepresentations and omissions. Each Class Representative will advance the interests of the Class by pursuing his or her claims, and there are no defenses that are unique to the Class Representatives that would divert their time and effort in these Actions. Accordingly, the typicality prong is satisfied.

4.     **The Proposed Class Representatives Will Fairly and Adequately Protect The Interests of The Classes**

Rule 23(a)(4) requires that "the representative parties … fairly and adequately protect the interests of the class."  The Tenth Circuit has held that adequacy depends on the resolution of two questions:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co*., No. 09-CV-02757-WYD-KMT, 2012 WL 1378531, at *5 (D. Colo. April 20, 2012) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187-88 (10th Cir. 2002)).  Rule 23(a)(4) is satisfied "if the plaintiff has common interests with the class and will vigorously prosecute the interests of the class through qualified counsel."  *Schwartz*, 178 F.R.D. at 553.

The Class Representatives have demonstrated, as described in further detail below, their adequacy by producing documents and appearing for depositions.  The Class Representatives have each sustained significant financial losses as a result of their investments in the Funds.  They are vigorously prosecuting their actions, are knowledgeable about their claims, and are willing and able to protect the interests of Class members who purchased shares of their Fund.  *See* Sections IV – X *infra*.

In addition, Defendants have stipulated to the adequacy of counsel who represent the Class Representatives.  As set forth below and in the accompanying declarations of counsel, the Class Representatives are represented by counsel who are qualified and able

to conduct the litigation on behalf of the Classes, have substantial experience in complex litigation and class actions, and have the resources necessary to prosecute this case through trial and any appeals.  *See* Sections IV - X, *infra*.

The adequacy requirement is satisfied.

**B.    Each Proposed Class Satisfies the Requirements of Rule 23(b)(3)**

The proposed class must also satisfy the requirements of Rule 23(b)(3) that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**1.    Common Issues Predominate**

The Supreme Court has stated that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Clark v. State Farm Mutual Auto Ins. Co*., 245 F.R.D. 478, 488 (D. Colo. 2007) (quoting *Amchem*, 521 U.S. at 623).  It "focuses on the question of liability."  *Maez*, 268 F.R.D. at 397.  "[I]f the liability issue is common to the class, common questions are held to predominate over individual questions."  *Id*. (quoting *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 114 F.R.D. 48, 52 (S.D.N.Y. 1987)).

"In determining whether common issues predominate, many courts look to whether a 'common nucleus of operative facts' exists." *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 641 (D. Colo. 1986) (citing *Esplin*, 402 F.2d 94, 99). "[W]hen common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters have to be tried separately." *Anderson v. Merit Energy Co.*, Civil Action Nos. 07-CV-00916-LTB, 07-CV-01025-LTB-BNB, 2008 WL 2484187, at *6 (D. Colo. June 19, 2008) (quoting *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 388 (D. Colo. 1993)).

Determining whether common questions predominate requires "an identification of the relevant factual and legal issues, and the elements of the claims and defenses in the case." *Joseph*, 109 F.R.D. at 641. For each fund, Plaintiffs will prove the elements of their Securities Act claims using evidence common to all Class members. Under Section 11, "a plaintiff … need only show a material misstatement or omission to establish his *prima facie* case." *Herman & McLean v. Huddleston*, 459 U.S. 375, 382 (1983). The claim "places a relatively minimal burden on a plaintiff" and "was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of

liability on the parties who play a direct role in a registered offering."  *Id.* at 381-82.

Plaintiffs must prove that (1) they purchased registered securities; (2) the defendant is a

party held liable under Section 11; and (3) the registration statement "contained an untrue

statement of a material fact or omitted to state a material fact required to be stated therein

or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a)(1); *see*

*also In re Oppenheimer Rochester Funds Grp. Securities Litig.*, No. 09-md-02063-JLK-

KMT, 2012 WL 171035, at *5 (D. Colo. Jan. 20, 2012).

Like the Section 11 claim, Section 12(a)(2) does not require proof of scienter or

fraud, "or that [the] loss was a direct or proximate result of the misrepresentation or

omission."  *See Schaffer v. Evolving Sys., Inc.*, 29 F. Supp. 2d 1213, 1220 (D. Colo.

1998).  Plaintiffs must prove that (1) the defendant is a "statutory seller"; (2) the sale was

made by means of a prospectus; and (3) the prospectus or oral communication "includes

an untrue statement of a material fact or omits to state a material fact necessary in order

to make the statements, in the light of the circumstances under which they were made,

not misleading."  15 U.S.C. § 77l(a)(2); *see also Oppenheimer*, 2012 WL 171035, at *5.

Plaintiffs' Section 11 and 12(a)(2) claims here focus on Defendants' conduct, not

Plaintiffs' conduct.  The primary disputes are therefore common to all Class members for

each Fund:  Was there a false or misleading statement in the registration statement or

prospectus?  If so, was it material?  *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592

F.3d 347, 360 (2d Cir. 2010) ("In many cases—including this one—two issues are central

to claims under sections 11 and 12(a)(2): (1) the existence of either a misstatement or an unlawful omission; and (2) materiality.")  The claims are therefore "especially amenable to class action resolution."  *Public Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 101 (S.D.N.Y. 2011).

Each Complaint in the consolidated Actions identifies misstatements and omissions found in each respective Fund's Prospectuses.  Six of the seven Complaints allege material misrepresentations relating to the applicable Funds' "capital preservation" investment objectives.  Additional misstatements or omissions relating to each Fund involve:  (1) the level of the exposure to inverse floaters, and the risks and volatility associated with those investments; (2) the liquidity of the Funds' investments; and (3) the true value of Funds' assets and liabilities, and resulting NAVs.  *See* Sections IV – X.[19]

Proof of the falsity or misleading nature of the statements and omissions will be the same for all members of each Class.  *See, e.g.*, *Schwartz*, 178 F.R.D. at 551, 554 (finding predominance where the central issue was whether the defendants engaged in a "fraudulent course by omitting to disclose and/or misrepresenting material facts about their ready-to-drink line of teas"); *Intelcom*, 169 F.R.D. at 148 (finding that common issues predominated where the "claims involve a common scheme affecting the entire class which is the hallmark of securities fraud actions that are certified as class actions"); *Lerner*, 126 F.R.D. at 66 (finding predominance where the plaintiffs alleged "a common

---

[19] Additional misstatements or omissions relating to the each of the Funds are described in Sections II.C - E, *supra*.

scheme of misrepresentations" by the defendants in the offering materials).  Plaintiffs anticipate that the common evidence will include the relevant registration statements and prospectuses, Defendants' internal documents, testimony from Defendants, and expert testimony.

The issue of materiality is also the same for all members of each proposed Class. The "materiality requirement is satisfied when there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1318 (2011) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).  Materiality is determined by an objective standard, and its determination is therefore common to all Class members:  "An alleged misrepresentation is material only if a reasonable investor would consider it important in determining whether to buy or sell stock." *In re Rhythms Securities Litig.*, 300 F. Supp. 2d 1081, 1089 (D. Colo. 2004); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976) ("The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor.").

The Section 15 claim also turns on evidence common to members of each Class. To prove their Section 15 claims, Plaintiffs must establish "(1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling

person.'" *Oppenheimer*, 2012 WL 171035, at *28.  Like the Section 11 and 12(a)(2)

claims, proof of the Section 15 claim will turn on common evidence that is focused on

the alleged controlling persons' conduct.  *See, e.g.*, *Menkes v. Stolt-Nielsen, S.A.*, 270

F.R.D. 80, 91 (D. Conn. 2010) ("each class member's control person claim should be

identical given that Defendant's conduct alone is relevant to satisfying the applicable

standard").

     The only potentially individualized issue in each Action is the amount of damages

each Class member is entitled to receive.  But Section 11(e) provides a statutory measure

of damages that is applicable to each Class.  *See* 15 U.S.C. § 77k(e).  Because the amount

of each Class member's damages can be calculated using a mathematical formula, any

individualized issues related to damages are not "so onerous as to preclude

predominance."  *Clark*, 245 F.R.D. at 488; *see also Seijas v. Republic of Argentina*, 606

F.3d 53, 58 (2d Cir. 2010) (noting that it is "well-established that the fact that damages

may have to be ascertained on an individual basis is not sufficient to defeat class

certification"); *Espinoza v. 953 Assocs. LLC*, No. 10 Civ. 5517(SAS), 2011 WL 5574895,

at *7 (S.D.N.Y. Nov. 16, 2011) ("The focus of the predominance inquiry is on

defendants' liability, not on damages.").

     Defendants may argue that their defenses raise individual issues that will

predominate over common ones at trial, but Defendants' two "most readily available

defenses to liability"—due diligence and negative causation—are common to all Class

members across all seven Funds.  *See WorldCom*, 219 F.R.D. at 288, 293 n.30; *see also*

*In re Metropolitan Securities Litig.*, No. CV-04-25-FVS, 2008 WL 5102303, at *2 (E.D.

Wa. Nov. 25, 2008) ("[D]efendants have not cited, and independent research has failed to

uncover, a Section 11 case in which a court has ruled that the existence of a loss

causation defense prevents certification under Rule 23(b)(3).").  Moreover, "the mere fact

that questions peculiar to each individual member of the class remain after the common

questions of the defendant's liability have been resolved does not dictate the conclusion

that a class action is impermissible."  *Clark*, 245 F.R.D. at 488 (quoting *Sterling v.*

*Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988)); *see also Cook v. Rockwell*

*Int'l Corp.*, 181 F.R.D. 473, 480 (D. Colo. 1998) ("Under the commonality and

predominance requirements, the claims of class members need not be factually identical.

