# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Master Docket No. 09-md-02063-JLK-KMT (MDL Docket No. 2063)

## IN RE: OPPENHEIMER ROCHESTER FUNDS GROUP SECURITIES LITIGATION

This document relates to:

*In re AMT-Free Municipals Fund*
09-CV-01243-JLK-KMT (Prince)
09-CV-01447-JLK-KMT (Connel)
09-CV-01510-JLK-KMT (Amato)
09-CV-01619-JLK-KMT (Furman)

*In re AMT-Free New York Municipals Fund*
09-CV-1621-JLK-KMT (Isaac)
09-CV-1781-JLK-KMT (Kurz)

*In re Rochester Fund Municipals*
09-CV-00703-JLK-KMT (Begley)
09-CV-01479-JLK-KMT (Bernstein)
09-CV-01481-JLK-KMT (Mershon)
09-CV-01622-JLK-KMT (Stern)
09-CV-01478-JLK-KMT (Vladimir)
09-CV-01480-JLK-KMT (Wiener)

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE "CAPITAL PRESERVATION" INVESTMENT OBJECTIVE CLAIMS OF PLAINTIFFS KLORFINE, VAZQUEZ, AND KROSSER AND MOTION IN THE ALTERNATIVE FOR RELIEF UNDER FED. R. CIV. P. 56(d)

---

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ..........................................................................................1

II.     STATEMENT OF FACTS ...........................................................................3

III.    PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF
        UNDISPUTED FACTS ................................................................................5

IV.     STATEMENT OF ADDITIONAL DISPUTED FACTS .................................8

V.      LEGAL STANDARD ................................................................................10

VI.     ARGUMENT ...........................................................................................12

   A.   Defendants Mischaracterize Plaintiffs' Capital Preservation Allegations ........12

   B.   Defendants' Motion Should Be Denied For Its Failure to Address
        the Capital Preservation Claims Actually Asserted and Recognized
        by This Court.  The Investment Objective Claim Cannot Be Adjudicated
        in Isolation. ......................................................................................16

     1. Because Material Facts Are in Dispute, Defendants' Partial Summary
        Judgment Motion Should Be Denied ...................................................17

     2. Because Defendants Fail to Satisfy the Appropriate Legal Standard, Their
        Partial Summary Judgment Motion Should Be Denied ...................................18

        (a)    Defendants Engage in Circular Reasoning to Mask Their
               Conflation of Various Legal Standards Applicable to
               Separate Defenses....................................................................18

           (1)    The Standard For Immateriality Is Objective ...................................19

              (i)    Defendants Inappropriately Focus on Plaintiffs' Subjective
                     Reactions to Hypothetical Questions .........................................20

              (ii)   Materiality, Here, Requires a Comparison of Prospectus
                     Statements to Defendants' Actual Practices .............................21

           (2)    The Actual Knowledge Defense Has a Subjective Standard............23

              (i)    Defendants Do Not Allege that Plaintiffs Had Actual
                     Knowledge of the Prospectuses' Material Misstatements ..........25

i

(ii)    Defendants' Contradictory Statements Do Not Constitute Inquiry Notice and Do Not Satisfy Their Affirmative Defense ....................................................................28

C.  Defendants Fail to Meet the Standard for Summary Judgment on Mr. Vazquez's Capital Preservation Allegations .............................................30

D.  Defendants' Recycling of Statute of Limitations Arguments Against Messrs. Klorfine and Krosser Fails ...................................................31

1.  Mr. Klorfine's Capital Preservation Allegations Are Not Time-Barred ..........32

2.  Mr. Krosser's Prior Investment in the Rochester Fund Did Not Trigger the Statute of Limitations .......................................34

VII.   ALTERNATIVELY, PLAINTIFFS SEEK RELIEF PURSUANT TO FED. R. CIV. P. 56(d) ...................................................................36

A.  Rule 56(d) Standard .......................................................................37

1.  Probable Facts Are Not Available to Plaintiffs ...............................39

2.  Why the Facts Cannot Be Presented Currently ...............................40

3.  Plaintiffs Have Taken Steps to Obtain the Information ...................41

4.  Additional Time Will Enable Plaintiffs to Rebut Defendants' Motion ...........42

VIII.  CONCLUSION .............................................................................43

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    No. 03 MD 1529 (LMM), 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007)............ 24, 29

*Allred v. Chynoweth*,
    990 F.2d 527 (10th Cir. 1993) ..................................................................................... 31

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..................................................................................................... 19

*City Consumer Servs., Inc. v. Horne*,
    578 F. Supp. 283 (D. Utah 1984)............................................................. 11, 12, 26, 28

*Comm. for the First Amendment v. Campbell*,
    962 F.2d 1517 (10th Cir. 1992) ................................................................................... 37

*Commercial Iron & Metal Co. v. Bache & Co., Inc.*,
    478 F.2d 39 (10th Cir. 1973) ................................................................................ 10, 11

*In re Complete Mgmt. Inc. Sec. Litig.*,
    153 F. Supp. 2d 314 (S.D.N.Y. 2001)........................................................................ 27

*In re Dana Corp.*,
    574 F.3d 129 (2d Cir. 2009)........................................................................................ 10

*DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*,
    720 F. Supp. 1342 (N.D. Ill. 1989) .....................................................................*passim*

*E.E.O.C. v. Moreland Auto Grp., LLLP,*
    No. 11-CV-01512-RBJ-MJW, 2012 WL 2282225 (D. Colo. June 18, 2012)............. 37

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ...................................................................................... 20

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997) .................................................................................. 28

*Jama v. City & Cnty. of Denver*,
    No. 08-CV-01693-MSK-KLM, 2010 WL 3075584 (D. Colo. Aug. 4, 2010)............. 38

*Jones v. Nelson*,
  484 F.2d 1165 (10th Cir. 1973) ................................................................. 10

*Levy v. Worthington*,
  No. 11-CV-00978-WYD-KLM, 2011 WL 5240442 (D. Colo. Oct. 31, 2011) ........... 40

*Luizzi v. Pro Transp., Inc.*,
  No. 02 CV 5388(CLP), 2010 WL 3023928 (E.D.N.Y. Aug. 2, 2010) ....................... 10

*Madison v. Deseret Livestock Co.*,
  574 F.2d 1027 (10th Cir. 1978) ................................................................. 38

*Maughan v. SW Servicing, Inc.*,
  758 F.2d 1381 (10th Cir. 1985) ................................................................. 32

*McGill v. Am. Land & Exploration Co.*,
  776 F.2d 923 (10th Cir. 1985) ............................................................. 10, 11

*Mitchell v. Texas Gulf Sulphur Co.*,
  446 F.2d 90 (10th Cir. 1971) ..................................................................... 28

*Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*,
  280 F.R.D. 130 (S.D.N.Y. 2012) ............................................................... 26

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................. 31

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ................................................................................ 11

*In re Ribozyme Pharms., Inc. Sec. Litig.*,
  209 F. Supp. 2d 1106 (D. Colo. 2002) ................................................ 11, 12, 15, 17

*In re Scottish Re Grp. Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007) ......................................................... 24

*SEC v. Seaboard Corp.*,
  677 F.2d 1301 (9th Cir. 1982) ............................................................. 20, 22

*Stat-Tech Liquidating Trust v. Fenster*,
  981 F. Supp. 1325 (D. Colo. 1997) ......................................................... 11, 17

*Steele v. Options Clearing Corp.*,
No. 86 C 6115, 1987 WL 14733 (N.D. Ill. Aug. 31, 1987)..........................................23

*Sterlin v. Biomune Sys.*,
154 F.3d 1191 (10th Cir. 1998) ...........................................................................28, 31

*In re Tronox Inc. v. Anadarko Petro. Corp.*,
464 B.R. 606 (Bankr. S.D.N.Y. 2012).......................................................................12

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
283 F.R.D. 199 (S.D.N.Y. 2012) ..........................................................................20, 24

*Tucker v. Am. Int'l Grp., Inc.*,
No. 3:09-CV-1499 (CSH), 2011 WL 6020851 (D. Conn. Dec. 2, 2011)...................17

*Valley Forge Ins. Co. v. Health Mgmt. Partners, Ltd.*,
616 F.3d 1086 (10th Cir. 2010) ...........................................................................37, 38

*Weir v. Anaconda Co.*,
773 F.2d 1073 (10th Cir. 1985) .................................................................................38

## STATUTES

15 U.S.C. § 77k(a) .......................................................................................................18

15 U.S.C. § 77m ..........................................................................................................31

## OTHER AUTHORITIES

Fed. R. Civ. P. 56.....................................................................................................*passim*

Lead Plaintiffs respectfully respond to Defendants' motion for partial summary judgment ("Motion" or "Mot.") on the investment objective claims of Plaintiffs Klorfine, Vazquez, and Stuart Krosser ("Plaintiffs") (Dkt. No. 390).[1]

## I.   INTRODUCTION

Defendants' Motion fails to meet the standard for summary judgment and should be denied for several reasons.

