**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane**

Master Docket No. **09-md-02063-JLK-KMT** (MDL Docket No. 2063)

**IN RE: OPPENHEIMER ROCHESTER FUNDS GROUP SECURITIES LITIGATION**

This document relates to:   *In re California Municipal Fund*
09-cv-01484-JLK-KMT (Lowe)
09-cv-01485-JLK-KMT (Rivera)
09-cv-01486-JLK-KMT (Tackmann)
09-cv-01487-JLK-KMT (Milhem)

_____

**LEAD PLAINTIFF JOSEPH STOCKWELL'S OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL DISCOVERY**
_____

## INTRODUCTION

At issue in Defendants' motion are interrogatories that address Plaintiff's allegations that Defendants: (a) mis-rated certain of the California Fund's internally rated securities; (b) failed to identify certain of the Fund's securities as illiquid; and (c) overvalued the Fund's assets and its NAV.  Plaintiff has provided comprehensive responses to each of Defendants' interrogatories, has identified responsive documents, and has promised to supplement his responses under Rule 26(e) as discovery in this matter proceeds.  Yet Defendants demand more, including hypothetical lists of the offending securities and descriptions of Plaintiff's methodologies for determining which securities were mis-rated, illiquid or overvalued.  But Plaintiff has already described his methodologies, and has explained that the mis-rating and overvaluation claims are currently based on a portfolio level (rather than security level) analysis and that the additional information Defendants seek either does not exist or would require the premature disclosure of expert opinion.  What more Plaintiff could conceivably be expected to provide at this stage of the pretrial proceedings is not clear.

Defendants' interrogatories fall into two categories:  (1) interrogatories that seek information that Plaintiff currently contends supports his allegations and (2) interrogatories that seek the information Plaintiff had at the time he filed his complaint. While Plaintiff does not dispute that the "contention interrogatories" seek relevant information and has responded with information reasonably available to him to date, the

problem is that they are premature. As reflected by the parties' recent agreement to extend the fact discovery deadline in this case, discovery in this case is far from complete. Defendants' document production is still very much underway. Defendants have produced nearly half a million pages of documents in the last few months, but continue to refuse to produce documents that relate to the very allegations at issue in this motion (an issue Plaintiff expects to brief for the Court shortly unless the parties are able to resolve their differences). And Plaintiff has yet to take his first deposition, due in large part to Defendants' delayed document production. The interrogatories are also premature in that they seek disclosure of expert opinions, which Plaintiff will disclose in accordance with the parties' agreed schedule.

The interrogatories that relate to what Plaintiff knew at the time he filed his complaint are irrelevant and are not reasonably calculated to lead to admissible evidence. In the interest of avoiding dispute, however, Plaintiff also provided detailed responses to these interrogatories. Defendants have proffered no persuasive reason that at this point in the litigation—after Plaintiff's allegations have survived motions to dismiss and a round of summary judgment briefing—focusing on the homework Plaintiff and his counsel did before filing the Complaint is a proper subject of discovery.

Despite his objections to Defendants' discovery, Plaintiff has responded to Defendants' requests, conferred with Defendants in good faith, and promised to supplement his responses. The Court should deny Defendants' motion and enter an order

under Federal Rule of Civil Procedure 33(a)(2) directing that Plaintiff need not supplement his responses to Defendants' contention interrogatories and accompanying document request until 30 days after the close of fact discovery.

## BACKGROUND FACTS

### I.  Plaintiff Has Explained The Bases Of His Claims And Defendants Have Hindered The Development Of Evidence In Support Of Those Claims

Defendants have significantly understated Plaintiff's efforts to respond to Defendants' purported concerns about the discovery requests at issue. But rather than engage in a point-by-point rebuttal of Defendants' narrative, this brief focuses on the relief Defendants seek and the reasons it is improper at this point in the litigation.

Defendants are well aware of the factual bases of Plaintiff's claims. The Complaint, which sets out in great detail the factual bases for Plaintiff's claims, has withstood hundreds of pages of motion to dismiss and summary judgment briefing. More recently, Plaintiff served 40 pages of interrogatory responses detailing the facts and analyses that support the allegations in the Complaint, providing information and identifying documents reasonably available to Plaintiff to date, and promising to supplement the responses as discovery progresses.

