**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge John L. Kane**

Master Docket No. 09-md-02063-JLK-KMT (MDL Docket No. 2063)

IN RE: OPPENHEIMER ROCHESTER FUNDS GROUP SECURITIES LITIGATION

This document relates to:  *In re AMT-Free Municipals Fund*

09-CV-01243-JLK-KMT (Prince)

09-CV-01447-JLK-KMT (Connel)

09-CV-01510-JLK-KMT (Amato)

09-CV-01619-JLK-KMT (Furman)

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation" and, with the settlement contemplated herein, the "Settlement"), dated as of March 4, 2014, is made and entered into by and among Mr. Leonard Klorfine ("Lead Plaintiff"), on behalf of himself and the Class, and the Oppenheimer AMT-Free Municipals Fund ("AMT-Free Fund"), OppenheimerFunds, Inc. ("OFI"), and OppenheimerFunds Distributor, Inc. ("OFDI") (collectively, "Oppenheimer"), John V. Murphy, Brian W. Wixted, Ronald H. Fielding, Daniel G. Loughran, Scott Cottier and Troy E. Willis (together with Oppenheimer, the "Oppenheimer Defendants"), Brian F. Wruble, David K. Downes, Matthew P. Fink, Robert G. Galli, Phillip A. Griffiths, Mary F. Miller, Joel W. Motley, Russell S. Reynolds, Jr., Joseph M. Wikler, Peter I. Wold, Clayton K. Yeutter, and Kenneth A. Randall (collectively, the "Trustee Defendants") and Massachusetts Mutual Life Insurance Company ("MassMutual") (the Oppenheimer Defendants, the Trustee Defendants and MassMutual are collectively referred to as "Defendants"), by and through their undersigned counsel.

**WHEREAS:**

a.      Beginning on May 13, 2009, a series of proposed class actions were filed in the United States District Court for the District of New Jersey and in the United States District Court for the District of Colorado alleging violations of the Securities Act of 1933 (the "1933 Act") in connection with alleged misstatements in the registration statements and prospectuses of the AMT-Free Fund;

b.      On June 17, 2009, these cases were consolidated into MDL Docket Number 2063, before Judge John L. Kane of the United States District Court for the District of Colorado (the "District Court" or "Court"), along with (among other cases) the actions entitled *In re AMT-Free New York Municipal Fund*, *In re New Jersey Municipal Fund*, *In re Pennsylvania Municipal Fund*, *In re Rochester Fund Municipals* and *In re Rochester National Municipals Fund* (collectively, the "Consolidated Actions").

c.      On November 18, 2009, Judge Kane appointed Mr. Klorfine to serve as Lead Plaintiff and approved Lead Plaintiff's retention of Cohen Milstein Sellers & Toll PLLC as Lead Counsel and of The Shuman Law Firm as Liaison Counsel;

d.      On January 15, 2010, Lead Plaintiff filed an Amended Class Action Complaint (the "Complaint") asserting claims under Sections 11, 12(a)(2) and 15 of the 1933 Act (15 U.S.C. §§ 77k, 77l, and 77o) and Section 13(a) of the Investment Company Act (15 U.S.C. § 80a-13(a)) on behalf of all persons or entities who acquired shares of the AMT-Free Fund traceable to its Registration Statements during the period from May 13, 2006 through October 21, 2008, inclusive (the "Class Period") (the "Action");

e.      On April 5, 2012, the Defendants filed two motions to dismiss the Complaint; thereafter Lead Plaintiff filed oppositions to the motions to dismiss and Defendants filed replies to the oppositions; the Court denied in part and granted in part the motions to dismiss in an Order dated October 24, 2011, which was subsequently amended on January 20, 2012;

f.      On July 24, 2012, Lead Plaintiff filed a motion for class certification; the Defendants took discovery with regard to the motion and filed an opposition to it and Lead Plaintiff filed a reply to the opposition; the motion is pending;

g.      On September 14, 2012, the Defendants filed two motions for partial summary judgment; thereafter Lead Plaintiff filed oppositions to the motions and Defendants filed replies to the oppositions; the Court denied one of these motions in an Order dated March 22, 2013 and the other is pending;

h.      On December 18, 2012, counsel for Lead Plaintiff and Defendants met, made presentations to each other, and otherwise discussed the merits of the Consolidated Actions, which led them to explore the possibility of beginning settlement discussions;

i.      On May 6 and 7, 2013, counsel for Lead Plaintiff, counsel for the lead plaintiffs in the other five Consolidated Actions,[1] and Defendants met with Judge Layn R. Phillips (ret.) ("Judge Phillips") for a confidential mediation process.  Before that meeting, the parties submitted extensive mediation statements to Judge Phillips and each other.  The initial mediation meetings were not successful, but the parties continued their discussions with Judge Phillips and each other;

---

[1] Lead Plaintiffs in the Consolidated Actions are Leonard Klorfine, John Vazquez, Peter Unanue, Victor Sasson, Dharamvir Bhanot, Stuart Krosser, and Carole Krosser (collectively, "Lead Plaintiffs"), who are each a proposed class representative for one of the six Funds that are part of the Consolidated Actions.

j.      As a result of the mediation effort and the ongoing discussions, on August 26, 2013, Lead Plaintiffs and Defendants entered into a Memorandum of Understanding (the "MOU") setting forth the material terms of a proposed settlement of the Consolidated Actions. The MOU provided that Defendants agreed to pay a total of $89.5 million to settle all six Consolidated Actions;

k.      In August 2013, Lead Plaintiffs in the six Consolidated Actions (through their Lead Counsel) hired counsel (none of whom were counsel in any of the Consolidated Actions) to represent the classes in the Consolidated Actions in a mediation process concerning allocation (among those classes) of the monies to be paid by Defendants for settlement of the six Consolidated Actions.  Those two law firms ("Allocation Counsel") filed mediation statements with Judge Phillips and replied to each other's statements, had discussions among themselves, and met with Judge Phillips for a mediation on September 15, 2013.  Judge Phillips issued a decision on the allocation of the monies among the classes on September 16, 2013.  Pursuant to these proceedings before Judge Phillips, 70% of the Settlement Amount (defined below), or $62,650,000, will be allocated to members of the classes in the AMT-Free, AMT-Free NY, New Jersey, Pennsylvania, and Rochester Fund cases, and the remaining 30%, or $26,850,000, will be allocated to members of the class in the Rochester National Fund case.  The amount allocated to class members in the AMT-Free, AMT-Free NY, New Jersey, Pennsylvania, and Rochester Fund cases will be further divided by Fund *pro rata* based on damages: (i) approximately 27.31%, or $17,109,000, to the AMT-Free Fund Class; (ii) approximately 6.77%, or $4,241,000, to the AMT-Free NY Fund Class; (iii) approximately 5.38%, or $3,374,000, to the New Jersey Fund Class; (iv) approximately 6.93%, or $4,341,000, to the Pennsylvania Fund Class; and (v) approximately 53.61%, or $33,585,000, to the Rochester Fund Class;

l.     Throughout the litigation, millions of pages of documents were produced by Defendants and third parties subject to the confidentiality agreement filed in the Consolidated Actions, which Lead Counsel reviewed and analyzed; Lead Counsel participated in Rule 30(b)(6) depositions of representatives of Oppenheimer; Defendants received documents and written discovery from Lead Plaintiff and took the deposition of Lead Plaintiff; discovery disputes were negotiated and one motion to compel was filed and litigated; and

m.     Lead Plaintiff, Lead Counsel and Liaison Counsel believe that the Settlement described in this Stipulation confers substantial benefits on the Class and is in the best interests of the Class.

