**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane**

Master Docket No. 09-md-02063-JLK-KMT (MDL Docket No. 2063)

**IN RE: OPPENHEIMER ROCHESTER FUNDS GROUP SECURITIES
LITIGATION**

This document relates to:     *In re California Municipal Fund*
                     09-cv-01484-JLK-KMT (Lowe)
                     09-cv-01485-JLK-KMT (Rivera)
                     09-cv-01486-JLK-KMT (Tackmann)
                     09-cv-01487-JLK-KMT (Milhem)

---

**ORDER GRANTING LEAD PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND
CLASS COUNSEL**

---

Kane, J.

    This multidistrict securities fraud class action is the last of seven such actions

brought against OppenheimerFunds, Inc., by investors in various Oppenheimer

Rochester-style municipal bond funds. Six of the seven consolidated class actions settled

after omnibus motions to dismiss class actions claims were denied and have been

dismissed with prejudice. The California Municipal Bond class action did not settle, and

is before me now on remand from the Tenth Circuit Court of Appeals.  The Court

reversed my summary order allowing the California case to proceed as a class action

under Fed. R. Civ. P. Rule 23(a) and (b), directing me to engage in a more "rigorous"

analysis and to consider the impact, if any, of the Supreme Court's decision in *Omnicare*

on class certification.  I have done so and REAFFIRM my order.

## I.   RELEVANT PROCEDURAL HISTORY.

The Oppenheimer Rochester-style municipal bond litigation at issue began as 35 separate securities fraud class actions filed in federal courts across the country, including the District of Colorado.  The actions were transferred to Colorado by the Judicial Panel on Multidistrict Litigation, where they were assigned to me.  The actions were grouped into seven consolidated class actions that would be managed in accordance with the procedures and pleading standards set forth in the Private Securities Litigation Reform Act of 1995 (the PSLRA). Ultimately, six of the seven consolidated actions were resolved by stipulation on a class-wide basis.  At the time of settlement, Lead Plaintiffs and Lead Counsel had been appointed in each of seven consolidated class actions, but Plaintiffs' omnibus Motion for Class Certification and Appointment of Class Representatives (Doc. 379) was pending.

The Motion for Class Certification, filed in July 2012, was 87 pages long and included specific requests for certification of all seven class actions, including the California case. As part of the settlement Agreement, the Oppenheimer Defendants stipulated to formal Rule 23 certification of all six of the settling plaintiff classes. *See* Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Settlement and Approval of Notice Plan (Doc. 498) at pp. 43-58;[1] Order Preliminarily Approving Settlements (Doc. 499) ¶¶ 3-4 (making findings and formally certifying six classes under Fed. R. Civ. P. 23(a) and (b) with Lead Plaintiffs as class representatives).

---

[1]  References are to CM/ECF page numbers.

During the ensuing formal class notification and settlement finalization process, proceedings in the California action were stayed.

This context is important, because when litigation in the remaining California action resumed in August 2014, formal certification of the California class did not appear to be contentious. Plaintiffs – despite the passage of time and legal rulings that had rendered much of their 2012 Motion for Class Certification moot – neither amended the motion nor moved to file a new one. Defendants – who had just stipulated to certification of the six companion cases in this MDL action – filed no updated or amended objection. Instead of painting the California case as somehow unique or different, the parties relied on snippets of two-year-old omnibus briefing and moved on – diving into depositions, written discovery, and the exchange of opening expert reports with only passing reference to the fact that formal certification of the remaining MDL class action was pending. *See* 9/18/14 Status Report (Doc. 532)(detailing discovery efforts since 7/31/14 settlement approval date and proposing discovery schedule moving forward).[2] In this procedural context, a formal Scheduling Order was entered (Doc. 533) and discovery proceeded apace for nearly six months. (Doc. 538.)

_____

[2] It is difficult to overstate how outdated Doc. 379 was at this time. Not only did the omnibus 2012 Motion and attendant briefing include complete legal arguments for and against certification of the six consolidated class actions that had since been settled, but it included arguments and theories of relief related to the California action that had later been abandoned. *See* 9/18/14 Status Rept. at 4 (California litigants had "worked cooperatively" since settlement "to narrow the scope of this litigation," and Plaintiff Stockwell "no longer intend[s]" to pursue allegations that California Fund was mispriced or that any Defendant made a misrepresentation regarding the price of any Fund security or the manner in which Fund securities were priced). Under these circumstances, and given the Oppenheimer Defendants' acquiescence in certifying all six of the other Oppenheimer municipal bond fund plaintiff classes for settlement purposes, reliance on the old Motion and briefing suggested class certification was a formality rather than a bona fide point of contention.

In March 2015, after substantial discovery, Oppenheimer formally revived its objections to class certification and asked for an evidentiary hearing on several questions, including whether the misleading nature of the California Fund's "capital preservation" investment objective was appropriate for class resolution because it required individualized proof and that therefore common questions of fact would not predominate. I denied the request, viewing it as a premature attempt to rehash – under a Rule 56 summary judgment standard – arguments regarding the sufficiency of Plaintiff's capital preservation claim. In a text-entry Order dated March 15, 2015, I rejected certain of Defendants' 2012 objections to certification of the California class and declared others moot, and granted the Motion for Class Certification as it pertained to the California Municipal Fund class and Lead Plaintiff Joseph Stockwell.  (Doc. 540.)