Indeed, if this were the standard, it would be rare, if even possible, to obtain class

certification.").  Defendants also can be expected to attempt to prove their defenses,

including the common defenses identified above in Section II.A, with common evidence.

### 2.      Class Treatment Is Superior

Four factors govern a court's analysis of the superiority of a class action to other

forms of litigating the claims: "(a) class members' interest in individually controlling the

prosecution or defense of separate actions; (b) the extent and nature of any litigation

concerning the controversy already begun by or against class members; (c) the

desirability or undesirability of concentrating the litigation of the claims in the particular

forum; and (d) the likely difficulties in managing a class action."  Fed. R. Civ. P.

23(b)(3).  Application of these factors confirms that class treatment of Plaintiffs' claims

is superior.

"[T]he superiority of class actions in large securities fraud [cases] is well

recognized."  *Intelcom*, 169 F.R.D. at 149.  As the *Intelcom* court explained:

> First, relitigation of the same issues and presentation of the same
> evidence in hundreds of individual actions ... would be grossly
> inefficient and wasteful of judicial resources.  Second, maintenance of
> individual actions would be prohibitively expensive.  Many of the
> crucial issues in this case will require substantial discovery, expert
> testimony, and trial time, all of which would render uneconomical
> individual actions.

*Id.* (quoting *Joseph*, 109 F.R.D. at 642).  Another court echoed these considerations:

> Securities fraud actions of this type involve geographically …
> [dispersed] plaintiffs and involve such costs that if this litigation was
> not brought via class action, the costs of litigation would likely
> outweigh any benefit obtained. Through the class action device, I will
> be able to manage the issues effectively and efficiently and ensure a
> speedy resolution to all issues involved.

*In re Ribozyme Pharms., Inc. Securities Litig.*, 205 F.R.D. 572, 579 (D. Colo. 2001).

Class treatment is superior to other available methods for the fair and efficient

adjudication of these Actions because:  (a) Defendants' alleged conduct caused the same

harm to large, dispersed classes of investors, many of whose individual damage claims

may not be sufficiently large to warrant individual litigation; (b) classwide treatment will

allow all the common issues to be litigated once, using common evidence to prove

Defendants' liability; and (c) re-litigation of the same issues and presentation of the same

evidence in hundreds or thousands of individual actions would be grossly inefficient and wasteful of judicial resources.

It is also desirable to concentrate the litigation of these claims in this Court.  The Court has already invested significant time sifting through the legal arguments contained in hundreds of pages of briefing on Defendants' motions to dismiss and issuing a comprehensive order.  Certifying the claims of the proposed Classes is the most efficient and, given this Court's familiarity with the facts and law of the case, the most effective way to adjudicate Class members' claims against Defendants.

### C.  Proposed Class Counsel Should Be Appointed Under Rule 23(g)

Under Rule 23(g), a court must appoint class counsel when a class is certified. The court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs have retained and are represented by counsel who are highly experienced in class action litigation and securities law.  *See* Sections IV - X, *infra*.  Proposed Class Counsel are jointly prosecuting the Actions in an efficient manner, having coordinated

briefing, discovery, and negotiations with defense counsel.  Proposed Class Counsel have

also investigated the claims at issue with the assistance of outside experts, drafted and

filed the Complaints that survived the Motions to Dismiss, effectively handled case

management and scheduling matters, and conducted fact discovery (including responding

to and propounding written discovery, producing thousands of pages of documents

requested by Defendants, receiving and reviewing thousands of pages of documents from

Defendants, responding to Defendants' motion to compel, and defending the depositions

of the proposed Class Representatives).  In addition, Plaintiffs' Liaison Counsel has

facilitated coordination of these consolidated Actions, deploying experience gained in the

numerous class cases he has litigated in this District for more than 15 years.  Proposed

Class Counsel each possess and are committed to devoting the skill, time and resources

needed to pursue the Actions to resolution in an efficient, cost-effective manner for all

the Classes.

In addition, the Court has previously appointed each of the proposed Class

Counsel as Lead Counsel for their respective Funds under the Private Securities

Litigation Reform Act (PSLRA).  Dkt. No. 223 (Order Appointing Lead Plaintiffs and

Lead Counsel).  Previous appointment of PSLRA Lead Counsel supports a finding of

adequacy of counsel under Rule 23(g).  *See, e.g.*, *In re Enron Corp. Sec. Deriv. & ERISA*

*Litig.*, 529 F. Supp. 2d 644, 674-75 (S.D. Tex. 2006) (where counsel had already been

appointed as lead counsel under the PSLRA, it also met the adequacy requirement of 23(g)).

For these reasons and the reasons set forth below, and because Defendants have stipulated to their adequacy, proposed Class Counsel should be appointed under Rule 23(g).

## IV.   THE AMT-FREE FUND CLASS SHOULD BE CERTIFIED

Lead Plaintiff and proposed Class Representative Leonard Klorfine moves for entry of an order certifying a class "of all persons or entities who acquired shares of the AMT-Free Fund traceable to the false and misleading registration statements during the period from May 13, 2006 through October 21, 2008 and were damaged by Defendants' violations of the 1933 Act."  AMT-Free Compl. ¶ 109.  Mr. Klorfine also requests appointment of Cohen Milstein Sellers & Toll PLLC as Class Counsel for the AMT-Free Fund Class under Rule 23(g).

### A.   The AMT-Free Fund Class Satisfies the Requirements of Rule 23(a)

#### 1.   The AMT-Free Fund Class Is Sufficiently Numerous

Defendants have stipulated that the members of the proposed AMT-Free Fund Class are sufficiently numerous to warrant certification.

#### 2.   Questions of Law and Fact Are Common to the AMT-Free Fund Class

The proposed AMT-Free Fund Class satisfies the commonality prerequisite.  Lead Plaintiff Klorfine alleges that Defendants made uniform material misrepresentations and

omissions of fact in the Fund Prospectuses, Registration Statements, SAIs, and other incorporated documents in violation of Sections 11, 12(a)(2) and 15 of the Securities Act by: (1) misrepresenting or failing to disclose that the Fund's overall investment risk was inconsistent with its stated capital preservation objective; (2) misrepresenting or failing to disclose the level of the Fund's exposure to inverse floaters and the risks and volatility associated with those investments; (3) failing to disclose that the Fund exceeded its stated percentage limits on illiquid investments and that its safeguards against excessive illiquid investments were ineffective; (4) overvaluing the Fund's assets and overstating the Fund's NAV; and (5) failing to disclose material facts regarding the representation that 75% of the securities the Fund bought would be investment-grade . AMT-Free Compl. ¶¶ 3, 44, 48, 90. Mr. Klorfine also contends that he and all proposed Class members were damaged in a similar fashion by the foregoing violations of the Securities Act. Thus, nearly all of the central questions of law and fact are common to Mr. Klorfine and all other proposed Class members.

Common questions of law and fact include whether Defendants violated the Securities Act, whether there were false or misleading statements and omissions in the Fund's Prospectuses and Registration Statements, whether those misrepresentations and omissions were material, and whether Class members were damaged as a result. AMT-Free Compl. ¶ 113. As shown above in Section III.A.2, these quintessential questions are

routinely found sufficient to satisfy the commonality requirement in securities class actions and they satisfy the requirement here as well.

> **3.      The Proposed Class Representative's Claims Are Typical of the AMT-Free Fund Class**

Lead Plaintiff Klorfine's claims are typical of other AMT-Free Class members' claims.  All of the proposed Class members, like Mr. Klorfine, purchased shares of the AMT-Free Fund during the proposed Class Period subject to the same alleged misstatements and omissions in the AMT-Free Fund's Prospectuses and Registration Statements.  AMT-Free Compl. ¶¶ 90-108.  Because he will advance the interests of the Class by pursuing his own claims, Lead Plaintiff Klorfine satisfies Rule 23(a)'s typicality requirement.

> **4.      The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the AMT-Free Fund Class**

Neither Lead Plaintiff Klorfine nor his counsel has interests antagonistic to, or in conflict with, the interests of the other AMT-Free Class members.  To the contrary, Mr. Klorfine has sustained losses as a result of the same alleged material misrepresentations and omissions as all other AMT-Free Fund Class members, and has a substantial financial stake in this litigation.  In total, he has lost $1,791,668.62 as a result of investments in the AMT-Free Fund from February 2007 through September 2008.  *See* Declaration of Lisa M. Mezzetti, Ex. A.  Mr. Klorfine thus has every reason to vigorously prosecute his own claims along with the claims of other AMT-Free Fund Class members, and has done so to date.

Mr. Klorfine has already demonstrated a willingness and ability to take an active role in the litigation to protect the interests of the absent Class members:  he understands the requirements and responsibilities of serving as a class representative in a securities class action under the PSLRA; he filed his motion for appointment as Lead Plaintiff; he has reviewed the key pleadings in this case; he has supervised and monitored the progress of this litigation and will continue to do so; he has produced documents, responded to written discovery, and appeared for a 7-hour deposition; and he intends to continue to work with counsel to maximize the recovery to the AMT-Free Fund Class.  *See* Dkt. No. 132-1, Ex. A (Declaration of Leonard Klorfine).

Given Mr. Klorfine's commitment to the case and Defendants' stipulation to the adequacy of Cohen Milstein as Class Counsel (which is further reinforced by the Rule 23(g) analysis set forth below), the adequacy requirement is satisfied.

### B.      The AMT-Free Fund Class Satisfies the Requirements of Rule 23(b)(3)

The AMT-Free Fund Class also meets the requirements of Rule 23(b)(3) because common issues predominate over any potential individualized issues and proceeding as a class action is the superior method for addressing the Section 11, 12(a)(2) and 15 claims.