First, in an effort to distract this Court with a re-hash of an argument that the Court rejected on Defendants' motions to dismiss, Defendants misstate Plaintiffs' investment objective claims and also improperly ask the Court, notwithstanding its prior holdings, to adjudicate the investment objective claims in isolation.  However, Plaintiffs' investment objective allegations are dependent on, and thus inseparable from, Plaintiffs' other allegations, including those related to Defendants' excessive bets on illiquid bonds, unrated bonds, and inverse floaters – none of which is addressed in Defendants' Motion. In essence, Defendants dedicate their Motion to dismantling an allegation that Plaintiffs have not asserted.  In this effort, Defendants blur two distinctly separate legal concepts – Section 11's actual knowledge affirmative defense on one hand, and materiality on the other – to achieve a result unsupported by case law.

---

[1] Defendants allege that Mr. Klorfine's and Mr. Krosser's investment objective claims are time-barred and that Mr. Klorfine's investment objective claim fails because he allegedly admitted that the AMT-Free Fund's registration statements disclosed that its investment strategy was not consistent with preservation of capital.  Defendants also allege that Mr. Vazquez's investment objective claim fails because he allegedly admitted that the objective is not false and because he did not lose capital.  Dkt. No. 390.

In addition to its lack of substance, Defendants' Motion fails to meet the structural requirements of summary judgment motions as set forth by this Court.  Defendants' Motion fails to identify or explain with sufficient specificity which facts pertaining to the investment objective allegations are material and undisputed.  Defendants' ability to identify such facts is a *sine qua non* of a summary judgment motion, and is required by this Court's rules for good reason.  Because Defendants have not and cannot identify such undisputed facts, this Court should not enter partial summary judgment on the investment objective claims.

In like manner, Defendants' statute of limitations arguments suffer the same defect: the Court has already rejected Defendants' arguments.  Moreover, Defendants' arguments set forth no material undisputed facts that Messrs. Klorfine or Krosser knew or should have known that their respective Funds were not pursuing capital preservation objectives.  Accordingly, partial summary judgment should be denied as to both.

Finally, even were any portion of Defendants' Motion to survive, it should be deferred pursuant to Rule 56(d).  As the Affidavit of S. Douglas Bunch details, Defendants have failed to produce discovery that would allow Plaintiffs to substantively respond to Defendants' Motion.  *See* Affidavit of S. Douglas Bunch in Support of Application for a Stay Pending Additional Discovery Pursuant to Fed. R. Civ. P. 56(d) ("Bunch Affidavit"), attached hereto.  Discovery from Defendants on issues directly connected to the investment objective claims is ongoing and far from completion.

Indeed, the majority of Defendants' documents have not been produced to Plaintiffs, and Plaintiffs have yet to take a single deposition of a single defendant.  If it is inclined to consider any part of the Motion, at a minimum, the Court should defer its ruling until after discovery on the issues underlying Plaintiffs' investment objective claims is complete and Plaintiffs can respond from a full record.

## II.   STATEMENT OF FACTS

The consolidated complaints filed in the AMT-Free, AMT-Free NY, and Rochester Fund Municipals actions (the "Complaints") detail multiple similar misstatements and omissions in the Prospectuses for each of these Funds over a multi-year period.  Each Complaint asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, l, and o, against Defendants OppenheimerFunds, Inc. ("OppenheimerFunds"); OppenheimerFunds Distributor, Inc. ("Oppenheimer Distributor"); Oppenheimer officers (the "Officer Defendants") and trustees (the "Trustee Defendants"); and Massachusetts Mutual Life Insurance Company ("MassMutual") (collectively, "Defendants").  Each Complaint alleges that the Funds' Prospectuses were materially misleading because their stated investment objectives and/or disclosures belied the true nature and scope of the high-risk investment strategy employed by Defendants.

The Complaints allege material misrepresentations or omissions in Fund offering documents relating to the applicable Funds' "capital preservation" investment objectives.

Each of the actions also identifies three categories of materially misleading representations or omissions regarding:  (1) the level of the Funds' exposure to inverse floating rate securities ("inverse floaters"), and the risks and volatility associated with those investments; (2) the liquidity of the Funds' investments; and (3) the improper valuation of Fund assets and liabilities and resulting net asset values ("NAVs").

The Funds explicitly described their overall investment objectives as seeking as much interest income exempt from income taxes as is consistent with the preservation of capital.[2]  Instead, as Defendants now concede, these Funds employed a high-risk "no guts, no glory" strategy.  *See* Defendants' Joint Motion to Dismiss ("Motion to Dismiss"), Dkt. No. 285 at 9-10.  The Complaints allege that the investment strategy Defendants actually pursued concentrated the Funds' assets in excessively risky securities that individually and collectively made each Fund's portfolio fundamentally incompatible with the stated objective to preserve capital.[3]  Defendants failed to disclose in the offering documents that investor capital was extremely vulnerable to changes in market conditions and that the extent of the Funds' reliance on lower quality bonds, unrated (junk) bonds, illiquid bonds, and/or inverse floaters was fundamentally incompatible with a capital preservation objective.[4]  The Complaints allege as to each Fund that the failure to

---

[2] AMT-Free Compl. ¶ 39; AMT-Free NY Compl. ¶ 35; Rochester Compl. ¶ 71.

[3] AMT-Free Compl. ¶¶ 48-50; AMT-Free NY Compl. ¶¶ 42-44; Rochester Compl. ¶¶ 43-45.

[4] AMT-Free Compl. ¶¶ 48-50; AMT-Free NY Compl. ¶¶ 42-44; Rochester Compl. ¶¶ 43-45.

disclose the genuine risks of investing resulted in substantial losses directly attributable to the misrepresentations and omissions.[5]

### III.   PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

As an initial matter, Defendants have disregarded this Court's rules by submitting a lengthy, argument-ridden, and non-compliant "Statement of Undisputed Facts."  Mot. at 2-11.  Defendants fail to cite to the record for several assertions of "undisputed fact," and also fail to set forth – in *simple, declarative sentences, separately numbered and paragraphed* – each material fact that they believe is not in dispute, as required by Sections III.1–III.3 of this Court's Pretrial and Trial Procedures.  Because Defendants ignore this Court's rules, it is difficult for Plaintiffs to comply with the requirement that Plaintiffs admit or deny the asserted material facts in paragraphs numbered *to correspond to the movant's paragraph numbering*.  *See* Rule III.4.  However, Plaintiffs attempt to provide a response in accordance with Rule III.4, but do so without waiver of any arguments available to them.

Plaintiffs do not dispute the following facts set forth in Defendants' Statement of Undisputed Facts:

---

[5] AMT-Free Compl. ¶¶ 85-87, 95-100; AMT-Free NY Compl. ¶¶ 87-92; Rochester Compl. ¶¶ 91-97.

1.     Mr. Klorfine made an initial investment of $1 million in the AMT-Free Fund on February 16, 2007, and continued to make additional investments in the Fund through September 2008.  Mot. at 5.

2.     Mr. Klorfine claims that he invested a total of $4,388,192.36 in the AMT-Free Fund, including reinvested dividends.  *Id*.

3.     Mr. Klorfine has invested millions of dollars in other "Rochester" Funds that are subject to litigation in this Court: the National, Rochester, and Pennsylvania Funds.  *Id*.

4.     Mr. Klorfine's investments in the Funds represented 10-15% of his "fixed income" investments.  Mot. at 6.

5.     When the Fund began to experience significant volatility in 2008, Mr. Klorfine asked his broker for more information about the Fund's assets.  *Id*.

6.     Mr. Klorfine's broker asked Oppenheimer Funds ("OFI") where to get the information Mr. Klorfine was seeking.  *Id*.

7.     Mr. Vazquez invested just over $1.1 million in the AMT-Free New York Fund on August 29, 2007.  Mot. at 7.

8.     Mr. Vazquez added to that investment by reinvesting about $40,000 in dividends in the Fund, almost entirely in 2009.  *Id*.

9.      As of the date of his deposition – June 29, 2012 – Mr. Vazquez had received over $220,000 in cash dividends and his shares were worth over $1,120,000 that day. *Id*.

10.     On June 29, 2012, Class A shares in the AMT-Free New York Fund closed at $12.01 per share. *Id*.

11.     Mr. Vazquez did not read any disclosures about the Fund before he invested.  Mot. at 8.

12.     Mr. Krosser worked for his wife's family business.  Mot. at 9.

13.     Mr. Krosser ultimately became CEO of his wife's family's business, a position he held for nearly 30 years until he retired in 2011.  *Id*.

14.     Mr. Krosser has invested in stocks and bonds for decades.  *Id*.

15.     On July 2, 1998, Mr. Krosser invested $53,800 in Rochester Fund Municipals.  Mot. at 10.

Plaintiffs dispute and deny all other "facts" set forth in Defendants' brief for lack of evidentiary support.  In particular, Plaintiffs dispute and deny all other out-of-context statements taken from Plaintiffs' depositions.  Plaintiffs further dispute and deny all adjectives, arguments, characterizations, hypothetical statements, and inferences set forth by Defendants as "facts."

## IV.    STATEMENT OF ADDITIONAL DISPUTED FACTS

Plaintiffs respectfully draw this Court's attention to additional disputed facts integral to Plaintiffs' capital preservation allegations:[6]

1.    The stated investment objective of "capital preservation" is objectively false and misleading for six of the seven Funds.  Lead Plaintiffs' Motion for Class Certification ("Class Cert."), Dkt. No. 379 at 4 & n.3.

2.    The Prospectuses omitted information that was required to be disclosed so as to render the capital preservation objective not false and misleading.  Class Cert. at 4-5 & n.7; AMT-Free Compl. ¶ 48; AMT-Free NY Compl. ¶ 42; Rochester Compl. ¶ 43.