Defendants themselves have also hindered Plaintiff's ability to provide even more detailed responses to the contention interrogatories, as Defendants have delayed production of, and as to some issues have outright refused to produce, critical information bearing on the claims that are the subject of this motion. Until Plaintiff filed a recent

motion to compel, for example, Defendants refused to produce the contemporaneous ratings of bonds rated by independent ratings agencies. Defendants' belated production of those documents took place only days before Defendants filed this motion to compel. More significantly, Defendants still refuse to produce the credit files for their self-rated bonds. To be clear, *Defendants are moving to compel Plaintiff to identify each individual mis-rated security while denying him the ability to review the files that relate to those ratings.*

Defendants complain that Plaintiff's responses were inadequate, yet make no attempt to describe them. Plaintiff therefore briefly summarizes his responses below and demonstrates why Defendants' two criticisms—that Plaintiff did not (a) provide lists of securities that were mis-rated, illiquid or overvalued or (b) explain his methodologies for supporting those allegations—are without merit. [1]

## II.  Plaintiff's Interrogatory Responses

### A.  Responses Relating To Plaintiff's Mis-Rating Allegations

Interrogatory 8 asks Plaintiff to (a) identify all facts he had when he filed the Complaint supporting his allegations that Defendants falsely claimed that "the Manager would assign ratings to unrated securities in a manner 'comparable to rated investment grade securities'" and (b) to identify all securities that were not rated comparably.

Plaintiff did not and could not have identified specific mis-rated securities at the

---

[1] Plaintiff's complete responses to Defendants' interrogatories can be found at Docket No. 444.

time he filed his Complaint because he had no access to the Fund's ratings of individual bonds and the credit files showing how those ratings were generated.  Plaintiff did not need to rely on a security-by-security analysis, however, because his allegations were based on discrepancies between the portfolio level (rather than security level) credit allocations the Fund reported in its SEC filings, and those reported by third party analysts or in other publicly available documents.  For example, while Defendants claimed in the Fund's Annual Report that as of July 31, 2008 the California Fund held approximately 60% of its assets in bonds rated BBB or below, third party analyst Morningstar reported that as of June 30, 2008 the California Fund actually held 78% of its assets in bonds rated BBB and below.  These facts, together with the fact that as much as 60% of the Fund's bonds were not rated by independent ratings agencies, corroborate Plaintiff's mis-rating allegations.  There is no list of mis-rated securities dating from the time Plaintiff filed his Complaint.

     Plaintiff's description of his portfolio level analysis should also satisfy Defendants' demands for an explanation of his methodology.  At the time of filing, the Complaint focused largely on "dirt bonds."  The Fund invested between 20 and 35% of its assets in dirt bonds during the Class Period and Morningstar observed that "the fund's investment in 'dirt deals'" were of "particular concern" as "[t]hese bonds tend to be nonrated and are especially risky given the depressed housing market in California."  Plaintiff's responses explain that before he filed the Complaint he reviewed the issuance

materials for more than 600 bonds that were publicly available through the Municipal Securities Rulemaking Board's Electronic Municipal Market Access (EMMA) website. Dkt. 444 at 32.  National ratings agencies will not rate dirt bonds as investment grade unless they have a well-established payment history and a value-to-lien ratio of at least 10:1.  Plaintiff's review revealed that as of July 31, 2008, more than 25% of the Fund's holdings either did not meet this ratio or had been rated as junk by a ratings agency.  On a portfolio level, the Fund mis-rated its bonds and exceeded its 25% limit on junk bonds.

In response to Interrogatory 7, which asks for the facts Plaintiff currently contends support his mis-ratings allegations, Plaintiff incorporated the facts identified in response to Interrogatory 8 (described above) and explained that his analysis to date has again been based on a portfolio level (rather than a security level) review.  This is due largely to Defendants' continued refusal to produce their internal credit ratings files. Plaintiff nonetheless pointed to evidence of mis-rating based on the data Defendants have produced in discovery to date.  Across all ratings categories, for example, the Fund's self-rated bonds significantly underperformed externally-rated bonds of ostensibly similar quality during the Class Period.