**NOW, THEREFORE**, without any admission or concession whatsoever by Lead Plaintiff of any lack of merit to the claims alleged in the Action, and without any admission or concession whatsoever by Defendants of any liability or wrongdoing or lack of merit in their defenses, and in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is hereby agreed by and among the Lead Plaintiff (individually and on behalf of the Class) and Defendants that, subject to the approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Action be forever resolved, settled, compromised and dismissed with prejudice on the following terms and conditions:

<u>**CERTAIN DEFINITIONS**</u>

1.     Capitalized terms not defined elsewhere in this Stipulation shall have the following meanings:

(a)     "Authorized Claimant" means a Class Member (i) with a valid claim, whose name, address, and account information is provided by the Oppenheimer Defendants, a

broker-dealer, or other intermediary to the Claims Administrator, or (ii) who submits a timely

and valid Proof of Claim, which includes proof of the Class Member's loss as specified in the

Proof of Claim, to the Claims Administrator.

     (b)    "Claims Administrator" means the firm of Epiq Class Action & Mass Tort

Solutions, Inc., designated by Lead Counsel subject to the approval of the District Court, which

shall administer the Settlement.

     (c)    "Class" or "Class Members" means all persons and entities who purchased

or otherwise acquired shares of the AMT-Free Fund during the Class Period and who were

damaged thereby.  Excluded from the Class are Defendants; members of Defendants' immediate

families; Defendants' legal representatives, heirs, successors, or assigns; any entity in which

Defendants have or had a controlling interest; and Oppenheimer's officers and directors

(collectively, "the Excluded Defendant Parties").  Also excluded from the Class are any

proposed Class Members who properly exclude themselves by filing a valid and timely request

for exclusion in accordance with the requirements set forth in the Notice.

     (d)    "Class Period" means the period from May 13, 2006 through October 21,

2008, inclusive.

     (e)    "Defendants' Counsel" means Dechert LLP, Kramer Levin Naftalis &

Frankel LLP, McKenna Long & Aldridge LLP and Jones & Keller, P.C.

     (f)    "Distribution Order" means an order of the District Court that: approves

the Claims Administrator's determinations concerning the acceptance and rejection of claims to

the Settlement; approves the reasonable remaining costs of providing Notice and administering

the Settlement, including reasonable fees and expenses of the Claims Administrator and

reasonable attorneys' fees and expenses not previously applied for; and determines that the Effective Date has occurred and directs payment of the Net Settlement Fund to Authorized Claimants.

(g)     "Effective Date of Settlement" or "Effective Date" means the date upon which the Settlement in the Action shall become effective and final, as set forth in ¶ 23 of this Stipulation.

(h)     "Escrow Account" means the separate interest-bearing escrow account(s) at a federally insured banking institution designated by Lead Counsel into which the Settlement Amount is to be deposited for the benefit of the Class in this Action.  Except as set forth elsewhere in this Stipulation, the Escrow Account shall be controlled solely by Lead Counsel.

(i)     "Escrow Agent" means Eagle Bank.

(j)     "Fee and Expense Application" means an application to be filed by Lead Counsel for attorneys' fees and reimbursement of expenses as defined in ¶ 17(a) of this Stipulation.

(k)     "Final Judgment" means a judgment entered by the District Court, substantially in the form of Exhibit B attached hereto.

(l)     "Gross Settlement Fund" means the sum of the Settlement Amount and all interest earned on the Settlement Amount.

(m)     "Lead Counsel" means Cohen Milstein Sellers & Toll PLLC, Lead Counsel for Lead Plaintiff and the Class.

(n)     "Net Settlement Fund" means the balance of the Gross Settlement Fund available to be distributed to Authorized Claimants after subtracting the dollar amounts paid or owing in connection with the Settlement as set forth in this Stipulation.

(o)     "Notice" means the "Notice of Pendency and Proposed Settlements of Class Actions and Notice of Motion for Awards of Attorneys' Fees and Reimbursement of Expenses," substantially in the form of Exhibit 1, to Exhibit A attached hereto, which are to be sent to the Class, subject to the approval of the Court.

(p)     "Parties" means Lead Plaintiff, on behalf of himself and the Class, and Defendants in the Action.

(q)     "Plan of Allocation" means the "Distribution Plan" of the Net Settlement Fund as set forth in the Notice or such other plan of allocation as the District Court approves.

(r)     "Preliminary Approval Order" means an order preliminarily approving the Settlement and directing notice to the Class of the pendency of the Action and of the Settlement, to be entered by the District Court, substantially in the form of Exhibit A attached hereto.

(s)     "Proof of Claim" means the Proof of Claim form, substantially in the form of Exhibit 2 to Exhibit A attached hereto.

(t)     "Publication Notice" means the Summary Notice of Pendency and Proposed Settlements of Class Actions and Summary Notice of Motion for Awards of Attorneys' Fees and Reimbursement of Expenses, substantially in the form of Exhibit 4 to Exhibit A attached hereto.

(u)     "Recognized Claim" means the amount of an Authorized Claimant's loss that is determined by the Claims Administrator to be compensable under the Plan of Allocation.

(v)     "Record of Fund Transactions" means the letter, substantially in the form of Exhibit 3 to Exhibit A attached hereto, to be sent to Class Members for whom Defendants, broker-dealers, or other intermediaries have provided name, address and Class Period account transaction information.

(w)     "Released Claim(s)" means all claims, demands, rights, actions, suits, or causes of action of every nature and description, whether known or unknown (including Unknown Claims, as defined herein), whether the claims arise under federal, state, statutory, regulatory, common, foreign or other law, whether foreseen or unforeseen, and whether asserted individually, directly, representatively, derivatively, or in any other capacity, that the Releasing Plaintiff Parties: (1) asserted in the Complaint, or otherwise asserted in the Action, against any of the Released Defendant Parties; (2) have asserted, could have asserted, or could assert in the future, in any forum against the Released Defendant Parties that are based upon, arise out of, or relate in any way to the facts, matters, transactions, allegations, claims, losses, damages, disclosures, filings, or statements that are set forth in the Complaint or that are otherwise at issue in the Action; or (3) have asserted, could have asserted, or could assert in the future relating to the prosecution, defense, or settlement of the Action as against the Released Defendant Parties. "Released Claim(s)" does not include claims to enforce the Settlement.