The Oppenheimer Defendants and the Independent Trustees immediately appealed, seeking review of the certification order under Rule 23(f).  The Oppenheimer Defendants' Petition (Doc. 543) was 1046 pages long with attachments, focusing extensively on facts learned in discovery and their incompatibility with a claim that Oppenheimer's "preservation of capital" investment objective was misleading. The Independent Trustees filed a separate Petition (Doc. 542) that included an additional 22 pages of argument. Both sought review on grounds that my summary order was a "paradigmatic example of a 'death knell' class certification order" (Doc. 542 at 7),

"ruinous," and one that "unfairly pressures Petitioners to settle for reasons wholly unrelated to the merits." *See id.*

The characterization chafes for several reasons.  First, it implies certification was a rubberstamp, granted early on in proceedings before any merits-related rulings.  In fact, it was issued years into the litigation of seven related multidistrict class actions, after merits-based motions to dismiss and for partial summary judgment were considered and rejected,[3] and after Oppenheimer had stipulated to Rule 23 certification in each of the other companion cases. Second, it casts certification as a "ruinous" and "unfair" cudgel to settle, when in fact, Oppenheimer had settled the other six other cases voluntarily, without any such pressure or cudgel. The statement is transparent hyperbole.

My suspicions regarding Defendants' motivations were validated by the substance of their appeal, which focused little on Rule 23 factors and almost exclusively on the merits of one of Plaintiff's theories of relief, namely, that the Fund's "preservation of capital" investment objective was materially false and misleading.  Rather than challenging the amenability of Plaintiff's suit to resolution as a class action generally, Defendants parsed the claims, agreeing three of Plaintiff's four theories of relief could proceed on a class-wide basis while arguing the "capital preservation" theory of relief

---

[3] The California action has been the subject of an omnibus Motion to Dismiss that was denied in a substantive Memorandum Opinion and Order (Doc. 359), which spoke at length to the merits of plaintiffs "capital preservation" investment objective and "leverage ratio" claims, among others. I have also denied motions for partial summary judgment on these theories of relief (Docs. 428, 429), expressing the view that plaintiffs' capital preservation and leverage ratio allegations are intertwined with allegations regarding liquidity, negative equity, and bond collapses that cannot be viewed in isolation. These are all merits-based observations, and they clearly informed the Oppenheimer Defendants' decision to settle without reference to outstanding class certification Motion.

would have to be carved out. Defendants' justification for this carve-out was merits-based – premised on discovery in which California Fund Lead Plaintiff Joseph Stockwell admitted "knowing" the California Fund was not a "capital preservation" fund and so could neither claim to have been misled nor represent a class of individuals who had been.  Arguing further that individual investor "knowledge" was necessary to any claim that the Fund's investment objective was misleading, Oppenheimer concluded certification was inappropriate because common questions of fact and law could not "predominate."

In short, Defendants were using Rule 23 class certification rubric not simply to carve out Plaintiffs' investment objective claim from consideration on a class-wide basis, but affirmatively to obtain summary judgment on that theory of relief on its merits.  The attempt, which took place before discovery was complete, was both inappropriate and premature.

Despite the limited nature of Defendants' actual Rule 23 objections, the Tenth Circuit vacated my summary Order and remanded for a more detailed statement of my ruling. (Doc. 556.)[4]  Based on this mandate, I asked the parties for supplemental briefing tailored to the California class certification issues and granted Defendants' request for an evidentiary hearing.  Over the course of two days in July 2015, party representatives,

---

[4]   In addition, the Court directed me on remand  to consider what, if any, bearing the Supreme Court's intervening decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015), had on class certification.  *See id.*

experts, and other witnesses testified, and counsel presented oral argument.  My findings and conclusions follow.

## II.    BACKGROUND

Lead Plaintiff Joseph Stockwell sues under Sections 11 and 12(a)(2) of the Securities Act of 1933, and seeks to certify a class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) consisting of all persons and entities who, between September 27, 2006 and November 28, 2008 (the "Class Period"), purchased A, B or C shares of Oppenheimer California Municipal Bond Fund pursuant or traceable to the Fund's offering documents.[5]  Mr. Stockwell alleges a series of related material misstatements and omissions in California Fund offering documents issued during the Class Period, and contends the California Fund, its manager and investment advisor OppenheimerFunds, Inc., its distributor and principal underwriter OppenheimerFunds Distributor, Inc., the Trustee Defendants,[6] and the Officer Defendants[7] violated the Securities Act of 1933 by registering, offering, and selling shares of the Fund pursuant to those false and misleading documents.  Plaintiff also sues Defendants OppenheimerFunds, Inc., the Trustee Defendants, the Officer Defendants and Massachusetts Mutual Life Insurance

---

[5] The "offering documents" referenced in this Order include the Fund's Registration Statements, Prospectuses and Statements of Additional Information ("SAIs") filed with the SEC on September 27, 2006, March 8, 2007 (revised prospectus) and October 31, 2007, as well as the Fund's Annual Reports, Semi-Annual Reports and Forms N-Q issued and filed with the SEC during the Class Period.

[6] Defendants Wruble, Murphy, Downes, Fink, Galli, Griffiths, Miller, Motley, Reynolds, Wold, Yeutter, Wikler and Randall.  (Doc. 250 ¶ 56.)

[7] Defendants Murphy, Wixted, Fielding, Loughran, Cottier and Willis.  (Doc. 250 ¶ 57.)