### 1.      Common Issues Predominate

As the discussions in Sections II.A, III.A.2, III.B.1, and IV.A.2 demonstrate, the questions of law and fact common to Lead Plaintiff Klorfine and members of the proposed AMT-Free Fund Class overwhelm any individualized questions.  Mr. Klorfine

will use evidence common to all Class members to prove that Defendants made misstatements and omissions in the Prospectuses, Registration Statements, SAIs and incorporated documents concerning: the Fund's stated capital preservation investment objective; the extent of the Fund's exposure to inverse floaters, and the risks and volatility associated with those investments; the Fund's excessive exposure to illiquid assets and ineffectiveness of the safeguards against illiquidity; the overvaluation of the Fund's assets and overstated NAV; and the representation that 75% of the securities the Fund bought would be investment-grade.

Mr. Klorfine will prove that these misstatements and omissions were material to a reasonable investor, and that he and Class members suffered damages as a result of Defendants' violations of the Securities Act. Moreover, as the Securities Act claims focus squarely on Defendants' conduct, and do not require an individual examination of the conduct or state of mind of individual Class members, the common question element of the predominance requirement is satisfied for those claims.

Defendants also will attempt to prove their anticipated defenses, including the six defenses identified above in Section II.A (at pp. 7 – 8), with evidence common to the Class. Accordingly, the predominance standard of Rule 23(b)(3) is satisfied, as the common questions (and the evidence that will be used to prove, or defend, the claims) predominate over any potential individual issues.

### 2.     Class Treatment Is Superior

Class treatment is superior to other available methods of fair and efficient adjudication of this controversy for the reasons set forth in Section III.B.2 above.

### C.     Cohen Milstein Sellers & Toll PLLC Should Be Appointed As Class Counsel Under Rule 23(g)

As noted above, a court must appoint class counsel when a class is certified, applying the factors set forth in Rule 23(g)(1)(A).  The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Mr. Klorfine has retained and is represented by competent and qualified counsel who are highly experienced in class action litigation and securities law.  *See* Mezzetti Decl., ¶ 7 & Ex. D (CMS&T firm resume). Cohen Milstein has litigated class actions since the Firm was started in 1969 and has served as lead or co-lead counsel in many dozens of securities class actions since then.  *See id.*, ¶ 7 & Ex. D.  Further, since this case began, Cohen Milstein has devoted substantial time and effort to the case.  *Id.,* ¶ 8. Lead Plaintiff Klorfine's attorneys possess, and are committed to expending, the skill, time and resources needed to pursue this case to resolution.  *See id.*, ¶¶ 7-8, 10-11. Cohen Milstein will fairly and adequately protect the interests of the Class and should be appointed as Class Counsel.

## V.     THE AMT-FREE NEW YORK FUND CLASS SHOULD BE CERTIFIED

Lead Plaintiff and proposed Class Representative John Vazquez moves for entry

of an order certifying a class "of all persons or entities who acquired shares of the [AMT-

Free New York] Fund traceable to the false and misleading registration statements during

the period from May 21, 2006 through October 21, 2008 and were damaged by

Defendants' violations of the 1933 Act."  AMT-Free NY Compl. ¶ 101.  Mr. Vazquez

also requests appointment of Milberg LLP as Class Counsel for the AMT-Free New York

Fund Class under Rule 23(g).

### A.     The AMT-Free New York Fund Class Satisfies the Requirements of Rule 23(a)

#### 1.     The AMT-Free New York Fund Class Is Sufficiently Numerous

Defendants have stipulated that the members of the proposed AMT-Free New

York Fund Class are sufficiently numerous to warrant certification.

#### 2.     Questions of Law and Fact Are Common to the AMT-Free New York Fund Class

The proposed AMT-Free New York Fund Class also satisfies the commonality

prerequisite.  The AMT-Free New York Complaint alleges that Defendants made uniform

material misrepresentations and omissions of fact in the Fund Prospectuses, Registration

Statements, SAIs, and other incorporated documents in violation of Sections 11, 12(a)(2)

and 15 of the Securities Act by:  (1) misrepresenting or failing to disclose that the Fund's

overall investment risk was inconsistent with its stated capital preservation objective; (2)

misrepresenting or failing to disclose the level of the Fund's exposure to inverse floaters

and the risks and volatility associated with those investments; (3) failing to disclose that the Fund exceeded its stated percentage limits on illiquid investments and that its safeguards against excessive illiquid investments were ineffective; (4) overvaluing the Fund's assets and overstating the Fund's NAV; and (5) omitting material facts regarding the representation that 75% of the securities the Fund bought would be investment-grade. AMT-Free NY Compl. ¶¶ 3, 40.  Mr. Vazquez also contends that he and all proposed Class members were damaged in a similar fashion by the foregoing violations of the Securities Act.  Thus, nearly all of the central questions of law and fact are common to Mr. Vazquez and all other proposed Class members.

Common questions of law and fact include whether Defendants violated the Securities Act, whether there were false or misleading statements and omissions in the Fund's Prospectuses and Registration Statements, whether those misrepresentations and omissions were material, and whether Class members were damaged as a result.  AMT-Free NY Compl. ¶ 105.  As described above in Section III.A.2, these quintessential questions are routinely found sufficient to satisfy the commonality requirement in securities class actions and they satisfy the requirement here as well.

### 3.    The Proposed Class Representative's Claims Are Typical of the AMT-Free New York Fund Class

Lead Plaintiff Vazquez's claims are typical of other AMT-Free New York Class members' claims. All of the proposed Class members, like Mr. Vazquez, purchased shares of the AMT-Free New York Fund during the proposed Class Period subject to the

same alleged misstatements and omissions in the AMT-Free New York Fund's

Prospectuses and Registration Statements.  AMT-Free NY Compl. ¶¶ 82-100.  Because

Mr. Vazquez will advance the interests of the Class by pursuing his own claims, he

satisfies Rule 23(a)'s typicality requirement.

### 4.   The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the AMT-Free New York Fund Class

Neither Lead Plaintiff Vazquez nor his counsel has interests antagonistic to, or in

conflict with, the interests of the other AMT-Free New York Class members.  To the

contrary, Mr. Vazquez has sustained losses as a result of the same alleged material

misrepresentations and omissions as all other AMT-Free New York Fund Class members.

Mr. Vazquez has a substantial financial stake in this litigation and has every reason to

vigorously prosecute his own claims along with the claims of other AMT-Free New York

Fund Class members.

Mr. Vazquez has already demonstrated a willingness and ability to take an active

role in the litigation to protect the interests of the absent Class members.  He understands

the requirements and responsibilities of serving as a class representative in a securities

class action under the PSLRA; has reviewed the key pleadings in this case; has

supervised and monitored the progress of this litigation (and will continue to do so); has

produced documents, responded to written discovery, and appeared for an approximately

6-hour deposition; and intends to continue to work with counsel to maximize the

recovery to the AMT-Free New York Fund Class.  *See* Orrico Decl., Ex. D at 162:5-17

(Mr. Vazquez describing his oversight of counsel and understanding of his responsibilities as Lead Plaintiff); 111:22-25 (Mr. Vazquez describing his document production efforts); 136:3-10 (Mr. Vazquez describing his review of case documents).

Given Mr. Vazquez's commitment to the case and Defendants' stipulation to the adequacy of Milberg as Class Counsel (which is further reinforced by the Rule 23(g) analysis set forth below), the adequacy requirement is satisfied.

**B.    The AMT-Free New York Fund Class Satisfies the Requirements of Rule 23(b)(3)**

The AMT-Free New York Fund Class also satisfies Rule 23(b)(3).

### 1.    Common Issues Predominate

As the discussions in Sections II.A, III.A.2, III.B.1, and V.A.2 demonstrate, the questions of law and fact common to Lead Plaintiff Vazquez and members of the proposed AMT-Free New York Fund Class overwhelm any individualized questions. Mr. Vazquez will use evidence common to all Class members to prove that Defendants made misstatements and omissions in the Prospectuses, Registration Statements, SAIs and incorporated documents concerning:  the Fund's stated capital preservation investment objective; the extent of the Fund's exposure to inverse floaters, and the risks and volatility associated with those investments; the Fund's excessive exposure to illiquid assets and ineffectiveness of the safeguards against illiquidity; the overvaluation of the Fund's assets and overstated NAV; and the representation that 75% of the securities the Fund bought would be investment-grade.

Mr. Vazquez will prove that these misstatements and omissions were material to a reasonable investor, and that he and the other Class members suffered damages as a result of Defendants' violations of the Securities Act.  Moreover, as the Securities Act claims focus squarely on Defendants' conduct, and do not require an individual examination of the conduct or state of mind of individual Class members, the common question element of the predominance requirement is satisfied for those claims.

Defendants also will attempt to prove their anticipated defenses, including the six defenses identified above in Section II.A (at pp. 7 – 8), with evidence common to the Class.  Accordingly, the predominance standard of Rule 23(b)(3) is satisfied, as the common questions (and the evidence that will be used to prove, or defend, the claims) predominate over any potential individual issues.

### 2.     Class Treatment Is Superior

Class treatment is superior to other available methods of fair and efficient adjudication of this controversy for the reasons set forth in Section III.B.2 above.

### C.     Milberg Should Be Appointed As Class Counsel Under Rule 23(g)

Mr. Vazquez has retained and is represented by Milberg LLP—competent and qualified attorneys with considerable experience in securities class actions and complex litigation.  *See* Orrico Decl., ¶¶ 2-3 & Ex. A (Milberg firm resume).  Milberg has served as lead or co-lead counsel in many of the largest and most significant securities actions ever.  *See id.*, Ex. A (Milberg firm resume).  Additionally, Milberg has devoted

substantial resources to this Action to date and has demonstrated its ability to prosecute this case by defeating Defendants' motion to dismiss and conducting discovery.  *Id.* at ¶ 3.  Milberg will fairly and adequately protect the interests of the Class and should be appointed as Class Counsel under Rule 23(g).