3.    The Prospectuses' disclosures about inverse floaters contained material omissions because they failed to disclose how inverse floaters created the risk of forced liquidation. Class Cert. at 4-5; AMT-Free Compl. ¶ 68; AMT-Free NY Compl. ¶ 61; Rochester Compl. ¶ 63.

4.    Defendants failed to disclose in the offering documents that investor capital was extremely vulnerable to changes in market conditions.  Class Cert. at 4 & n.5; AMT-Free Compl. ¶¶ 48-49; AMT-Free NY Compl. ¶¶ 42-43; Rochester Compl. ¶¶ 43-44.

---

[6] Lead Plaintiffs are aware that it is ordinarily insufficient for a party to simply point to his or her own allegations in order to claim that there are disputed facts.  Lead Plaintiffs respectfully submit that in this case, that doctrine is inapplicable because discovery is substantially incomplete, *see* Section VI n.13, *infra*, and as a result Lead Plaintiffs have yet to procure sufficient evidence on these points.

5.      Defendants failed to disclose that the extent of the Funds' reliance on lower quality bonds, unrated (junk) bonds, illiquid bonds, and/or inverse floaters was fundamentally incompatible with a capital preservation objective.  Class Cert. at 4 & n.5; AMT-Free Compl. ¶ 48; AMT-Free NY Compl. ¶ 42; Rochester Compl. ¶ 43.

6.      Defendants used the available investment strategies collectively in a manner that was inconsistent with an objective to preserve capital.  AMT-Free Compl. ¶¶ 3, 62, 73, 80-81; AMT-Free NY Compl. ¶¶ 3, 56, 66, 74; Rochester Compl. ¶¶ 3, 57, 67, 75.

7.      Defendants' actual practices deviated from the Funds' stated investment strategies.  Class Cert. at 4 & n.4; AMT-Free Compl. ¶¶ 3, 102; AMT-Free NY Compl. ¶¶ 3, 94; Rochester Compl. ¶¶ 3, 98.

8.      The Funds exceeded permissible limits for holding illiquid bonds.  Class Cert. at 5-6 & n.9; AMT-Free Compl. ¶¶ 3, 58, 62; AMT-Free NY Compl. ¶¶ 3, 52, 56; Rochester Compl. ¶¶ 3, 53, 57.

9.      The Funds exceeded permissible limits for holding inverse floaters.  AMT-Free Compl. ¶¶ 3, 100; AMT-Free NY Compl. ¶¶ 3, 92; Rochester Compl. ¶¶ 3, 96.

10.     The Funds exceeded permissible limits for leverage.  AMT-Free Compl. ¶¶ 90, 100; AMT-Free NY Compl. ¶¶ 82, 92; Rochester Compl. ¶¶ 85, 96.

11.     The Funds improperly rated their assets.  AMT-Free Compl. ¶¶ 3, 107; AMT-Free NY Compl. ¶¶ 3, 99; Rochester Compl. ¶¶ 3, 103.

12.     Mr. Vazquez suffered $15,188.31 in Section 11 damages.  Plaintiffs' Reply Memorandum in Support of Class Certification ("Reply"), Dkt. No. 407 at 40.

13.     Mr. Vazquez suffered $137,325.80 in Section 12 damages.  Reply at 40-41.

14.     Mr. Vazquez testified that he lost his principal investment in the AMT-Free New York Fund.  Reply at 38-45.

## V.     LEGAL STANDARD

The Tenth Circuit has repeatedly "reiterate[d] the teachings of [its] past cases that summary judgment is a drastic remedy that should be granted only with caution." *McGill v. Am. Land & Exploration Co.*, 776 F.2d 923, 926 n.5 (10th Cir. 1985); *Commercial Iron & Metal Co. v. Bache & Co., Inc.*, 478 F.2d 39, 41 (10th Cir. 1973) ("courts should be careful" and use "caution" in awarding this "drastic" remedy).  As such, where there exists "any issue as to a material fact dispositive of right or duty, the case is not ripe for summary judgment." *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir. 1973).  Indeed, "[s]ince summary judgment is an extreme remedy" that "cut[s] off the rights of the non-moving party to present a case to the jury," a court "should only grant summary judgment 'on the basis that no genuine issue remains for trial because it is quite clear what the truth is.'" *Luizzi v. Pro Transp., Inc.*, No. 02 CV 5388(CLP), 2010 WL 3023928, at *3 (E.D.N.Y. Aug. 2, 2010) (citing *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009)).  Where admissible evidence from the nonmovant "'make[s] it arguable' that the claim has merit," summary judgment is "inappropriate." *Dana Corp.*, 574 F.3d at 151.  For these

reasons, "it is a rare case where a Rule 56 motion should be filed," and rarer still that one should be granted. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1109 (D. Colo. 2002).

A Rule 56 motion presents a hefty burden at two separate thresholds:   (1) the movant must prove that no genuine dispute of material fact exists; and then (2) the movant must also demonstrate that he or she prevails as a matter of law.   *Id.*   In approaching this sequential analysis, the court "must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *id.* ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'") (citation omitted). Against the favorable light cast on its opponent, the moving party "must show entitlement to summary disposition beyond all reasonable doubt." *City Consumer Servs., Inc. v. Horne*, 578 F. Supp. 283, 288 (D. Utah 1984).   The movant must meet this burden even though "[n]o margin exists for disposition of factual issues." *Commercial Iron & Metal Co.*, 478 F.2d at 41.   So, "if the facts support an inference that would permit the non-movant to prevail, summary judgment is inappropriate." *McGill*, 776 F.2d at 925 n.5.   In this process, any "[d]oubts should be resolved in favor of the presence of triable fact issues." *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997).   Thus, "[i]f reasonable minds can differ as to the import or the weight of the

11

evidence … a summary judgment cannot be entered." *In re Ribozyme Pharms.*, 209 F. Supp. 2d at 1110.

Partial summary judgment requires an additional showing – that the allegations, or parts thereof, are truly distinct and severable.  Though Rule 56 allows a court to "narrow the issues before trial," the technique remains inappropriate for cases where "the resolution of an issue may be so dependent on the facts to be proved at trial that it may be impossible or improvident to attempt to resolve it on a motion for summary judgment." *In re Tronox Inc. v. Anadarko Petro. Corp.*, 464 B.R. 606, 612 (Bankr. S.D.N.Y. 2012) (citing *Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir. 1975)).  At its core, partial summary judgment is appropriate for free-standing unaffiliated claims (or parts thereof) that, beyond all reasonable doubt, merit no further adjudication.  Yet this drastic and summary fashion of dismissal does not, and cannot, "serve as a substitute for trial when there are disputed facts." *City Consumer Servs., Inc.*, 578 F. Supp. 283 at 288.

Given this high burden, Defendants have not even approached the standard for an award of partial summary judgment, and the Motion should be denied.

## VI.   ARGUMENT

### A. Defendants Mischaracterize Plaintiffs' Capital Preservation Allegations

Defendants' mischaracterization of Plaintiffs' allegations has already been rejected by this Court at the motion to dismiss stage.  According to Defendants, Plaintiffs' investment objective allegations are that the Funds "would pursue only investment

strategies that (1) involved assets that would not fall in value; (2) would involve 'very low risk'; and (3) would result in 'extremely low price fluctuations.'" Mot. at 4. This is a straw man argument bordering on duplicity. Defendants have cherry-picked the phrases "very low risk" and "extremely low price fluctuations" from the background section on capital preservation found in a single paragraph of the Amended Complaints.[7] These terms come from Plaintiffs' preliminary statement of market definitions, specifically, *Standard & Poor's Guide to the Perfect Portfolio*, which is cited along with a selection of other third-party definitions of capital preservation. The *Standard & Poor's* definition is clearly referential. Plaintiffs' investment objective allegations are not (and never have been) that each of the Funds' investments had to meet the *Standard & Poor's* definition of the characteristics of capital preservation. Significantly, at the motion to dismiss stage, this Court rejected this same attempt by Defendants to misconstrue Plaintiffs' actual investment objective allegations.

Plaintiffs' ***actual*** investment objective allegations, namely that the Funds' assurances to investors that their use of "stated investment strategies" would be "consistent with the preservation of capital," were false and misleading. This is so because, as this Court held, the Funds' "investment objectives and disclosures belied, and at times affirmatively misrepresented, the true nature and scope of the high-risk, high-return investment strategy employed." *See* Amended Opinion and Order on Defendants'

---

[7] AMT-Free Compl. ¶ 75; AMT-Free NY Compl. ¶ 68; Rochester Compl. ¶ 70.

Motion to Dismiss ("Amended Order"), Dkt. No. 359 at 5.  Plaintiffs allege that the

Funds' overall portfolios were not constructed to preserve capital and that Defendants did

not adequately disclose the risks of the Funds' underlying investment strategies.[8]  The

Court recognized this distinction in its Amended Order:

> Plaintiffs' principal allegation against six of the seven Funds
> is that they were pitched in their registration statements as
> conservative investments in terms of risk to capital, *i.e., that
> no matter how creative or aggressive the Fund manager, the
> push for earnings would only be so far as was "consistent
> with the preservation of capital."*

*Id.* at 17 (emphasis added).  The crux of Plaintiffs' claims, as this Court succinctly

stated, "*turns precisely* on the nature and adequacy of Defendants' *disclosures in light of*

*Defendants' actual practices*."  Amended Order at 23-24 (emphasis added).