Defendants now admit, moreover, that their credit ratings process is not comparable to the ratings agencies' processes.  The November 28, 2012 Prospectus for the Fund no longer represents that Defendants will "use criteria similar to those used by the rating agencies" and instead states that "[t]here can be no assurance, nor is it

-6-

intended, that the Manager's credit analysis process is consistent or comparable with the credit analysis process used by a nationally recognized statistical rating organization." Declaration of Marc Haber ("Haber Decl.") Ex. 2 at 3-4.  Plaintiff's allegation that Defendants mis-rated bonds according to rating agency standards is thus all but admitted, and Defendants' assertion that these allegations cannot "withstand[] even modest scrutiny" lacks merit.  Motion at 5.

      **B.**      **Responses Relating To Plaintiff's Illiquidity Allegations**

Interrogatory 4 asks for all facts Plaintiff had at the time the Complaint was filed that support the allegation "that the Fund 'was over-concentrated in illiquid securities including Tobacco Bonds'" and also asks Plaintiff to identify the illiquid securities. Contrary to Defendants' assertion, Plaintiff's response does "identify in plain English the methodology" he used to analyze illiquidity.  Motion at 8.  Plaintiff explained that he applied Defendants' own standards for illiquidity which included (a) lack of an active trading market, (b) difficulty disposing of a security within seven days at an acceptable price, and (c) the "stale pricing" of securities whose valuation has not changed over time. Based on application of these criteria to the Fund's largest holdings, Plaintiff determined that the Fund exceeded its 15% cap on investments in illiquid securities.  In addition, while Defendants claim that Plaintiff "refuse[d] to identify the regulations" on which he relied, Plaintiff did in fact cite to specific SEC regulations.  Dkt. 444 at 19.

Before he filed the Complaint, Plaintiff analyzed the trading frequency and

volume of the small percentage of securities that Defendants identified as illiquid and used them as benchmarks to apply to the Fund's top 25 securities holdings as of July 2008. Plaintiff identified specific securities that posted far fewer trades than securities Defendants had listed as illiquid. Other securities Plaintiff identified were illiquid because of the size of the Fund's position in these securities. Plaintiff conducted similar analyses specific to the Fund's tobacco bonds, and identified one bond that did not trade at all in 2007 and 2008 and another in which the Fund held more than 80% of the issuance. *Id.* at 21.

Interrogatory 3 seeks the current facts that support Plaintiff's illiquidity allegations. Plaintiff incorporated his response to Interrogatory 4 (described above) and, in addition, detailed his ongoing but still incomplete analysis of the many hundreds of securities the Fund owned during the Class Period. Among other things, Plaintiff described his portfolio-wide analysis based on the industry recognized metric of "spread duration," which takes into account the overall illiquidity of a portfolio. Dkt. 444 at 16.

Plaintiff also pointed to specific documents from Defendants' own production that show Defendants considered securities that have "stale prices"—*i.e.*, prices that have changed in 15 business days—to be illiquid, and that they also acknowledge a seven-day metric, under which an "illiquid security" is "one which cannot be disposed of within seven days in the ordinary course of business at approximately the amount at which the fund has valued the security." In addition, Plaintiff's response to Interrogatory 3

included a graph that reflects his preliminary determination that under a seven-day stale pricing analysis, the Fund exceeded its 15% cap on illiquid investments throughout the entire Class Period. *Id.* at 46. Even applying Defendants' own more relaxed 15-day stale pricing analysis, Plaintiff determined on a preliminary basis that the Fund exceeded its 15% illiquidity cap for substantial portions of the Class Period.

Plaintiff has thus identified illiquid securities by category, rather than by CUSIP, and although it is subject to further refinement, he has also described his methodology for identifying illiquid securities.