(x)     "Released Defendant Parties" means any and all of the Defendants and/or their current or former attorneys, auditors, agents, officers, directors, employees, partners, subsidiaries, affiliates, related companies, related entities, parents, insurers, heirs, executors, representatives, predecessors, successors, assigns, trustees, administrators, and/or any other individual or entity in which any Defendant has a controlling interest.  "Released Defendant Parties" do not include broker-dealers or financial advisers of any Class Member; provided,

however, that this carve-out for "broker-dealers or financial advisors" does not apply to OFDI or any other Defendant.  For the avoidance of doubt, the AMT-Free Fund is included in the definition of Released Defendant Parties.

(y)   "Released Defendants' Claim(s)" means any and all claims and causes of action of every nature and description, including known and unknown claims (including Unknown Claims as defined herein), whether arising under federal, state, statutory, regulatory, or common, or foreign or other law, that the Defendants or the Releasing Defendant Parties asserted or could have asserted against the Released Plaintiff Parties, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (other than claims to enforce the Settlement).

(z)   "Released Parties" means the Released Defendant Parties and the Released Plaintiff Parties, collectively.

(aa)   "Released Plaintiff Parties" means any and all of the Lead Plaintiff, Class Members, Lead Counsel, and their respective partners, employees, attorneys, heirs, executors, administrators, trustees, successors, predecessors, and assigns.

(bb)   "Releasing Defendant Parties" means the Excluded Defendant Parties.

(cc)   "Releasing Plaintiff Parties" means:  (i) Lead Plaintiff; (ii) all Class Members; (iii) the Lead Plaintiff's and each Class Member's present or past officers, directors, employees, agents, partners, owners, agents, affiliates, related entities, parents, insurers, immediate family members, heirs, executors, administrators, representatives, predecessors, successors, assigns, and predecessors; and (iv) any person or entity who claims by, through, or on behalf of Lead Plaintiff or any Class Member.

(dd)    "Repayment Obligation" means the obligation, pursuant to ¶¶ 3(b), 17(b), and 23(e) of this Stipulation, of Lead Counsel or any Plaintiff's Counsel, to return the dollar amount distributed from the Gross Settlement Fund before the Effective Date for attorneys' fees and expense reimbursement, plus interest on those amounts equal to what would have been earned had the amounts remained in the Gross Settlement Fund.

(ee)    "Settlement" means the settlement contemplated by this Stipulation.

(ff)    "Settlement Amount" means $17,109,000 in United States currency.

(gg)    "Unknown Claims" means: (i) any and all Released Claims that any of the Releasing Plaintiff Parties does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties which, if known by him, her or it might have affected his, her, or its settlement with and release of the Released Defendant Parties, or might have affected his, her, or its decision(s) with respect to the Settlement (including the decision not to object or exclude himself, herself, or itself from the Settlement); and (ii) any Released Defendants' Claims that any Releasing Defendant Party does not know to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties, which, if known by him, her or it might have affected his, her, or its settlement with and release of the Released Plaintiff Parties, or might have affected his, her, or its decision(s) with respect to the Settlement.  Moreover, with respect to any and all Released Claims and any and all Released Defendants' Claims, upon the Effective Date, the Releasing Plaintiff Parties and Releasing Defendant Parties, respectively, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Releasing Plaintiff Parties, or any one of them, may hereafter discover facts other than or different than those which he, she or it knows or believes to be true, but each of the Releasing Plaintiff Parties hereby expressly waives and fully, finally, and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim as against the Released Defendant Parties. Likewise, the Releasing Defendant Parties, or any one of them, may hereafter discover facts other than or different from those which he, she or it knows or believes to be true, but each of the Releasing Defendant Parties hereby expressly waives and fully, finally, and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Defendants' Claim as against the Released Plaintiff Parties. The Parties acknowledge that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a key element of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action and any and all Released Claims as against all Released Defendant Parties and any and all Released Defendants' Claims as against all Released Plaintiff Parties.

(a)     Upon the Effective Date of the Settlement, and without any further action, the Action will be dismissed with prejudice and on the merits, by virtue of the Final Judgment, without an assessment of costs against any party; Lead Plaintiff will not file any other document dismissing the Action.

(b)     Upon the Effective Date of the Settlement, and without any further action, the Releasing Plaintiff Parties, for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, shall have fully, finally, and forever released, relinquished, and discharged any and all Released Claims against each and every one of the Released Defendant Parties, and shall forever be barred and enjoined, without the necessity of any of the Released Defendant Parties posting a bond, from commencing, instituting, prosecuting, or maintaining any of the Released Claims.  Upon the Effective Date, and without any further action, the Lead Plaintiff further agrees not to knowingly and voluntarily assist in any way any third party in commencing or prosecuting any suit against the Released Defendant Parties relating to any Released Claim, including any derivative suit.

(c)     Upon the Effective Date of the Settlement, and without any further action, the Releasing Defendant Parties, for good and valuable consideration the receipt and adequacy of which is hereby acknowledged, shall have fully, finally, and forever released, relinquished, and discharged any and all Released Defendants' Claims against each and every one of the Released Plaintiff Parties, and shall forever be barred and enjoined, without the necessity of any of the Released Plaintiff Parties posting a bond, from commencing, instituting, prosecuting, or maintaining any of the Released Defendants' Claims against any of the Released Plaintiff Parties.

(d)     The release of claims by Lead Plaintiff or any Class Member with regard to this Action will not itself constitute a release of claims asserted in a separate Consolidated Action concerning another fund.  In addition, the release of claims by Lead Plaintiff or any Class Member with regard to this Action will not release any claims he/she/it may have with regard to

any other investment he/she/it made in any Oppenheimer fund or other investment vehicle not at issue in this Action.

(e)      A Class Member's release and/or receipt of proceeds from the settlement of this Action shall not bar that Class Member from receiving proceeds from the settlement as a member of another of the classes in the Consolidated Actions, or from receiving proceeds from the litigation or settlement of any case not involving the six Oppenheimer Funds at issue in the Consolidated Actions, including but not limited to the action entitled *In re California Municipal Fund*, consolidated in the MDL Docket No. 2063 (Civil Action Numbers 09-cv-01484 through 01487). A Class Member's receipt of proceeds from the Settlement of this Action shall not bar the Class Member from recovering proceeds in a case brought against the Class Member's broker-dealer or financial adviser (other than OFDI or any other Defendant), except to the extent such proceeds are reduced by operation of the judgment reduction and/or contribution bar provisions of this Stipulation.

## THE SETTLEMENT CONSIDERATION

3.      (a)      OFI shall pay or cause to be paid the Settlement Amount into the Escrow Account within thirty (30) business days of the entry of the Preliminary Approval Order in the Action.  If this payment is not made, interest will accrue and be payable by Defendants at the rate of 5% per annum.