Company as "control persons" under Section 15 of the Securities Act.  (Doc. 250 ¶¶ 35, 37-39, 41-55.)

Stockwell alleges a series of related material misstatements and omissions in the Fund's offering documents issued during the Class Period relating to Defendants':  (1) failure to adhere to the Fund's stated investment objective; (2) over-concentration of the Fund's assets in non-investment grade (or "junk") bonds; (3) over-concentration of the Fund's assets in bonds exposed to the risk of California's real estate industry; and (4) excessive (and underreported) use of leverage through the Fund's investments in inverse floaters and borrowing.  Defendants concede misstatement categories (2) - (4) are appropriate for class certification; their only objection is that Plaintiff's investment objective allegations in group 1 are too individualized (and factually unsupported) to be navigated on a class-wide basis.

Briefly stated, Mr. Stockwell's "investment objective" allegations – common to each of the class action Complaints in the Oppenheimer municipal bond fund MDL – are that the California Fund's investment objective of "seeking as high a level of current interest income exempt from federal and California income taxes for individual investors as is consistent with the preservation of capital" was false and misleading.  According to Mr. Stockwell, the investment objective was misleading because it portrayed the Fund as a relatively conservative vehicle that purchased municipal bonds to seek tax-free income while also seeking to preserve investors' capital.  Plaintiff alleges that, in reality,

Defendants did not seek to preserve investors' capital at all, deploying instead a strategy of seeking only to generate high yield over long periods of time. In connection with his investment objective allegations, Plaintiff alleges Defendants made misleading comparisons between the Fund and its Lipper peer group,[8] claimed to be controlling overall portfolio risk while failing to disclose that they lacked effective risk management controls, and ignored the warnings from the head of risk management that the Fund's portfolio contained too much risk.[9]

The group (2)-(4) allegations are premised on different representations in the Fund's offering documents, but also inform the allegations related to the misleading nature of the investment objective. The group (2) allegations, for example, relate to Defendants' statements that the California Fund would invest no more than 25% of its assets in non-investment grade bonds. According to Stockwell, Fund managers consistently failed to use rating agency criteria when internally rating real-estate related special tax and special assessment (i.e. "dirt") bonds and, had they done so, would have known the bonds were non-investment grade. Ultimately, nearly 40% of the Fund's assets were invested in what Stockwell claims were non-investment grade "junk" bonds, far more than the Fund's 25% concentration limit stated in the Fund's Annual and Semi-

---

[8] Ex. 6 at 76 (September 27, 2006 Prospectus and SAI) (Lipper peer group is "an appropriate benchmark selected by management.")). The offering documents identified "Lipper - California Municipal Debt Funds" as the peer group for the Fund. *Id.* Unless otherwise noted, citations in this Order to "Ex. __" refer to the exhibits and materials submitted by the parties in connection with the evidentiary hearing conducted by the Court on July 21 and 22, 2015. The parties' joint exhibit list was filed with the Court at Doc. 574-3.

[9] *See, e.g.,* Ex. 10 at 11, 17-18 (July 31, 2007 Annual Report) (Defendants "carefully assess levels of risk" and "balance[d] many different types of risk to reduce overall portfolio risk.").

Annual reports.  The third set of alleged misrepresentations involves real estate-related bonds and the offering documents' statements that "[t]he Fund cannot invest 25% or more of its total assets in any one industry."  Stockwell alleges that by using unreasonably narrow industry classifications, Defendants concealed the fact that the Fund invested as much as 48% of its assets in bonds that were exposed to the risks of the California real estate market.

The fourth set of alleged misrepresentations relate to the Fund's use of leverage, particularly through its investment in inverse floaters.  The offering documents represented that the Fund could not invest more than 20% of its total assets in inverse floaters.  Plaintiff alleges that Defendants consistently underreported the size of the Fund's investments in inverse floaters, first by failing to take into account the effects of leverage and later by failing to accurately calculate that leverage.  According to Plaintiff, these miscalculations caused Defendants to understate the size (and risk) of the Fund's investment in inverse floaters in every quarterly offering document during the Class Period.  Plaintiff also alleges that Defendants failed to disclose that they used a line of credit to increase their investment in inverse floaters, and that by September 2008, the total leverage in the Fund from inverse floaters and borrowings exceeded 33% of net assets, adding significant additional risk to the Fund's portfolio.

## III.   CLASS CERTIFICATION UNDER RULE 23

Federal Rule of Civil Procedure 23 governs class certification.  Plaintiff bears the

burden of proving that he has satisfied all of the requirements of Rule 23(a) and at least one of the prongs of Rule 23(b).

Under Rule 23(a), a federal trial judge may certify a class only where (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The court may certify a class under Rule 23(b)(3) if questions of law or fact common to the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

The court must undertake a "rigorous analysis" to satisfy itself that the prerequisites of Rule 23 are met. *See Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011); *Comcast Corp. v. Behrend*, __ U.S.__, 133 S. Ct. 1426, 1432 (2013). While the analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,'" Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) (citing *Dukes*, 131 S. Ct. at 2551). The determination of whether class certification is appropriate is vested in the sound discretion of the district

court.  *Clay v. Pelle*, No. 10-CV-01840-WYD-BNB, 2011 WL 843920, at *1 (D. Colo.

Mar. 8, 2011) (citing *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982)).