## VI.   THE CALIFORNIA FUND CLASSES SHOULD BE CERTIFIED

Lead Plaintiff and proposed Class Representative Joseph Stockwell, as trustee of the Stockwell Family Revocable Trust UTA 06/2000, moves for entry of an order certifying three classes consisting of persons and entities who purchased A, B and C shares of the California Fund pursuant or traceable to one of the Fund's Registration Statements or Prospectuses, or who held A, B or C shares of the Fund during the relevant time periods.  The three proposed Classes (whose members will likely substantially overlap) are:

- The **Securities Class** consists of all persons and entities who, between September 27, 2006 and November 28, 2008, acquired shares of any class of the Fund pursuant or traceable to a false or misleading Registration Statement or Prospectus, and who were damaged thereby.

- The **Holder Class** consists of all persons and entities who owned shares of any class of the Fund from February 6, 2006 through February 6, 2009, who were not offered an opportunity to vote on: (a) the Fund's change in investment objective; or (b) the Fund's change in its 25% limit on investments in any given industry.

- The **California Class** consists of all persons and entities residing in the State of California who owned shares of any class of the Fund during the period from February 6, 2005 through February 6, 2009, and were not offered an opportunity to vote on: (a) the Fund's change in investment objective; or (b) the Fund's change in its 25% limit on investments in any given industry.

Mr. Stockwell also requests appointment of the Sparer Law Group as Class Counsel for the California Fund Classes under Rule 23(g).

On behalf of the Securities Class, Mr. Stockwell alleges that the Fund, its investment advisor, underwriter, trustees, officers, and other Defendants violated the Securities Act by making untrue statements and omissions of material fact in the Fund's Registration Statements and Prospectuses.  Cal. Compl. ¶ 4.  These untrue statements and omissions concern the description of the Fund's stated capital preservation investment objectives, the liquidity of the Fund's investments (including those in tobacco bonds), the true value of the Fund's assets and liabilities and resulting NAVs, the level of exposure and risk of the Fund's investment in inverse floaters, the Fund's over-concentration in the California real estate industry and in junk bonds, and the ratings of the Fund's self-rated bonds.  *Id.* ¶¶ 5-21.

On behalf of the Holder Class, Mr. Stockwell alleges that the Trustee Defendants breached their fiduciary duties by violating the Holder Class members' voting rights in deviating from the Fund's capital preservation investment objective and exceeding its industry concentration limits without obtaining the required votes of a majority of the Fund's outstanding shares in accordance with the Investment Company Act (ICA).  Cal. Compl. ¶¶ 22, 24, 66, 91-92, 218-22, 226-27, 238.  For the same reason, Mr. Stockwell alleges on behalf of the California Class that all Defendants violated California's Unfair Competition Law (UCL).  Cal. Compl. ¶¶ 23, 225-26.

The three California Fund Classes should be certified because each of the proposed Classes satisfies the prerequisites of Rule 23(a) and 23(b)(3).

**A.      The California Fund Classes Satisfy the Requirements of Rule 23(a)**

**1.      The California Fund Classes Are Sufficiently Numerous**

Defendants have stipulated that the members of the proposed California Fund Classes are sufficiently numerous to warrant certification.

**2.      Questions of Law and Fact Are Common to the California Fund Classes**

There are several legal and factual questions common to the California Fund Class members.  For the Securities Class, Lead Plaintiff Stockwell alleges that Defendants made uniform material misrepresentations and omissions of fact in the Fund Prospectuses, Registration Statements, SAIs, and other incorporated documents in violation of Sections 11, 12(a)(2) and 15 of the Securities Act by:  (1) misrepresenting or failing to disclose that the Fund's overall investment risk was inconsistent with its stated capital preservation objective; (2) misrepresenting or failing to disclose the level of the Fund's exposure to inverse floaters and the risks and volatility associated with those investments; (3) failing to disclose that the Fund exceeded its stated percentage limits on illiquid investments and that its safeguards against excessive illiquid investments were ineffective; and (4) overvaluing the Fund's assets and overstating the Fund's NAV.  Cal. Compl. ¶¶ 5, 14-21.  In addition, Mr. Stockwell alleges that Defendants failed to disclose material facts about the Fund's concentration in the California real estate industry beyond

the stated 25% limitation and failed to disclose material information about the Fund's

investment in "dirt bonds" and the risks associated with those investments.  Cal. Compl.

¶¶ 6-10.  Mr. Stockwell also alleges that Defendants misrepresented the Fund's self-

rating of unrated bonds and the risks associated with those investments.  *Id.* ¶¶ 95-105.

Mr. Stockwell contends that he and all proposed Class members were damaged in a

similar fashion by the foregoing violations of the Securities Act.

Questions of law and fact common to the Securities Class include whether

Defendants violated the Securities Act, whether there were false or misleading statements

and omissions in the Fund's Prospectuses and Registration Statements, whether those

misrepresentations and omissions were material, and whether Class members were

damaged as a result.  Cal. Compl. ¶ 181.  As described above in Section III.A.2, these

quintessential questions are routinely found sufficient to satisfy the commonality

requirement in securities class actions and they satisfy the requirement here as well.

For the Holder Class and California Class, the common issues of law and fact

include whether and when the Fund deviated from its investment objective and its

industry concentration policies, whether the Fund was required to obtain a vote of a

majority of the Fund's outstanding shares before doing so, and whether Class members

were damaged as a result of the Fund's deviations.

Because nearly all of the central questions of law and fact are common to Mr.

Stockwell and all other members of the proposed Classes, the commonality requirement

is satisfied.

### 3.     The Proposed Class Representative's Claims Are Typical of the California Fund Classes

Lead Plaintiff Stockwell's claims are typical to those of other members of the

Securities Class because all members of the proposed Class, like Mr. Stockwell,

purchased shares of the California Fund and were subject to the same alleged

misstatements and omissions by Defendants.  And Mr. Stockwell, like members of the

Holder Class and California Class, held shares in the California Fund and was denied the

right to vote on changes in the Fund's fundamental investment policies.  As a result, the

legal theories and evidence are substantially the same for every member of each of the

Classes.  Because he will advance the interests of the Class by pursuing his own claims,

Lead Plaintiff Stockwell satisfies Rule 23(a)'s typicality requirement.

### 4.     The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the California Fund Classes

Mr. Stockwell has already demonstrated his adequacy to serve as class

representative of the proposed Classes.  He has produced more than one thousand pages

of documents, responded to twenty-three written discovery requests, and was deposed for

a full day.  Mr. Stockwell has confirmed that he is knowledgeable about the case and that

he is willing to continue to protect the interests of Class members.  Sparer Decl., Ex. A

(Stockwell Decl.) at ¶¶ 5-6; Ex. B (Stockwell Dep.) at 72:24-73:3; 73:21-74:2.  Mr.

Stockwell's interests are aligned with those of the other Class members, and neither he

nor his counsel has interests antagonistic to, or in conflict with, the interests of the other

Class members.  Having lost close to $1 million as a result of his investment in the California Fund, he is committed to prosecuting the claims vigorously on behalf of the Classes.  *See id.,* Ex. A (Stockwell Decl.) at ¶ 3.

Given Mr. Stockwell's commitment to the case and Defendants' stipulation to the adequacy of Sparer Law Group as Class Counsel (which is further reinforced by the Rule 23(g) analysis set forth below), the adequacy requirement is satisfied.

**B.**     **The California Fund Classes Satisfy the Requirements of Rule 23(b)(3)**

The proposed California Fund Classes also satisfy Rule 23(b)(3).

**1.**     **Common Issues Predominate**

As the discussions in Sections II.A, III.A.2, III.B.1, and VI.A.2 demonstrate, the questions of law and fact common to Lead Plaintiff Stockwell and members of each of the proposed California Fund Classes overwhelm any individualized questions.

First, Mr. Stockwell will use evidence common to all Securities Class members to prove that Defendants made misstatements and omissions in the Prospectuses, Registration Statements, SAIs and incorporated documents concerning:  the Fund's stated capital preservation investment objective; the extent of the Fund's exposure to inverse floaters, and the risks and volatility associated with those investments; the Fund's excessive exposure to illiquid assets and ineffectiveness of the safeguards against illiquidity; the overvaluation of the Fund's assets and overstated NAV; the Fund's self-rating of bonds; and the Fund's over-concentration in the California real estate industry.

45

Mr. Stockwell will prove that these misstatements and omissions were material to a reasonable investor, and that he and Securities Class members suffered damages as a result of Defendants' violations of the Securities Act.  Moreover, as the Securities Act claims focus squarely on Defendants' conduct, and do not require an individual examination of the conduct or state of mind of individual Securities Class members, the common question element of the predominance requirement is satisfied for those claims. Defendants also will attempt to prove their anticipated defenses, including the six defenses identified above in Section II.A. (at pp. 7 – 8), with evidence common to the Securities Class.