Consequently, it was Defendants' actual practices that rendered the capital

preservation investment objective false and misleading.  Specifically, Plaintiffs contend

Defendants' actual practices: (1) exceeded the permissible percentage limits for holding

illiquid securities;[9] (2) exceeded the percentage limits for holding inverse floaters;[10] (3)

overstated the true value of certain assets;[11] (4) misrated bonds in the portfolio; and (5)

through a combination of these practices exceeded the permissible limits for leverage.[12]

---

[8] AMT-Free Compl. ¶ 39; AMT-Free NY Compl. ¶ 35; Rochester Compl. ¶ 71.

[9] AMT-Free Compl. ¶¶ 51-62; AMT-Free NY Compl. ¶¶ 45-56; Rochester Compl. ¶¶ 46-57.

[10] AMT-Free Compl. ¶¶ 63-73; AMT-Free NY Compl. ¶¶ 57-66; Rochester Compl. ¶¶ 58-68.

[11] AMT-Free Compl. ¶¶ 82-84; AMT-Free NY Compl. ¶¶ 75-76; Rochester Compl. ¶¶ 77-79.

[12] AMT-Free Compl. ¶¶ 90, 100; AMT-Free NY Compl. ¶¶ 82, 92; Rochester Compl. ¶¶ 85, 96.

Resolving Plaintiffs' capital preservation allegations "turns precisely on" consideration of these specific actions. Amended Order at 23-24. Yet, Defendants would have the Court adjudicate Plaintiffs' investment objective allegations without any evidence of Defendants' actual practices. Entering judgment on these unresolved, disputed facts would be highly inappropriate. *In re Ribozyme Pharms.*, 209 F. Supp. 2d at 1109 ("Only when *all* material facts are undisputed can a court move on to its second determination, that of applying the law to the undisputed facts to enter a judgment.") (emphasis added).

Rather than provide undisputed facts of their actual practices, Defendants selectively submit deposition testimony elicited from Plaintiffs. Defendants requested that Plaintiffs read and recite from various passages of the Funds' Prospectuses which disclosed that the Funds could hold certain percentages of unrated bonds, illiquid securities, inverse floaters, and degrees of leverage, or experienced some share price volatility. Mot. at 16, 17, 19, 28. This was a futile exercise. Plaintiffs have never disputed that the Prospectuses disclosed the types of assets the Funds could hold. What Defendants fail to set forth is how such testimony establishes any facts – much less undisputed, material ones – demonstrating that Plaintiffs had knowledge of any of Defendants' actual undisclosed practices that undermined the Funds' stated objective of capital preservation.

**B. Defendants' Motion Should Be Denied For Its Failure to Address the Capital Preservation Claims Actually Asserted and Recognized by This Court.  The Investment Objective Claim Cannot Be Adjudicated in Isolation.**

Defendants compound their misstatement of Plaintiffs' investment objective claims by failing to cite a single undisputed fact relating to Defendants' undisclosed practices.  These actual practices are ignored by Defendants.  Plaintiffs' investment objective claims cannot be adjudicated as a matter of law without undisputed material facts that Defendants' actual practices were consistent with the preservation of capital.  But these facts do not exist.

Partial summary judgment requires not only certainty beyond a reasonable doubt about undisputed facts and applicable legal standards, but also requires that the claims at issue are truly distinct and severable from the rest of the case.  At the motion to dismiss stage, Defendants also argued that the investment objective claim, standing alone, could be dismissed as a matter of law.  This Court denied Defendants' request, noting: "Defendants view each of the misstatements identified by Plaintiffs without reference to the others and argue none, standing alone, is actionably untrue or material.  The tactic misfires."  Amended Order at 16.  As such, in its Amended Order the Court repeatedly rejected Defendants' analysis and took the view that Defendants' strategy of "pars[ing]" and "view[ing] the allegation in isolation" was incorrect.  *Id*. at 17, 18.  The same principle applies with equal force to Defendants' current Motion.  Rule 56, in fact,

permits partial summary judgment only where the matter at issue is **distinct and separable** from a plaintiff's other claims.[13]

Adjudication of Plaintiffs' investment objective claim will necessarily turn on Defendants' actual practices, including the Funds' investments in, among other things, illiquid assets and derivative securities, and the Funds' valuation of assets. And the factual interconnectedness of these allegations and Plaintiffs' capital preservation allegations precludes partial summary judgment, which does not permit the splitting of interrelated allegations. *See supra*, n.13.

### 1. Because Material Facts Are in Dispute, Defendants' Partial Summary Judgment Motion Should Be Denied

In order to survive the first prong of summary judgment analysis, Defendants must prove that there are no material facts in dispute. Because there are numerous material facts in dispute here, partial summary judgment is improper. *In re Ribozyme Pharms.*, 209 F. Supp. 2d at 1110; *see also Stat-Tech Liquidating Trust*, 981 F. Supp. at 1335 ("[d]oubts should be resolved in favor of the presence of triable fact issues"). Plaintiffs have identified only a partial list of material facts that remain in dispute, any one of which could support a reasonable jury's finding in Plaintiffs' favor on their investment objective claims. *See* Section IV, *supra*.

---

[13] While recent 2010 amendments to Rule 56 codified the ability to move "for summary judgment 'on all or part of the claim,'" the procedure continues to be improper where claims are "so intertwined … that partial summary judgment practice would not be appropriate." *Tucker v. Am. Int'l Grp., Inc.*, No. 3:09-CV-1499 (CSH), 2011 WL 6020851, at *9 n.24 (D. Conn. Dec. 2, 2011); *see also* Rule 56 advisory committee's note (2010) (discussing changes in language).

Each of the facts is material, disputed, and an essential factual predicate to Plaintiffs' capital preservation allegations.  Defendants cannot shortcut the summary judgment process and ask this Court to weigh these facts, or, more inappropriately, to presume them to be undisputed in Defendants' favor.

**2.      Because Defendants Fail to Satisfy the Appropriate Legal Standard, Their Partial Summary Judgment Motion Should Be Denied**

Even if this Court is persuaded that there are no general disputes of material fact as Defendants would have the Court rule, Defendants nonetheless fail the second prong of the summary judgment analysis: Defendants cannot prevail as a matter of law.  Tellingly, Defendants fail to apply the facts of this case to any recognized legal standard at all.  Defendants assert that Plaintiffs' claims fail because they knew that the Funds' investment objectives were misstated; but they mischaracterize the relevant affirmative defense, which is theirs to prove.  Specifically, Defendants are liable if "any part of the registration statement … contained an untrue statement of a material fact or omitted to state a material fact" unless Defendants show that "*at the time* of such acquisition," Plaintiffs "knew of such untruth or omission."  15 U.S.C. § 77k(a) (emphasis added).

**(a)      Defendants Engage in Circular Reasoning to Mask Their Conflation of Various Legal Standards Applicable to Separate Defenses**

Defendants conflate various aspects of several different defenses without demonstrating that they can prevail on any one of them.  First, Defendants allege that they have proven immateriality – an *objective* standard – based on Plaintiffs' subjective

reactions.    Next, Defendants assert Plaintiffs' actual knowledge based on what *Defendants believe* are objectively reasonable conclusions drawn from a host of Prospectus statements.    Finally, Defendants make a last ditch effort to prove actual knowledge by bootstrapping inquiry notice – a statute of limitations inquiry.    As explained below, each of these defenses fails because Defendants neither explicitly state, nor apply, the appropriate legal standard for any one of them.

### (1)    The Standard For Immateriality Is Objective

Defendants seem to argue that Plaintiffs admitted, at their depositions, that the Funds' investment objectives would not have been important to a reasonable investor. But Defendants misstate the appropriate legal standard for materiality, and in fact rely on case law that stands for a proposition opposite from what they claim.  Mot. at 14-15, 24-25 (misstating the holding in *DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 720 F. Supp. 1342 (N.D. Ill. 1989), discussed in Sec. VI, *supra*).    Specifically, Defendants argue that materiality depends on a subjective standard.    Mot. at 2 ("Mr. Klorfine cannot recover because he came to learn from [the Fund's prospectus] that the Funds' strategies were wholly inconsistent with *his* understanding of the Fund's investment objective.") (emphasis added); *see also id.* at 14.

By contrast, case law clearly states that materiality depends on an "objective test" established by the hypothetical "reasonable investor."  *See Basic Inc. v. Levinson*, 485 U.S. 224, 240 n.18 (1988) ("We find no authority in the statute, the legislative history, or

our previous decisions, for varying the standard of materiality depending on who brings the action . . ."); *see also* Reply at 93; *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982) (materiality is based on "whether the existence or nonexistence of the fact in question is a matter to which a reasonable man would attach importance").   Moreover, the matter is not suitable for a partial summary judgment motion because materiality is "normally a jury question and should not be taken from [the jury] unless the court has engaged in meticulous and well articulated analysis of each item of withheld or misrepresented information."  *Id.*; *see also Fecht v. Price Co.*, 70 F.3d 1078, 1080-81 (9th Cir. 1995) (same).   Defendants' assertions therefore "overlook the well-settled precedent establishing that materiality is an objective, not a subjective requirement." *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 216 (S.D.N.Y. 2012); *id.* at 207 n.45 ("materiality is gauged by the *objective* standard of whether 'any reasonable investor could consider [statements] important'") (citing *Rombach v. Chang*, 355 F.3d 164, 172 n.7 (2d Cir. 2004)) (emphasis in original). Defendants ask the Court to ignore this fact-intensive, objective test for assessing material misstatements and instead grant summary judgment based on irrelevant defenses that have no basis in law.