### C.    Responses Relating To Plaintiff's Overvaluation Allegations

Interrogatory 6 asks for all facts Plaintiff had when he filed the Complaint that support the allegation that "the Fund's assets were greatly overvalued." Plaintiff explained he did not have a list of overvalued Fund assets other than the illiquid securities identified in response to Interrogatory 4. Instead, the Complaint alleged that the Fund's NAV had dropped precipitously, that the Prospectuses' claim of fair value based on market prices was false and that the Fund had substantially understated the volume of illiquid securities in its portfolio. These factors together plausibly explained in part the rapid decline in the Fund's NAV. Dkt. 444 at 28.

Interrogatory 5 asks for the current facts supporting this same allegation. In response, Plaintiff incorporated all of the facts identified in response to Interrogatory 6 (described above) and further responded that his additional investigation to date has

revealed that the Fund's overstated NAV may also have been the result of its excessive credit risk due to the mis-rating of bonds. Plaintiff has also explained that significant investor outflows and losses exacerbated the Fund's difficulties. Between November 30, 2007, and November 30, 2008, the Fund had $306 million in net redemptions on top of the $800 million decline in asset values. The Fund therefore was forced in the midst of a credit crisis to sell securities that seldom traded or had stale pricing issues, that were unrated, or that were rated as junk or near-junk. Plaintiff explained that the Fund's NAV fell steeply in 2008 because of the high spread duration of the Fund's portfolio as a whole. Again, Plaintiff has not yet identified specific bonds that were mispriced. But it is clear that on a portfolio level, the Fund was forced to sell portions of a portfolio with heightened illiquidity risks at the worst possible time. In fact, Defendants admitted as much in their October 21, 2008 Prospectus Supplement:

> During times of reduced market liquidity, such as at the present, the Fund may not be able to sell bonds readily at prices reflecting the values at which the bonds are carried on the Fund's books. Sales of large blocks of bonds by market participants, such as the Fund, that are seeking liquidity can further reduce bond prices in an illiquid market. The Fund may seek to make sales of large blocks of bonds to meet shareholder redemption requests, or it may be required to raise cash to re-collateralize, unwind or 'collapse' trusts that issued inverse floaters . . . .

Haber Decl. Ex. 1 at 1 ¶1.

**ARGUMENT**

**I.   Plaintiff Has Responded To Defendants' Premature Contention Interrogatories And Will Supplement Those Responses As Appropriate**

   **A.   Defendants' Contention Interrogatories Are Premature**

Interrogatories 3, 5, and 7 seek "all facts" and "all documents" that support Plaintiff's allegations concerning: (1) illiquidity; (2) valuation; and (3) the Fund's internal ratings methodology. Plaintiff has already provided extensive responses to these "contention interrogatories" and will supplement those responses under Rule 26(e). Plaintiff has thus more than satisfied his obligations at this stage of the proceedings.

Under Rule 33(a)(2), "the court may order that the interrogatory need not be answered until designated discovery is complete or until a pre-trial conference or some other time." Rule 33 thus "protects the responding party from being hemmed into fixing his position without adequate information." *Roth v. Bank of the Commonwealth*, No. CIV-79-36E, 1988 WL 43963, at *4 (W.D.N.Y. May 4, 1988). Courts routinely exercise this discretion and, in the interests of judicial economy, fairness and efficiency, decline to compel responses to contention interrogatories that are served before substantial document and testimony discovery has been conducted. *See, e.g., Med. Assurance Co v. Weinberger*, No. 4:06-CV-117, 2011 WL 2471898, at *5 (N.D. Ind. June 20, 2011) ("in the interest of judicial economy and fairness, the answers to contention interrogatories often are delayed until the end of discovery"); *Fischer & Porter Co. v. Tolson*, 143

F.R.D. 93, 95 (E.D. Pa. 1992) ("contention interrogatories are more appropriate after a substantial amount of discovery has been conducted") (internal quotation marks omitted).