(b)      No Defendant shall have any obligation to make any monetary contribution in Settlement of this Action, other than the payment of the Settlement Amount as described in ¶ 3(a).  In this Action, the Gross Settlement Fund shall be used only for the following purposes: (i) to compensate the Class pursuant to the Plan of Allocation approved by the District Court; (ii) to pay all reasonable and necessary costs of Notice to the Class and of

administration of the Settlement, as approved and ordered by the District Court, as well as any and all Taxes; (iii) to reimburse Lead Counsel for reasonable costs and expenses paid in connection with this litigation, as approved by the District Court; and (iv) to pay attorneys' fees, as approved by the District Court and subject to ¶¶ 1(dd), 17(b) and 23(e).

(c)     No money may be paid out of the Gross Settlement Fund before the Effective Date of the Settlement, except as follows: (i) reasonable costs of Notice and administration may be paid out of the Gross Settlement Fund, in accordance with orders of the District Court, up to the limit set forth in ¶ 12; (ii) Taxes may be paid out of the Gross Settlement Fund, as they come due and owing; and (iii) Lead Counsel's and other Plaintiffs' Counsel's attorneys' fees and expense reimbursement, as more fully set forth in ¶ 17 below, may be paid out of the Gross Settlement Fund after the hearing on final approval, and as awarded by the District Court, *provided, however*, that in the event that the Effective Date does not occur, Lead Counsel and other Plaintiffs' Counsel shall repay to the Gross Settlement Fund the amount of the Repayment Obligation, and the Gross Settlement Fund, less only disbursements actually made or incurred for the costs of Notice, administration, and Taxes, shall be paid to Defendants.

## TAX TREATMENT AND ADMINISTRATION

4.     The Escrow Agent shall maintain the Settlement Amount in one or more Escrow Accounts.  The Escrow Agent shall deposit the Settlement Fund upon instructions from Lead Counsel in an investment that is secured by the full faith and credit of the United States (whether in direct investments or a mutual fund, money market fund, or other fund of such federally-guaranteed investments) or instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or money market funds invested solely in such investments, and shall collect and reinvest all interest

15

accrued thereon.  Upon the instructions of Lead Counsel, the amount designated in ¶ 12(b) will be maintained in liquid investments.  No investment will be made in an account, fund or investment vehicle owned and/or operated by Oppenheimer.

5.      All funds held in the Escrow Account shall be deemed and considered to be *in custodia legis* of the District Court, and shall remain subject to the exclusive jurisdiction of the District Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the District Court.

6.      Other than the payment of the Settlement Amount as set forth in ¶ 3(a), neither the Released Defendant Parties nor Defendants' Counsel shall have any liability or responsibility for the actions of the Escrow Agent, the Escrow Account or the payment of any Taxes.

7.      After the Settlement Amount has been paid into the Escrow Account in accordance with ¶ 3 above, the Parties agree to treat the Escrow Account as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such election shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Claims Administrator to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing to occur.

8.      For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be the Claims Administrator or its successor, which shall timely and properly file, or cause to be filed,

all informational and other tax returns necessary or advisable with respect to the interest earned

on the funds deposited in the Escrow Account (including without limitation the returns described

in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described above) shall be

consistent with this subparagraph and in all events shall reflect that all Taxes (including any

estimated taxes, interest, or penalties) on the income earned on the funds deposited in the Escrow

Account shall be paid out of such funds as provided in ¶ 9 hereof.

9.      Taxes on the income of the Settlement Amount and expenses and costs incurred

in connection with the taxation of the Settlement Amount (including, without limitation, interest,

penalties, and the expenses of tax attorneys and accountants) (collectively "Taxes") shall be paid

solely out of the Escrow Account. In all events, the Released Defendant Parties and Defendants'

Counsel shall have no liability or responsibility whatsoever for the Taxes or the filing of any tax

returns or other documents with the Internal Revenue Service or any other state or local taxing

authority. In the event any Taxes are owed by any of the Released Defendant Parties on any

interest earned on the funds on deposit in the Escrow Account, such amounts shall also be paid

out of the Escrow Account. Any Taxes or tax expenses owed on any interest earned on the

Settlement Amount prior to its transfer to the Escrow Account shall be the sole responsibility of

Defendants.

10.     Taxes shall be treated as, and considered to be, a cost of administration of the

Settlement and shall be timely paid, or caused to be paid, by Lead Counsel and the Claims

Administrator out of the Escrow Account without prior order from the District Court, and they

shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution

to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that

may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). The Parties agree to

cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the

extent reasonably necessary to carry out the provisions of this paragraph.

## PROVISION OF NOTICE; ADMINISTRATION EXPENSES

11.      Except as otherwise provided herein, all notice and administration costs, including

without limitation the fees and expenses of the Claims Administrator in the administration and

distribution of the Gross Settlement Fund, shall be paid out of the Gross Settlement Fund.

12.      (a)      At no cost to the Gross Settlement Fund, Oppenheimer will provide to the

Claims Administrator the names, addresses, and Class Period account transaction data, in

electronic searchable form, for individual Class Members to the extent that Oppenheimer

possesses the information.  To the extent that certain Class Members held AMT-Free Fund

shares at broker-dealers or other intermediaries and, as a result, the Oppenheimer Defendants do

not possess the names, addresses and Class Period account transaction data for these Class

Members, Oppenheimer will provide to the Claims Administrator the names and addresses of

such broker-dealers or other intermediaries along with their aggregate account data at no cost to

the Gross Settlement Fund.  After the Claims Administrator has notified the broker-dealers or

other intermediaries of the Settlement, the Oppenheimer Defendants shall also contact such

broker-dealers and intermediaries to advise them of the Settlement and of their obligations under

the Court's Preliminary Approval Order, and to request that they provide names, addresses and

transactional data to the Claims Administrator.  The Defendants are not obligated to bear any

costs associated with obtaining Class Members' names, addresses, or Class Period account

transactions data from broker-dealers or other intermediaries.  These costs shall be paid from the

Gross Settlement Fund as costs of administration of the Settlement.  The Defendants shall not be

liable to any person with regard to any disclosure to the Claims Administrator of personal or

potentially private account information, including without limitation the names, addresses, and account transaction data for individual Class Members, the accuracy of such information, or the identity of the Class Members.

      (b)    Within ten (10) business days after execution of this Stipulation, Lead Plaintiff will apply to the District Court for entry of the Preliminary Approval Order substantially in the form of Exhibit A attached hereto. The Preliminary Approval Order, among other things, preliminarily approves, as reasonable, distribution of up to $2.1 million in total from the Gross Settlement Funds in the Consolidated Actions prior to the Effective Date to pay the actual, reasonable costs of providing notice in the Consolidated Actions and administering the Gross Settlement Funds in the Consolidated Actions, and approves distribution from the Gross Settlement Funds in the Consolidated Actions for future payment of all Taxes pursuant to ¶ 9 that become due and owing. This advancement of notice and administration costs, to the extent already expended or incurred for that purpose, and whether or not yet paid, shall not be subject to repayment if the Settlement does not become effective. Upon the occurrence of the Effective Date, Lead Plaintiff may withdraw from the Gross Settlement Funds any amounts needed for payment of reasonable costs of providing Notice and administering the Gross Settlement Funds, and such withdrawals may be made without prior Court approval.