　　While the class certification analysis is highly case-specific, Section 11 and

12(a)(2) claims are "'especially amenable' to class action certification and resolution."

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014

WL 1013835, at *5 (S.D.N.Y. Mar. 17, 2014) (citations omitted).  Because Securities Act

claims focus on offering documents, the central issues are usually common to all class

members:  Was there a false or misleading statement in the registration statement or

prospectus, and was it material?  *See Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190,

1196 (10th Cir. 2013).  These issues are tried with common proof, and damages are

calculated using a common formula.  Accordingly, "the Tenth Circuit has endorsed class

actions as an appropriate means to resolve claims under the federal securities laws."

*Lerner v. Haimsohn*, 126 F.R.D. 64, 65 (D. Colo. 1989) (citing *T.J. Raney & Sons, Inc. v.

Fort Cobb, Okla. Irrigation Fuel Auth.*, 717 F.2d 1330 (10th Cir. 1983)).

　　Before proceeding to Rule 23 certification that is the subject of the Tenth Circuit's

remand order, I pause briefly to address Defendants' argument – raised for the first time

at the July 2015 evidentiary hearing – that certification is impossible because Mr.

Stockwell has "abandoned the investment objective claim that he pled and sought to

certify."  *See* Defs.' Proposed Findings of Fact and Concl. Of Law (Doc. 582).  The

assertion relies on a bit of sleight-of-hand related to the cross-examination of Plaintiff's

expert, Mr. Kohlhagen, and defense counsel's assertion that Mr. Kohlhagen had articulated a "new" investment objective or "risk limit" claim that was entirely subjective and therefore inappropriate for class-wide treatment. *See id.* at pp. 29-51. I am unpersuaded. For class certification purposes, I conclude Mr. Stockwell has not abandoned his investment objective claim, which remains that the Fund's stated objective "to generate the maximum amount of tax-free income that is consistent with the preservation of capital" was misleading in the context of the investment strategies and risk management failures that were actually employed. As I have previously determined, the representation that Rochester-style funds would be managed aggressively, but in a manner that was ultimately consistent with the preservation of capital, was important to the overall mix of information available to reasonable investors at the time they invested in those funds including, in this instance, Mr. Stockwell. Whether the facts ultimately support that conclusion as a matter of law is a matter for another day.

## A.   Rule 23(a)

With regard to Mr. Stockwell's Lead Plaintiff allegations, Defendants stipulate that the numerosity requirement of Rule 23(a)(1) is satisfied, that the determination of commonality under Rule 23(a)(2) will turn on my predominance finding, and that the attorneys that Plaintiff has selected (the Sparer Law Group and Girard Gibbs LLP) are adequate to serve as class counsel. Defendants do not dispute that the requirements of typicality and adequacy under Rule 23(a)(3) and (a)(4) are satisfied except as to

Plaintiff's investment objective allegations.  Defendants also do not contest that predominance and superiority under Rule 23(b)(3) are satisfied except as to Plaintiff's investment objective allegations.  For purposes of clarity, however, I make the following findings as to each of the applicable requirements of Rule 23.

### 1.    Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder is impracticable. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  "Plaintiffs must offer 'some evidence of established, ascertainable numbers constituting the class,' but there is 'no set formula to determine if the class is so numerous that it should be so certified.'" *Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (quoting *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)).

Plaintiff has shown that Class Members number at least in the tens of thousands, making voluntary joinder impracticable.  The report of Plaintiff's expert Candace Preston analyzed 58,000 individual Oppenheimer customer accounts for the California Municipal Bond Fund to calculate the number of shares that incurred statutory damages under Sections 11 and 12(a).[10]  I therefore find that the numerosity requirement is satisfied.

### 2.    Commonality

Rule 23(a)(2) requires "questions of law or fact that are common to the class."  A plaintiff satisfies this requirement by showing a "common contention" that is "capable of

---

[10] Ex. 102 at ¶¶ 20, 24 (Preston Expert Report).

classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "The claims of the class members need not be identical for there to be commonality; either common questions of law or fact will suffice." *Schwartz v. Celestial Seasonings, Inc.,* 178 F.R.D. 545, 551 (D. Colo. 1998) (citation omitted); *see also DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010) ("Factual differences between class members' claims do not defeat certification where common questions of law exist."). And "even a single common question will do." *Dukes*, 131 S. Ct. at 2556 (citations omitted).

There are numerous common questions in this case, including whether the Fund's offering documents contain misstatements or omissions, whether those misstatements and omissions were material, and whether Class members sustained monetary losses. *See, e.g.*, *Schwartz,* 178 F.R.D. at 551 (finding that whether the documents publicly disseminated by the defendants were materially false and misleading or omitted material facts was a common question); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388-89 (D. Mass. 2011) (holding that questions of whether offering materials contained untrue statements of material fact or material omissions and the extent of damages sustained by class members "have repeatedly been held to satisfy the commonality requirement"); *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 396

(D. Colo. 2010) ("Claims arising out of standard documents present a classic case for treatment as a class action.").  The commonality requirement is therefore satisfied.