Second, the substantive issues that will control the outcome of the Holder Class' breach of fiduciary duty claim are whether (1) the Trustee Defendants owed a fiduciary duty to the Holder Class members, (2) the Trustee Defendants breached their fiduciary duty, and (3) the Holder Class members are entitled to recover damages.  *See Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 820, 124 Cal. Rptr. 3d 256 (Cal. 2011).  The existence and scope of the Trustee Defendants' fiduciary duties will be common to all Holder Class members, as will the question of whether the Trustee Defendants breached their duties, because these elements turn on the Defendants' conduct.  *See, e.g.*, *Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 391 (N.D. Ill. 2006) (certifying class where "Plaintiffs' claim of breach of fiduciary duty primarily involves an inquiry into the

conduct of the defendants, an issue that is common to all putative class members."). And the Class members' damages will be computed by a common formula. *See id.* at 392.

Finally, Lead Plaintiff Stockwell also asserts a claim under the California UCL on behalf of the California Class. *See* Cal. Bus. & Prof. Code § 17200. Section 17200 "is a broad statute designed to remedy violations of other laws, both state and federal." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007). The UCL allows individuals to obtain disgorgement and restitution of money or property obtained by Defendants as a result of a business practice that is unlawful, unfair or deceptive. Cal. Bus. & Prof. Code §§ 17200, 17203. Lead Plaintiff here asserts a claim under the "unlawful" prong of the UCL. To prove this claim, Lead Plaintiff must show that Defendants engaged in a business practice that violated another law (even if the other law confers no private right of action). *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143, 131 Cal. Rptr. 2d 29 (Cal. 2003); *Blue Cross of California, Inc. v. Superior Court*, 180 Cal. App. 4th 1237, 1250, 102 Cal. Rptr. 3d 615 (Cal. Ct. App. 2009) (holding that the UCL authorizes lawsuits to remedy unlawful conduct even if the underlying statute that renders the conduct unlawful does not itself create an independent right of action).

The California Fund Complaint alleges that Defendants caused the Fund to deviate from two fundamental investment policies—its capital preservation investment objective and industry concentration restriction—without obtaining the approval of a majority of

the Fund's outstanding shares.  Cal. Compl. ¶¶ 216-22.  Defendants thereby violated

section 48(a) of the ICA and caused the Fund to violate section 13(a) of the ICA.  *Id.*

¶ 226; *see also* 15 U.S.C. §§ 80a-13(a) & 80a-47(a).  Like the claims asserted by the

other two proposed Classes, proof of the UCL claim will turn on the Fund's investments

and Defendants' conduct, and not Class members' conduct.

Because proof of liability for the claims of each of the three proposed Classes

focus on Defendants' conduct, the Classes are "sufficiently cohesive to warrant

adjudication by representation."  *Clark*, 245 F.R.D. at 488; *Joseph*, 109 F.R.D. at 641.

### 2.     Class Treatment Is Superior

Class treatment is superior to other available methods of fair and efficient

adjudication of this controversy for the reasons set forth in Section III.B.2 above.

### C.     Sparer Law Group Should Be Appointed As Class Counsel Under Rule 23(g)

Lead Plaintiff Stockwell requests that the Court appoint Sparer Law Group as

Class Counsel for the California Fund Classes, as the firm satisfies the elements of Rule

23(g)(1)(A).  As set forth above in the accompanying Declaration of Alan W. Sparer,

Sparer Law Group is well qualified to prosecute this case on behalf of Mr. Stockwell and

the other members of the California Fund Classes and has demonstrated its ability to

prosecute these claims.  Additional counsel Girard Gibbs LLP also has substantial

experience in complex litigation and class actions, and is committed to devoting the

resources necessary to prosecute this case through trial and any appeals.  Sparer Decl., ¶

6. Since the Court approved Sparer Law Group as Lead Counsel on November 18, 2009, the firms have devoted considerable resources to this matter and will continue to do so as necessary to vigorously prosecute this litigation and to secure all available benefits for California Fund Class members. *Id.* Because the firm will fairly and adequately protect the interests of the Class, the Court should appoint Sparer Law Group as Class Counsel for the proposed California Fund Classes.

## VII.   THE NATIONAL FUND CLASS SHOULD BE CERTIFIED

Lead Plaintiff and proposed Class Representative Peter Unanue moves for entry of an order certifying a class "of all persons or entities who acquired shares of the [National] Fund traceable to the false and misleading registration statements during the period from March 13, 2006 through October 21, 2008 and were damaged by Defendants' violations of the 1933 Act." Nat'l Compl. ¶ 99. Mr. Unanue also requests appointment of Milberg LLP as Class Counsel for the National Fund Class under Rule 23(g).

### A.   The National Fund Class Satisfies the Requirements of Rule 23(a)

#### 1.   The National Fund Class Is Sufficiently Numerous

Defendants have stipulated that the members of the proposed National Fund Class are sufficiently numerous to warrant certification.

#### 2.   Questions of Law and Fact Are Common to the National Fund Class

The proposed National Fund Class also satisfies the commonality prerequisite. Lead Plaintiff Unanue alleges that Defendants made uniform material misrepresentations

and omissions of fact in the Fund Prospectuses, Registration Statements, SAIs, and other incorporated documents in violation of Sections 11, 12(a)(2) and 15 of the Securities Act by: (1) misrepresenting or failing to disclose the level of the Fund's exposure to inverse floaters and the risks and volatility associated with those investments; (2) failing to disclose that the Fund exceeded its stated percentage limits on illiquid investments and that its safeguards against excessive illiquid investments were ineffective; (3) overvaluing the Fund's assets and overstating the Fund's NAV and (4) falsely stating that the Fund invested at least 80% of its net assets in municipal securities. Nat'l Compl. ¶ 3. In addition, Mr. Unanue alleges that the Fund violated its stated fundamental policy to invest at least 80 percent of its net assets in municipal securities. *Id.* Mr. Unanue also contends that he and all proposed Class members were damaged in a similar fashion by the foregoing violations of the Securities Act. Thus, nearly all of the central questions of law and fact are common to Mr. Unanue and all other proposed Class members.

Common questions of law and fact include whether Defendants violated the Securities Act, whether there were false or misleading statements and omissions in the Fund's Prospectuses and Registration Statements, whether those misrepresentations and omissions were material, and whether Class members were damaged as a result. Nat'l Compl. ¶ 103. As described above in Section III.A.2, these quintessential questions are routinely found sufficient to satisfy the commonality requirement in securities class actions and they satisfy the requirement here as well.

### 3.    The Proposed Class Representative's Claims Are Typical of the National Fund Class

Lead Plaintiff Unanue's claims are typical of other National Class members' claims. All of the proposed Class members, like Mr. Unanue, purchased shares of the National Fund during the proposed Class Period subject to the same alleged misstatements and omissions in the National Fund's Prospectuses and Registration Statements.  Nat'l Compl. ¶¶ 80-98.  Because he will advance the interests of the Class by pursuing his own claims, Lead Plaintiff Unanue satisfies Rule 23(a)'s typicality requirement.

### 4.    The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the National Fund Class

Neither Lead Plaintiff Unanue nor his counsel has interests antagonistic to, or in conflict with, the interests of the other National Fund Class members.  To the contrary, Mr. Unanue has sustained losses as a result of the same alleged material misrepresentations and omissions as all other National Fund Class members.  Mr. Unanue has a substantial financial stake in this litigation.  He has sustained significant losses as a result of his investment in the National Fund and has every reason to vigorously prosecute his own claims along with the claims of other National Fund Class members, and has done so to date.  *See* Orrico Decl., Ex. B (Unanue Dep.) at 57:5-9, 177:6-7, 227:15 (Mr. Unanue describing his losses in the Fund).  He has already demonstrated a willingness and ability to take an active role in the litigation to protect the interests of the absent Class members.  *See id.*, Ex. B at 231:7-22 (Mr. Unanue describing his oversight

of counsel which included his requests for status updates from counsel and his review of case documents); 225:14-18 (Mr. Unanue describing part of his document production).

Mr. Unanue understands the requirements and responsibilities of serving as a class representative in a securities class action under the PSLRA; has reviewed the key pleadings in this case; has supervised and monitored the progress of this litigation, and will continue to do so; has produced documents, responded to written discovery, and appeared for an approximately 7-hour deposition; and intends to continue to work with counsel to maximize the recovery to the National Fund Class. *See id.*  Given Mr. Unanue's commitment to the case and Defendants' stipulation to the adequacy of Milberg as Class Counsel (which is further reinforced by the Rule 23(g) analysis set forth below), the adequacy requirement is satisfied.

**B.      The National Fund Class Satisfies the Requirements of Rule 23(b)(3)**

The National Fund Class also meets the requirements of Rule 23(b)(3).

**1.      Common Issues Predominate**

As the discussions in Sections II.A, III.A.2, III.B.1, and VII.A.2 demonstrate, the questions of law and fact common to Lead Plaintiff Unanue and members of the proposed National Fund Class overwhelm any individualized questions.  Mr. Unanue will use evidence common to all Class members to prove that Defendants made misstatements and omissions in the Prospectuses, Registration Statements, SAIs and incorporated documents concerning:  the extent of the Fund's exposure to inverse floaters, and the

risks and volatility associated with those investments; the Fund's excessive exposure to illiquid assets and ineffectiveness of the safeguards against illiquidity; the overvaluation of the Fund's assets and overstated NAV; and the Fund's statements that it would, as a fundamental policy, invest at least 80 percent of its net assets in municipal securities.

Mr. Unanue will prove that these misstatements and omissions were material to a reasonable investor, and that he and Class members suffered damages as a result of Defendants' violations of the Securities Act.  Moreover, as the Securities Act claims focus squarely on Defendants' conduct, and do not require an individual examination of the conduct or state of mind of individual Class members, the common question element of the predominance requirement is satisfied for those claims.

Defendants also will attempt to prove their anticipated defenses, including the six defenses identified above in Section II.A (at pp. 7 – 8), with evidence common to the Class.  Accordingly, the predominance standard of Rule 23(b)(3) is satisfied, as the common questions (and the evidence that will be used to prove, or defend, the claims) predominate over any potential individual issues.