**(i)** **Defendants Inappropriately Focus on Plaintiffs'
Subjective Reactions to Hypothetical Questions**

Defendants' heavy reliance on *DeBruyne* (Mot. at 14, 24-25) is fatal to their argument.  Defendants assert that *DeBruyne* entitles them to summary judgment because

20

Plaintiff Klorfine "admitted" that the Fund's strategies "were inconsistent with *his* understanding of a capital preservation" fund and Mr. Krosser "candidly conceded, *in his view*, there was 'no preservation of capital in [the Fund].'" Mot. at 16, 28, respectively (emphasis added). Yet Defendants fail to cite *DeBruyne*'s explicit holding – that the materiality of a false statement or omission is judged *objectively*, not by reference to a plaintiff's subjective or even "mistaken notion[s]" about the meaning of financial terms. *DeBruyne*, 720 F. Supp. at 1350. *DeBruyne* held that a plaintiff's self-proclaimed "reasonabl[e] expect[ations]" of investment objectives "fail[] to substantiate" a proper securities fraud claim where a fund objectively – and *actually* – models itself after the SEC's codified definitions for fund objectives. *Id.* at 1350-51 (citing Guidelines for SEC Form N-1A, Guide 4, 5 Fed. Sec. L. Rep. (CCH) ¶¶ 51, 208, at 39, 253 (Nov. 9, 1987)). In other words, *DeBruyne* requires the rejection of Defendants' argument.[14]

### (ii)   Materiality, Here, Requires a Comparison of Prospectus Statements to Defendants' Actual Practices

The *DeBruyne* court found for the defendants in that case because it had the benefit of adequate discovery that allowed the court to objectively compare the SEC's standards against how "defendants *actively managed*" their fund. *DeBruyne*, 720 F.

---

[14] Defendants' repeated attempts to twist Mr. Klorfine's testimony about his "plain vanilla" expectations into proof of an affirmative defense (Mot. at 6-7, 12-13, 15-19) are a prime example of the reasoning that the *DeBruyne* court rejected. *DeBruyne*, 720 F. Supp. at 1351 (plaintiffs' subjective assertions failed to overcome widely accepted, objective standards). As such, Defendants gain nothing by repeating Mr. Klorfine's terminology; indeed, neither Mr. Klorfine nor any other plaintiff has ever asserted that Defendants are liable merely because their actions did not adhere to Mr. Klorfine's limited statements at his deposition about "plain vanilla" funds.

Supp. at 1353 (emphasis added).   Defendants' assertion that the ruling turned on the *DeBruyne* plaintiffs' deposition testimony (Mot. at 14-15) places the cart before the horse:   in truth, the *DeBruyne* court used these testimonial concessions to bolster its holding after the court had *first* concluded, through a lengthy *objective* analysis, that there were no material misstatements in the defendants' publications.   *DeBruyne*, 720 F. Supp. at 1353.   The *DeBruyne* court then reiterated the correct legal standard that Defendants attempt to circumvent here: a material misstatement must be assessed *objectively and against actual practices*, the liability for which cannot, alone, turn on a plaintiff's subjective goals.   *Id.* at 1351, 1353.   Defendants' Motion misses these critical points and is therefore as inaccurate as it is premature.

In sum, Defendants cannot avail themselves of the reasoning in *DeBruyne* because they assert their defenses on an inadequate record, and, worse, attempt to cloak them in a legal standard that does not exist.   Their attempt to disparage the propriety of a plaintiff's *subjective* investment goals does not meet the *objective* test of materiality, nor absolve them of liability.   Defendants' showing is therefore inadequate.   *Seaboard*, 677 F.2d at 1306 (assessment of materiality requires an "objective test" based on the collective rubric known as the "reasonable man").   Defendants can point to nothing in the record to show that their actual practices were consistent with capital preservation, much less an ability to invoke the SEC's endorsement through compliance with explicit guidelines.

*DeBruyne*, 720 F. Supp. at 1350-51.[15]  For these reasons, their Motion must fail.

### (2)   The Actual Knowledge Defense Has a Subjective Standard

Defendants conflate the legal standards for immateriality and their actual knowledge defense because they cannot prevail on either one individually.  Defendants never explicitly identify why they should prevail as a matter of law, and instead assert conclusory statements as a substitute.[16]  In particular, Defendants repeatedly pursue arguments to establish what Plaintiffs could have done or might have done to gain actual knowledge – in essence, using *objective* assessments to rewrite history.[17]  Mot. at 19, 25;

---

[15] Defendants' case *Steele v. Options Clearing Corp.*, No. 86 C 6115, 1987 WL 14733, at *1 (N.D. Ill. Aug. 31, 1987) is inapposite for similar reasons. Mot. at 15, 26 (citing *Steele*, 1987 WL 14773, at *3).  *Steele* did not turn on the testimonial admissions plaintiffs had made in that case, but instead on their failure to prove a *prima facie* case: the prospectus that they "castigate[d] as misleading" did not even pertain to the stock index options "which [were] the subject matter of th[e] lawsuit."  *Steele*, 1987 WL 14773, at *2.  Conversely, substantial and objective evidence supported defendants' claims that there were no material misstatements in their prospectus. *Id.* at *3 (The SEC and Ontario Securities Commission both found challenged prospectus language "not a misrepresentation.").

[16] The closest Defendants come to alleging a legal standard is their claim that deposition testimony concedes that Defendants are not liable.  Mot. at 2, 8, 13, 14.  This *ipse dixit* is not correct.  Even if Defendants' "legal standard" were accurate, their circular logic can only produce the result they claim if, *first*, it is true that the Prospectuses contained no material misstatements, so as to make them the source for concessions.  *DeBruyne*, 720 F. Supp. at 1353 (Plaintiffs had read the prospectuses, which "clearly revealed" that "defendants actively managed" the fund in accordance with the objective).

This Court has already noted the circularity of Defendants' logic.  Amended Order at 22 ("In the dismissal context, however, this language begs the very question necessary to adopt or reject it…."").  Not surprisingly, Defendants are silent on the fulcrum to their own logic: it is *their* burden to rebut Plaintiffs' *prima facie* showing of material misstatements.  Defendants cannot merely assert, without more, that Plaintiffs have done their work for them.

[17] Defendants ignore the actual facts.  In an effort to hedge their lack of proof, they goaded witnesses to testify as to what **might** have happened.  *See, e.g.,* Declaration of Michael S.

23

*see also* Doluisio Decl., Ex. 8 at 133:2-20.  Such assertions fall short of the appropriate legal standard.

Section 11 "provides a cause of action for any person acquiring a security issued pursuant to a materially false registration statement unless the ***purchaser knew about the false statement at the time of acquisition***."  *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 386 (S.D.N.Y. 2007) (quotations and citations omitted) (emphasis added); *Tsereteli*, 283 F.R.D. at 213 (requiring "specific statements … demonstrating specific individual knowledge").  Moreover, this defense is only available to bar a plaintiff's claim based on ***actual knowledge of the particular material misstatement***, and not his or her knowledge of other, related statements.  *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MD 1529 (LMM), 2007 WL 2615928, at *7 (S.D.N.Y. Sept. 10, 2007).  The statute therefore "bars recovery where the purchaser knows of '*such* untruth or omission,' not 'any' or a similar construction."  *Id.* (emphasis in original).  In short, the actual knowledge defense "limits the bar to those untruths or omissions that the purchaser was aware of," and no "further analysis" is warranted.  *Id.*  The legal standard cannot be satisfied through conjecture, nor can it be met through bootstrapping testimony about other statements in the Prospectuses.

---

Doluisio in Support of Defendants' Memorandum in Opposition to Lead Plaintiffs' Motion for Class Certification ("Doluisio Declaration" or "Doluisio Decl."), Ex. 1 at 119:2-4 (Klorfine Dep.) ("Q: Would you agree … that in making a decision to invest in the fund the goal of the fund really is only one factor you ***should*** consider[,] right?") (emphasis added).

(i)    **Defendants Do Not Allege that Plaintiffs Had Actual Knowledge of the Prospectuses' Material Misstatements**

Defendants disregard the simple, straightforward test for this affirmative defense by asserting that the mere availability of various related facts should be sufficient to excuse them of their burden of proof.  Specifically, Defendants take isolated testimony out of context in an effort to construct a counterfactual history where Plaintiffs' speculation – informed by hindsight – trumps the test for actual knowledge.  For example, Defendants claim that Mr. Klorfine "admitted" that if he had "simply open[ed] the [P]rospectus … he never would have invested in the [F]und." Mot. at 19.  This assertion is insufficient to meet Defendants' burden both because it misrepresents Mr. Klorfine's actual statements,[18] and fails to show actual knowledge of the falsity of the stated capital preservation objectives.