A significant amount of fact discovery remains to be done in this complex case. Defendants point out that this case "has been pending for years," but ignore that the PSLRA discovery stay was lifted less than a year and a half ago and that until just recently, Defendants themselves insisted that discovery as to certain of Plaintiff's claims remained stayed. Haber Decl. ¶3. Only in the last few months—after a lengthy meet and confer process directed at reducing the burden and expense associated with Defendants' document production—have Defendants begun producing the emails, presentations and internal reports that Plaintiff requested more than a year ago. *Id*. ¶2. Since the end of January, Defendants have produced more than 430,000 pages of documents and that production is ongoing.[2] While Plaintiff's review of those documents is well underway, it is by no means complete. *Id*. Plaintiff has also not taken any depositions yet, due primarily to the delayed document production and Defendants' insistence on deferring the Rule 30(b)(6) deposition of Defendant OFI (which Plaintiff noticed in February). *Id*. ¶4. The parties recently agreed to extend the fact discovery cutoff by six months (and intend to submit that agreed extension for the Court's consideration shortly), further illustrating the parties' consensus that substantial discovery remains to be done. *Id*. ¶5.

---

[2]This number underestimates the true page count of the production since, pursuant to the parties' agreed protocol for the production of electronically stored information, the thousands of Excel files Defendants have produced in native format (which often consist of dozens or even hundreds of pages) are assigned only a single bates number.

Plaintiff does not dispute the relevance of the information Defendants seek through Interrogatories 3, 5 and 7, and also agrees that discovery will ultimately allow the parties to refine and narrow the issues in dispute. The sole issue is one of timing. Plaintiff takes the position that "early discovery should focus on generating real world data and not on examining the parties' contentions about the legal implications of that data." *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985). Defendants, by contrast, seek to elicit definitive interrogatory responses before Plaintiff has had a chance to develop the necessary discovery. That is not how the process is supposed to work. It is only "*[a]fter* learning what the evidence is, so the theory goes, [that the] parties will be in a position to press for stipulations, admissions, or rulings on legal issues that either dispose of the case or give it the final, focused shape it will take into trial." *Id.*

Plaintiff is currently marshaling further evidence that proves the allegations that have already withstood Defendants' motions to dismiss. After Plaintiff has gathered the necessary documentary and testimonial evidence through discovery, he will supplement his interrogatory responses. Defendants will then have a chance to test Plaintiff's theories, and the parties will narrow the issues in dispute, if appropriate. For now, the Court should reject Defendants' attempts to distract Plaintiff from the work at hand.

### B. Interrogatories 3, 5 And 7 Seek Premature Disclosure Of Expert Opinions

Interrogatories 3, 5 and 7 also seek premature disclosure of expert opinions as they request, among other things, information about methodologies for determining whether Fund assets were illiquid, mis-rated or overvalued that Plaintiff is currently developing in consultation with an expert. Plaintiff is, for example, working with his expert to refine his liquidity determinations based on an extensive review of the hundreds of securities the Fund held during the Class Period. Producing a current list of securities Plaintiff's expert has examined and preliminarily identified as illiquid would require Plaintiff to prematurely disclose expert opinion. The deadline for expert disclosures is not until 30 days after the close of fact discovery. Dkt. 378. Plaintiff's work with his expert is just beginning and will involve analysis of the factual information Plaintiff is currently developing. The requests are therefore premature.

## II. Facts Plaintiff Possessed At The Time He Filed The Complaint Are Irrelevant

Interrogatories 4, 6 and 8 seek "all facts" and "all documents" that support certain of Plaintiff's allegations and that were in his possession at the time he filed the Complaint. These interrogatories seek irrelevant information, as the allegations in question have survived Defendants' motions to dismiss. In the interest of avoiding dispute, however, Plaintiff provided extensive responses.

Interrogatories like these, that "focus[] on the nature of the homework plaintiffs and their counsel did before filing the complaint," are not appropriate under "normal

discovery rules" and instead would only be relevant to a Rule 11 motion. *In re Convergent Tech.*, 108 F.R.D. at 346. Defendants have no grounds to pursue, and have not identified, any basis for a Rule 11 motion. Compelling further discovery "into the quality and scope of the investigation that preceded the filing of a claim" would therefore be "unwise and unwarranted." *Id.*

Defendants' other arguments for discovery of Plaintiff's early knowledge are equally meritless. Defendants argue for the first time in their motion that the facts Plaintiff knew at the time the Complaint was filed are relevant to two of their defenses, but cite no legal authority for these arguments. Motion at 13-14.