      (c)    Defendants will not have any responsibility for, involvement in, or liability for the payment of any monies from the Gross Settlement Fund in connection with the administration of the Settlement.

      (d)    After the Effective Date, Lead Counsel will apply to the District Court, with copies but not prior notice to Defendants' Counsel, for the Distribution Order.

## ALLOCATION OF SETTLEMENT AMOUNT TO AUTHORIZED CLAIMANTS

13.      The allocation of the Net Settlement Fund among the Class Members in this

Action shall be subject to a Plan of Allocation to be proposed by Lead Counsel and approved by

the District Court.  The Claims Administrator shall determine each Authorized Claimant's *pro*

*rata* share of the cash in the Net Settlement Fund based upon each Authorized Claimant's

Recognized Claim.

14.      The Plan of Allocation proposed in the Notice is not a necessary term of the

Stipulation or this Settlement and is to be considered by the District Court separately from its

determination of the fairness, reasonableness, and adequacy of the Settlement as set forth in the

Stipulation.  Approval of the Plan of Allocation proposed in the Notice is not a condition of this

Stipulation or this Settlement.  Any Plan of Allocation is a matter separate and apart from the

Stipulation, and any order or proceeding relating to the Plan of Allocation shall not affect the

validity or finality of the Settlement or the Final Judgment or any other orders entered pursuant

to the Stipulation.

15.      Defendants will not have any responsibility for, involvement in, or liability for

allocation of the Net Settlement Fund or the Plan of Allocation, and will take no position with

respect to Lead Counsel's proposed Plan of Allocation.

16.      Each Authorized Claimant shall be allocated a *pro rata* share of the cash in the

Net Settlement Fund based on the Authorized Claimant's Recognized Claim compared to the

total Recognized Claims of all Authorized Claimants.  This is not a claims-made settlement, *i.e.,*

the Settlement Amount will not increase or decrease by reason of the aggregate amount or value

of claims filed by Class Members.  If all the conditions of the Stipulation are satisfied and the

Effective Date occurs, none of the Settlement Fund will be returned to Defendants or their

respective insurers.  Defendants will have no involvement in reviewing, approving or challenging Class Members' claims.

## ATTORNEYS' FEES AND EXPENSES

17.      (a)      Lead Counsel will apply to the District Court for an award from the Gross Settlement Fund of (i) attorneys' fees in a percentage of the Settlement Amount to be determined by Lead Plaintiff and Lead Counsel, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Amount; and (ii) reimbursement of out-of-pocket expenses incurred in prosecuting the Action, plus any interest on such amount at the same rate and for the same periods as earned by the Settlement Amount (the "Fee and Expense Application").  Defendants will have no responsibility or liability for these fees and expenses, and will take no position with respect to the Fee and Expense Application.  Any attorneys' fees and expenses awarded by the District Court shall be paid from the Gross Settlement Fund to Lead Counsel within ten (10) calendar days of entry of Final Judgment by the District Court and the order awarding such attorneys' fees and expenses in the Action, notwithstanding the existence of any timely-filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.  The Fee and Expense Application shall be considered separately from the Settlement and any decision by the District Court concerning attorneys' fees, allocation, or expenses shall not affect the validity or finality of the Settlement.

(b)      Pursuant to Paragraphs 1(dd), 3(c) and 23(e), Lead Counsel and each Plaintiffs' counsel is obligated to refund to the Gross Settlement Fund the amount received by each in attorneys' fees and expenses plus accrued interest at the rate earned by the Settlement Amount, if and when, as a result of any appeal, further proceeding on remand, successful collateral attack or otherwise, the attorneys' fee or expense award is reduced or reversed, if the

attorneys' fees or expense award does not become final, if the Settlement itself is voided by any party as provided herein, if the Settlement is later reversed or modified by any court, or if the Effective Date does not occur.

## ADMINISTRATION OF THE SETTLEMENT

18.     The Claims Administrator shall administer the Settlement under Lead Counsel's supervision and subject to the exclusive jurisdiction of the District Court.  Defendants shall have no role in or responsibility (including without limitation monetary responsibility) for administering the Settlement; no role in or responsibility for reviewing, approving or challenging the claims submitted; and no liability whatsoever to any person or entity including, but not limited to, Lead Plaintiff, other Class Members, any other plaintiffs, any Class Member's counsel, or Lead Counsel in connection with the administration of the Settlement.

19.     The administration of the Settlement means the allocation and distribution of the Net Settlement Fund and may include the investment of such funds; the determination, calculation, processing, or payment of claims; the review and approval or rejection of Proofs of Claim; processing the Plan of Allocation; and the determination, payment, or withholding of Taxes or any loss incurred in connection therewith; and no person or entity, including but not limited to, the Class Members, Lead Plaintiff and Lead Counsel, shall have any claims against Defendants in connection therewith.

(a)     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator.  The Claims Administrator shall have the right, but not the obligation, to waive what it deems to be technical defects in any Proof of Claim, Record of Fund Transaction or Dispute Form in the interest of achieving substantial justice.

(b)     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(i)     For each Class Member for whom Defendants provide name, address and Class Period account transaction information, or for whom broker-dealers or other intermediaries provide name, address and Class Period account transaction information, the Claims Administrator shall send to the Class Member a completed Record of Fund Transactions listing the AMT-Free Fund shares the Class Member acquired and sold during the Class Period, along with any dividends or distributions earned and dividends or distributions reinvested during this period.  These Class Members will be considered Authorized Claimants if their claim calculates to a Recognized Claim under the Plan of Allocation approved by the Court, without their taking any action.  Class Members who believe the Record of Fund Transactions completed by the Claims Administrator is incorrect or incomplete will be directed to return a dispute form (the "Dispute Form") to the Claims Administrator by the date specified in the Record of Fund Transactions.  Within thirty (30) calendar days of receiving the Dispute Form (unless extended upon Lead Counsel's discretion), the Claims Administrator shall respond.

(ii)     Each Class Member for whom the Claims Administrator does not receive account transaction data shall be required to submit a Proof of Claim supported by such documents as are designated therein, including proof of the Class Member's loss or such other documents or proof as the Claims Administrator, in its discretion, may deem acceptable.

(iii)     All required Proofs of Claim must be submitted to the Claims Administrator by the date specified in the Notice unless such period is extended by order of the District Court.  Any Class Member who is required to submit a Proof of Claim but fails to submit a Proof of Claim to the Claims Administrator by the specified date shall be forever barred from

receiving any payment pursuant to this Stipulation (unless a later-submitted Proof of Claim by such Class Member is approved by order of the District Court), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Final Judgment entered in the Action and the releases provided for herein, and will be barred from bringing any action against any of the Released Defendant Parties concerning the Released Claims. Provided that it is actually received no later than thirty (30) calendar days after the final date for submission of Proofs of Claim, a Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark on the envelope and if mailed first-class postage prepaid and addressed in accordance with the instructions provided in the Proof of Claim. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator.