### 3.    Typicality

Rule 23(a)(3) requires that the plaintiff's claims be typical of the claims of the class. The typicality requirement is satisfied if the claims of the named plaintiff and class members are "based on the same legal or remedial theory."  *Devaughn*, 594 F.3d at 1198-99.  "The positions of the named plaintiffs and the potential class members do not have to be identical."  *Schwartz*, 178 F.R.D. at 551.  Instead, "[s]o long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied."  *Id.*

Mr. Stockwell purchased shares of the California Fund during the Class Period pursuant to offering documents containing the alleged material misrepresentations and omissions.  Because Plaintiff's claims and the claims of absent class members are premised on the same legal and remedial theories, by pursuing his claims Mr. Stockwell will advance the interests of the Class.

Defendants contend that Mr. Stockwell is atypical because he is subject to unique defenses, including that he is a sophisticated investor whose knowledge of the Fund's poor performance in late 2007 and early 2008 started the statute of limitations period and subjects him to an actual knowledge defense. While that may ultimately prove to be the

case at trial or under a Rule 56 standard, the defense does not render Mr. Stockwell an inappropriate class representative.

A plaintiff's sophistication as an investor does not defeat typicality unless he possesses "unique knowledge – that is, information known to [him] that was not known to the rest of the market." *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 455 (S.D.N.Y. 2013). Defendants have provided no evidence that Plaintiff had "unique knowledge" about the inner workings of the Fund or about Defendants' disregard for the Fund's investment objective or risks. Knowledge derived from the Fund's performance, moreover, was not unique or unknown to the rest of the market; it was publicly available information and its significance to a reasonable investor is subject to common proof. Defendants have also not established that Plaintiff's sophistication would allow him to conclude that declines in the Fund's share price signaled that Defendants were taking excessive risk to obtain higher yields or that they were not adhering to the Fund's investment objective. [11]

Defendants cite a statement by Plaintiff's broker, Alan Zafran, that a decline of 10% in the Fund's performance would have been a "red flag" indicating that "the Fund had significant risks."[12] Mr. Zafran testified, however, that he used the term "red flag" to describe something that would trigger a review to "try and learn if there's any reasons

---

[11] *See* Tr. (Doc. 580) at 165:13-166:2 (Hearing Testimony by Stockwell) (significant NAV declines in late 2007 "fundamentally did not change my mindset that I was investing in a relatively safe vehicle that was professionally managed by guys who were managing risk to my investment.").

[12] Doc. 566 at 49.

why we should either buy more, hold tight, or sell."[13] At most, this testimony is relevant to the question whether the decline would have "alert[ed] a reasonable person to the possibility" of a misstatement, which is a matter that can be resolved through generalized proof. *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1196 (10th Cir. 1998) (citation omitted).[14] I conclude Defendants' unique knowledge and statute of limitations defenses do not undermine Mr. Stockwell's typicality as a class representative, and that the typicality requirement is satisfied.

### 4.    Adequacy

Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class."  To satisfy this requirement, "'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'"  *Tennille v. W. Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997)).  The class representative and class members "must share common objectives and legal or factual positions," but they need not be identical.  *Id.*  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Id.* (alteration in original).

Mr. Stockwell has testified and otherwise attested to the fact that his interests are

---

[13] Ex. 237 at 112:3-113:22 (Zafran Dep. Tr.).

[14] The record also shows that Mr. Zafran was referring to a decline in total return—rather than NAV—as the metric that could have prompted Plaintiff to reevaluate his investment.  The Fund's total return did not decrease more than 10% until February 26, 2008, less than one year before the first California Fund complaint was filed, negating the statute of limitations argument.

aligned with those of the other Class members and that he is not aware of any conflicts with Class members that would undermine his representative status.[15]  He has advanced the litigation on behalf of the Class and supervised the effective prosecution of this case for nearly six years by participating in discovery, providing input on court filings and overall case strategy.

Defendants contend that Plaintiff is not an adequate class representative because his testimony that his investment in the Fund was his "sleep-at-night" money is not credible, given that he purchased shares after the Fund's price had fallen by more than 10%, and after selling his shares he reinvested the money in a high yield municipal bond fund.  Plaintiff testified at the evidentiary hearing and in his deposition, however, that he invested in a high yield fund in an attempt to recover a portion of the losses he incurred as a result of investing in the Fund.[16]  In addition, Mr. Stockwell's financial advisor, Alan Zafran, confirmed that the money Mr. Stockwell invested in the California Fund was his "sleep-well money."[17]

"[I]n the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance or credibility are rarely appropriate." *Koppel v. 4987 Corp.*, 191 F.R.D. 360, 369 (S.D.N.Y. 2000) (citation omitted); *see also Schwartz*, 178 F.R.D. at 553 n.2.  The cases Defendants cite involved

---

[15] Exs. 33; 34; 35; ECF 580 at 136:14-137:18 (Hearing Testimony by Stockwell).

[16] Ex. 233 at 236:6-239:1 (Stockwell Dep. Tr.); Hg. Tr. (Doc. 580) at 126:7-127:17, 171:17-172:3 (Hearing Testimony by Stockwell).

[17] *See, e.g.*, Ex. 237 at 65:16.

plaintiffs who were demonstrably unfit to represent a proposed class, and are thus distinguishable. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (finding the plaintiff inadequate because he repeatedly "changed his position" as to whether or not he received the "letters that formed the very basis for his lawsuit"); *Dubin v. Miller,* 132 F.R.D. 269, 272 (D. Colo. 1990) (finding that the plaintiff's allegations that the defendants had threatened his life and assertions of a conspiracy headed by a competitor or foreign power were "the product of a wild imagination" and subjected his credibility to "extraordinary attack."). I found Mr. Stockwell's testimony at the July 2015 hearing credible, and disagree with Defendants' contention that it gives rise to an adequacy challenge.