### 2.      Class Treatment Is Superior

Class treatment is superior to other available methods of fair and efficient adjudication of this controversy for the reasons set forth in Section III.B.2 above.

### C.      Milberg Should Be Appointed As Class Counsel Under Rule 23(g)

Mr. Unanue has retained and is represented by Milberg LLP—competent and qualified attorneys with considerable experience in securities class actions and complex litigation.  As explained above in Section V.C and in the accompanying Orrico Declaration, Milberg has substantial experience in class action and securities cases, and has devoted and will continue to devote the resources necessary to pursue this case to resolution.  *See* Orrico Decl., ¶¶ 2-3 & Ex. A (Milberg firm resume).  Milberg will fairly and adequately protect the interests of the Class and should be appointed as Class Counsel under Rule 23(g).

## VIII.   THE NEW JERSEY FUND CLASS SHOULD BE CERTIFIED

Lead Plaintiff and proposed Class Representative Victor Sasson moves for entry of an order certifying a class "of all persons or entities who acquired shares of the [New Jersey] Fund traceable to the false and misleading registration statements during the period from April 24, 2006 through October 21, 2008 and were damaged by Defendants' violations of the 1933 Act."  NJ Compl. ¶ 102.  Mr. Sasson also requests appointment of Milberg LLP as Class Counsel for the New Jersey Fund Class under Rule 23(g).

### A.     The New Jersey Fund Class Satisfies the Requirements of Rule 23(a)

#### 1.     The New Jersey Fund Class Is Sufficiently Numerous

Defendants have stipulated that the members of the proposed New Jersey Fund

Class are sufficiently numerous to warrant certification.

#### 2.     Questions of Law and Fact Are Common to the New Jersey Fund Class

The proposed New Jersey Fund Class also satisfies the commonality prerequisite.

Lead Plaintiff Sasson alleges that Defendants made uniform material misrepresentations

and omissions of fact in the Fund Prospectuses, Registration Statements, SAIs, and other

incorporated documents in violation of Sections 11, 12(a)(2) and 15 of the Securities Act

by:  (1) misrepresenting or failing to disclose that the Fund's overall investment risk was

inconsistent with its stated capital preservation objective; (2) misrepresenting or failing to

disclose the level of the Fund's exposure to inverse floaters and the risks and volatility

associated with those investments; (3) failing to disclose that the Fund exceeded its stated

percentage limits on illiquid investments and that its safeguards against excessive illiquid

investments were ineffective; (4) overvaluing the Fund's assets and overstating the

Fund's NAV; and (5) omitting material facts regarding the representation that 75% of the

securities the Fund bought would be investment-grade.  NJ Compl. ¶¶ 3, 38.  Mr. Sasson

also contends that he and all proposed Class members were damaged in a similar fashion

by the foregoing violations of the Securities Act.  Thus, nearly all of the central questions

of law and fact are common to Mr. Sasson and all other proposed Class members.

Common questions of law and fact include whether Defendants violated the Securities Act, whether there were false or misleading statements and omissions in the Fund's Prospectuses and Registration Statements, whether those misrepresentations and omissions were material, and whether Class members were damaged as a result. NJ Compl. ¶ 106. As described above in Section III.A.2, these quintessential questions are routinely found sufficient to satisfy the commonality requirement in securities class actions and they satisfy the requirement here as well.

**3.   The Proposed Class Representative's Claims Are Typical of the New Jersey Fund Class**

Lead Plaintiff Sasson's claims are typical of other New Jersey Fund Class members' claims. All of the proposed Class members, like Mr. Sasson, purchased shares of the New Jersey Fund during the proposed Class Period subject to the same alleged misstatements and omissions in the New Jersey Fund's Prospectuses and Registration Statements. NJ Compl. ¶¶ 83-101. Because he will advance the interests of the Class by pursuing his own claims, Lead Plaintiff Sasson satisfies Rule 23(a)'s typicality requirement.

**4.   The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the New Jersey Fund Class**

Neither Lead Plaintiff Sasson nor his counsel has interests antagonistic to, or in conflict with, the interests of the other New Jersey Fund Class members. To the contrary, Mr. Sasson has sustained losses as a result of the same alleged material misrepresentations and omissions as all other New Jersey Fund Class members. Mr.

Sasson has a substantial financial stake in this litigation and has every reason to vigorously prosecute his own claims along with the claims of other New Jersey Fund Class members, and has done so to date.  Orrico Decl., Ex. C (Sasson Dep.) at 46:5-6, 54:22-25, 172:23-24 (Mr. Sasson describing his losses as a result of investing in the Fund).   He has already demonstrated a willingness and ability to take an active role in the litigation to protect the interests of the absent Class members.  *See id.*, Ex. C at 91:8-15 (Mr. Sasson describing his responsibility to monitor the litigation, look out for the interests of the other members of the potential class, and ensure his counsel prosecute the case vigorously); 91-92:21-2 (Mr. Sasson describing his review of case documents).

Mr. Sasson understands the requirements and responsibilities of serving as a class representative in a securities class action under the PSLRA, has reviewed the key pleadings in this case, has supervised and monitored the progress of this litigation, and will continue to do so, has produced documents, responded to written discovery, and appeared for a nearly 7-hour deposition, and intends to continue to work with counsel to maximize the recovery to the New Jersey Fund Class.

Given Mr. Sasson's commitment to the case and Defendants' stipulation to the adequacy of Milberg as Class Counsel (which is further reinforced by the Rule 23(g) analysis set forth below), the adequacy requirement is satisfied.

### B.    The New Jersey Fund Class Satisfies the Requirements of Rule 23(b)(3)

The New Jersey Fund Class also meets the requirements of Rule 23(b)(3).

### 1.   Common Issues Predominate

As the discussions in Sections II.A, III.A.2, III.B.1, and VIII.A.2 demonstrate, the questions of law and fact common to Lead Plaintiff Sasson and members of the proposed New Jersey Fund Class overwhelm any individualized questions.  Mr. Sasson will use evidence common to all Class members to prove that Defendants made misstatements and omissions in the Prospectuses, Registration Statements, SAIs and incorporated documents concerning:  the Fund's stated capital preservation investment objective; the extent of the Fund's exposure to inverse floaters, and the risks and volatility associated with those investments; the Fund's excessive exposure to illiquid assets and ineffectiveness of the safeguards against illiquidity; the overvaluation of the Fund's assets and overstated NAV; and the representation that 75% of the securities the Fund bought would be investment-grade.

Mr. Sasson will prove that these misstatements and omissions were material to a reasonable investor, and that he and Class members suffered damages as a result of Defendants' violations of the Securities Act.  Moreover, as the Securities Act claims focus squarely on Defendants' conduct, and do not require an individual examination of the conduct or state of mind of individual Class members, the common question element of the predominance requirement is satisfied for those claims.

Defendants also will attempt to prove their anticipated defenses, including the six defenses identified above in Section II.A (at pp. 7 – 8), with evidence common to the

Class.  Accordingly, the predominance standard of Rule 23(b)(3) is satisfied, as the common questions (and the evidence that will be used to prove, or defend, the claims) predominate over any potential individual issues.

### 2.     Class Treatment Is Superior

Class treatment is superior to other available methods of fair and efficient adjudication of this controversy for the reasons set forth in Section III.B.2 above.

### C.     Milberg Should Be Appointed As Class Counsel Under Rule 23(g)

Mr. Sasson has retained and is represented by Milberg LLP—competent and qualified attorneys with considerable experience in securities class actions and complex litigation.  As explained above in Section V.C and in the accompanying Orrico Declaration, Milberg has substantial experience in class action and securities cases, and has devoted and will continue to devote the resources necessary to pursue this case to resolution.  *See* Orrico Decl., ¶¶ 2-3 & Ex. A (Milberg firm resume).  Milberg will fairly and adequately protect the interests of the Class and should be appointed as Class Counsel under Rule 23(g).

## IX.     THE PENNSYLVANIA FUND CLASS SHOULD BE CERTIFIED

Lead Plaintiff and proposed Class Representative Dharamvir Bhanot, together with additional plaintiffs and proposed Class Representatives William E. Miles, Jr., and John P. Galganovicz (the "Pennsylvania Plaintiffs"), move for entry of an order certifying a class consisting of all persons or entities who acquired shares in the Oppenheimer

Pennsylvania Municipal Fund between September 27, 2006 and November 26, 2008, inclusive, pursuant or traceable to materially misleading Registration Statements and Prospectuses for the Pennsylvania Fund and who were damaged thereby.  Pa. Compl. ¶ 150.  The Pennsylvania Plaintiffs further request appointment of Berger & Montague, P.C., as Class Counsel for the Pennsylvania Fund Class under Rule 23(g).

**A.      The Pennsylvania Fund Class Satisfies the Requirements of Rule 23(a)**

**1.      The Pennsylvania Fund Class Is Sufficiently Numerous**

Defendants have stipulated that the members of the proposed Pennsylvania Fund Class are sufficiently numerous to warrant certification.