Indeed, the Prospectuses' disclosures alone could not have put an investor on notice that the Funds were riskier than their stated objectives because the Prospectuses' insufficiency is a result of their omissions.  Indeed, "[a]t its core," the dispute in this case

---

[18]  Indeed, Defendants repeatedly exaggerate testimony.  For example, Defendants' assertions about the adequacy of the "prospectus descriptions of inverse floaters" is actually Mr. Klorfine's testimony about an Oppenheimer sales lunch meeting, and there was no mention of the prospectus in his testimony.  Mot. at 18; Doluisio Decl., Ex. 1 at 8:15-19.

Defendants' assertion that the SAIs delivered adequate information is equally misplaced.  Mot. at 18 (citing Doluisio Decl., Ex. 1 at 131:4-20).  Mr. Klorfine's testimony, in context, confirms only that he agreed that the SAI included some of "the kind of information" that begins to explain inverse floaters, while actual management of the Fund later resulted in something much more toxic.  Doluisio Decl., Ex. 1 at 131:11-16; 132:17-21.

"hinges on whether the Prospectuses adequately disclosed the actual investment strategies and risks that *ultimately materialized*."  Amended Order at 22 (emphasis added).  That the "capital preservation" objective was a material misstatement necessarily relies on information regarding the extent to which Defendants used the available investment strategies – information that was omitted from the Prospectuses.  It is impossible that a reaction to Defendants' various other statements in the Prospectuses "implicat[es] the misstatements [and omissions] at issue" sufficiently to find actual knowledge of the Prospectuses' falsity.  *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 138 (S.D.N.Y. 2012).  Defendants thus cannot marshal the information contained in the Prospectuses as proof of actual knowledge, because *post hoc* reactions to separate, isolated statements in the Prospectuses do not prove, beyond all reasonable doubt, that any Plaintiff had actual knowledge at the time of purchase that the capital preservation objective was untrue.  *City Consumer Servs., Inc.*, 578 F. Supp. at 288.

At most, Mr. Klorfine's testimony shows that he relied on certain overriding positive attributes of the Fund, and that its Prospectuses contained "real inconsistenc[ies]" – none of which were sufficient to alert a reasonable investor that the Fund's objective would later be defeated through actual mismanagement.  Doluisio Decl., Ex. 1 at 48:17-20 (Mr. Klorfine was guided by the statement that "[m]ost of the securities … must be investment grade"); 49:3 (Prospectus statements were inconsistent); 82:22-24

(published statements were self-contradictory).[19]

More revealing – and directly on point – are both Mr. Klorfine's and Mr. Krosser's testimony that they only later discovered the falsity of the "capital preservation" objective, and that they would not have invested in the Funds had they known as much at the time of investment. *Id.* at 7:17-21; 48:17-18; 155:3-156:1; Doluisio Decl. Ex. 8 at 10:3-7; 302:6-303:9. Both Plaintiffs further testified that had they known the specifics of how the Funds were actually managed, they would not have invested. *See, e.g.*, Doluisio Decl. Ex. 1 at 145:4-10, 146:23-147:15 (investment above 20% in inverse floaters was not disclosed and violated stated fund objective); *id.* at 152:4-10 (investment in illiquid securities above maximum was not disclosed and violated stated fund objective); Doluisio Decl. Ex. 8 at 297:11-298:17 (Fund manager's actual failure to monitor liquidity was not disclosed and violated the stated fund objective); *id.* at 299:2-300:12 (inactivity in bond trading was not disclosed and violated the stated Fund objective). This testimony clearly controverts any allegations that Defendants put forward to argue that Plaintiffs actually knew the investment objective was false.

Defendants' selective citation of deposition excerpts does nothing more than

---

[19] As a general matter, contradictory statements do not constitute a showing of actual knowledge. Because equally contradictory statements are often insufficient to satisfy the separate doctrine of inquiry notice, they most certainly fail to clear the higher bar of actual knowledge. *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 337 (S.D.N.Y. 2001) ("Courts have been reluctant to find that public disclosures provided inquiry notice where those disclosures were tempered with positive statements.").

demonstrate that isolated contradictory statements are insufficient to prove "beyond all reasonable doubt" that partial summary judgment should be awarded here. *City Consumer Servs., Inc.*, 578 F. Supp. at 288. Evidence that is "persuasive" or even "revealing" is not proof beyond a reasonable doubt, which is the standard Defendants must meet. Therefore, this affirmative defense is also unavailable to them.[20]

**(ii)** **Defendants' Contradictory Statements Do Not Constitute Inquiry Notice and Do Not Satisfy Their Affirmative Defense**

Again mixing legal standards to their benefit, Defendants attempt to leverage the doctrine of inquiry notice as a placeholder for actual knowledge. Defendants insinuate that other disclosures in the Prospectus should have put Mr. Klorfine and Mr. Krosser on notice that the investment objective of capital preservation was false. Mot. at 15-16, 28. This argument describes inquiry notice, which is more appropriately a statute of limitations question. *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1199-1200 (10th Cir. 1998) ("Cases from other circuits generally apply an inquiry notice standard coupled with some form of reasonable diligence requirement in determining whether a plaintiff's securities

---

[20] Defendants do not prevail on the law, even if their version of the facts in this case were correct. Defendants' flagship case, *DeBruyne*, vitiates their basic claims, as do their other cited cases. The Court has already found that "'preservation of capital'" statements here "are not nearly as vague as the 'puffery'" in *Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997), on which Defendants rely. Amended Order at 19. Likewise, Defendants' reading of *Mitchell v. Texas Gulf Sulphur Company*, 446 F.2d 90, 97 (10th Cir. 1971), as setting a subjective standard for materiality is incorrect. Mot. at 14 n.8. The *Mitchell* court's *objective* analysis requires placement of the "reasonable investor" in a plaintiff's shoes by applying the former's "trading judgment" to "such information" as the plaintiff has faced. *Id.* at 97, 99.

28

claims are timely filed.") (discussing various circuits' approaches to when the statute of limitations begins to run).  Regardless, inquiry notice is not proof of actual notice, nor is it a license to publish internally-inconsistent registration materials.

Defendants argue that they are not liable because "capital preservation was only part of the Funds' stated investment objective" and was, in any event, contradicted by its Prospectus that "virtually screamed" how the Fund was instead "potentially very volatile."  Mot. at 3, 12.  Under Defendants' logic, sellers of securities could escape liability by sprinkling their lengthy prospectuses with inconsistencies so as to secure a lifeboat in one of various conflicting statements when subjected to a lawsuit based on another misstatement.  As a result, plaintiffs would then be unable to prevail on any single material misstatement, by virtue of their numerosity.  Securities laws, however, do not compel this Hobson's choice.  *See In re Adelphia Commc'ns Corp.*, 2007 WL 2615928, at *7 (The plain language of Section 11 "will not support" a rule that, even where certain plaintiffs *did* know "some statements were false, they cannot recover for damages caused by other statements held out as true when the securities were purchased.").[21]

---

[21] Even if Defendants' theory of the law were workable, their facts fail their own test because they have not identified sufficient undisputed facts to corroborate their version of this case. First, Defendants have failed to meet their burden of identifying material undisputed facts sufficient to assert their defenses against Messrs. Klorfine, Vazquez, or Krosser.  Second, material facts remain in dispute in addition to any facts Defendants have identified in their Motion.  In sum, their claim that Plaintiffs' deposition testimony vindicates their arguments skirts the issues both legally and factually – even under their own flawed version of the law.

**C. Defendants Fail to Meet the Standard for Summary Judgment on
Mr. Vazquez's Capital Preservation Allegations**

Just as in their opposition to Plaintiffs' motion for class certification, Defendants
again assert that Mr. Vazquez has admitted that the AMT-Free New York Fund's
investment objective is not false or misleading.  Mot. at 25-26; *see also* Defendants'
Opposition to Lead Plaintiffs' Motion for Class Certification ("Class Cert. Opp."), Dkt.
No. 386 at 55.  As discussed in Plaintiffs' reply in support of class certification,
Defendants take Mr. Vazquez's testimony out of context.  When read in context, it is
clear that "No" meant that Mr. Vazquez knew of nothing false or misleading about the
stated objective of the Fund other than knowledge gained from conversations with his
attorneys that he believed were protected by the attorney-client privilege.  *See* Reply at
43-45.

Reiterating another argument from their class certification opposition, Defendants
claim that Mr. Vazquez has no capital preservation investment objective claim because
his "capital was preserved."  Mot. at 26; *see also* Class Cert. Opp. at 71-72.  But Mr.
Vazquez testified during his deposition that he lost his principal investment.  Reply at 44-
45.  This is hardly consistent with preservation of capital.  As Plaintiffs argued in their
class certification reply, Defendants' argument fails because neither Section 11 nor
Section 12 damages are measured by reference to "out-of-pocket" losses and Mr.
Vazquez has a substantial personal stake in the recovery of damages.  *See* Reply at 42-43.

### D. Defendants' Recycling of Statute of Limitations Arguments Against Messrs. Klorfine and Krosser Fails

Defendants argue that Mr. Klorfine's and Mr. Krosser's capital preservation allegations are barred by the one-year statute of limitations applicable to Section 11 claims.  Mot. at 22-25, 27-29.  Actions under Section 11 must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ….."  15 U.S.C. § 77m.  The Tenth Circuit has adopted an inquiry notice standard that triggers the one-year limitations period "once the investor, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud."  *Sterlin*, 154 F.3d at 1201.  As Plaintiffs have previously stated, inquiry notice "is assessed under an objective standard and evaluated under a totality-of-the-circumstances test."  *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 116 (S.D.N.Y. 2011) (citing *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 427 (2d Cir. 2008)).  Further, its assessment is tempered by public policy which recognizes that too strict an application will have the perverse effect of either producing lawsuits based on unmeritorious claims, or, worse, plaintiffs who cannot prevail on meritorious claims for lack of opportunity to "adequately develop the facts and determine whether those facts merit bringing suit."  Amended Order at 54 (citing *Sterlin,* 154 F. 3d at 1202).