Plaintiff's interrogatory responses are not relevant to the determination of whether the Defendants' statements were matters of opinion or fact. It should be self-evident that Plaintiff's analysis based solely on publicly available information would be less refined than the methodologies an expert could develop with the benefit of full discovery on the relevant topic. Such refinement is a normal part of case preparation and is irrelevant to a determination of whether Defendants' statements were matters of opinion or fact. In fact, the interrogatories appear to be designed to do more than uncover a change in methodologies. They seek to force Plaintiff to express interim opinions before expert reports are due, presumably to lay the groundwork for later arguments that those interim opinions are evidence of methodological weakness. That is not a proper basis for discovery.

Defendants' half-hearted statute of limitations argument is equally unpersuasive. Even if it were possible using only publicly available documents to identify each overvalued, mis-rated or illiquid security in a Fund comprised of hundreds of securities, performing that analysis would be far beyond the capacity of an average investor exercising "reasonable diligence." 15 U.S.C. §77m. What Plaintiff knew at the time he filed his Complaint is also immaterial, as the relevant inquiry for purposes of the statute of limitations defense is whether the Plaintiff knew of his claims *more than one year before* filing the complaint. *Id.*

## III. Plaintiff Has Already Produced Or Identified Responsive Documents And Will Supplement His Production

Defendants seek identification of all documents Plaintiff references in his interrogatory responses. Plaintiff has identified responsive documents from Defendants' production and will identify additional responsive documents in due course. *See, e.g.*, Dkt. 444 at 16-17. The documents Plaintiff relied on at the time of the Complaint are largely Defendants' SEC filings. While the public availability of a document does not necessarily relieve the responding party's production obligations, in this instance, many of the documents in question are actually exhibits to Defendants' motions to dismiss. Defendants' insistence that Plaintiff produce these routine public filings appears to be calculated to harass, rather than to advance the interest of narrowing the issues in dispute.

Defendants' position is especially perplexing given their continued refusal to produce discovery that is critical to the very claims the interrogatories address. That

Plaintiff has identified relatively few responsive documents from Defendants' production to date is unsurprising given the recent and ongoing production of relevant documents, and Defendants' refusal to produce others.

### IV. The Court Should Enter An Order Deferring Plaintiff's Responses Under Rule 33(a)(2)

To avoid further distraction or piecemeal responses to Defendants' discovery requests, Plaintiff asks the Court to exercise its discretion under Rule 33(a)(2) and enter the accompanying proposed order directing that Plaintiff need not provide further responses to Interrogatories 3, 5, and 7 and the accompanying document request until 30 days after the close of fact discovery.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks the Court to deny Defendants' motion and enter Plaintiff's proposed order.

Dated: May 16, 2013

/s/ Marc Haber
Alan W. Sparer
Marc Haber
Michael L. Gallo
**SPARER LAW GROUP**
100 Pine Street, 33rd Floor
San Francisco, CA 94111
Telephone: (415) 217-7300
Facsimile: (415) 217-7307
E-mail: asparer@sparerlaw.com
E-mail: mhaber@sparerlaw.com

*Attorneys for Joseph Stockwell and Lead Counsel for the Class*

-18-

 

Daniel C. Girard
Amanda Steiner
Dena C. Sharp
Lesley V. Tepper
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA  94108
Telephone:  (415) 981-4800
Fax:  (415) 981-4846
Email: dcg@girardgibbs.com
Email: as@girardgibbs.com
Email: chc@girardgibbs.com
Email: lav@girardgibbs.com

*Additional Counsel for Joseph Stockwell and Lead Counsel for the Class*

Kip B. Shuman
Rusty Glenn
**THE SHUMAN LAW FIRM**
885 Arapahoe Avenue
Boulder, Colorado 80302
Telephone: (303) 861-3003
Facsimile: (303) 484-4886
E-mail: kip@shumanlawfirm.com
E-mail: Rusty@shumanlawfirm.com

*Liaison Counsel for Lead Plaintiff*