(iv)    Each Proof of Claim and Dispute Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, and the former shall determine the amount of Recognized Claims in accordance with this Stipulation and the Plan of Allocation and the extent, if any, to which each claim shall be allowed, subject to review by the District Court pursuant to subparagraph (vi) below. Except as needed to fulfill its obligations under ¶ 19(b)(i), the Claims Administrator shall keep confidential the Class Member and other shareholder information provided to it in connection with the administration of the Settlement.

(v)    The Claims Administrator may reject any and all Proofs of Claim or Dispute Forms that do not meet the filing requirements. Prior to rejection of a Proof of Claim or Dispute Form, the Claims Administrator shall communicate with the claimant in order to afford such claimant the opportunity to remedy any curable deficiencies in the Proof of Claim or

24

Dispute Form submitted. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose Proofs of Claim or Dispute Forms it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim or dispute is to be rejected has the right to a review by the District Court if the claimant so desires and complies with the requirements of subparagraph (vi) below.

(vi)    If any claimant whose Proof of Claim or Dispute Form has been rejected in whole or in part desires to contest such rejection, the claimant must, within thirty (30) calendar days after the date of mailing of the notice required in subparagraphs (i) or (v) above (unless that 30-day period is extended by the Court), serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the District Court. If a dispute concerning a Proof of Claim or Dispute Form cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the District Court for a final determination.

(vii)   The administrative determinations of the Claims Administrator accepting and rejecting Proofs of Claim or Dispute Forms shall be presented to the District Court, with copies to Defendants' Counsel, for approval by the District Court in the Distribution Order.

(c)    Each claimant shall be deemed to have submitted to the jurisdiction of the District Court with respect to the claimant's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that claimant's status as a Class Member and the validity and

amount of the claimant's claim.  No discovery shall be allowed on the merits of the Action or the Settlement in connection with processing of claims.

(d)     Payment pursuant to this Stipulation shall be deemed final and conclusive against all Authorized Claimants.  All Class Members whose claims are not approved by the District Court or who were required to submit a claim but fail to do so shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Final Judgment to be entered in the Action and the releases provided for herein, and shall be barred from bringing any Released Claims against any of the Released Defendant Parties.

(e)     All proceedings with respect to the administration, processing, and determination of claims described in this Stipulation, and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the exclusive jurisdiction of the District Court.

(f)     The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after: (i) all claims have been processed, and all claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to present their objections to the Claims Administrator; (ii) all objections with respect to all rejected or disallowed claims have been resolved by the District Court, and all appeals therefrom have been resolved or the time to appeal has expired; (iii) all matters with respect to attorneys' fees, costs, and disbursements have been resolved by the District Court, all appeals therefrom have been resolved or the time to appeal has expired; and (iv) all Notice and administrative expenses and Taxes have been paid or withheld for later payment.

(g)     No Class Member or agent thereof shall have any claim against

Defendants, Defendants' Counsel, Lead Counsel, Lead Plaintiff, the Claims Administrator or any

other entity designated by Lead Counsel based on distributions made substantially in accordance

with this Stipulation and the Settlement contained herein, or further order(s) of the District Court.

## PRELIMINARY APPROVAL OF SETTLEMENT

20.     Within ten (10) business days after execution of this Stipulation, Lead Counsel

shall move the District Court for entry of a Preliminary Approval Order, substantially in the form

of Exhibit A attached hereto.  Lead Counsel shall provide Defendants Counsel with a draft of

any motion for preliminary approval, including any documents to be submitted with any such

motion, at least three business days prior to the filing of such motion.  Defendants will not

oppose Lead Counsel's request.  The Preliminary Approval Order will, *inter alia*, certify the

Class for settlement purposes only, preliminarily approve the Settlement, set the date for the

Settlement Hearing and prescribe the method for giving notice of the Settlement to the Class.

21.     Lead Counsel in each of the Consolidated Actions  will simultaneously apply for

preliminary settlement approval in each of the Consolidated Actions.  The Settlement of this

Action is conditioned upon (i) Preliminary Approval of both the settlement of this Action and the

settlement of each of the Consolidated Actions; and (ii) the occurrence of the Effective Dates in

each of the Consolidated Actions, as defined in the Stipulations of Settlement for each of the

Consolidated Actions.

## FINAL JUDGMENT

22.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead

Plaintiff shall request that the Court enter the Final Judgment, substantially in the form of Exhibit

B attached hereto.  Lead Counsel shall provide Defendants Counsel with a draft of any motion

for final approval, including any documents to be submitted with any such motion, at least three business days prior to the filing of such motion.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

23.     (a)     The Effective Date of the Settlement shall be the date when all the following shall have occurred:

(i)     the District Court has entered the Preliminary Approval Order in the Action;

(ii)     the Settlement Amount has been deposited into the Escrow Account as described in ¶ 3;

(iii)     the District Court has finally certified the Class and approved the Settlement in the Action as fair, reasonable, and adequate; and

(iv)     the District Court has entered the Final Judgment in the Action and the Final Judgment in the Action has been upheld through the resolution of all appeals and writs of certiorari, and through the expiration of all time to appeal and file writs of certiorari, except that the Effective Date shall not be delayed by any modification of or appeal from those parts of the Final Judgment in the Action that pertain to: (i) the Plan of Allocation; or (ii) any award or allocation of attorneys' fees or expenses.

(b)     Notwithstanding anything to the contrary, the Parties to the Stipulation shall have the right to terminate the Settlement and the Stipulation by providing written notice of their election to do so to all other Parties to the Stipulation within thirty (30) calendar days of: (i) the District Court's decision not to enter the Preliminary Approval Order in whole or in any material respect; (ii) the District Court's refusal to approve this Stipulation in whole or in any

material respect; (iii) the District Court's decision not to enter the Final Judgment in whole or in any material respect; or (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the United States Court of Appeals or the United States Supreme Court.

(c)     Pursuant to the procedure set forth in the Notice, potential Class Members have the right and ability to exclude themselves from, or opt-out of, the Class as set forth in the Preliminary Approval Order.  Upon receiving any request(s) for exclusion pursuant to the Notice, the Claims Administrator shall promptly provide Lead Counsel and Defendants' Counsel with copies of the request(s) for exclusion.  Lead Counsel, in conjunction with the Claims Administrator, shall cause copies of requests for exclusion from the Class to be provided to Defendants' Counsel as they are received.  No later than ten (10) calendar days after the final date for mailing requests for exclusion, Lead Counsel shall provide Defendants' Counsel with a complete and final list of all Class Members who have excluded themselves from the Settlement and with all other known information sufficient for Defendants to determine the number of persons who have requested exclusion and the value of any excluded claims.  Lead Counsel shall have the right to communicate with Class Members in a manner consistent with their ethical and other obligations regarding any decisions to opt-out of the Class.  If any member of the Class that has opted-out withdraws in writing his, her or its request for exclusion from the Class, Lead Counsel shall promptly so advise Defendants' Counsel in writing.