Defendants also contend that Mr. Stockwell is inadequate because he is subject to a statute of limitations defense and an actual knowledge defense due to his sophistication as an investor and knowledge of the Fund's poor performance in late 2007 and early 2008. As discussed above in the context of typicality, I find these arguments unpersuasive.

I find and conclude that Mr. Stockwell is an adequate representative of the Class, and that the Sparer Law Group and Girard Gibbs LLP will fairly and adequately protect the interests of the Class. Rule 23(a)(4) is satisfied.

## B.    RULE 23(b)(3)

I find Rule 23(b)(3) is satisfied because common issues predominate and a class

action is a superior means of litigating Class members' claims.

### 1.   Predominance

The predominance inquiry "focuses on the question of liability." *Maez*, 268 F.R.D. at 397. "[I]f the liability issue is common to the class, common questions are held to predominate over individual questions." *Id.* (citation omitted). The purpose is to avoid a class action degenerating into a series of individual trials.

Determining whether the putative class can clear the predominance hurdle established by Rule 23(b) (3) requires the district court to consider how a trial on the merits would be conducted if a class were certified, and the identification of substantive issues that will control the liability determination. *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011)(quotations omitted). This is a fact-specific analysis and will vary depending on the circumstances of any given case. *See* 7AA Wright, Miller, & Kane, Federal Practice & Procedure § 1783 (3d ed.2005).

### a.   Common Issues Predominate

Liability in the California Municipal Fund class action will turn on proof that (1) Class members purchased or otherwise acquired registered securities; (2) Defendants are parties held liable under Section 11; and (3) Fund registration statements "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Under Section 11, "a plaintiff . . . need only show a material misstatement or omission to

establish his *prima facie* case." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382

(1983). "Section 11 places a relatively minimal burden on a plaintiff" and "was designed

to assure compliance with the disclosure provisions of the Act by imposing a stringent

standard of liability on the parties who play a direct role in a registered offering." *Id.* at

381-82.

Like the Section 11 claim, Section 12(a)(2) does not require proof of scienter or

fraud. *See Schaffer v. Evolving Sys., Inc.*, 29 F. Supp. 2d 1213, 1220 (D. Colo. 1998).

Plaintiff must prove that (1) the defendants are offerors or sellers under the statute; (2)

the sale was made by means of a prospectus; (3) the prospectus or oral communication

"includes an untrue statement of a material fact or omits to state a material fact necessary

in order to make the statements, in the light of the circumstances under which they were

made, not misleading;" and (4) Class members did not know, and could not have known

through the exercise of reasonable care, of the untruth or omission. 15 U.S.C.

§ 77l(a)(2).

Proof of the falsity or the misleading nature of the statements and omissions in the

Fund's offering documents will be the same for all members of the Class. "Liability will

turn first and primarily on whether the Offering Documents contained misstatements and

omissions as plaintiff alleges—an issue clearly subject to 'generalized proof.'" *In re*

*Smart Technologies, Inc. S'holder Litig.,* 295 F.R.D. 50, 61 (S.D.N.Y. 2013) (citation

omitted); *see also Schwartz*, 178 F.R.D. at 551, 554 (finding that the central issue of

whether the defendants made the alleged misrepresentations and omissions was common to all class members).

In *Omnicare*, a decision that does not address class certification, the Supreme Court confirmed that "whether a statement is 'misleading' depends on the perspective of a reasonable investor: The inquiry (like the one into materiality) is objective."  135 S. Ct. at 1327.  Proof of whether a statement is an opinion, whether it was sincerely held, and whether there was a reasonable basis for the opinion will be common to all class members.

The question of whether the alleged misstatements and omissions were material will also be addressed with evidence common to all Class members.  *See Amgen*, 133 S. Ct. at 1191 ("Because materiality is judged according to an objective standard, the materiality of [the defendant's] alleged misrepresentations and omissions is a question common to all members of the class.").

Plaintiff must also establish under Section 12(a)(2) (but not Section 11, where the defendant has the burden of proof) that Class members did not know, and could not have known through the exercise of reasonable care, that the misstatements and omissions were false or misleading.  At the evidentiary hearing, Plaintiff's expert Steve Kohlhagen identified a substantial body of common evidence (also cited in Plaintiff's class certification briefing) showing that Class members could not have known that Defendants' statements in the offering documents about the Fund's investment objective

and risks, holdings in non-investment grade bonds, exposure to bonds tied to the performance of California real estate, and inverse floater holdings and leverage were false and misleading.[18]  This evidence was also addressed at length in the reports of Plaintiff's experts Gifford Fong and Neil Budnick, both of which were referenced extensively in Plaintiff's supplemental briefing and in the presentation of evidence at the hearing.[19]  This evidence includes the Fund's offering documents and marketing materials, the meeting minutes of its Board of Trustees, the Fund's internal risk reports and emails, the deposition testimony of Oppenheimer management and expert analysis of the Fund's holdings during the Class Period.

The calculation of damages is common to the Class as well.  *See* 15 U.S.C. §§ 77k(e), 77*l*; *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 207 (S.D.N.Y. 2012) (holding that because Securities Act damages are calculated using a statutory formula, "[t]he means of determining them therefore would be common to all class members").  Plaintiff has proffered a damage report based on the statutory measures of damages for Section 11 and 12(a)(2) claims.[20]

---

[18] Class Certification Hg. Tr. (Doc. 580) at 53:21-56:2.