**2.      Questions of Law and Fact Are Common to the Pennsylvania Fund Class**

The proposed Pennsylvania Fund Class also satisfies the commonality prerequisite.  The Pennsylvania Plaintiffs allege that Defendants made uniform material misrepresentations and omissions of fact in the Fund Prospectuses, Registration Statements, SAIs, and other incorporated documents in violation of Sections 11, 12(a)(2) and 15 of the Securities Act by:  (1) misrepresenting or failing to disclose that the Fund's overall investment risk was inconsistent with its stated capital preservation objective; (2) misrepresenting or failing to disclose the level of the Fund's exposure to inverse floaters and the risks and volatility associated with those investments; (3) failing to disclose that the Fund exceeded its stated percentage limits on illiquid investments and that its safeguards against excessive illiquid investments were ineffective; and (4) overvaluing

the Fund's assets and overstating the Fund's NAV.  Pa. Compl. ¶¶ 69-76, 94-128.  The

Pennsylvania Plaintiffs also contend that the Fund failed to disclose the extent to which

its portfolio contained junk bonds and/or unrated bonds.  *See* Pa. Compl. ¶¶ 96-104.  In

addition, the Pennsylvania Plaintiffs allege that they and all proposed Class members

were damaged in a similar fashion by the foregoing violations of the Securities Act.

Thus, nearly all of the central questions of law and fact are common to the Pennsylvania

Plaintiffs and all other proposed Class members.

Common questions of law and fact include whether Defendants violated the

Securities Act, whether there were false or misleading statements and omissions in the

Fund's Prospectuses and Registration Statements, whether those misrepresentations and

omissions were material, and whether Class members were damaged as a result.  Pa.

Compl. ¶ 155.  As described above in Section III.A.2, these quintessential questions are

routinely found sufficient to satisfy the commonality requirement in securities class

actions and they satisfy the requirement here as well.

### 3.     The Proposed Class Representatives' Claims Are Typical of the Pennsylvania Fund Class

The Pennsylvania Plaintiffs' claims are typical of other Pennsylvania Fund Class

members' claims.  All of the proposed Class members, like the Pennsylvania Plaintiffs,

purchased shares of the Pennsylvania Fund during the proposed Class Period subject to

the same alleged misstatements and omissions in the Pennsylvania Fund's Prospectuses

and Registration Statements.  Pa. Compl. ¶¶ 69-138.  Because they will advance the

interests of the Class by pursuing their own claims, the Pennsylvania Plaintiffs satisfy

Rule 23(a)'s typicality requirement.

> **4.    The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Pennsylvania Fund Class**

Neither the Pennsylvania Plaintiffs nor their counsel have interests antagonistic to,

or in conflict with, the interests of the other Pennsylvania Fund Class members.  To the

contrary, each of the Pennsylvania Plaintiffs has sustained losses as a result of the same

alleged material misrepresentations and omissions as all other the Pennsylvania Fund

Class members.  Each of the Pennsylvania Plaintiffs has a substantial financial stake in

this litigation.  Lead Plaintiff Bhanot purchased 26,251 shares for a total of $308,251.22

during the Pennsylvania Fund Class Period.  Dkt. No. 19, Ex. A (Bhanot Cert.).  Plaintiff

Miles purchased 21,833.624 shares for a total of $258,969.87 during the Pennsylvania

Fund Class Period.  Dkt. No. 19, Ex. A (Miles Cert.).  Plaintiff Galganovicz purchased

6,018 shares for a total of $79,613.47.  Dkt. No. 19, Ex. A (Galganovicz Cert.).  Having

sustained substantial losses in their investments, each of the Pennsylvania Plaintiffs has

every reason to vigorously prosecute his own claims along with the claims of other the

Pennsylvania Fund Class members, has done so to date and will continue to do so.

Each of the Pennsylvania Plaintiffs has already demonstrated a willingness and

ability to take an active role in the litigation to protect the interests of the absent Class

members.  Each of the Pennsylvania Plaintiffs understands the requirements and

responsibilities of serving as a class representative in a securities class action under the

PSLRA, has reviewed the key pleadings in this case, has supervised and monitored the progress of this litigation (and will continue to do so), has produced documents, responded to written discovery, and appeared for 6-hour depositions, and each intends to continue to work with counsel to maximize the recovery to the Pennsylvania Fund Class. *See* Cantor Decl. at ¶ 8; Ex. A (Bhanot Dep.) at 124:5-125:15, 127:25-130:20, 218:4-11; Ex. B (Miles Dep.) at 192:11-202:3, 266:3-268:15; Ex. C (Galganovicz Dep.) at 9:10-15, 152:17-160:12.

Given the Pennsylvania Plaintiffs' commitment to the case and Defendants' stipulation to the adequacy of Berger & Montague as Class Counsel (which is further reinforced by the Rule 23(g) analysis set forth below), the adequacy requirement is satisfied.[20]

## B.   The Pennsylvania Fund Class Satisfies the Requirements of Rule 23(b)(3)

The Pennsylvania Fund Class also meets the requirements of Rule 23(b)(3).

### 1.   Common Issues Predominate

As the discussions in Sections II.A, III.A.2, III.B.1, and IX.A.2 demonstrate, the questions of law and fact common to the Pennsylvania Plaintiffs and members of the proposed Pennsylvania Fund Class overwhelm any individualized questions.  The Pennsylvania Plaintiffs will use evidence common to all Class members to prove that

---

[20] Berger & Montague has been ably assisted in the prosecution of this Action by additional counsel Brower Piven, A Professional Corporation.

Defendants made misstatements and omissions in the Prospectuses, Registration Statements, SAIs and incorporated documents concerning:  the Fund's stated capital preservation investment objective; the extent of the Fund's exposure to inverse floaters, and the risks and volatility associated with those investments; the Fund's excessive exposure to illiquid assets and ineffectiveness of the safeguards against illiquidity; the overvaluation of the Fund's assets and overstated NAV, and the Fund's overconcentration in junk bonds and/or unrated bonds.  Pa. Compl. ¶¶ 69-128, 138, 162.

The Pennsylvania Plaintiffs will prove that these misstatements and omissions were material to a reasonable investor, and that they and Class members suffered damages as a result of Defendants' violations of the Securities Act.  Moreover, as the Securities Act claims focus squarely on Defendants' conduct, and do not require an individual examination of the conduct or state of mind of individual Class members, the common question element of the predominance requirement is satisfied for those claims.

Defendants also will attempt to prove their anticipated defenses, including the six defenses identified above in Section II.A (at pp. 7 – 8), with evidence common to the Class.  Accordingly, the predominance standard of Rule 23(b)(3) is satisfied, as the common questions (and the evidence that will be used to prove, or defend, the claims) predominate over any potential individual issues.

### 2.    Class Treatment Is Superior

Class treatment is superior to other available methods of fair and efficient adjudication of this controversy for the reasons set forth in Section III.B.2 above.

### C.    Berger  & Montague Should Be Appointed As Class Counsel Under Rule 23(g)

The Pennsylvania Plaintiffs also seek the appointment of Berger & Montague as counsel for the Class.  As described in the accompanying Cantor Declaration, Berger & Montague is experienced in class action and securities litigation, and has devoted substantial time and effort to this Action.  Cantor Decl., ¶¶ 7-8.  Neither the Pennsylvania Plaintiffs nor Berger & Montague is aware of any conflicts of interest that would disable the latter from representing the Pennsylvania Fund Class.  Accordingly, Berger & Montague should be appointed Class Counsel under Rule 23(g).

## X.    THE ROCHESTER FUND CLASS SHOULD BE CERTIFIED

Lead Plaintiffs and proposed Class Representatives Stuart and Carole Krosser move for entry of an order certifying a class "of all persons or entities who acquired shares of the Rochester Fund traceable to the false and misleading registration statements during the period from February 26, 2006 through October 21, 2008 and were damaged by Defendants' violations of the 1933 Act."  Rochester Compl. ¶ 105.  The Krossers also request appointment of Cohen Milstein Sellers & Toll PLLC as Class Counsel for the Rochester Fund Class under Rule 23(g).

### A.    The Rochester Fund Class Satisfies the Requirements of Rule 23(a)

#### 1.    The Rochester Fund Class Is Sufficiently Numerous

Defendants have stipulated that members of the proposed Rochester Fund Class are sufficiently numerous to warrant certification.

#### 2.    Questions of Law and Fact Are Common to the Proposed Rochester Fund Class

The proposed Rochester Fund Class also satisfies the commonality prerequisite. Lead Plaintiffs Mr. and Mrs. Krosser allege that Defendants made uniform material misrepresentations and omissions of fact in the Fund Prospectuses, Registration Statements, SAIs, and other incorporated documents in violation of Sections 11, 12(a)(2) and 15 of the Securities Act by:  (1) misrepresenting or failing to disclose that the Fund's overall investment risk was inconsistent with its stated capital preservation objective; (2) misrepresenting or failing to disclose the level of the Fund's exposure to inverse floaters and the risks and volatility associated with those investments; (3) failing to disclose that the Fund exceeded its stated percentage limits on illiquid investments and that its safeguards against excessive illiquid investments were ineffective; (4) overvaluing the Fund's assets and overstating the Fund's NAV; and (5) failing to state material facts regarding the representation that 75% of the securities the Fund bought would be investment-grade.  Rochester Compl. ¶¶ 3, 39, 43, 85.  The Krossers also contend that they and all proposed Class members were damaged in a similar fashion by the foregoing

violations of the Securities Act.  Thus, nearly all of the central questions of law and fact are common to the Krossers and all proposed Class members.

Common questions of law and fact include whether Defendants violated the Securities Act, whether there were false or misleading statements and omissions in the Fund's Prospectuses and Registration Statements, whether those misrepresentations and omissions were material, and whether Class members were damaged as a result. Rochester Compl. ¶ 109.  As described above in Section III.A.2, these quintessential questions are routinely found sufficient to satisfy the commonality requirement in securities class actions and they satisfy the requirement here as well.