"[T]he issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact."  *Allred v. Chynoweth*, 990 F.2d 527,

529 (10th Cir. 1993) (citing *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985)).   Accordingly, determination by the Court of this issue is not appropriate "unless the evidence is so clear that there is no genuine factual issue."   *Maughan*, 758 F.2d at 1388.

Defendants' Motion presents the third instance in which Defendants have made this (or a substantially similar) argument seeking adjudication based upon applicable statutes of limitation (*see, e.g.,* Motion to Dismiss at 53-56; Class Cert. Opp. at 25-51). This Court has already denied their argument in its Amended Order and should do so again because genuine issues of material fact exist and judgment as a matter of law is inappropriate.

### 1.   Mr. Klorfine's Capital Preservation Allegations Are Not Time-Barred

Defendants argue that Mr. Klorfine had inquiry notice of his claims on either February 16, 2007, the date of Mr. Klorfine's initial purchase of AMT-Free Fund shares, *or* August 9, 2007, the date on which an OFI employee sent Mr. Klorfine an email containing additional information regarding the AMT-Free Fund. *See* Mot. at 22-23. To support this theory, Defendants rely on Mr. Klorfine's parsed deposition testimony, which Defendants argue constitutes an admission that Mr. Klorfine had inquiry notice of his claims that the AMT-Free Fund was not being managed in a manner that was consistent with capital preservation. *See id.*   These recycled arguments do not withstand scrutiny.

32

First, as an initial matter, Defendants' own disclosures foreclose the possibility that the email and attached material from OFI representative Aaron Pisani to Mr. Klorfine could have served to put Mr. Klorfine on inquiry notice that the AMT-Free Fund was not being managed in accordance with its stated investment objective.  As Lead Plaintiffs argued in their reply in support of their motion for class certification, each Fund's prospectus expressly prohibited all potential investors from relying on information found outside the prospectus.  *See* Reply at 21.  That statement was included in bold print in the AMT-Free Fund's Class Period Prospectus:   *"No one has been authorized to provide any information about the Fund or to make any representations about the Fund other than what is contained in this prospectus."*   Oppenheimer AMT-Free Municipals October 2007 Prospectus, Dkt. No. 285-3 at 49.  Thus, Defendants' own words belie Mr. Klorfine's inquiry notice.

Second, Mr. Klorfine's deposition testimony regarding the AMT-Free Fund's prospectus disclosures does not equate to inquiry notice of his claims as of his initial purchase date.  This argument is nothing more than a third iteration of Defendants' argument that each and every Class member could have learned the facts underlying their investment objective claims by simply reading the Funds' Prospectuses.  *See, e.g.,* Class Cert. Opp. at 31-33.  This argument has already been rejected by the Court in its Amended Order on Defendants' motions to dismiss.  Amended Order at 54; *id.* at 22 ("[T]he parties' dispute … hinges on whether the Prospectuses adequately disclosed" the

risks that "ultimately materialized…."). The Court determined that the Prospectuses "plausibly left out information reasonable investors would have deemed important to their decision to invest," including material information regarding inverse floaters, illiquidity and asset valuation. Amended Order at 29, 33, 41, 44.[22] Thus, Mr. Klorfine's testimony, which acknowledges the various types of holdings within the AMT-Free Fund, is unremarkable and insufficient to justify summary judgment on his inquiry notice. This is because Defendants' argument again misses a key point by too narrowly considering Plaintiffs' allegations out of context. No investor, regardless of how detailed their review of the Funds' public filings, reasonably could have been put on notice as to whether Defendants' **_actual practices_** were inconsistent with capital preservation. Defendants' piecemeal and out-of-context quotation of Mr. Klorfine's deposition testimony does not change this fact.

## 2. Mr. Krosser's Prior Investment in the Rochester Fund Did Not Trigger the Statute of Limitations

Defendants claim that Mr. Krosser was "on notice" for more than a decade that the Rochester Fund was not "very low risk" and would not lead to "extremely low price fluctuations." Mot. at 27. Defendants reach this conclusion based on the fact that Mr.

---

[22] Despite Defendants' attempt to weave Mr. Klorfine's deposition testimony into a damning admission, the AMT-Free Fund Prospectus emphasized the Funds' capital preservation objective above all else. Language touting the AMT-Free Fund's capital preservation objective was the only substantive information on the cover page of the Fund's Prospectus during the Class Period, and also appeared prominently in the very first paragraph after the table of contents of the Prospectus. *See* Lead Plaintiffs' Opposition to Defendants' Joint Motion to Dismiss ("Opp. Motion to Dismiss"), Dkt. No. 292 at 15.

Krosser had previously owned the Rochester Fund (in 1998) and had suffered a loss on that investment. This argument fails for two reasons.

First, Defendants' attempt to put words in Mr. Krosser's mouth by re-characterizing his allegations is improper. As discussed *supra* at Section VI, the phrases "very low risk" and "extremely low price fluctuations" are not Plaintiffs' characterization of the Funds' investment objectives – rather, they are terms from *Standard & Poor's Guide to the Perfect Portfolio* that refer to capital preservation and liquidity and were included as background information in Plaintiffs' Amended Complaints. Opp. Motion to Dismiss at 10. The dispute before the Court is not whether the Fund failed to meet the Standard & Poor's definition (as Defendants appear to suggest by their repeated utilization of those phrases), but whether "… no matter how creative or aggressive the Fund manager, the push for earnings would only be so far as was 'consistent with the preservation of capital.'" Amended Order at 17. As such, Defendants' attempt to re-characterize Plaintiff's allegations (and, apparently, third party definitions) to suit their own purposes cannot be used to justify the extreme remedy of summary judgment.

Second, the heart of this argument, namely that the Funds' prior returns triggered inquiry notice, has already been made by Defendants and rejected by the Court. The Funds' performance history was disclosed in the Prospectuses and was otherwise publicly-available. This Court has already held that the information found in the Funds'

Prospectuses did not trigger inquiry notice.  *Id*. at 54.  This conclusion is well-reasoned since a Net Asset Value decline *alone* does not mean the Fund deviated from its investment objective.  Moreover, as Defendants themselves have pointed out, it is "the 'discovery of the untrue statement or omission' that triggers the one-year limitations period, ***not the decline in value of a plaintiff's investment***."  Class Cert. Opp. at 29 n.19 (emphasis added) (citing *Anixter v. Home Stake Prod. Co.*, 977 F.2d 1549, 1551-52 (10th Cir. 1992)).  Thus, Mr. Krosser's deposition testimony that he previously owned the Rochester Fund during a time in which the Fund experienced a price decline does not equate to inquiry notice of legal claims based on a deviation from the Fund's investment objective and/or stated investment policies.  To find otherwise would require the Court to reverse its prior holdings and adopt a superficial view of Plaintiffs' claims, which fundamentally ignores the very factual predicates upon which the claims are based.

## VII.    ALTERNATIVELY, PLAINTIFFS SEEK RELIEF PURSUANT TO FED. R. CIV. P. 56(d)

Defendants' Motion argues that "[d]iscovery to date, particularly the sworn deposition testimony of [plaintiffs Klorfine, Vazquez and Stuart Krosser] confirms that none of these Plaintiffs has a viable investment objective claim."  Mot. at 1.  In support of this argument, Defendants proffer a hodge-podge narrative they claim constitutes Plaintiffs' investment objective allegations.  *Id.* at 3-5.  Notwithstanding Plaintiffs' vehement disagreement with Defendants' characterization of Plaintiffs' allegations and the infirmities associated with their argument, discussed *supra*, Defendants' Motion

36

cannot be adjudicated at this time because Defendants have not provided Plaintiffs with the discovery necessary to justify their opposition.

In the event that the Court is not persuaded by Plaintiffs' arguments in opposition to Defendants' Motion, *supra*, Plaintiffs move that the Court defer consideration of Defendants' Motion until 30 days following the completion of fact discovery pursuant to Fed. R. Civ. P. 56(d).

## A. Rule 56(d) Standard

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[23]  The Tenth Circuit has held that a party seeking to defer a ruling on summary judgment under Rule 56(d) must provide an affidavit "explain[ing] why facts precluding summary judgment cannot be presented." *Valley Forge Ins. Co. v. Health Mgmt. Partners, Ltd.,* 616 F.3d 1086, 1096 (10th Cir. 2010) (citing *Comm. for the First Amendment v. Campbell,* 962 F.2d 1517, 1522 (10th Cir. 1992) (citations omitted)).  "The theory behind this rule is that summary judgment should not be granted when the non-moving party has

---

[23] Fed. R. Civ. P. 56(d) took effect and replaced Fed. R. Civ. P. 56(f) in December 2010. *See* Fed. R. Civ. P. 56 advisory committee's note (2010). Rule 56(f) case law has been applied to the current Rule 56(d). *E.E.O.C. v. Moreland Auto Grp., LLLP,* No. 11-CV-01512-RBJ-MJW, 2012 WL 2282225, at *2 n.1 (D. Colo. June 18, 2012).  For consistency, Plaintiffs refer to the current citation, Rule 56(d), for authority under the prior citation, Rule 56(f).

not ha[d] the opportunity to obtain discovery that is essential to adequately refute the motion." *Jama v. City & Cnty. of Denver*, No. 08-CV-01693-MSK-KLM, 2010 WL 3075584, at *2 (D. Colo. Aug. 4, 2010) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986)).