(d)     Simultaneously herewith, Lead Counsel and Defendants' Counsel are executing a confidential letter agreement (the "Letter Agreement") that sets forth the conditions and timetable under which Defendants may terminate the Settlement in the event that Class Members who suffered a given amount of alleged losses during the Class Period timely and validly request exclusion from the Class.  Unless otherwise directed by the Court, or in the event

of a dispute relating to the Letter Agreement, the Letter Agreement will not be filed with the

Court.  In the event that Defendants terminate the Settlement pursuant to the Letter Agreement,

this Stipulation shall become null and void and of no further force and effect, except that the

provisions of ¶¶ 12(b), 23(e) and 24 shall apply.  Notwithstanding the foregoing, this Stipulation

shall not become null and void as a result of the election by Defendants to terminate the

Settlement pursuant to the Letter Agreement unless all conditions set forth in the Letter

Agreement have been satisfied.

        (e)     If the Effective Date does not occur, or if the Settlement is terminated or

modified in any material respect or fails to become effective for any reason, then:

        (i)     the class certification order shall be vacated and shall not be used

as evidence or law of the case in any further class certification proceedings in the Action or any

other case;

        (ii)     each Party to the Stipulation shall be deemed to have reverted to

their respective status in the Action as of the date and time immediately prior to the execution of

this Stipulation and, except as otherwise expressly provided, the Parties shall proceed in all

respects as if this Stipulation and any related orders had not been entered;

        (iii)     within thirty (30) calendar days from Lead Counsel's receipt of

notice from Defendants' Counsel of termination, modification in any material respect, or failure

of the Effective Date to occur, Lead Counsel and other Plaintiffs' Counsel shall honor their

Repayment Obligation by returning to the Gross Settlement Fund the total dollar amount

distributed from the Gross Settlement Fund before the Effective Date for Lead Counsel's

attorneys' fees and expense reimbursement, plus interest equal to what would have been earned

had such amount remained in the Gross Settlement Fund; and

(iv)     within thirty-five (35) calendar days from Lead Counsel's receipt

of notice from Defendants' Counsel of termination, modification in any material respect, or

failure of the Effective Date to occur, the Gross Settlement Fund, including amounts repaid or

that should have been repaid pursuant to the Repayment Obligation, shall be returned to

Defendants, less only any Notice and administration costs actually incurred and paid or owing

out of the Settlement Fund pursuant to an Order of the District Court obtained in accordance with

¶¶ 12 and 20 herein, and any Taxes paid or owing in accordance with ¶ 9 herein.

### NO ADMISSION OF WRONGDOING OR LACK OF MERIT

24.     (a)     Defendants deny and continue to deny that they have committed any act or

omission giving rise to any liability in this Action, and are entering into the Settlement to

eliminate the burden, expense, uncertainty and risk of further litigation.  This Settlement is

therefore without admission of fault or liability on the part of any Defendant.

(b)     Lead Plaintiff believes that the claims asserted in the Action have merit

and that the evidence developed to date supports the claims asserted, and is entering into the

Settlement to eliminate the burden, expense, uncertainty, and risk of further litigation.  This

Settlement is therefore without admission of any lack of merit of the Action or the validity of any

defense on the part of Lead Plaintiff.

(c)     The terms of this Stipulation (whether the Settlement becomes final or

not), the negotiations leading up to this Stipulation, the fact of the Settlement, and the

proceedings taken pursuant to the Settlement, shall not:  (1) be construed as an admission of

liability or an admission of any claim or defense on the part of any party, in any respect; (2) form

the basis for any claim of estoppel by any third party against any of the Released Defendant

Parties; or (3) be admissible in any action, suit, proceeding, or investigation as evidence, or as an

admission, concerning any wrongdoing or liability whatsoever by any of the Released Defendant

Parties or as evidence of (a) the truth of any of the claims or allegations contained in any

complaint filed in the Action or any Consolidated Action (including that Lead Plaintiff or any

Class Member suffered any damages, harm or loss); or (b) the propriety of the certification of a

class in the Action or in any other case.  Neither this Stipulation, nor any of its terms and

provisions, nor any of the negotiations or proceedings connected with it, nor any action taken to

carry out this Stipulation by any of the Parties shall be referred to, offered into evidence, or

received in evidence in any pending or future action or proceeding, whether civil, criminal,

administrative or otherwise, except in a proceeding to enforce this Stipulation, to enforce any

insurance rights, to defend against the assertion of Released Claims or the Released Defendants'

Claims (including to support a defense or counterclaim based on principles of *res judicata*,

collateral estoppel, release, good faith settlement, judgment bar or reduction), or by Lead

Counsel to demonstrate its adequacy to serve as class counsel pursuant to Federal Rule of Civil

Procedure 23(g) (or its state law analogs), or as otherwise required by law.

## MISCELLANEOUS PROVISIONS

25.       (a)       All of the exhibits attached hereto are hereby incorporated by reference as

though fully set forth herein.

(b)       The Parties to the Stipulation intend and agree that the Settlement is a final

and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiff and

Class Members who have not timely excluded themselves from the Class against the Released

Defendant Parties with respect to the Released Claims, and that all Class Members who have not

timely excluded themselves from the Class shall look solely to the Net Settlement Fund for

settlement and satisfaction of all such claims against Defendants.  Nothing herein shall be

deemed to release or otherwise bar or impair the Released Defendant Parties' claims against any or all of their insurers.

(c)     The Final Judgment shall include a bar order that, upon the Effective Date, would, to the maximum extent allowed by law, bar all claims for contribution, indemnification, or the like, however styled, against the Released Defendant Parties by any person or entity, whether arising under state, federal, or common law, and whether based on judgment, settlement, or otherwise, based upon, arising out of, relating to, or in connection with the Released Claims. The Final Judgment shall also include a judgment reduction provision whereby, in the event any Class Member seeks to recover damages or any other form of monetary relief ("Damages") from any person or entity based upon claims that arise out of, or relate in any way to, the Released Claims, the Class Member shall give such person or entity the benefit of judgment reduction or offset equal to the greater of:  (1) the amount of recovery obtained by the Class Member in connection with the Settlement; or (2) the amount of any of the Released Defendant Parties' equitable share of the Damages.  The judgment reduction provision shall provide further that, in the event that Lead Plaintiff or any Class Member obtains a judgment against any person or entity based upon claims that arise out of, or relate in any way to, the Released Claims, the Lead Plaintiff or Class Member  shall reduce such judgment, up to the full extent thereof, so as to extinguish any claim such person or entity has against any Released Defendant Party for contribution, indemnification or the like, however styled.

(d)     Lead Plaintiff and Defendants agree not to assert that the litigation was brought or defended in bad faith or without a reasonable basis, and agree not to assert any claim of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution or defense of the Action.  The Parties to the Stipulation agree that the amount paid and the other

33

terms of the Settlement were negotiated at arms' length in good faith by the Parties to the

Stipulation with the assistance of an experienced and independent mediator, and reflect a

Settlement that was reached voluntarily after consultation with experienced legal counsel.