[19] *See* Ex. 99 (Gifford Fong Expert Report) at 11-15 (finding that Defendants did not manage the Fund consistently with the investment objective); *id.* at 15-37 (finding that the Fund's risk management was inadequate to ensure compliance with the investment objective); *id.* at 40 (finding that nearly 40% of the Fund's assets were concentrated in below investment grade bonds); *id.* at 59 (finding that during the Class Period, between 35-48% of the Fund's assets were concentrated in bonds exposed to the risks of California's real estate market); *id.* at 91 (finding that Defendants understated the percentage of the Fund's assets invested in inverse floaters throughout the Class Period); *id.* at 99 (finding that Defendants excessively leveraged the Fund's assets through the combined use of inverse floaters and a credit line); Ex. 101 (Neil Budnick Expert Report) at 25 (finding that over 90% of the dirt bonds in the Fund that Defendants had rated as investment grade would have been rated as junk under rating agency criteria).

[20] Ex. 102.

Proof of Plaintiff's Section 15 claim will also be common to all Class members. Liability under Section 15 is derivative of liability under sections 11 and 12(a)(2), and a "control person" may be liable for an underlying primary violation of the securities laws by the "controlled person." 15 U.S.C. § 77o. Courts recognize that the issue of control person liability is common to all class members. *See, e.g.*, *Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 587 (C.D. Cal. 2012) (determination of whether certain defendants were "'control persons' as defined by the 1933 Act" is a common issue).

Finally, Defendants' affirmative defenses of negative loss causation and due diligence also present common issues. To prove their "negative loss causation" defense, Defendants must show that the decline in the value of the securities was caused by something other than the alleged misrepresentations or omissions and "will be required to rely on generalized proof to support this assertion." *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 119 (S.D.N.Y. 2011); *see also Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 140 (S.D.N.Y. 2014) ("Even if Defendants raise a defense of negative loss causation, however, it will not require individualized inquiries. . . . Therefore, negative loss causation does not undermine the predominance of common issues."). Defendants' due diligence defense turns on generalized proof as well, because the focus of the defense is on Defendants' conduct. *See* 15 U.S.C. § 77k(b)(3); 15 U.S.C. § 77l(a)(2); *see also DLJ Mortg.*, 2014 WL

1013835, at *11 ("[A]ny affirmative defense of due diligence is susceptible to generalized proof regarding whether it was 'reasonable.'") (citation omitted).

### b. Defendants Have Not Shown That Individualized Issues of Investor Knowledge Outweigh the Common Issues

Defendants object to class certification solely as it relates to Plaintiff's allegation that the investment objective was false and misleading in light of the overall risks in the Fund's portfolio.  They argue that Class members "overwhelmingly knew, or should have known, that the Fund did not match up to the representation Plaintiff reads into the investment objective" (Doc. 566 at 3), and that individualized inquiries are needed to determine whether Class members' claims are timely and whether they can recover under Sections 11 and 12(a)(2).  *See id.* Class certification, in Defendants' view, will deprive them of their right to assert individualized affirmative defenses against class members. This again, is an exercise in hyperbole.

As a general rule, "[c]ourts have been reluctant to deny class action status because affirmative defenses might be available against different class members as long as the defenses do not overshadow the primary claims." *DLJ Mortg.*, 2014 WL 1013835, at *8 (citation omitted).  I find that individualized issues of investor knowledge do not defeat a finding of predominance.  As explained below, Defendants' argument is predicated on the same "sleight of hand" regarding what the investment objective means in this case as previously addressed, and therefore what information would have informed investors that the investment objective was false and misleading. As I have already determined,

Plaintiffs have not abandoned an *Omnicare*-style investment objective claim in favor of an entirely subjective one.  Misrepresentations regarding the investment objective are intertwined with misstatements regarding non-investment grade bonds, over-exposure to risks of the real estate industry, and excessive use of inverse floaters – each of which Defendants  concede presents common questions appropriate for class treatment.

c.      **Certifying The Class Will Not Abridge Defendants' Rights**

If Class members were required to bring separate actions, these common questions would necessarily be relitigated over and over and the same evidence would be presented in each case, resulting in a failure to "reap the rewards of efficiency and economy for the entire system that the drafters of [Rule 23] envisioned …." *Mullins v. Direct Digital, LLC*, No. 15-1776, 2015 WL 4546159, at *8 (7th Cir. July 28, 2015) (quoting 7AA Charles Alan Wright et al., *Federal Practice & Procedure* § 1780 (3d ed.)).

Relying on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), Defendants contend that certification of the Class will abridge their substantive rights to assert statutory defenses against individual Class members.  In *Dukes*, the Supreme Court reversed certification of a Rule 23(b)(2) class in an employment discrimination case brought under Title VII because the proposed method of proving liability and damages precluded the "individualized proceedings" required under that statute when a defendant is sued for backpay.  *Id*. at 2561.  The Supreme Court held that certification in that context was improper because it would deprive Wal-Mart of its substantive right to the

"individualized proceedings," and because the proposed class failed to meet the commonality requirement. *Id*. at 2561, 2556.