### 3.    The Proposed Class Representatives' Claims Are Typical of the Rochester Fund Class

The claims of Lead Plaintiffs Mr. and Mrs. Krosser are typical of other Rochester Class members' claims.  All of the proposed Class members, like the Krossers, purchased shares of the Rochester Fund during the proposed Class Period subject to the same alleged misstatements and omissions in the Rochester Fund's Prospectuses and Registration Statements.  Rochester Compl. ¶¶ 85-104.  Because they will advance the interests of the Class by pursuing their own claims, Lead Plaintiffs Mr. and Mrs. Krosser satisfy Rule 23(a)'s typicality requirement.

### 4.    The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Rochester Fund Class

The interests of the Krossers are neither antagonistic to, nor in conflict with, the interests of the other Rochester Fund Class members.  To the contrary, the Krossers have

sustained losses as a result of the same alleged material misrepresentations and omissions as all other Rochester Fund Class members.  The Krossers have a substantial financial stake in this litigation.  In total, they have lost $624,125.00 as a result of the following investments in the Rochester Fund: (1) on July 12, 2006, they purchased 2,593.965 shares at $18.89 per share; (2) on October 18, 2007, he purchased 55,066.079 shares at $18.16 per share; and (3) on October 19, 2007 she purchased 54,884.742 shares at $18.22 per share.  *See* Mezzetti Decl., Exs. B & C (Exhibits to Krossers' Lead Plaintiff Declaration). Given the substantial losses suffered through their investments, the Krossers will vigorously prosecute their own claims along with the claims of other Rochester Fund Class members.  Indeed, they have done so to date.

Together, the Krossers have already demonstrated a willingness and ability to take an active role in the litigation to protect the interests of the absent Class members; this includes understanding the requirements and responsibilities of serving as class representatives in a securities class action under the PSLRA; filing their motion for appointment as Lead Plaintiffs; review of the key pleadings in this case; supervision and monitoring of the progress of this litigation (and they will do so as the case continues); production of documents, responses to written discovery, and appearance at their 7-1/2 hour and 3-1/2 hour depositions (respectively); and they intend to continue to work with counsel to maximize the recovery to the Rochester Fund Class.  *See* Dkt. No. 130-1, Ex. A (Declaration of Stuart and Carole Krosser).

Given the Krossers' commitment to the case and Defendants' stipulation to the adequacy of Cohen Milstein as Class Counsel (which is further reinforced by the Rule 23(g) analysis set forth below), the adequacy requirement is satisfied.

**B.      The Rochester Fund Class Satisfies the Requirements of Rule 23(b)(3)**

The Rochester Fund Class also meets the requirements of Rule 23(b)(3).

**1.      Common Issues Predominate**

As the discussions in Sections II.A, III.A.2, III.B.1, and X.A.2 demonstrate, the questions of law and fact common to Lead Plaintiffs Mr. and Mrs. Krosser and members of the proposed Rochester Fund Class overwhelm any individualized questions.  The Krossers will use evidence common to all Class members to prove that Defendants made misstatements and omissions in the Prospectuses, Registration Statements, SAIs and incorporated documents concerning:  the Fund's stated capital preservation investment objective; the extent of the Fund's exposure to inverse floaters, and the risks and volatility associated with those investments; the Fund's excessive exposure to illiquid assets and ineffectiveness of the safeguards against illiquidity; the overvaluation of the Fund's assets and overstated NAV; and the representation that 75% of the securities the Fund bought would be investment-grade.

The Krossers will prove that these misstatements and omissions were material to a reasonable investor, and that they and the Class members suffered damages as a result of Defendants' violations of the Securities Act.  Moreover, because the Securities Act claims focus squarely on Defendants' conduct, and do not require an individual

examination of the conduct or state of mind of individual Class members, the common

question element of the predominance requirement is satisfied for those claims.

Defendants also will attempt to prove their anticipated defenses, including the six

defenses identified above in Section II.A (at pp. 7 – 8), with evidence common to the

Class.  Accordingly, the predominance standard of Rule 23(b)(3) is satisfied, as the

common questions (and the evidence that will be used to prove, or defend, the claims)

predominate over any potential individual issues.

### 2.      Class Treatment Is Superior

Class treatment is superior to other available methods of fair and efficient

adjudication of this controversy for the reasons set forth in Section III.B.2 above.

### C.      Cohen Milstein Sellers & Toll PLLC Should Be Appointed As Class Counsel under Rule 23(g)

Mr. and Mrs. Krosser have retained and are represented by counsel who are highly

experienced in class action litigation and securities law.  As explained above in Section

IV.C and in the accompanying Mezzetti Declaration, Cohen Milstein has decades of

experience litigating class action and securities cases, and has devoted and will continue

to devote the resources necessary to pursue this case to resolution.  *See* Mezzetti Decl., ¶¶

7-8, 10-11 & Ex. D.  Cohen Milstein will fairly and adequately protect the interests of the

Class and should be certified as Class Counsel.

## XI.     CONCLUSION

Because the proposed Classes satisfy all of the requirements of Rule 23(a) and

23(b)(3), Lead Plaintiffs request that the Court issue an order:  (1) certifying the proposed

Classes; and (2) appointing the proposed Class Representatives for each proposed Class.

Leads Plaintiffs also respectfully request that the Court appoint proposed Class Counsel

under Rule 23(g).

Dated:          July 24, 2012

s/ Kip B. Shuman
Kip B. Shuman
Rusty E. Glenn
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, CO 80302
Telephone:  (303) 861-3003
Fax:  (303) 484-4886
kip@shumanlawfirm.com
rusty@shumanlawfirm.com

*Liaison Counsel*

Steven J. Toll
Lisa M. Mezzetti
Daniel S. Sommers
S. Douglas Bunch
Stefanie M. Ramirez
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, NW
Suite 500 West Tower
Washington, D.C.  20005
Telephone:  (202) 408-4600
Fax:  (202) 408-4699
stoll@cohenmilstein.com
lmezzetti@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com
sramirez@cohenmilstein.com

*Attorneys for Lead Plaintiff Leonard
Klorfine in the AMT-Free Fund cases,
Lead Plaintiffs Stuart and Carole Krosser
in the Rochester Fund cases, and Lead
Counsel for the Class*

Sanford P. Dumain
Peter E. Seidman
Roland W. Riggs
Christopher J. Orrico
**MILBERG LLP**
One Pennsylvania Plaza
49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Fax: (212) 868-1229
sdumain@milberg.com
pseidman@milberg.com
rriggs@milberg.com
corrico@milberg.com

*Attorneys for Lead Plaintiff John Vazquez
in the AMT-Free New York Fund cases,
Lead Plaintiff Victor Sasson in the New
Jersey Fund cases, Lead Plaintiff Peter
Unanue in the Rochester National Fund
cases, and Lead Counsel for the Class*

Sherrie R. Savett
Gary E. Cantor
Glen L. Abramson
Eric Lechtzin
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Fax: (215) 875-4604
ssavett@bm.net
gcantor@bm.net
gabramson@bm.net
elechtzin@bm.net

*Attorneys for Lead Plaintiff Dharamvir Bhanot in the Pennsylvania Fund cases and Lead Counsel for the Class*

**BROWER PIVEN**
  A Professional Corporation
Charles J. Piven
1925 Old Valley Road
Stevenson, Maryland 21153
Telephone: (410) 332-0030
Fax: (410) 685-1300
piven@browerpiven.com

David A.P. Brower
488 Madison Avenue, 8th Floor
New York, NY 10022
Telephone: (212) 501-9000
Fax: (212) 501-0300
brower@browerpiven.com

*Additional Counsel for Lead Plaintiff John Vazquez in the AMT-Free New York Fund cases and Lead Plaintiff Dharamvir Bhanot in the Pennsylvania Fund cases*

Alan W. Sparer
Marc Haber
James S. Nabwangu
**SPARER LAW GROUP**
100 Pine Street, 33rd Floor
San Francisco, CA 94111
Telephone: (415) 217-7300
Fax: (415) 217-7307
asparer@sparerlaw.com
mhaber@sparerlaw.com
jnabwangu@sparerlaw.com

*Attorneys for Lead Plaintiff Joseph Stockwell in the California Fund cases and Lead Counsel for the Class*

Daniel C. Girard
Amanda M. Steiner
Dena C. Sharp
Lesley A. Vittetoe
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Fax: (415) 981-4846
dcg@girardgibbs.com
as@girardgibbs.com
chc@girardgibbs.com
lav@girardgibbs.com

*Additional Counsel for Lead Plaintiff Joseph Stockwell in the California Fund cases*

Jeffrey S. Abraham
**ABRAHAM, FRUCHTER &**
**TWERSKY**
One Penn Plaza
Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Fax: (212) 279-3655

Howard T. Longman
**STULL, STULL & BRODY LLP**
6 East 45th Street
New York, NY  10017
Telephone:  (212) 687-7230
Fax:  (212) 490-2022
jasondag@ssbny.com

*Additional Counsel for Lead Plaintiff*
*Victor Sasson in the New Jersey Fund*
*cases*

Joseph J. Tabacco, Jr.
Nicole C. Lavalle
Matthew D. Pearson
**BERMAN DEVALERIO**
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone:  (415) 433-3200
Fax:  (415) 433-6382
jtabacco@bermandevalerio.com
nlavalle@bermandevalerio.com
mpearson@bermandevalerio.com

*Additional Counsel for Lead Plaintiffs Stuart and*
*Carole Krosser in the Rochester Fund cases*

**<u>Certificate of Service</u>**

I hereby certify that the foregoing was filed with this Court on July 24, 2012

through the CM/ECF system and will be sent electronically to all registered participants

as identified on the Notice of Electronic Filing, and paper copies will be sent to those

indicated as non-registered participants.

s/ Rusty E. Glenn
Rusty E. Glenn