Although there is no requirement in Rule 56 that a court refrain from entering summary judgment until discovery is complete, "sufficient time for discovery is especially important when relevant facts are exclusively in the control of the opposing party." *Weir v. Anaconda Co*., 773 F.2d 1073, 1081 (10th Cir. 1985) (citing 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2741, at 545 (1983)). The Tenth Circuit has also held that "summary judgment should not be based on the deposition or affidavit of an interested party ... as to facts known only to him – a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony." *Madison v. Deseret Livestock Co*., 574 F.2d 1027, 1037 (10th Cir. 1978).

The Tenth Circuit has further held that to meet this burden, the party seeking to obtain a stay pursuant to Rule 56(d) must identify each of the following:  "(1) 'the probable facts not available,' (2) why those facts cannot be presented currently, (3) 'what steps have been taken to obtain these facts,' and (4) 'how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment.'" *Valley Forge Ins. Co.*, 616 F.3d at 1096*.*  Here, Plaintiffs satisfy each of these four requirements.  *See generally* Bunch Affidavit.

### 1.  Probable Facts Are Not Available to Plaintiffs

As discussed *supra*, Defendants misconstrue Plaintiffs' allegations, in particular Plaintiffs' capital preservation allegations, to suit their own view.  Plaintiffs have yet to receive the full discovery to which they are entitled on the issue of Defendants' actual investment practices during the Class Period.

In particular, throughout Plaintiffs' ongoing conversations with Defendants via the meet and confer process, Defendants have repeatedly touted that they have provided 3.5 million pages worth of information to Plaintiffs.  The vast majority of those documents were transactional data regarding purchases made by the various Funds during the Class Periods (and even this information is as yet incomplete).  In truth, Defendants have produced only 4,231 documents, totaling approximately 72,893 pages, containing non-transactional data.  Plaintiffs have yet to receive documents concerning the following from Defendants:

- procedures for determining liquidity of bonds;

- all emails between Defendants and/or non-parties relevant to Plaintiffs' claims;

- all electronic and non-electronic documents held by custodians identified by Defendants as likely to be in possession of relevant information;

- all Board materials, including Board procedures regarding illiquid securities, self-ratings, inverse floaters, derivative instruments and leverage ratios; and

- any documents of any kind from defendant MassMutual relevant to Plaintiffs' claims.

*See* Bunch Aff. at ¶ 6.  Additionally, Plaintiffs have not had the opportunity to depose any defendant, or, for that matter, any custodian of any document produced to them.

This information goes to the very heart of Defendants' actual investment practices during the Class Periods and as such will be critical to either proving or disproving whether, in fact, Defendants' actual practices were in accord with their stated investment objectives.  *See* Bunch Aff. at ¶¶ 7, 15.  As such, the Court should not grant summary judgment before Plaintiffs have the benefit of discovery of Defendants' actual investment practices.

### 2.  Why the Facts Cannot Be Presented Currently

Defendants have not produced the discovery listed above even though Plaintiffs served Defendants with the relevant requests for production more than nine months ago. *See, e.g.,* Bunch Aff. at Ex. Q (First RFP).  As the Tenth Circuit and courts in this District have held, "common sense indicates that such facts are likely to be in the exclusive control of Defendants, and a 'movant's exclusive control of such information is a factor weighing heavily in favor of relief' under Rule 56(d)."  *Levy v. Worthington*, No. 11-CV-

00978-WYD-KLM, 2011 WL 5240442, at *2 (D. Colo. Oct. 31, 2011) (citing *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000)).   This is precisely the situation here.   Defendants possess the information Plaintiffs require and have yet to produce it.  *See* Bunch Aff. at ¶¶ 3, 6.

### 3.   Plaintiffs Have Taken Steps to Obtain the Information

Plaintiffs first served Defendants with requests for production and interrogatories on February 9, 2012.   With respect to the requests relevant to this motion, Defendants agreed "to undertake a reasonable search for responsive documents from a reasonable number of custodians limited by reasonable search terms, subject to mutual agreement by the parties after an appropriate meet and confer."   Bunch Aff. at ¶ 11.   Plaintiffs took Defendants at their words and initiated the meet and confer process.   The parties have exchanged approximately twelve meet and confer letters regarding Defendants' search for and production of responsive documents, held numerous phone calls, exchanged numerous emails and have met in person once in an effort to address Defendants' delay or refusal to produce the above categories of discoverable information.  *See* Bunch Aff. at Exs. C-N.

To date, Plaintiffs' efforts have led to the production of only a small portion of the requested documents.[24]   That the balance of Defendants' production remains outstanding

---

[24] Although Defendants claim to have produced 3.5 million pages worth of information to Plaintiffs, nearly all of those documents were part of Defendants' "core" production, a set of documents Defendants selected for production that consisted primarily of transactional data

41

is attributable primarily to Defendants' reluctance to compromise and propensity for delay, as well as the inherent complexities of electronic discovery. Defendants recently agreed to expand their electronic search beyond email, but continue to resist producing responsive hard copy documents and quarrel with Plaintiffs over Plaintiffs' proposals for electronic discovery. Indeed, although Defendants have identified a vendor whose search protocol they endorse, the vendor's own search protocol requires an iterative search which Defendants continue to resist. Plaintiffs have agreed on a date with Defendants, irrespective of the outcome of this Motion, to raise these and other discovery issues with the Court if they remain unresolved. Bunch Aff. at ¶ 11.

### 4. Additional Time Will Enable Plaintiffs to Rebut Defendants' Motion

Through their persistent efforts, Plaintiffs have made some progress in their meet and confer discussions with Defendants regarding the above list of documents. Moreover, Plaintiffs believe that upon receipt of this information and after expert analysis, they will be in a position to accurately describe Defendants' actual practices – practices that are absolutely necessary to adequately oppose Defendants' Motion. Absent this information, Plaintiffs remain in the dark and unable to mount a complete defense.

---

regarding purchases made by the various Funds during the Class Periods (and even this information is as yet incomplete).

## VIII.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. Alternatively, the Court should defer ruling on Defendants' Motion until 30 days after fact discovery is complete, pursuant to Rule 56(d).

Dated: November 16, 2012

Respectfully submitted,

s/ Kip B. Shuman

Kip B. Shuman
Rusty E. Glenn
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, CO 80302
Telephone:  (303) 861-3003
Fax:  (303) 484-4886
kip@shumanlawfirm.com
rusty@shumanlawfirm.com

*Liaison Counsel*

Steven J. Toll
Lisa M. Mezzetti
Daniel S. Sommers
S. Douglas Bunch
Stefanie M. Ramirez
Genevieve Fontan
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, NW
Suite 500 West Tower
Washington, D.C.  20005
Telephone:  (202) 408-4600
Fax:  (202) 408-4699
stoll@cohenmilstein.com
lmezzetti@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com
sramirez@cohenmilstein.com
gfontan@cohenmilstein.com

*Attorneys for Lead Plaintiff Leonard
Klorfine in the AMT-Free Fund cases,
Lead Plaintiffs Stuart and Carole
Krosser in the Rochester Fund cases,
and Lead Counsel for the Class*

Sanford P. Dumain
Peter E. Seidman
Roland W. Riggs
Christopher J. Orrico
**MILBERG LLP**
One Pennsylvania Plaza
48th Floor
New York, NY 10119
Telephone: (212) 594-5300
Fax: (212) 868-1229
sdumain@milberg.com
pseidman@milberg.com
rriggs@milberg.com
corrico@milberg.com

*Attorneys for Lead Plaintiff John
Vazquez in the AMT-Free New York
Fund cases and Lead Counsel for the
Class*

44

Joseph J. Tabacco, Jr.
Nicole C. Lavalle
Matthew D. Pearson
**BERMAN DEVALERIO**
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone:  (415) 433-3200
Fax:  (415) 433-6382
jtabacco@bermandevalerio.com
nlavalle@bermandevalerio.com
mpearson@bermandevalerio.com

*Additional Counsel for Lead
Plaintiffs Stuart and Carole Krosser
in the Rochester Fund cases*

Charles J. Piven
**BROWER PIVEN**
A Professional Corporation
488 Madison Avenue, 8th Floor
New York, NY  10022
Telephone:  (212) 501-9000
Fax:  (212) 501-0300
piven@browerpiven.com

*Additional Counsel for Lead Plaintiff
John Vazquez in the AMT-Free New York
Fund cases*

Lawrence L. Klayman
Jahan K. Manasseh
**KLAYMAN & TOSKES, P.A.**
2424 North Federal Highway
Suite 450
Boca Raton, FL 33431
Telephone:  (561) 997-9956
Fax:  (561) 361-9178

*Additional Counsel for Lead Plaintiffs
Stuart and Carole Krosser*

45

## <u>Certificate of Service</u>

I hereby certify that the foregoing was filed with this Court on November 16, 2012 through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.


        <u>*s/ Rusty E. Glenn*</u>
        Rusty E. Glenn