(e)   Unless otherwise specified in the Stipulation, and subject to the District

Court's continuing jurisdiction relating to the Settlement of the Action, the Parties agree to

mediate before Judge Phillips any dispute that arises between the Parties relating to the terms of

the Settlement or documentation thereof subject to the MOU.

(f)   Until a motion for a Preliminary Approval Order is filed with the District

Court, the Parties shall maintain this Stipulation and the Settlement in confidence, except for the

disclosure to Defendants' insurers and auditors, Allocation Counsel and consultants assisting

with the allocation, the District Court, Judge Phillips, or as required by law or otherwise

consented to by the Parties.

(g)   This Stipulation may not be modified or amended, nor may any of its

provisions be waived, except by a writing signed by all Parties to the Stipulation or their

successors-in-interest.

(h)   The headings herein are used for the purpose of convenience only and are

not meant to have legal effect.

(i)   The administration and consummation of the Settlement as embodied in

this Stipulation shall be under the authority of the District Court and the District Court shall

retain exclusive, continuing jurisdiction for the purpose of enforcing the terms of the Stipulation.

(j)   The Parties to the Stipulation hereby irrevocably submit to the continuing

and exclusive jurisdiction of the District Court for any suit, action, proceeding, or dispute arising

out of or relating to this Settlement as embodied in the Stipulation or its applicability (except as provided in ¶ 25(e)), and agree that they will not oppose the designation of such suit, action, proceeding, or dispute as a related case to this Action.

(k)     The waiver by one Party to the Stipulation of any term or condition of this Stipulation shall not be deemed a waiver of any other Party to the Stipulation.  Nor shall the waiver by one Party to the Stipulation of any term or condition of the Stipulation be deemed a waiver of a prior or subsequent term or condition of the Stipulation.

(l)     This Stipulation and its exhibits, together with the Letter Agreement, constitute the entire agreement between the Lead Plaintiff (individually and on behalf of the Class) and Defendants concerning the Settlement of the Action, and no representations, warranties, payments, or inducements have been made by any Defendant to Lead Plaintiff, or by Lead Plaintiff to any Defendant concerning the subject matter hereof, other than those contained and memorialized in the Stipulation, its exhibits, and the Letter Agreement.

(m)     The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to the Stipulation shall exchange among themselves original signed counterparts.  Electronically transmitted signatures are valid signatures as of the date thereof.

(n)     The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties to the Stipulation.

(o)      All agreements made and orders entered during the course of this Action relating to the confidentiality of documents and information shall survive this Stipulation in accordance with their terms.

(p)      The construction, interpretation, operation, effect, and validity of the Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of Colorado without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.  Lead Plaintiff (on behalf of himself and the Class) and Defendants understand and agree that any disputes arising out of the Stipulation shall be governed and construed by and in accordance with the laws of the State of Colorado, without reference to choice of law principles.

(q)      The Stipulation shall not be construed more strictly against one Party to the Stipulation than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the Stipulation is the result of arms'-length negotiations between the Parties to the Stipulation, and all Parties to the Stipulation have contributed substantially and materially to the preparation of the Stipulation.

(r)      Any and all counsel and Parties to the Stipulation who execute the Stipulation and any of the exhibits hereto, or any related Settlement documents, represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

(s)      Lead Counsel and Defendants' Counsel agree to recommend approval of the Stipulation by the District Court and to undertake their best efforts and cooperate fully with one another in seeking District Court approval of the Preliminary Approval Order, the Stipulation, and the Settlement, and to promptly agree upon and execute all such other

documentation as may be reasonably required to obtain final approval by the District Court of the Settlement and the entry of the Final Judgment. Lead Counsel and Defendants' Counsel agree to take all reasonable actions necessary to effectuate the performance of, and uphold the validity and enforceability of, this Stipulation.

(t)     The Parties agree that Oppenheimer will make the first disclosure of this proposed Settlement and will provide reasonable advance notice to the other Parties of any such disclosure. The Parties further agree that Oppenheimer will have a reasonable opportunity for prior review and comment on any disclosure relating to the Settlement to be made thereafter by Lead Plaintiff, the Class, Lead Counsel, Liaison Counsel or any Plaintiffs' Counsel in the Action.

(u)     Within ten (10) business days following the Court's entry of the Preliminary Approval Order, Defendants shall cause to be served upon the appropriate State official of each State and the Attorney General of the United States notice of the Action in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.* ("CAFA").

(v)     Lead Counsel shall provide written notice to Defendants' Counsel 14 days in advance of:  (1) the mailing of the Notice to Class Members; and (2) the making of any distribution of the Gross Settlement Fund to Class Members.

IN WITNESS WHEREOF, the Parties have, through their respective counsel, executed

this Stipulation as of the date first written above.

COHEN MILSTEIN SELLERS & TOLL PLLC

_____

Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
Genevieve Fontan
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Attorneys for Lead Plaintiff Leonard Klorfine in
the AMT-Free Fund cases and Lead Counsel for
the Class*

DECHERT LLP

_____

Matthew L. Larrabee, Esq.
One Maritime Plaza, Suite 2300
San Francisco, CA 94111
Telephone: (415) 262-4500
Facsimile: (415) 262-4555

*Attorneys for Defendants OppenheimerFunds,
Inc., OppenheimerFunds Distributor, Inc., Scott
Cottier, Ronald H. Fielding, Daniel G. Loughran,
John V. Murphy, Troy Willis, Brian W. Wixted,
and MassMutual Life Insurance Co.*

38

IN WITNESS WHEREOF, the Parties have, through their respective counsel, executed this Stipulation as of the date first written above.

COHEN MILSTEIN SELLERS & TOLL PLLC

_____

Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
Genevieve Fontan
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

*Attorneys for Lead Plaintiff Leonard Klorfine in the AMT-Free Fund cases and Lead Counsel for the Class*

DECHERT LLP

*Matthew Larrabee (MSO)*
Matthew L. Larrabee, Esq.
One Maritime Plaza, Suite 2300
San Francisco, CA 94111
Telephone:  (415) 262-4500
Facsimile:  (415) 262-4555

*Attorneys for Defendants OppenheimerFunds, Inc., OppenheimerFunds Distributor, Inc., Scott Cottier, Ronald H. Fielding, Daniel G. Loughran, John V. Murphy, Troy Willis, Brian W. Wixted, and MassMutual Life Insurance Co.*

KRAMER LEVIN NAFTALIS & FRANKEL LLP


Arthur H. Aufses III, Esq.
1177 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000

*Attorneys for David K. Downes, Matthew P. Fink,*
*Robert G. Galli, Phillip A. Griffiths, Mary F.*
*Miller, Joel W. Motley, Joseph M. Wikler, Peter I.*
*Wold, Brian F. Wruble, Clayton K. Yeutter,*
*Kenneth A. Randall, Russell S. Reynolds, Jr., and*
*Oppenheimer AMT-Free Municipals Fund*