Granting class certification in this case, unlike in *Dukes*, will not limit Defendants' ability to raise their statutory defenses. I have found that common issues predominate and that those common issues can be resolved on a classwide basis. "[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters have to be tried separately." *Gomez,* 2014 WL 1456530, at *3 (citation omitted). Defendants will have an opportunity to call witnesses and challenge any individualized issues that they may identify. *See, e.g.*, *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012) (certifying a Rule 23(b)(3) class and noting that "to the extent [a defendant] has individualized defenses, it is free to try those defenses against individual claimants" and that "therefore *Dukes* does not bar certification") (citation omitted); *In re Cadillac V8-6-4 Class Action*, 461 A.2d 736, 749 (N.J. 1983) ("[C]ertification merely permits litigation of common issues on a class basis before litigation of individual issues.").

My finding that common issues predominate also suggests that trial will be manageable. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1273 (11th Cir. 2004) ("[W]here a court has already made a finding that common issues predominate over individualized issues, we would be hard pressed to conclude that a class action is less manageable than

individual actions."), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  In addition, nothing in Rule 23 requires a plaintiff to submit a formal trial plan at this juncture.  *See Medlock v. Taco Bell Corp.*, No. 1:07-CV-01314-SAB, 2014 WL 4319510, at *5 (E.D. Cal. Aug. 29, 2014) (noting that the defendants cited "no authority for requiring Plaintiffs to prepare a 'trial plan'" and observing that "[i]f Defendants have discovered a flaw in Plaintiffs' methodology, the legal system affords Defendants an appropriate procedural mechanism to present that flaw: the trial."); *see also Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005) ("Nothing in the Advisory Committee Notes suggests grafting a requirement for a trial plan onto the rule.").

Should it become necessary, I have case management tools at my disposal to address any individualized issues.  *See In re Storage Tech. Corp. Sec. Litig.*, 113 F.R.D. 113, 120 (D. Colo. 1986) ("Management problems which may arise in both pre-trial and trial proceedings may be the subject of further action by the court under Rules 16, 23(d)(2), 42(b), and 56(d).").  Defendants rely on inapposite cases in which courts declined to use case management tools to "fix" classes that were otherwise uncertifiable because they did not meet the predominance requirement.  Here, by contrast, I have already determined that common issues predominate and that the proposed Class satisfies the requirements of Rule 23(a) and 23(b)(3).

## 2.  Superiority

The final requirement for class certification is that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Courts consider four factors in making this determination: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).  Defendants have not challenged the superiority of class action treatment except as to Plaintiff's investment objective allegations, and in that context do so only based on the same arguments they claim defeat predominance.

Class actions are the "favored method" in this circuit for litigating securities actions that involve numerous investors.  *See, e.g.*, *In re Ribozyme Pharm., Inc. Sec. Litig.*, 205 F.R.D. 572, 577 (D. Colo. 2001); *Schwartz,* 178 F.R.D. at 550.  I am convinced that a class action is superior to any other method of adjudicating this controversy, and Defendants have offered no persuasive argument to the contrary.  In addition to the inefficiencies attendant to re-litigating the same issues in thousands of individual actions, if Class members were unable to proceed as a class, it is ludicrous to assert individual investors would be unlikely to be able to pursue their claims because of the disparity between the cost of litigating and the amounts they could hope to recover.

*See id.* at 579.  There are no apparent difficulties in the management of this case beyond those in any large securities class action.

### C.     STANDING

Defendants argue (in a footnote) that the Class Period should not start until March 8, 2007 because Plaintiff purchased his shares pursuant to the March 8, 2007 Prospectus and therefore lacks standing to assert claims based on alleged misstatements and omissions in the Fund's September 27, 2006 Prospectus.  Plaintiff has pointed out that the March 8, 2007 Prospectus was an amendment to the September 27, 2006 Prospectus. Accordingly, Plaintiff has standing to represent investors who purchased their shares pursuant to the September 27, 2006 Prospectus and each of the other offering documents issued during the Class Period.  *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1165-67 (C.D. Cal. 2008) (explaining that plaintiffs can represent investors who purchased securities issued with different prospectuses when they are traceable to the same initial shelf registration, "share common 'parts'" and were false and misleading at each effective date).  Defendants do not contend that the September 27, 2006 prospectus "includes a different set of disclosures and additional warnings" about the alleged misstatements and omissions, as was the case in *Rafton v. Rydex Series Funds*, No. 10-CV-01171-LHK, 2011 WL 31114, at *12 (N.D. Cal. Jan. 5, 2011).

### IV.     CONCLUSION

Based on the foregoing, my previous determination that the Motion for Class

Certification should be granted is REITERATED and AFFIRMED.  I CERTIFY a class of all persons and entities who, between September 27, 2006 and November 28, 2008, purchased A, B and C shares of Oppenheimer California Municipal Bond Fund pursuant or traceable to the Fund's offering documents, and APPOINT Joseph Stockwell as Class Representative.  I also formally APPOINT the Sparer Law Group and Girard Gibbs LLP as Class Counsel, with the Sparer Law Group designated as Lead Counsel for the Class.

Within two weeks of the date of this Order, the parties shall confer and Plaintiff shall file a statement regarding a proposed schedule for dissemination of notice to the Class in accordance with Federal Rule of Civil Procedure 23(c)(2), taking into account any appeals that may be filed pursuant to Rule 23(f).

Dated this 16th day of October, 2015.

*s/John L. Kane*
SENIOR U.S. DISTRICT JUDGE